UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

MANSEL OIL LIMITED,

                Plaintiff,

    -  against -

SWIFT AVIATION GROUP, INC.

                Defendant.

------------------------------------------------------X

**ECF CASE**

08 Civ. 1086 (GBD)

**AFFIDAVIT OF J. KEVIN BURDETTE**

STATE OF ARIZONA        )
                      ) ss.:
COUNTY OF MARICOPA   )

J. KEVIN BURDETTE, being duly sworn, deposes and says:

1.     I am the Vice President of Swift Air, LLC ("Swift Air") and have personal knowledge of the facts and circumstances set forth in this Affidavit.

2.     Plaintiff in this case erroneously attached an electronic funds transfer ("EFT") belonging to Swift Air, purportedly pursuant to an attachment order that relates to Swift Aviation Group, Inc. ("Swift Aviation"), a completely separate and distinct entity.

3.     Swift Air has nothing to do with the underlying transactions and occurrences which form the basis of Plaintiff's Rule B action against Swift Aviation.

4.     Swift Air is not, and has never been in the business of chartering or operating oil tankers, or purchasing, selling, or trading petroleum products or any other internationally traded products.

5.     Further, Swift Air has never been party to a contract for the sale of any petroleum product, nor has it ever entered into any charter party agreement.

6.     Swift Air is not a named defendant in Plaintiff's Verified Complaint.

7.     Swift Air is not a party to, or otherwise subject to, the terms and conditions of the charter parties between Mansel Oil Limited and Swift Aviation, referred to in the Verified Complaint.

8.     Swift Air is not subject to the London Arbitration Clauses in the charter parties between Mansel Oil and Swift Aviation, nor is Swift Air liable directly or indirectly for any of the freight or demurrage claims referred to in the Verified Complaint.

9.     Swift Air is organized under and pursuant to the laws of the State of Arizona, with its principal place of business located at 2710 E. Old Tower Road, Phoenix, Arizona, 85034. A copy of Swift Air's Articles of Organization is attached hereto as Exhibit A.

10.     Swift Air is in the business of providing aircraft brokerage, aircraft charter, and aircraft management services for corporate and commercial aircraft.

11.     In connection with the services it provides, Swift Air operates corporate and commercial aircraft under certificates of public convenience and necessity issued pursuant to Parts 121 and 135 of the Federal Aviation Regulations.

- 2 -

12.    Swift Air's customers in this regard include, but are not limit to, owners of corporate aircraft as well as professional sports teams and other entities and individuals.

13.    Swift Air and Defendant, Swift Aviation, are related corporations in that Swift Air is a subsidiary of Swift Aviation, but they are separately organized and incorporated, and operate independently of one another.

14.    Despite Swift Air's complete lack of any role in the transactions and occurrences at issue in this suit, Plaintiff attached an EFT sent to Swift Air by Elite Jet, Ltd. ("Elite"), a Canadian entity, in payment of air transportation services rendered to Elite by Swift Air. The transaction between Elite and Swift Air is completely unrelated to the charter party transactions described in Plaintiff's Verified Complaint.

15.    It is my belief that the EFT at issue was en route from Elite's bank in Canada to Swift Air's escrow bank account in Michigan.

16.    It is also my belief that Elite's Canadian bank used Garnishee, Bank of America, as an intermediary bank to wire the funds to Swift Air's escrow bank account at National City Bank in Michigan.

17.    In accordance with United States Department of Transportation regulations for Part 121 certificate holders, Swift Air holds an escrow bank account governed by an Air Carrier Depository Escrow Agreement, where its customers send payments for Swift Air's services. A copy of the Air Carrier Depository Escrow Agreement is attached hereto as Exhibit B.

18.    After Swift Air performs the services, the escrow account bank then distributes the payment to Swift Air's general commercial operating account.

19.    Swift Aviation does not have any ownership interest or entitlement to any portion of (a) Swift Air's escrow account with National City Bank, (b) Elite Jet, Ltd.'s $118,136.00 payment to Swift Air for services provided by Swift Air, or (c) Swift Air's general commercial operating account, which was the intended final destination for the EFT.

20.    "Swift Aviation Group" is a federally registered service mark owned and used by Swift Aviation and its subsidiaries and affiliates, including Swift Air.  Any use by Swift Air of the name "Swift Aviation Group" is not a reference to the incorporated entity Swift Aviation, but is rather a use of the registered service mark.

Dated:    Phoenix, Arizona

March 20, 2008

J. Kevin Burdette
Vice President, Swift Air, LLC

Sworn to before me this
20th day of March, 2008

Notary Public


JOANNE E. BOSTON
Notary Public - Arizona
Coconino County
My Comm. Expires May 4, 2010

- 4 -

# EXHIBIT A

MAR. 16. 2005-12:48PM        'E & EHRLICH,          602-

AZ CORPORATION COMMISSION
FILED

AZ Corp. Commission



01201105

MAR 1 6 2005

FILE NO. _L-1199442-6_    ARTICLES OF ORGANIZATION

1.    The name of this limited liability company is:

SWIFT AIR, L.L.C.

2.    The address of the known place of business and the name and business address of the agent for service of process are:

Known Place of Business:    2406 South 24th Street, Suite E100
Phoenix, Arizona 85034

Statutory Agent:    Gerald F. Ehrlich
4001 North Third Street, Suite 400
Phoenix, Arizona 85012

3.    There are one or more members of this limited liability company at the time of formation.

4.    Management of this limited liability company is vested in a Manager.

5.    The name and address of the Manager and of each Member owning a 20% or greater interest in the capital and profits of the Company are: or

SWIFT AVIATION GROUP, INC.
An Arizona corporation
2710 East Old Tower Road
Phoenix, Arizona 85034
Member

SWIFT AVIATION MANAGEMENT, INC.
An Arizona corporation
2710 East Old Tower Road
Phoenix, Arizona 85034
Manager

Dated the 15th day of March, 2005.

Kevin Burdette, Organizer
2406 South 24th Street, Suite E100
Phoenix, Arizona 85034

ACCEPTANCE BY AGENT

The undersigned hereby accepts the duties of Statutory Agent and agrees to act in that capacity until resignation or removal.

Gerald F. Ehrlich

C:\Documents and Settings\bluM-LAWYER_AVIATION\Local Settings\Temporary Internet Files\OLK17\Articles Organization (2).doc

$ PAID
85
992850

# EXHIBIT B

## AIR CARRIER DEPOSITORY ESCROW AGREEMENT

This Agreement made and entered into as of the ___1ˢᵗ___ day of _November_ , 20 06 by and between __Swift Air, LLC__ , hereinafter called "Carrier", and **NATIONAL CITY BANK**, a National Banking Association, having a place of business at 1001 South Worth, Birmingham, MI 48009, hereinafter called "Bank".

WHEREAS, Carrier is desirous of furnishing passenger charters, including Public Charters, originating in the United States pursuant to 14 CFR Part 212 and, with respect to Public Charters, 14 CFR Part 380, regulations of the U.S. Department of Transportation ("DOT").

WHEREAS, Carrier represents that it is either an air carrier holding a currently effective certificate issued under 49 U.S.C. 41102 or a foreign air carrier holding a currently effective permit issued under 49 U.S. C. 41302;

WHEREAS, Carrier will enter into a charter contract for passenger air transportation ("Charter Contract") as prescribed by 14 CFR 212.3 and, with respect to Public Charters, 14 CFR 380.29, with each charterer (the "Charterer); and

WHEREAS, Carrier desires to comply with 14 CFR 212.8 and to enter into an Agreement, designating Bank as depository (the "Depository Agreement");

WHEREAS, Bank is agreeable to being named as depository;

NOW, THEREFORE, the parties hereto, for and in consideration of the premises and the covenants hereinafter made, hereby agree as follows:

### SECTION 1: DEPOSITS

1.1 Carrier hereby designates Bank as the depository for funds paid by a Charterer in connection with the performance of charter air transportation by Carrier pursuant to designated Charter Contracts.

1.2 Bank shall establish and maintain a separate account for each charter, flight or rotation included in the Charter Contract. Bank shall be responsible hereunder only for amounts actually received by it and which

(a) by the terms of the instrument evidencing the transfer itself state that the funds are payable to the Bank for deposit to the escrow account of carrier.

03/14/2008 14:11 FAX  248 901 2496        NAT'L CITY EMERGING MARK                 ☑003/012

(b) by the terms of the same instrument of transfer or separate document, specify the Charterer's name and address, the dates of departure and return, destination abroad and destination upon return and whether the funds are to be split between the inbound and outbound flights. Bank is authorized to return funds to the Charterer if the information in this subparagraph is not supplied to Bank within two business days after receipt of the funds.

1.3 Bank agrees to receive funds from the following sources:

  (a) By check or wire transfer from the Charterer's depository escrow account

  (b) By check or wire transfer if Bank is the depository escrow agent for Charterer.

1.4 Bank shall return all checks received by it pursuant to this Agreement which shall be dishonored for any reason, to the sending party. Bank shall make the appropriate adjustment to the applicable Account to reflect the return of said dishonored check unless Charterer or Carrier shall have given Bank prior authority to debit its own account for the amount of such check. Bank shall not be required to accept checks on any charter, flight or rotation from any party whose prior checks have been dishonored unless payment is made either by cashiers check, money order, certified check or by debiting Charterer's or Carrier's account as provided above.

## SECTION 2: DISBURSEMENTS

2.1 Carrier shall certify in writing to Bank, upon completion of a charter, flight or rotation, the date upon which such charter, flight or rotation was completed. After receipt of said certification, Bank shall remit to Carrier from the separate escrow account maintained for such charter, flight or rotation the amount due for said charter, flight or rotation to the extent of the availability of funds to such account.

2.2 In the event that the Charter Contract provides for a round trip charter, Carrier may certify to Bank, upon completion of the outbound segment of the round trip charter, the date upon which such outbound segment was completed. After the receipt of said certificate by Bank, Bank shall remit to Carrier from the separate escrow account maintained for such round trip charter the portion of the price of the charter certified by Carrier to be applicable to such outbound segment (less any commissions retained by any travel agent) to the extent of availability of funds in such account. Upon completion of the return segment of the round trip charter, Carrier shall certify in writing to Bank the date upon which such return segment was completed. After receipt of such certification by Bank, Bank shall remit to Carrier from the separate escrow account maintained for such round trip charter the remaining portion of the price of the Charter Trip to the extent of availability of funds in such account.

2

2.3 Whenever Carrier has notified the Bank, by written certification, of the cancellation of any charter, flight or rotation trip for which a separate escrow account has been established, upon receipt of such notice Bank shall refund all payments (less cancellation penalties provided for in the Charter Contract and properly certified by Carrier to be properly deductible from such payments), received and held by Bank in such separate escrow account directly to Charterer or its assigns to the extent of the availability of funds in such account. In the case of a charter, flight or rotation for less than the entire capacity of an aircraft, such certification shall contain Carrier's representation either that the charter, flight or rotation was cancelled by Carrier or, if the Charter, flight or rotation was cancelled by the Charterer, that the Carrier has accepted a substitute charterer.

## SECTION 3: AMENDMENT AND TERMINATION

3.1 This Agreement may be amended in writing by the parties hereto provided, however, that such amendment may be subject to approval by DOT.

3.2 Either party hereto may terminate this Agreement at any time by mailing notice of its intention to terminate by registered mail to the other party, Charterer and DOT, provided, however, that any such termination by Carrier shall be subject to approval by DOT. Any such termination by Bank shall become effective 30 days following the date of mailing such notice. Notwithstanding the foregoing, no termination of this Agreement shall affect any obligation of Carrier under Section 4 of this Agreement.

## SECTION 4: RESPONSIBILITIES OF BANK AND INDEMNITY

4.1 It is agreed that the duties of Bank are only such as are herein specifically provided and are solely ministerial in nature and that it will incur no liability whatsoever except for willful misconduct or gross negligence so long as it has acted in good faith. Bank shall not have any responsibility to determine whether or not Carrier deposits with Bank all or any sums received by Carrier in connection with a Charter Trip or to determine whether Carrier fulfills its obligations under regulations of DOT, the Charter Contract or this Agreement.

4.2 Bank shall be under no responsibility in respect to any of the items deposited with it other than faithfully to follow the instructions herein contained. It may seek legal counsel and shall be fully protected in any action taken in good faith in accordance with such counsel's advice. It shall not be required to defend any legal proceedings which may be instituted against it in respect of the subject matter of these instructions unless requested so to do by Carrier and indemnified to its satisfaction against the cost and expense of such defense. It shall not be required to institute legal proceedings of any kind. It shall have no responsibility for the genuiness or validity of any document or other item deposited with it and it shall be fully protected if acting in accordance with any written instructions given to it hereunder and believed by it to have been signed by the proper parties.

3

4.3 Carrier hereby agrees to assume liability for, and does hereby indemnify, protect, save and keep harmless Bank and its successors, agents and servants from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, or expenses of any kind which may be imposed on, incurred by, or asserted against Bank in any way relating to, or arising out of, this agreement or the enforcement of any of the terms hereof by any person not a party hereto except only in the case of gross negligence or bad faith on the part of the Bank, whether of omission or commission, by Bank in the performance of its duties or obligations hereunder. Any obligation of Carrier under this paragraph shall be secured by all deposits and other property of Carrier now or hereafter in the possession, custody or control of Bank for any purpose and by security interest of lien as described in any security agreement, mortgage or document now or hereafter existing, executed by Carrier in favor of Bank.

4.4 In the event of any disagreement which results in adverse claims with respect to funds on deposit with Bank, Bank shall refuse to comply with any demands on it with respect thereto as long as such disagreement shall continue and in so refusing, Bank shall make no payment, and in doing so, Bank shall not be or become liable in any way to Carrier for Bank's failure or refusal to comply with such demands and it shall be entitled to continue so to refrain from acting and so to refuse to act until such conflicting or adverse demands shall finally terminate. Further, Bank in its sole discretion, may, in the event it has received written or verbal notice of any adverse or conflicting claim to funds in Accounts withhold payment under paragraph 2.1 hereof of up to 1 1/4 times the amount subject to such withheld balance of said funds until all of the adverse of conflicting claimants to such fund and all other parties having an interest therein have consented to the disbursement thereof or Bank has received a definitive, final court order directing disposition of such withheld funds.

## SECTION 5: ACCOUNTING AND REPORTING

5.1 Carrier agrees that no references to or use of the Bank's name will be made other than to indicate that the checks or money orders of Charterer should be made payable to the order of Bank.

5.2 Bank shall be entitled to such compensation for its services hereunder and any other services as may be agreed upon from time to time by Bank and Carrier.

5.3 Carrier shall furnish Bank with a copy of the Charter Contract entered into between Carrier and Charterer showing charter price, dates of settlement and/or price per seat.

4

5.4 Bank shall provide Carrier with monthly statements with respect to funds held under this Agreement.

5.5 Bank shall not be required to maintain documents received by it pursuant to this Agreement for more that two years after completion of the flight or rotation to which such documents related.

## SECTION 6: MISCELLANEOUS

6.1 All notices and other communications which are required under this Agreement shall be delivered to the following addresses or such other address as any party may hereafter designate in writing:

to the Bank:                 National City Bank
                             Travel Industry Financial Services Department
                             755 W. Big Beaver Rd., Ste. 1400
                             Troy, MI 48084

To the Carrier:              Regulatory Analysis Division, X-57
                             Office of Aviation Analysis
                             U.S. Department of Transportation
                             400 Seventh Street, S.W.
                             Washington, D.C. 20590

or at such other address as either party hereto may hereafter designate in writing.

6.2 Neither party hereto may assign its rights or obligations hereunder without the prior written consent of the other party.

6.3 This Agreement is made and delivered in, and shall be construed in accordance with the laws of the State of Michigan. Carrier and Bank agree that any dispute arising under or in connection with this Agreement will be submitted to the Courts of the State of Michigan, to whose jurisdiction each party hereto hereby consents.

5

IN WITNESS WHEREOF, the parties hereto have executed this agreement by their officers hereunto duly authorized as of the day and year first above written.

**NATIONAL CITY BANK,**
a national banking association

_David J. Valpredo_
National City Bank Authorized Officer's Name

_Senior Vice President_
Title

_[signature]_
Signature

**AIR CARRIER**

_Swift Air, LLC_
Company Name

_James Kevin Bardette_
Air Carrier Authorized Officer's Name

_EVP_
Title

_[signature]_
Signature

6

# SERVICE AGREEMENT

## (Air Carrier Depository Escrow Agreement)

THIS SERVICE AGREEMENT ("Service Agreement") is made and entered into as of the day of _November 1, 2006_ by and between National City Bank, a national banking association, ("Bank"), and _Swift Air, LLC_ ("Carrier").

### Recitals

A.   Reference is made to a certain Air Carrier Depository Escrow Agreement of even date ("Depository Agreement") between the parties hereto.   Unless otherwise defined in this Service Agreement, all capitalized terms shall have the meanings ascribed to such terms in the Depository Agreement.

B.   To maintain the confidentiality of the terms and conditions governing Bank's escrow services, the Bank and Carrier enter into this Service Agreement which Bank will not file with the DOT.

The parties agree as follows:

1.    The Carrier shall compensate Bank for its services in accordance with the Bank's then current Fee Schedule, set forth on the attached Exhibit A.  Bank shall provide Carrier with sixty (60) days' prior written notice of any changes to such Fee Schedule.  Carrier shall reimburse Bank for all out of pocket and employee overhead costs incurred (including reasonable legal fees incurred by Bank) in disbursing Escrow Funds under the Depository Agreement upon the failure of the Carrier to perform services under the Charter Contract. Bank shall have the right to retain all documents and/or other things of value owned by Carrier until Carrier has paid all amounts owed by Carrier to Bank.

2.    Pursuant to current DOT regulations, Bank shall invest funds held under the Depository Agreement ("Escrow Funds") in an FDIC insured interest bearing deposit account maintained at National City Bank and its successors and assigns.  Bank, in its sole discretion, is further authorized to invest the Escrow Funds in one or more interest bearing deposit accounts. All earnings on the Escrow Funds are subject to backup withholding penalties unless either a properly completed Internal Revenue Service form W8 or W9 certification is submitted by Carrier to Bank.

3.    Unless we have otherwise agreed in writing, Bank will provide weekly deposit statements and comprehensive monthly accounting reports for each charter flight.

4.    This Service Agreement is subject to annual review by the Bank.

1

**NATIONAL CITY BANK**

By: _David J. Valpredo_

Its:   Senior Vice President
       Travel Services Manager

AIR CARRIER

_Swift Air, LLC_
(Company Name)

_James Kevin Bartletta_
(Carrier Authorized Officers' Name)

_EVP_
(Title)

_____
(Signature)

2

03/14/2008 14:12 FAX  248 901 2498        NAT'L CITY EMERGING MARK                    ☑ 010/012

## Certified Copy of Resolution or Authorization For Establishing Deposit Escrow Accounts

### by

_____Swift Air, LLC_____, (the, "Company")

☐  a corporation      ☑  a limited liability company

☐  a partnership      ☐  a limited liability partnership
which is incorporated/organized/formed in the state of _____

   or ☐  a sole proprietorship under a trade or assumed name registered in the state of ____
   _____(Go directly to the Exception Certificate on the next page.)

The persons whose signatures appear below on this page, or any one of them, (each, an "Authorized Signer") shall:

1.     ESTABLISH DEPOSITORY ESCROW ACCOUNTS from time to time with National City Bank ("Bank")
to hold funds received by this Company for the benefit of third parties in connection with travel services offered,
coordinated or arranged by this Company.

2.     NEGOTIATE AND EXECUTE such escrow agreements and related documents prepared by the Bank
between or among this Company, the Bank and such third parties as deemed necessary by the Bank with such
changes therein as approved by the Authorized Signer. The approval of such changes shall be conclusively
evidenced by such Authorized Signer's execution thereof.

3.     APPOINT PERSONS authorized to direct the transfer of available funds payable to the Company and to
confirm the dollar amount that should be released to third parties under any escrow agreement (each, an "Authorized
Money Transfer Agent") by delivery of an Appointment of Money Transfer Agents. The Bank is authorized to rely
upon the orders of any Authorized Money Transfer Agent whether payable to the order or deposited into the account
of any Authorized Money Transfer Agent or any other person or legal entity.

4.     This Resolution or Authorization, adopted as of _____, 200___, is retroactive,
and any acts referred to which were performed prior to the adoption of this Authorization are ratified and affirmed.

Each of the Authorized Signers certifies that this Company is:

☑ a **limited liability company** and all Members have signed below and on the next page

☐ either a **partnership** or **limited partnership** and all general partners have signed below and on the next page

☐ a **corporation** and the Secretary has signed the certification on the next page.

☐ a **limited liability company with only one member**. Member must sign Exception Certificate on the next page

Signature _____        Signature _____

Name and title _/_/_ Swift Aviation Group     Name and title _____


Signature _____        Signature _____

Name and title _____    Name and title _____

Remaining Members or Partners who are not Authorized Signers must sign on the next page.

Signature _____          Signature _____

Name and title _____          Name and title _____


Signature _____          Signature _____

Name and title _____          Name and title _____


Signature _____          Signature _____

Name and title _____          Name and title _____

---

### EXCEPTION CERTIFICATE

☐ The Company is a limited liability company and I am its sole member. This is permitted under the law of the state in which the Company is organized.

☐ I am a sole proprietor operating under the assumed or trade name of the Company. I attach a copy of (1) my driver's license and (2) the state or local government document authorizing me to operate under such Company name.

Signature _____

Print name _____

---

### For Corporations Only

The undersigned hereby certifies to National City Bank that the Board of Directors of this Company adopted the above resolution as of the date set forth therein and that it is in conformity with the charter and by-laws of said corporation and in full force and effect:

IN WITNESS WHEREOF, I have hereunto set my hands as Secretary of said corporation and suffixed the corporate seal this_____day of_____, 200__.

Signature_____
                    Secretary

Printed name _____

(Corporate Seal)

In case the Secretary is the only Authorized Signer, the undersigned also certifies the accuracy of the foregoing Board of Director resolution:

Signature_____

An officer of the Corporation other than the Secretary

Printed name _____

03/14/2008 14:12 FAX  248 901 2496    NAT'L CITY EMERGING MARK    ☑012/012

## NEW BUSINESS APPROVAL FORM

**Location:** National City Bank of Michigan/Illinois

[X] NEW      [ ] EXISTING

| | |
|---|---|
| Account Name: | Swift Air, LLC |
| Account Type: | DOT AIR     Account Number: |
| Address, City and State: | 2406 South 24th Street, Suite E100, Phoenix, AZ 85034 |
| EIN / TIN: | 20-2512508     Country of Citizenship: |
| Type of Entity: | [X] Corporation/LLC    [ ] Partnership    [ ] Sole Proprietorship* |

*(Record the following information of the owner of sole proprietorships)

| | |
|---|---|
| Name: | Date of Birth: |
| Address, City and State: | |
| Drivers License/Passport No.: | Expiration date:    Issuance date (if any): |

**Customer Identification Verification/OFAC**

Information Obtained for CIP Requirements:

[X] Escrow Agreement     [X] Articles of Incorporation/Organization/Partnership

[ ] Other (list)

[X] W-9 / W-8

OFAC/SDN List checked by:      and

| | | | |
|---|---|---|---|
| Acceptance Fee: | $250.00 | [ ] Waived Acceptance Fee | |
| Standard Fee: | | One Time Fees: | N/A |
| Annual Fees: | $2,000.00 | Estimated Mkt Value: | 10,000,000.00 |
| Fee Comments: | Fee Tiered interest split based on balances | | |

Background Information: Air Carrier that runs single entity and some ad hoc charters. Currently working with around 18 - 19

professional sports teams (basketball/hockey). Hopes to add some Baseball teams in the spring.

Comments:

| | | | |
|---|---|---|---|
| Submitted By: | _Hanish_ | Date | 11/3/2006 |
| Acceptance Approved: | _Paul J Salpa D_ | Date | 11/3/2006 |
| Business Referred By: | | Date: | |