BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANSEL OIL LIMITED,<br><br>                Plaintiff,<br><br>-against-<br><br>SWIFT AVIATION GROUP, INC.,<br><br>                Defendant. | 08 Civ. 1086 (GBD) |

**MEMORANDUM OF LAW
IN OPPOSITION TO MOTION OF SWIFT AIR LLC
<u>TO VACATE ATTACHMENT</u>**

Of Counsel,
  LeRoy Lambert

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

BASIC FACTS .........................................................................................................2

ARGUMENT ............................................................................................................6

POINT I.....................................................................................................................6

    MANSEL'S ATTACHMENT OF THE FEB. 15 EFT MEETS THE
    REQUIREMENTS OF RULE B, DOES NOT EXCEED THE
    SCOPE OF THE ORDER OF ATTACHMENT, IS NOT
    "DEFECTIVE," AND MANSEL IS ENTITLED TO AN
    EVIDENTIARY HEARING ON WHETHER SWIFT AVIATION
    HAS A PROPERTY INTEREST IN THE FEB. 15 EFT. ........................6

POINT II ................................................................................................................11

    THIS ACTION IS NOT PREMATURE ................................................11

CONCLUSION .......................................................................................................12

129053.00601/6627166v.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AET Inc. v. Procuradoria de Servicos Martimos Cardoso & Fonesca*, 2006 U.S. Dist. LEXIS 89628 (S.D.N.Y. December 7, 2006) .................................. 10

*A Eitzen Sealift A/S v. Cementos Andinos Domincanos, S.A.*, 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. September 9, 2005) .......................................... 12

*Essar International Ltd v. Martrade Gulf Logistics*, 2007 U.S. Dist. LEXIS 61713 (S.D.N.Y. August 23, 2007) ............................................................. 9, 10

*Great Eastern Shipping Co. Ltd. v. Phoenix Shipping Corporation*, 2007 U.S. Dist. LEXIS 88911 (S.D.N.Y. December 4, 2007) .................................. 12

*Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901 (2d.Cir. 1965) ................ 9

*Linea Navira De Cabotaje, C.A. v. Maritime Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341 (M.D.Fla. 2001) ............................................................ 11

*Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519 (S.D.N.Y. Aug. 1, 2006) ........ 11

*Rolls Royce Industrial Power (India) v. M.V. Fratzis M.*, 1995 U.S. Dist. LEXIS 22219 (S.D.N.Y. October 5, 1995) ......................................................... 7

*Salazar v. Atlantic Sun*, 881 F.2d 73 (3d Cir. 1989) .............................................. 7

*T&O Shipping Ltd v. Source Link Co., Ltd*, 2006 U.S. Dist. LEXIS 885133 (S.D.N.Y. December 6, 2006) ......................................................................... 10

*The Anaconda v. American Sugar Refining Co.* 322 U.S. 42 (1944 ..................... 12

*Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002) .................. 9, 10

## FEDERAL STATUTES AND RULES

9 U.S.C. § 8 ............................................................................................................ 12

Supplemental Rule B for Admiralty or Maritime Claims .............................. passim

Supplemental Rule E(4)(f) for Admiralty or Maritime Claims ........................ 7, 11

BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANSEL OIL LIMITED,<br><br>                Plaintiff,<br><br>-against-<br><br>SWIFT AVIATION GROUP, INC.,<br><br>                Defendant. | 08 Civ. 1086 (GBD) |

## MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION OF SWIFT AIR LLC
## TO VACATE ATTACHMENT

Plaintiff, Mansel Oil Ltd. ("Mansel"), respectfully submits this Memorandum of Law in Opposition to the Motion of Intervenor Swift Air, LLC ("Swift Air") to vacate a maritime attachment of $118,136 presently restrained by Garnishee Bank of America N.A. ("BANA") in this District.

The motion papers and pleadings to date present a straightforward factual issue: does Defendant Swift Aviation Group, Inc. ("Swift Aviation") have a "property interest" in an electric funds transfer ("EFT") restrained by Garnishee Bank of America N.A. ("BANA") on February 15, 2007 ("the Feb. 15 EFT")?

BANA restrained the Feb. 15 EFT because it named <u>Defendant</u> Swift Aviation as its "beneficiary." Under the law in this Circuit, Defendant Swift Aviation, as beneficiary of the

129053.00601/6627166v.1

EFT, has a "property interest" in the Feb. 15 EFT. The "originator" of the EFT, an unrelated company in Canada, issued an instruction to its bank to send $118,136 to **Swift Aviation**.

Nevertheless, thirty-seven days later, on March 24, Swift Air intervened and moved to vacate the attachment of the Feb. 15 EFT. Contrary to the text of the remittance details, Swift Air contends that the $118,136 was due to it, not to Swift Aviation, and that the two companies "operate independently of one another." ¶ 13, Affidavit of J. Kevin Burdette sworn to March 20, 2008, in support of Swift Air's Motion to Vacate. ("Burdette Aff.")

Based on the record to date, Mansel respectfully submits that the Court cannot decide this issue as a matter of law in favor of either party. Swift Air's motion should be denied unless and until Swift Air and Swift Aviation produce J. Kevin Burdette (who is also the Vice-President of Swift Aviation) for an evidentiary hearing at which he may be cross-examined on the issue of whether Swift Aviation has a "property interest" in the Feb. 15 EFT. Ideally, of course, such an evidentiary hearing would be proceeded by a deposition of Mr. Burdette. Mansel remains willing to proceed with a deposition at a mutually convenient time and place and by a mutually agreed method. In any event, though, Mansel is and should be entitled to cross-examine Mr. Burdette in the circumstances presented here.

### BASIC FACTS

On February 5, 2008, pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims ("Rule B"), Mansel sought and obtained from this Court an Order Directing the Clerk to Issue Process of Maritime Attachment and Garnishment against property of Swift Aviation in this District ("Attachment Order"). Lambert Aff., ¶ 2 and Ex. 1.

Garnishee BANA notified the undersigned by email on February 15, 2008, that it had restrained the Feb. 15 EFT and that the beneficiary was "Swift Aviation Group." Lambert Aff., ¶ 3 and Ex. 2.

Pursuant to Local Rule B.2, Mansel notified Swift Aviation on February 19, 2007, of the attachment of the Feb. 15 EFT. Mansel did so by fax and by email. Lambert Aff., Ex. 3 (fax) and Ex. 4 (email). In particular, the notice by email was sent to a Jerry Moyes at a "swifttrans.com" email address. A broker involved in the charter parties giving rise to the dispute had recommended that the notice go to a "Mr. Moyes." Lambert Aff., ¶ 4 and Ex. 5.

On February 26, 2008, Mansel caused the Summons, Complaint, and the Court's Scheduling Order to be served on Swift Aviation through its registered agent in Phoenix, Gerald Ehrlich, an attorney there. Lambert Aff., ¶ 6 and Ex. 8.

On February 27, 2008, the undersigned received a phone call from Ms. Heather Forgey. Ms. Forgey stated she was an attorney at the law firm of Chamblee & Ryan in Dallas, Texas, and that she represented Swift Aviation. The undersigned sent her the Complaint and Attachment Order as a courtesy. Lambert Aff., Ex. 6. Ms. Forgey confirmed that the person in charge at Swift Aviation was a Mr. Moyes. On February 29, Ms. Forgey called again and requested copies of the charter parties which were promptly provided. Lambert Aff., Ex. 7. The undersigned also sent Ms. Forgey a copy of the Court's scheduling order and confirms that she represented Swift Aviation. Lambert Aff., ¶ 6 and Ex. 9.

On March 17, 2008, the undersigned received notice electronically that Skadden Arps had appeared and filed an answer on behalf of Swift Aviation. The undersigned spoke to Ms. Bédard the next day and sent her an email with an image of the Court's Scheduling Order. Lambert Aff., ¶ 7 and Ex. 10.

At no time did Ms. Forgey or Ms. Bédard advise the undersigned that the Feb. 15 EFT was not intended for Swift Aviation or inquire as to the basis upon which the EFT had been restrained by BANA as property of Swift Aviation.

On Monday morning, March 24, 2008, thirty-seven days after the restraint of the Feb. 15 EFT, Swift Air intervened and sought to vacate the attachment of the Feb. 15 EFT on the basis that it was property of Swift Air, not Swift Aviation.

Upon reviewing the motion papers, the undersigned promptly sent an email to Ms. Bédard and to Mr. Radzik (attorney for Swift Air) forwarding them BANA's email of February 15, 2008, stating that Swift Aviation was the named beneficiary.

Late Monday afternoon, the undersigned received a letter from Ms. Forgey (Exhibit 12) in which she stated that she represented Swift Air, not, as she previously advised, Swift Aviation, and that Mansel "attached a Bank of America wire transfer intended for a different entity and *stranger* to this case, Swift Air, LLC" (emphasis added). Apparently, she sent a similarly-worded letter to BANA. BANA's attorney responded that the originator's instructions named Swift Aviation as the beneficiary. Lambert Aff., ¶ 11 and Ex. 12A.

In response to the undersigned's request that Swift Air and Swift Aviation produce witnesses for depositions (Lambert Aff., ¶ 10 and Ex. 11), Swift Aviation declined to produce a witness for deposition, and Swift Air did not address the point. Lambert Aff., Exs. 13 and 14, respectively.

The disputes ultimately at issue here arise under two maritime charter parties dated July 7 and September 23, 2007, respectively. Copies are included as part of Exhibit 6 (pages numbered in the bottom right-hand corner 1-16 for ease of reference). Originally, Mansel contracted with "Swift Transportation, Inc." which is believed to be in fact Swift Transportation Co., Inc. ("Swift Transportation"). Until May 2007, Swift Transportation, a trucking company, was publicly-traded on the NASDAQ. Based on filings with the SEC, it appears that its founder, Jerry Moyes, took it private in May 2007. Mr. Moyes remains a director of Swift Transportation based on

information from the Arizona Corporations Commission. Lambert Aff., ¶ 13 and Ex. 15. Mansel and Swift Transportation subsequently agreed to substitute Swift Aviation as the charterer. See Exhibit 6, pages 8 and 15.

On March 25, BANA provided the text of the remittance details for the Feb. 15. Lambert Aff., ¶ 14 and Ex 16. Ex. 16 confirms (page 4) that in fact the originator of the EFT named Swift Aviation, not Swift Air, as the beneficiary.

Public records of the Arizona Corporations Commission, http://www.cc.state.az.us, reveal that Swift Aviation Group, Inc. was formed on February 24, 2004. Jerry Moyes is the President and Director, Vicki Moyes is the Secretary. Jeff Shumway is the "CFO/VP/Treasurer." Kevin Burdette is the Vice-President. Its registered agent is Gerald Ehrlich, an attorney in Phoenix. Lambert Aff., ¶ 16 and Ex. 17 is a printout from the Arizona Corporations Commission website concerning Swift Aviation, and ¶ 16 and Ex. 18 is the 2007 Annual Report of Swift Aviation (naming Kevin Burdette as Vice-President and Jerry Moyes as President and Director).

Swift Aviation Management, Inc. was formed on the same day, February 24, 2004. Jerry Moyes is the President and Director. Vicki Moyes is the Secretary. Kevin Burdette is the Vice-President and Treasurer. Lambert Aff., ¶ 17 and Ex. 19 is a printout from the Arizona Corporations Commission website concerning Swift Aviation Management and Lambert Aff., ¶ 17 and Ex. 20 is the 2007 Annual Report of Swift Aviation Management (naming Kevin Burdette as VP/Treasurer and Jerry Moyes as President and Director).

Swift Air, LLC was formed on March 16, 2005. It is owned by Swift Aviation and Swift Aviation Management. Kevin Burdette is its "organizer." Burnette Aff., ¶ 13 and Ex. A.

In support of its motion to vacate the attachment of the Feb. 15 EFT, Swift Air submitted the Burdette Affidavit. Mr. Burdette states that he is Vice-President of Swift Air (¶1), that Swift Air and Swift Aviation "operate independently of one another" (¶13), and that the Feb. 15 EFT is property of Swift Air, not Swift Aviation (¶19).

Exhibit B to the Burdette Affidavit is said to be an "Air Carrier Depository Escrow Agreement" between Swift Air and National City Bank (this escrow agreement is identified and described in ¶17 of Mr. Burdette's affidavit). Despite Mr. Burdette's position as Vice-President of both and his assertion that the two companies operate independently of one another, the resolution that appears at the end of that Exhibit (Lambert Aff., Ex. 21) is signed by Mr. Burdette as "VP Swift Aviation Group."

## ARGUMENT

### POINT I

**MANSEL'S ATTACHMENT OF THE FEB. 15 EFT MEETS THE REQUIREMENTS OF RULE B, DOES NOT EXCEED THE SCOPE OF THE ORDER OF ATTACHMENT, IS NOT "DEFECTIVE," AND MANSEL IS ENTITLED TO AN EVIDENTIARY HEARING ON WHETHER SWIFT AVIATION HAS A PROPERTY INTEREST IN THE FEB. 15 EFT.**

Mansel does not quibble here with the law stated in Points I, II, and III of Swift Air's Memorandum of Law. If, in fact, the Court concludes that Swift Aviation has no "property interest" in the Feb. 15 EFT, the attachment of the Feb. 15 EFT should be vacated. But Swift Air assumes the fact that is yet to be established. The present record clearly establishes that there are genuine material issues of fact which must be resolved by the Court as a finder of fact with respect to whether Swift Aviation has a property interest in the Feb. 15 EFT.

Supplement Rule E(4)(f) provides: "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."[1]

As noted by Judge Haight in *Rolls Royce Industrial Power (India) v. M.V. Fratzis M.*, 1995 U.S. Dist. LEXIS 22219 (S.D.N.Y. October 5, 1995), Rule E(4)(f) allows a district court considerable flexibility in determining the procedure by which issues raised by a person attacking an attachment are best to be decided. It depends of course on the issue.

> It is, in significant measure, a flexible procedure. The rules themselves, neither the supplemental rules nor the rules of this court, speak in detail of what the hearing should consist of, what its boundaries should be. It turns very much upon the circumstances of the particular case.
>
> A Third Circuit case referred to by counsel in the briefs speaks to that point. It is *Salazar v. Atlantic Sun*, 881 F.2d 73 [3d Cir. 1989], a decision in the Third Circuit in 1989. The Court of Appeals says at page 79, "The Supplemental Admiralty Rules do not specify what form the post-arrest hearing must follow. Consequently, the type of proceeding is left to the discretion of the District Court. Whether a full adversary hearing with testimony and cross-examination of witnesses in open court is necessary depends on the nature of the issues in controversy. The post-arrest hearing is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant and, if so, to fix an appropriate bond."

*Roll Royce* at *5-6. In other words, while many "hearings" under Rule E(4)(f) are akin to arguments on motions to dismiss or for summary judgment, Rule E(4)(f) also allows for evidentiary hearings if the dispositive issue is a factual one and in dispute, as is the case here.

---

[1] Swift Air incorrectly quotes the Rule E(4)(f) in its Memorandum at 3 by adding an additional sentence which does not appear in the text of the Rule: "The plaintiff has the burden in any post-attachment hearing that the attachment is valid."

Mansel respectfully submits that the chronology of events alone is sufficient to create doubt as to the self-serving version of events presented now by Swift Air and the contention that they operate independently of one another. Perhaps $118,136 is not much money to Swift Air, but one would certainly think that having $118,136 "wrongfully" attached, as Swift Air now contends, would have created a greater sense of urgency and indignation immediately, not thirty-seven days later. Since the same persons run both companies as one enterprise to the public, the argument that the Feb. 15 EFT was not Swift Aviation's obviously did not occur to them.

Indeed, it appears that three sets of attorneys deliberated on the matter: Chamblee & Ryan, a firm in Dallas, Skadden Arps in New York, and most recently McDermott & Radzik in New York. Chamblee & Ryan switched from representing Swift Aviation to representing Swift Air in the process. Mr. Moyes, founder of Swift Transportation, the original charterer, and the President of both Swift Aviation and a third company which manages Swift Air, Swift Aviation Management, Inc. ("Swift Aviation Management"), was notified of the attachment of February 19. Ms. Forgey of Chamblee & Ryan spoke to the undersigned on February 27 and 29. Mr. Ehrlich, the lawyer and registered agent for Swift Air and Swift Aviation was served on February 26. Skadden Arps appeared and answered on March 17, 2008 (Docket #7). Swift Air made the present motion on March 24, the same day the undersigned and BANA received letters from Chamblee & Ryan, certified mail, return receipt requested, no less, contending that Mansel and BANA had somehow knowingly restrained an EFT to Swift Air, even though the remittance details named Swift Aviation as the beneficiary.

Swift Air and its "organizer" and Vice-President, J. Kevin Burdette, who is also Vice-President of Swift Aviation, do not even attempt to explain why the originator of the Feb. 15 EFT, a company Mr. Burdette contends owes Swift Air $118,136, told its bank to send such an

amount to Swift Aviation instead of Swift Air. This alone should be sufficient for the Court to require testimony and cross-examination before ruling in favor of Mansel or of Swift Air.

The evidence available from the public record tells a much different story than the one suggested by Mr. Burdette. Mr. Burdette admits that Swift Air and Swift Aviation are "related" and that Swift Air is a "subsidiary of Swift Aviation," but asserts they "operate independently of one another." Burdette Aff., ¶13.

It is difficult to see how this accurately characterizes the relationship between the two companies. Swift Aviation and Swift Aviation Management own Swift Air. Burdette Aff., ¶13 and Ex. A. Swift Aviation and Swift Aviation Management have the same president, Mr. Moyes, the same secretary, Ms. Moyes, and the same Vice-President, none other than Mr. Burdette himself. The public records do not reveal who the President of Swift Air is; as an LLC, Swift Air is run by "managers," and the manager is likely Swift Aviation Management and its officers who include Mr. Burdette.

Under the Second Circuit's decision in *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002), the definition of "property" under Rule B is broad. "It is difficult to imagine words more inclusive than 'tangible or intangible' .... The phrase is the secular equivalent of the creed's reference to the maker 'of all there is, seen and unseen.'" *Id.* at 275. Under Rule B, more than one party may have an interest in the same property. *See Essar Int'l Ltd v. Martrade Gulf Logistics*, 2007 U.S. Dist LEXIS 61713, *4-5 (S.D.N.Y. August 23, 2007). In *Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d.Cir. 1965), the Second Circuit held: "The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge."

Swift Air points out that the present Complaint names only Swift Aviation as a defendant, not Swift Air, and contains no veil-piercing allegations. Swift Air's reliance on *T&O Shipping Ltd v. Source Link Co., Ltd*, 2006 U.S. Dist LEXIS 885133 (S.D.N.Y. December 6, 2006) is premature. There, Judge Karas allowed the plaintiff to amend the complaint to assert an alter ego action against a new party not named in the original complaint, but refused to allow the amendment to relate back to an attachment of an EFT in the name of that party. There, it was established that the EFT was the property of the "new" party, i.e., the party in an analogous position to Swift Air here. Here, while Swift Air <u>contends</u> that the Feb. 15 EFT belongs solely to it, the issue squarely presented here is whether this is in fact the case.

Of more assistance are decisions such as Judge Chin's in *AET Inc. v. Procuradoria de Servicos Martimos Cardoso & Fonesca*, 2006 U.S. Dist LEXIS 89628 (S.D.N.Y. December 7, 2006) and Judge Pauley's decision in *Essar Int'l Ltd v. Martrade Gulf Logistics*, 2007 U.S. Dist LEXIS 61713 (S.D.N.Y. August 23, 2007).

In *AET*, the plaintiff attached an EFT which named the defendant, a ship's agent in Brazil, as the beneficiary. The defendant moved to vacate the attachment. It conceded that the EFT's attached by plaintiff named it as the beneficiary, but argued that the funds were not, in fact, its property, but rather belonged to its principals who remitted it to the defendant as advances to be applied in payment of amounts owed by the principals to other persons in Brazil. Judge Chin decided the "property" issue under the broad property principles enunciated in *Winter Storm* and concluded that the agent/named defendant had an attachable property interest in the EFT's attached by plaintiff.

In *Essar*, the remittance details did not show the defendant as either the originator or the beneficiary, but an affiliate of the defendant was named as the originator and the description of

the transaction disclosed that it was to pay a debt of the named defendant. *See also Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1359-60 (M.D.Fla. 2001) (upholding the attachment of funds nominally belonging to non-parties because the plaintiff provided evidence they were controlled by the defendant).

Judge Pauley found that there was an attachable property interest of the named defendant in the EFT at issue even though the defendant was neither the originator or the beneficiary. If the facts adduced at the Rule E(4)(f) hearing show that the defendant in fact has a property interest in the EFT, then, as Judge Pauley held:

> A plaintiff need not aver an alter-ego relationship in the Complaint for a Rule B attachment to be proper. *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527-30 (S.D.N.Y. Aug. 1, 2006) (holding that an analysis of whether reasonable grounds exist for a Rule B attach-ment is not limited to the allegations in the Complaint). As stated, Defendant Martrade had an interest in the June 1 EFT sufficient to uphold its attachment under Rule B.

Accordingly, the issue is whether Swift Aviation has a property interest in the Feb. 15 EFT. Mansel respectfully submits that the Court cannot decide this issue on the present record as a matter of law. The Court should direct Swift Air and Swift Aviation to produce Mr. Burdette for an evidentiary hearing before the Court in New York in order to allow Mansel the opportunity to depose and cross-examine Mr. Burdette in his capacity as Vice-President of both Swift Air and Swift Aviation.

## POINT II

### THIS ACTION IS NOT PREMATURE

Swift Aviation in its Answer (Docket #7) asserts as an affirmative defense that this action is premature because Mansel has not commenced arbitrations in London. Swift Air makes the same contention at page 6 of its memorandum of law. The Federal Arbitration Act specifically

authorizes the commencement of a maritime dispute subject to arbitration by means of an attachment under Rule B or an arrest under Rule C. 9 U.S.C. § 8 provides "notwithstanding anything herein to the contrary [i.e., the Act's making arbitration clauses in maritime contracts enforceable], the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings." *See The Anaconda v. American Sugar Refining Co.* 322 U.S. 42 (1944). In any event, Mansel formally commenced the arbitrations in London on March 26, 2008, rendering moot any such obections. Lambert Aff. ¶21 and Exs. 22-23.

The case cited by Swift Air, *A Eitzen Sealift A/S v. Cementos Andinos Domincanos, S.A.*, 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. September 9, 2005), is inapposite. Whether indemnity claims are "ripe" enough to support an attachment under Rule B is not an issue here. *See generally Great Eastern Shipping Co. Ltd. v. Phoenix Shipping Corporation*, 2007 U.S. Dist. LEXIS 88911 (S.D.N.Y. December 4, 2007) (cases on "both sides of this issue"). Mansel's claims here are not premature indemnity claims, but are ripe and ready for arbitration in London.

## CONCLUSION

The Court should deny the motion of Swift Air until and unless direct Swift Air and defendant Swift Aviation produce Mr. Burdette for cross-examination.

Dated: New York, NY
       March 28, 2008

                                        BLANK ROME LLP
                                        Attorneys for Plaintiff

                                        By _____
                                            LeRoy Lambert (LL 3519)
                                        The Chrysler Building
                                        405 Lexington Avenue
                                        New York, NY 10174-0208
                                        Tel.: (212) 885-5000
                                        Fax: (212) 885-5001