EDWARD C. RADZIK (ER-2473)
CAROLYN ELIZABETH BUNDY (CM-1464)
McDERMOTT & RADZIK, LLP
*Attorneys for Intervenor*
Wall Street Plaza
88 Pine Street – 21st Floor
New York, NY 10005-1801

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

MANSEL OIL LIMITED,

        Plaintiff,

  -  against -

SWIFT AVIATION GROUP, INC.

        Defendant.

-------------------------------------------------------X

ECF CASE

08 Civ. 1086 (GBD)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR SWIFT AIR LLC'S MOTION TO VACATE PLAINTIFF'S ATTACHMENT

Respectfully submitted,

OF COUNSEL:

Edward C. Radzik
Carolyn Elizabeth Bundy

**McDERMOTT & RADZIK, LLP**
Attorneys and Counselors-at-Law
Wall Street Plaza
88 Pine Street, New York, NY 10005-1801
Telephone: (212) 376-6400   Fax: (212) 376-6490

## PRELIMINARY STATEMENT

Intervenor, Swift Air, LLC ("Swift Air" or "Intervenor"), by its attorneys, McDERMOTT & RADZIK, LLP, submits this Reply Memorandum of Law in further support of its motion, pursuant to Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure and Local Admiralty Rule E.1, to vacate Plaintiff's Rule B attachment of an electronic funds transfer ("EFT") in the amount of $118,136.00, which is presently being restrained by garnishee, Bank of America. The attached funds are the exclusive property of non-party Intervenor, Swift Air, a subsidiary of Defendant, Swift Aviation Group, Inc. ("Swift Aviation"), a separately incorporated and independent entity.

## FACTS

All facts set forth in Intervenor's moving papers, the Affidavit of J. Kevin Burdette ("Burdette Aff.") and the accompanying Supplemental Affidavit of Mr. Burdette ("Burdette Supp. Aff.") are incorporated by reference herein. Notwithstanding such incorporation, a brief reiteration of relevant facts is set forth as follows.

On or about June 11, 2007 and August 23, 2007 respectively, Plaintiff, Mansel Oil Limited ("Mansel"), entered into two (2) charter party agreements with Defendant, Swift Aviation. (Verified Complaint). A dispute has apparently arisen between Mansel and Swift Aviation regarding the charter parties for which Mansel has commenced London Arbitration against Swift Aviation on or about March 26, 2008. (Mansel Opposition Memo). Prior to commencement of Arbitration, Mansel filed a Verified Complaint in this Court seeking a Rule B Order for Process of Maritime Attachment and Garnishment to attach the property of Defendant, Swift Aviation. The attachment was sought to obtain security for any judgment that might be entered against Swift Aviation by the Arbitrators in London. (Verified Complaint).

Intervenor, Swift Air, is a subsidiary of Swift Aviation. (Burdette Aff., ¶ 13). Swift Air was not a party to the charter parties and is not a party in the London Arbitration. (Burdette Aff., ¶ 17). Swift Air and Swift Aviation perform separate and distinct business functions. Swift Aviation is in the business of chartering and operating oil tankers and purchasing, selling, or trading petroleum products, while Swift Air is in the business of providing aircraft brokerage, aircraft charter, and aircraft management services. (Burdette Aff., ¶¶ 4, 10). Specifically, Swift Air arranges for air transportation for sports teams and entertainment groups. Swift Air and Swift Aviation are separate corporations which operate independently of one another. (Burdette Aff., ¶ 13).

On or about February 15, 2008, an entity called Elite Jet, Ltd. ("Elite") made an electronic fund transfer ("EFT"), in the amount of $118,136.00, to Swift Air. (Burdette Aff., ¶ 14). Elite is a customer of Swift Air and the transfer was to effect payment for transportation services rendered to Elite by Swift Air. (Burdette Aff., ¶ 14). The EFT was destined for an escrow bank account at National City Bank in Michigan owned exclusively by Swift Air. (Burdette Aff., Ex. B; Burdette Supp. Aff. ¶ 6; Ex. C). Swift Aviation has no ownership interest in the escrow account or entitlement to the funds contained therein or the EFT from Elite. (Burdette Aff., ¶ 19).

The beneficiary listed on the EFT between Elite and Swift Air was identified as "Swift Aviation Group." (Plaintiff's Ex. 2). It has been determined that the service mark was listed on the EFT due to an inadvertent mistake in drafting. (Burdette Supp. Aff. ¶ 5).

"Swift Aviation Group" is a service mark that Swift Air has a right to use as a subsidiary of Swift Aviation Group, Inc. (Burdette Aff., ¶ 20). Reference to "Swift Aviation Group" is not interchangeable with the corporation "Swift Aviation Group, Inc.," Defendant in this action.

2

"Swift Aviation Group" as a service mark can refer to any of Swift Aviation's affiliates and/or subsidiaries including Swift Air. (Burdette Aff., ¶ 20).

Notwithstanding the use of the service mark, there is no dispute that the intended recipient of the funds was Swift Air, as the transferee bank account belonged exclusively to Swift Air. (Burdette Aff., ¶ 15; Burdette Supp. Aff. ¶ 6). As a result of the use of the service mark, the funds owed to Swift Air not Swift Aviation were attached by mistake. Presumably garnishee, Bank of America, assumed that "Swift Aviation Group" was the same as Defendant, Swift Aviation Group, Inc., which is not the case. Plaintiff is now seeking to exploit this mistake by opposing Interveneor's Motion to Vacate the improper attachment.

## **LEGAL ARGUMENT**[1]

Plaintiff acknowledges the applicability of the law outlined in Points I, II, and III of Intervenor's initial Memorandum of Law but improperly seeks to circumvent its application. The basis for Plaintiff's opposition is that there are "issues of fact" as to whether Defendant, Swift Aviation, has a property interest in the EFT destined for delivery to the account of its subsidiary Swift Air, a non-party to this action and the underlying dispute. Plaintiff is improperly seeking to expand the scope of Rule B Attachments both substantively and procedurally. Plaintiff is also seeking to exploit an inadvertent mistake in order to uphold an otherwise invalid attachment. Accordingly, the attachment of Swift Air's EFT should be vacated.

---

[1] Counsel for Intervenor apologizes to counsel for Plaintiff and the Court for erroneously including in its moving brief the sentence "The plaintiff has the burden in any post-attachment hearing that the attachment is valid" as if it were part of Rule E(4)(f). This sentence should have initiated the argument portion of Point I. However, due to an oversight during drafting and proofreading, it was inadvertently included in the text of the Rule. Intervenor maintains that the statement is correct, but concedes that it clearly is not part of the language of the Rule.

3

## POINT I

### PLAINTIFF'S BARE ALLEGATION OF A PROPERTY INTERST IN THE EFT IS INSUFFICIENT TO OVERCOME SWIFT AIR'S MOTION TO VACATE

In an attempt to avoid the application of Judge Karas's holding in *T&O Shipping, Ltd. v. Source Link Co., Ltd.*, 2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. Dec. 6, 2007), Plaintiff attempts to conflate a "property interest" analysis with the more traditional alter ego analysis applied in many similar cases. The only basis for Plaintiff's argument that Swift Aviation might have a property interest in Swift Air's EFT is alleged control. Plaintiff places particular emphasis on the overlap of officers between the two corporations. These types of allegations are typically asserted in the context of alter ego claims as in *T&O Shipping*.

Sole ownership of a corporation alone is not sufficient to pierce the corporate veil. *Kirno Hill Corp. v. Holt*, 618 F.2d. 982, 985 (2nd Cir. 1980). "Because a principal purpose for organizing a corporation is to permit its owners to limit their liability, there is a presumption of separateness between a corporation and its owners, which is entitled to substantial weight." *American Protein Corp. v. AB Volvo*, 844 F.2d, 56, 60. (2nd Cir. 1988).

Here, Plaintiff's Verified Complaint contains no allegations claiming that Swift Aviation is the alter ego of Swift Air or that either corporation has acted fraudulently so as to justify piercing the corporation veil. Absent any allegation of alter ego liability, Plaintiff's Complaint does not establish a *prima facie* claim for maritime attachment of Swift Air's property. This result is particularly appropriate given the more stringent pleading requirements set forth in Supplemental Admiralty Rule E(2)(a). The absence of any allegations concerning Swift Air does not even pass muster to sustain a cause of action under the more lenient pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure. *See, Tide Line, Inc. v. Eastrade Commodities*, 2006 U.S. Dist. LEXIS 60770 (S.D.N.Y. Aug. 15, 2006).

Plaintiff relies on two (2) inapposite Southern District of New York decisions to support its contrived "property interest" analysis. First, is *AET Inc. Ltd. v. Procuradoria De Servicos Martimos Cardoso & Fonesca*, 464 F. Supp. 2d 241 (S.D.N.Y. 2006). In *AET*, Plaintiff vessel owner asserted a claim against its own agent for failure to return an overpayment of funds. The agent was a named Defendant in the Order of Attachment. Defendant agent attempted to escape the attachment by asserting that the attached money was owed to other third-party customers. The Court rejected Defendant's argument and following the Second Circuit found that "even though the funds were intended as payment to a third party, they were still property of the defendant subject to the attachment." *AET*, 464 F. Supp. 2d at 245. This holding has no correlation with the case at issue. In *AET*, Plaintiff attached funds of a named Defendant against which it had asserted an affirmative claim for relief. Nothing in the case supports the enforcement of an erroneous accidental attachment of funds belonging to the subsidiary of the named Defendant. Plaintiff's reliance on this case is misplaced.

Second, Plaintiff attempts to rely on *Essar Int'l Ltd., v. Martrade Gulf Logistics, FZCO*, 2007 U.S. Dist. LEXIS 61713 (S.D.N.Y. Aug. 23, 2007). Although *Essar* has more in common with this case than *AET*, Plaintiff ignores the fact that the essential element to *Essar* is missing in this case. In *Essar*, the Court upheld the attachment of an EFT to an affiliate of a named Defendant because the Plaintiff had a property interest in the EFT, but the Court required Defendant to allege more than "bare assertions" of a property interest. In *Essar*, the subsidiary admitted that the subject funds actually belonged to the named Defendant and "that the transfer was orchestrated to avoid the Attachment Order." *Essar*, 2007 U.S. Dist. LEXIS 61713 at *5. The property interest found in *Essar* arose from what was tantamount to a fraudulent transaction. Here, Plaintiff has absolutely no evidence to suggest that Swift Air and Swift Aviation conspired

to avoid the attachment order. In fact the evidence submitted by Intervenor illustrates the exact opposite: The EFT was sent to Swift Air's bank account in payment for services performed by Swift Air. Swift Aviation had nothing to do with the transaction.

In stating that "bare assertions" of a property interest will not support attachment of funds belonging to an unnamed subsidiary, *Essar* cites *T&O Shipping* and another case *DS Bulk Ptd. Ltd. v. Calder Seacarrier Corp.*, 2006 U.S. Dist. LEXIS 39242 (S.D.N.Y. June 13, 2006) as examples. As in *T&O Shipping* and *DS Bulk*, Plaintiff's assertions of a property interest are conclusory and unsupported and therefore do not, and cannot, create an issue of fact.

The only arguable "issue of fact" is whether Swift Aviation and Swift Air are alter egos of one another. However, a claim of an alter ego relationship is not the equivalent of a property interest of a parent company in any and all property of a subsidiary. *Essar*, 2007 U.S. Dist. LEXIS 61713 at *5; *T&O*, 2006 U.S. Dist. LEXIS 88153 at *14. Thus, Plaintiff has no basis for alleging a "property interest" in the attached funds and the alleged "issue of fact" is illusory.

It is obvious that Plaintiff's attempt to equate alter ego allegations with a claim of a "property interest" is an effort to avoid the application of *T&O Shipping*. Plaintiff acknowledges that if it asserted alter ego at this point and sought to amend the Complaint to add Swift Air as a Defendant, *T&O Shipping* would not allow the amendment to relate back to the attachment of Swift Air's funds. The attachment of Swift Air's EFT must be vacated.

### POINT II

### AN OTHERWISE IMPROPER RULE B ATTACHMENT SHOULD NOT ARISE FROM A MISTAKE OF THE GARNISHEE

The only reason that Swift Air's funds were attached was because the beneficiary of the EFT was listed as "Swift Aviation Group" not "Swift Air, LLC." Bank of America mistakenly equated "Swift Aviation Group" with "Swift Aviation Group, Inc." and held the funds

6

purportedly pursuant to Plaintiff's Order for Attachment. Undoubtedly, had the beneficiary been listed more accurately as "Swift Air, LLC," the funds would not have been held by Bank of America. Intervenor has illustrated that the EFT was intended for an escrow account owned by Swift Air not Swift Aviation. Clerical confusion should not create an attachment that would not otherwise exist.

## POINT III

### DISCOVERY IS NOT PERMITTED IN CONNECTION WITH A RULE E(4)(f) HEARING

Even if the Court finds that an issue of fact exists, Plaintiff is not entitled to demand discovery and cross-examination. Indeed, Plaintiff cannot cite a single case to support its request. Conversely, prior decisions on this theory show that discovery is not allowed at this stage and evidentiary hearings are more limited that Plaintiff would suggest. *See e.g., Salazar v. Atlantic Sun*, 881 F.2d 73 (3d Cir. 1989) ("Generally speaking, an exhaustive adversarial hearing is not necessary" for resolution of issues in a post-arrest hearing.); *see also Wajilam Exports (Singapore) Pte. Ltd. v. Alt Shipping Ltd.*, 475 F. Supp. 2d 275, 279 (S.D.N.Y. 2006)(acknowledging that post-arrest hearings take place before discovery has been had). In addition, given that Swift Air has only appeared in this case on a restricted basis pursuant to Rule E(8), and has thereby preserved its lack of personal jurisdiction defense, discovery should not be warranted. *Cf. Teyseer Cement Co. v. Halla Maritime Corp.*, 794 F.2d, 472, 477-8 (9th Cir. 1986). (Appeal dismissed as moot because district court lacked power to impose judgment against a party that filed a restricted appearance).

Furthermore, an order for discovery would thwart Intervenor's entitlement to a prompt hearing under Rule E(4)(f). Plaintiff's demand for witnesses suggests that Plaintiff is trying to impermissibly reverse the legal burden. Plaintiff has the burden to establish that the attachment

7

was proper as of the time the writ of attachment was obtained. If Plaintiff is unable to do so, the attachment must be vacated and the funds must be released to their rightful owner.

## CONCLUSION

For the reasons stated at length herein and in Swift Air's initial motion papers, Plaintiff's accidental and improper attachment of Swift Air's EFT funds held by garnishee, Bank of America, should be released without further delay.

Dated: New York, NY
April 1, 2008

> Respectfully submitted,
>
> McDERMOTT & RADZIK, LLP
>
> By: *[signature]*
> EDWARD C. RADZIK (ER-2473)
> CAROLYN ELIZABETH BUNDY (CM-1464)
> Wall Street Plaza
> 88 Pine Street – 21st Floor
> New York, NY 10005-1801
> (212) 376-6400