BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANSEL OIL LIMITED,<br><br>          Plaintiff,<br><br>      -against-<br><br>SWIFT AVIATION GROUP, INC.,<br><br>          Defendant. | 08 Civ. 1086 (GBD)<br><br>**AFFIDAVIT OF LEROY LAMBERT IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT; TO ISSUE AMENDED ORDER OF ATTACHMENT; AND TO ATTACH THE FUNDS PRESENTLY ATTACHED PURSUANT TO THE AMENDED ORDER** |

STATE OF NEW YORK   )
                       )   ss:
COUNTY OF NEW YORK  )

      LeRoy Lambert, being duly sworn, deposes and states:

      1.      I am a partner in the law firm of Blank Rome LLP and duly admitted to practice before this Court. I represent Plaintiff Mansel Ltd. Oil ("Mansel"). I make this affidavit in support of Plaintiff's motion for leave to file an amended complaint; to issue amended order of attachment; and to attach the funds presently attached pursuant to the amended order.

      2.      Annexed as Exhibit A is a Verified Amended Complaint which Plaintiff respectfully seeks leave to file.

      3.      Annexed as Exhibit B is an affidavit of search confirming that none of the proposed Defendants in the proposed Verified Amended Complaint can be found in this District.

4.    Annexed as Exhibit C is a proposed Amended Order of Attachment directing the Clerk to issue Process of Maritime Attachment and Garnishment against property in this District of any of the Defendants.

5.    Annexed as Exhibit D is a copy of an opinion of Judge Berman in *Phoenix Bulk Carriers Ltd v. Unicarbon Ltd.*, No. 07 Civ. 10404 (RMB) (S.D.N.Y. February 13, 2008).

6.    On April 4, 2008, Mansel sought the relief requested herein by Order to Show Cause on an expedited briefing and hearing schedule. The Court denied the application (Docket #21), and Mansel now moves by normal motion scheduling for the requested relief.

LeRoy Lambert

Sworn to before me this
7th day of April, 2008

Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114408
Qualified in New York County
Commission Expires Aug. 16, 20__

# EXHIBIT A

BLANK ROME LLP
Attorneys for Plaintiff
MANSEL OIL LIMITED
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANSEL OIL LIMITED,<br><br>               Plaintiff,<br><br>          -against-<br><br>SWIFT AVIATION GROUP, INC., SWIFT AVIATION MANAGEMENT, INC, SWIFT AVIATION SERVICES, INC., SWIFT AVIATION SALES, INC. and SWIFT AIR, LLC<br><br>            Defendants. | 08 Civ. 1086 (GBD)<br><br>**VERIFIED AMENDED COMPLAINT** |

Plaintiff, MANSEL OIL LIMITED, ("Plaintiff"), by its attorneys Blank Rome LLP, complaining of the above-named Defendants, SWIFT AVIATION GROUP, INC. ("Swift Aviation Group") SWIFT AVIATION MANAGEMENT, INC. ("Swift Aviation Management"), SWIFT AVIATION SERVICES, INC ("Swift Aviation Services"), SWIFT AVIATION SALES, INC. ("Swift Aviation Sales"), and SWIFT AIR, LLC ("Swift Air") (collectively, "Defendants"), alleges upon information and belief as follows:

1.      This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. §1333.

2.     At all material times, Plaintiff was and now is a Bermuda company with a place of business at Toddings Building, 10/12 Burnaby Street, Hamilton, Bermuda.

3.     At all material times, Swift Aviation Group was and is a foreign corporation or other business entity organized under the laws of the State of Arizona with a place of business at 2710 East Old Tower Road, Phoenix, AZ 85034.

4.     At all material times, Swift Aviation Management was and is a foreign corporation or other business entity organized under the laws of the State of Arizona with a place of business at 2710 East Old Tower Road, Phoenix, AZ 85034.

5.     At all material times, Swift Aviation Services was and is a foreign corporation or other business entity organized under the laws of the State of Arizona with a place of business at 2710 East Old Tower Road, Phoenix, AZ 85034.

6.     At all material times, Swift Air was and is a foreign limited liability company organized under the laws of the State of Arizona with a place of business at 2710 East Old Tower Road, Phoenix, AZ 85034.

7.     At all material times, Swift Transportation Co., Inc. ("Swift Transportation") was and is a foreign corporation organized under the laws of the State of Arizona with a place of business at 2200 S. 75th Avenue, Phoenix, AZ 85043.

8.     Swift Transportation is one of the largest trucking companies in the United States. Its founder is Jerry Noyes.  Until May 2007, Swift Transportation was publicly-traded on the NASDAQ.  In May 2007, Mr. Noyes and companies he controls took Swift Transportation "private."  He also remains a director of Swift Transportation.

## COUNT I

## **BREACH OF CHARTER OF M/V TORM SOFIA**

9.      By a charter party dated August 23, 2007 ("the TORM SOFIA Charter"), Plaintiff chartered the M/V TORM SOFIA ("TORM SOFIA") to "Swift Transportation, Inc." (upon information and belief, Swift Transportation identified in paragraphs 7 and 8 above). By addendum dated September 12, 2007, Plaintiff, Swift Transportation, and Swift Aviation Group agreed that Swift Aviation Group would take the place of Swift Transportation in the TORM SOFIA Charter.

10.     Under the terms of the TORM SOFIA Charter, Swift Aviation Group was obliged to pay freight in the amount of $202,161.82 and demurrage in the amount of $330,884.51, for a total of $533,046.33, none of which has been paid, although duly demanded.

11.     The TORM SOFIA Charter provides for arbitration of disputes in London, England. Plaintiff has commenced arbitration and reserves its right to arbitrate the disputes, pursuant to 9 U.S.C. §8.

12.     Maritime Arbitrators in London award interest, legal fees and arbitral costs to a successful party. If the dispute is arbitrated through a final award, Plaintiff estimates: recoverable interest will amount to at least $85,287.42 at a rate of 8% per year for at least 2 years; recoverable arbitral costs will be incurred in the sum of at least $75,000; and recoverable legal expenses will be incurred in the sum of at least $200,000, amounting in all to recoverable interest and costs of at least $360,287.42

13.     The total amount of Plaintiff's claims for the TORM SOFIA Charter is **$893,333.75**.

## COUNT II

### BREACH OF CHARTER OF M/V OVERSEAS LIMAR

14.     Plaintiff incorporates paragraphs 1-13 by reference herein.

15.     By a  charter party dated on or about July 11, 2007 ("the OVERSEAS LIMAR CHARTER"), Plaintiff chartered the M/V OVERSEAS LIMAR ("the OVERSEAS LIMAR") to "Swift Transportation, Inc." (upon information and belief, Swift Transportation identified in paragraphs 7 and 8 above).  By Addendum dated September 9, 2007, Plaintiff, Swift Transportation, and Swift Aviation Group agreed that Swift Aviation Group would take the place of Swift Transportation in the OVERSEAS LIMAR Charter.

16.     In breach of the OVERSEAS LIMAR Charter, Swift Aviation Group failed to pay demurrage and other amounts due in the sum of $73,239.59, which remains unpaid, despite due demand.

17.     The OVERSEAS LIMAR Charter provides for arbitration of disputes in London, England.  Plaintiff has commenced arbitration and reserves its right to arbitrate the disputes, pursuant to 9 U.S.C. §8.

18.     Maritime Arbitrators in London award interest, legal fees and arbitral costs to a successful party.  If the dispute is arbitrated through a final award, Plaintiff estimates: recoverable interest will amount to at least $11,718.33 at a rate of 8% per year for at least 2 years; recoverable arbitral costs will be incurred in pursuing its claim against Swift Aviation Group in the sum of at least $50,000; and recoverable legal expenses will be incurred in the sum of at least $50,000, amounting in all to recoverable interest and expenses of at least $111,718.33.

19.     The total amount of Plaintiff's claims for the OVERSEAS LIMAR Charter is **$184,957.92.**

## COUNT III

## ALTER EGO/VEIL PIERCING

20.     Additionally or alternatively to paragraphs 1-19 and Counts I and II above, all of which are incorporated herein by reference as if set forth in full, Defendants Swift Aviation Group, Swift Aviation Management, Swift Aviation Services, Swift Aviation Sales, and Swift Air are alter egos of each other such that the corporate veils of those parties should be pierced so that Plaintiff may obtain recovery against each of them directly in respect of its claims against Swift Aviation Group.

### Common Officers and Directors

#### Swift Aviation Group

21.     Jerry Moyes is President of Swift Aviation Group.

22.     Vickie Moyes is Secretary of Swift Aviation Group.

23.     Jeff Shumway is the "CFO/VP/Treasurer" of Swift Aviation Group.

24.     J. Kevin Burdette is the Vice-President of Swift Aviation Group.

25.     Jerry Moyes is a Director of Swift Aviation Group.

26.     Gerald Ehrlich is the registered agent of Swift Aviation Group.

#### Swift Aviation Management

27.     Jerry Moyes is President of Swift Aviation Management.

28.     Vickie Moyes is Secretary of Swift Aviation Management.

29.     J. Kevin Burdette is Vice-President of Swift Aviation Management.

30.     Jerry Moyes is a Director of Swift Aviation Management.

31.     Gerald Ehrlich is the registered agent of Swift Aviation Management.

**Swift Aviation Services**

32.    Jerry Moyes is President of Swift Aviation Services.

33.    Vickie Moyes is Secretary of Swift Aviation Services.

34.    J. Kevin Burdette is Vice-President of Swift Aviation Services.

35.    Jerry Moyes is a Director of Swift Aviation Services.

36.    Gerald Ehrlich is the registered agent of Swift Aviation Services.

**Swift Aviation Sales, Inc.**

37.    Jerry Moyes is President of Swift Aviation Sales.

38.    Vickie Moyes is Secretary of Swift Aviation Sales.

39.    Jeff Shumway is the "VP/Treasurer/CFO" of Swift Aviation Sales.

40.    J. Kevin Burdette is Vice-President of Swift Aviation Sales.

41.    Jerry Moyes is a Director of Swift Aviation Sales.

42.    Gerald Ehrlich is the registered agent of Swift Aviation Sales.

**Swift Air**

43.    J. Kevin Burdette is Vice-President of Swift Air.

44.    J. Kevin Burdette is the "organizer" of Swift Air.

45.    Swift Aviation Group and Swift Aviation Management are "members" of Swift

Air.

**Common and Interlocking Ownership**

46.    The Jerry and Vickie Moyes Family Trust owns Swift Aviation Group.

47.    Swift Aviation Group owns Swift Aviation Management.

48.    Swift Aviation Group owns Swift Aviation Services.

49.    Swift Aviation Group owns Swift Aviation Sales.

50.     Swift Aviation Group and Swift Aviation Management own Swift Air.

**Common Offices**

51.     Swift Aviation Group, Swift Aviation Management, Swift Aviation Services, and Swift Aviation Sales share offices at 2710 East Old Tower Road, Phoenix, AZ 85034.

52.     The website for Swift Aviation Group, www.swiftaviationgroup.com, states that the phone and fax numbers for Swift Aviation Group are 602-273-3770 and 602-273-3773, respectively.

53.     In Paragraph 9 of an Affidavit dated March 20, 2008, J. Kevin Burdette (identified above) stated under oath that Swift Air's principal place of business is located at 2710 E. Old Tower Road."

54.     Swift Air's website, www.flyswiftair.com, lists 2710 East Old Tower Road, Phoenix, AZ 85034 as its "Phoenix Sky Harbor Offices."

55.     Swift Air's website, www.flyswiftair.com, states that the telephone number for its "Phoenix Sky Harbor Offices" is 602-225-3700 "main."

56.     Another Swift Air website, www.flyswiftaviation.com, states the following contacts: "Swift Air LLC, 2710 E. Old Tower Rd, Phoenix, AZ 85034, Ph:  602-273-3770, Fx: 602-273-3773."

**Business Under The Federal Service Mark**

57.     Swift Aviation Group is the owner of the federal service mark "Swift Aviation Group [stylized "S" as logo] Defining Excellence" which was registered November 8, 2005, as Number 3,012,685 ("Swift Service Mark").

58.     A representative of Swift Aviation Group declared under oath that the Swift Service Mark was for "business management services, namely management of private air

terminals for others, aircraft management for others, namely managing and arranging passenger aircraft operations" and also for "aircraft repair and maintenance; fueling services for aircraft," and the United States Patent and Trademark Office issued the Swift Service Mark for those purposes.

59.    The United States Code, 15 U.S.C. §1127, provides:  "The term 'service mark' means any word, name, symbol, or device, or any combination thereof— (1) used by a person, or (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown."

**Business Under The Swift Aviation Group Website**

60.    At the top of the home page of the website for Swift Aviation Group, www.swiftaviationgroup.com, is the Swift Service Mark.  Beneath the Swift Service Mark are two pictures, each with a hyperlink.

   a.  One picture is of the "Phoenix Sky Harbor" with "Swift Aviation Services" written above it and "Click here for information on **our** private terminal at Phoenix Sky Harbor airport" written below it (emphasis added).  This hyperlink leads to a page within www.swiftaviationgroup.com and information about the Phoenix Sky Harbor and services offered there as well as a link to the website of Swift Air, www.flyswiftair.com.

   b.  The other picture is of a jet airplane parked in front of a hangar with "Swift Air LLC" written above it and "Click to view information on **our** Charter fleet and Aircraft

Management services" written below it (emphasis added).  This hyperlink leads to the website of Swift Air, www.flyswiftair.com, which in turn contains cross-links back to www.swiftaviationgroup.com.  The stylized "S" logo which is part of the Federal Service Mark is between "Swift" and "Air" on www.flyswiftair.com.

**The "Swift Air Charter"Website**

61.     The website www.flyswiftaviation.com contains the words "Swift Air Charter" next to the stylized "S" logo which is part of the Swift Service Mark.  The home page shows the Phoenix Sky Harbor and the contacts are "Swift Air LLC, 2710 E. Old Tower Rd, Phoenix, AZ 85034, Ph:  602-273-3770 Fx: 602-273-3773."

**The Swift Aviation Group Business**

62.     In Paragraph 7 of an Affidavit in this action dated April 1, 2008, Jeff Shumway (identified above) stated under oath that "Swift Aviation Group is a holding company that has an interest in different subsidiaries, including Swift Air."

63.     As a holding company, Swift Aviation Group should have no business of its own. Rather, its activities should be confined to owning stock in, and supervising management of, other companies.

64.     The business of Swift Aviation Group is described in the Swift Service Mark registration under the rubric "Swift Aviation [stylized "S" logo] Defining Excellence" as follows: "business management services, namely management of private air terminals for others, aircraft management for others, namely managing and arranging passenger aircraft operations" and also for "aircraft repair and maintenance; fueling services for aircraft."

65.    The business of Swift Aviation Group described in paragraph 64 above is typically done through Swift Aviation Management, Swift Aviation Services, Swift Aviation Sales, and Swift Air.

66.    Swift Aviation Services provides fuel and fueling services for aircraft.

67.    Swift Aviation Services operates, among other things, the Phoenix Sky Harbor at the Phoenix Airport where fuel and fueling services are provided to "non-airline" aircraft, i.e., air craft not operated by the established common carriers. The fuel and fueling services provided at Phoenix Sky Harbor are the largest non-airline provider of fuel at the Phoenix Airport, providing in excess of 20 million gallons per year.

68.    One of the Defendants also holds the military fuel contract at Sky Harbor.

69.    Swift Aviation Services is the holder of a license issued by the Arizona Department of Weights and Measures in connection with the operation of fueling devices at 2710 E. Old Tower Road, Phoenix, Arizona.

70.    Swift Aviation Services is the holder of a privileged sales tax license issued by the City of Phoenix for operations at 2710 E. Old Tower Road, Phoenix, Arizona.

71.    "Swift Aviation Air" (sic) currently holds a liquor license issued by the City of Phoenix for the premises at 2710 E. Old Tower Road, Phoenix, Arizona.

72.    In 2007, Swift Transportation and/or Swift Aviation Group was a party to a contract for the supply of jet fuel and gasoil by Kuwait Petroleum Company ("KPC").

73.    No individual Defendant was sufficiently capitalized to purchase and trade jet fuel in the dollar amounts and quantities at issue here.

74.    Swift Aviation Group bought from KPC the jet fuel and the gas oil carried by the OVERSEAS LIMAR and the TORM SOFIA, respectively, pursuant to the OVERSEAS LIMAR and TORM SOFIA charters.

75.    Freight paid under the OVERSEAS LIMAR Charter was $2,904,449.47 and under the TORM SOFIA Charter was $2,166,423.72.  In addition, the Charters made Swift Aviation Group liable for demurrage charges which could be substantial, as here.

76.    Letters of indemnity, guaranteed by banks, were issued in connection with the two Charters and cargoes in amounts in excess of 80 million dollars.

77.    Upon information and belief, Swift Aviation Group and/or Swift Transportation are no longer buying and selling oceanborne cargoes of jet fuel and gasoil and suffered losses in 2007 in the millions of dollars.

78.    The jet fuel bought by Swift Aviation Group and transported by the Vessel OVERSEAS LIMAR pursuant to the OVERSEAS LIMAR Charter, and the gasoil bought by Swift Aviation Group and transported by the Vessel TORM SOFIA under the TORM SOFIA Charter was to and/or for the benefit of the business of Swift Aviation Group and Defendants.

79.    Through their common officers, operations, and marketing to the world as one unified business "under one roof" and rubric, the corporate separateness of Defendants should be be set aside such that each of the Defendants and property in their names should be liable for the debts of any other Defendant, including the debts owed Plaintiff as alleged in Counts I and II above.

80.    In particular, Swift Aviation Group and the other Defendants should not be allowed to insulate themselves from liabilities to creditors such as Plaintiff by selectively contracting in the name of Swift Aviation Group which otherwise conducts no business in its

own name and has no assets in its own name other than the shares it owns in the other Defendants.

81.     Defendants have in addition failed to observe corporate distinctions in dealing with third parties, have commingled funds and property, and engaged in transactions among themselves on other than arms-length terms.

82.     On February 15, 2008, Bank of North America restrained an electronic funds transfer in the amount of $118,136 naming Swift Aviation Group as the beneficiary. Swift Air contends these funds belong to it.

83.     On April 4, 2008, JP Morgan Chase restrained an electronic funds transfer in the amount of $49,300 naming Swift Aviation Group as the beneficiary. The transfer was said to be for "travel services."

84.     The Defendants have substantially overlapping shareholders, directors, officers and personnel and are all nothing more than various arms of Swift Aviation Group which operate in union for the principal benefit of Swift Aviation Group, Jerry and Vicki Moyes, and the Jerry and Vickie Moyes Family Trust.

85.     The Defendants share office space, contact details, overhead and personnel, and their operations are purposefully and for their mutual benefit intertwined.

86.     The individual defendants exercise no independent business discretion but rather function solely as fully controlled and dominated instruments of Swift Aviation Group, Jerry and Vicki Moyes, and the Jerry and Vickie Moyes Family Trust.

87.     Defendants are not run as individual profit centers but rather function collectively as controlled and dominated instruments of Swift Aviation Group, Jerry and Vicki Moyes, and the Jerry and Vickie Moyes Family Trust.

## REQUEST FOR ATTACHMENT PURSUANT TO SUPPLEMENTAL RULE B

88.    The total amount of Plaintiff's claims for the M/V TORM SOFIA and the M/V OVERSEAS LIMAR for which Plaintiff requests is **$1,078,291.67**.

89.    None of the Defendants can be found within this district within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure, but each of them is believed to have or will have during the pendency of this action, property, tangible and intangible, within this district consisting of cash, funds, freight, hire credits in the hands of garnishees in this District, including but not limited to electronic fund transfers.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee, including electronic fund transfers to or from Defendant, in the district which are due and owing or otherwise the property of the Defendant up to the amount of **$750,000**, as previously ordered by this Court in connection with the original Verified Complaint, to secure Plaintiff's claims, and

that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental

Admiralty Rule B answer the matters alleged in the Complaint;

      C.      That this Court enter judgment for Plaintiff's damages plus interest and costs, or

retain jurisdiction over this matter through the entry of a judgment on an arbitration award.

      D.      That Plaintiff may have such other, further and different relief as may be just and

proper.


Dated:  New York, NY
        April 7, 2008


                               BLANK ROME, LLP
                               Attorneys for Plaintiff,

                               By_____
                                  LeRoy Lambert (LL-3519)
                               The Chrysler Building
                               405 Lexington Avenue
                               New York, NY  10174-0208
                               (212) 885-5000

## VERIFICATION

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

LeRoy Lambert, being duly sworn, deposes and says:

1.    I am a member of the bar of this Honorable Court and of the firm of Blank Rome LLP, attorneys for the Plaintiff.

2.    I have read the foregoing Complaint and I believe the contents thereof are true.

3.    The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.    The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

LeRoy Lambert

Sworn to before me this
4th day of April, 2008

Notary Public

KARL V. REDA
Notary Public, State of New York
No. 30-4783126, Qual. in Nassau Cty.
Certificate Filed in New York County
Commission Expires  Nov-30, 2009

# EXHIBIT B

BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANSEL OIL LIMITED, | 08 Civ. 1086 (GBD) |
| Plaintiff, | **SUPPLEMENTAL** |
| -against- | **AFFIDAVIT PURSUANT TO** |
| SWIFT AVIATION GROUP, INC., | **SUPPLEMENTAL RULE B** |
| Defendant. | |

STATE OF NEW YORK  )
                   )    ss:
COUNTY OF NEW YORK  )

LeRoy Lambert, being duly sworn, deposes and says:

1.    I am a member of the Bar of this Honorable Court and a member of the firm of Blank Rome LLP, attorneys for the Plaintiff herein. I am familiar with the circumstances of the Verified Complaint and submit this affidavit in support of Plaintiff's request for the issuance of Process of Maritime Attachment and Garnishment against the property of Defendants SWIFT AVIATION GROUP, INC., SWIFT AVIATION MANAGEMENT, INC, SWIFT AVIATION SERVICES, INC., SWIFT AVIATION SALES, INC. and SWIFT AIR, LLC ("Defendants"), foreign corporations, pursuant to Supplemental Rule B For Certain Admiralty and Maritime Claims of the Federal Rules of the Federal Rules of Civil Procedure.

2.    Under my supervision, my office conducted a search of the New York State Secretary of State, Division of Corporations, the Transportation Tickler, telephone assistance, and a general internet search.

3.      In our search, we did not find any listing or reference to Defendants in this judicial district or the state of New York.  In the circumstances, I believe the Defendants cannot be found within this district.

LeRoy Lambert

Sworn to before me this
4th day of  April, 2008

Notary Public

KARL V. REDA
Notary Public, State of New York
No. 30-4783126, Qual. in Nassau Cty.
Certificate Filed in New York County
Commission Expires
NOV. 30, 2009

2

# EXHIBIT C

BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANSEL OIL LIMITED,<br><br>    Plaintiff,<br><br>    -against-<br><br>SWIFT AVIATION GROUP, INC., SWIFT AVIATION MANAGEMENT, INC, SWIFT AVIATION SERVICES, INC., SWIFT AVIATION SALES, INC. and SWIFT AIR, LLC<br><br>    Defendants. | 08 Civ. 1086 (GBD)<br><br>**AMENDED ORDER DIRECTING CLERK TO ISSUE PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT** |

   **WHEREAS**, on February 1, 2008, Plaintiff, Mansel Oil Limited., filed a Verified Complaint herein for damages amounting to **$1,078,291.67**, inclusive of interest, costs and reasonable attorney's fees, and praying for issuance of Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules and Civil Procedure; and,

   **WHEREAS**, on February 5, 2008, the Court issued an Ex Parte Order for Process of Maritime Attachment allowing and directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment in the amount of $750,000 ("February 5 Order");

   **WHEREAS**, amounts have been restrained pursuant to the February 5 Order and additional amounts may be restrained between the time this Amended Order is considered and acted upon; and,

129053.00601/6629162v.1

**WHEREAS**, on April __, 2008, the Court granted Plaintiff leave to file an Amended Complaint naming additional Defendants;

**WHEREAS**, the Process of Maritime Attachment and Garnishment would command that the United States Marshal or other designated process server attach any and all of the Defendant's property within the District of this Court; and,

**WHEREAS**, the Court has reviewed the Amended Verified Complaint and the Supporting Affidavit, and the conditions of Supplemental Admiralty Rule B appearing to exist, it is hereby,

**ORDERED,** that Process of Maritime Attachment and Garnishment shall issue to the garnishees named in Schedule A hereto, against all tangible or intangible property belonging to, claimed by or being held for any of the Defendants SWIFT AVIATION GROUP, INC., SWIFT AVIATION MANAGEMENT, INC, SWIFT AVIATION SERVICES, INC., SWIFT AVIATION SALES, INC. and SWIFT AIR, LLC by any garnishees within this District, including but not limited to electronic fund transfers originated by, payable to, or otherwise for the benefit of any of the Defendants, whether to or from the garnishee banks or any other electronic fund transfers, in an amount of up to **$750,000.00** pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure; and, it is further,

**ORDERED,** that amounts presently attached pursuant to the February 5 Order and any amounts which may be attached pursuant to the February 5 Order during the time this Amended Order is being considered and acted upon, be and hereby are restrained pursuant to this Amended Order; and, it is further,

**ORDERED,** that any person claiming an interest in the property attached or garnished pursuant to said Order shall, upon application to the Court, be entitled to a prompt hearing at which the Plaintiff shall be required to show why the attachment and garnishment should not be vacated or other relief granted; and it is further,

**ORDERED,** that supplemental process specifying other or additional garnishees enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court; and it is further,

**ORDERED,** that following initial service by the United States Marshal or other designated process server upon each garnishee, supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile transmission or e-mail and, it is further,

**ORDERED,** that service on any garnishee as described above is deemed continuous throughout the day from the time of such service through the opening of the garnishee's business the next business day and, it is further,

**ORDERED,** that pursuant to Federal Rule of Civil Procedure 5(b)(2)(D), each garnishee may consent, in writing, to accept service by any other means; and, it is further,

**ORDERED,** that the Order Appointing Process Server previously entered remain in effect with respect to service of this Amended Order; and it is further

**ORDERED,** that a copy of this Order be attached to and served with the said Process of Maritime Attachment and Garnishment.

Dated: April __, 2008                    SO ORDERED:

_____
U.S.D.J.

## SCHEDULE A

1. ABN Amro Bank N.V.
2. American Express Bank Ltd.
3. Bank of America, N.A.
4. The Bank of New York
5. Citibank, N.A.
6. Bank of China
7. HSBC Bank USA
8. JP Morgan Chase Bank, N.A.
9. Standard Chartered Bank
10. Wachovia Bank, N.A. – New York
11. Wells Fargo Bank, National Association
12. BNP Paribas
13. Deutsche Bank
14. UBS Bank

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PHOENIX BULK CARRIERS LTD.,                    :
                                              :
                        Plaintiff,            :
                                              :          07 Civ. 10404 (RMB)
           -against-                          :
                                              :          **ORDER**
UNICARBON LTD. and DYNACOAL LTD.,             :
                                              :
                        Defendants.           :
----------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:**
**DATE FILED: 2/13/08**

### I.    Background

On or about November 16, 2007, Phoenix Bulk Carriers Ltd. ("Plaintiff") filed a

complaint ("Complaint") against Unicarbon Ltd. ("Unicarbon") and Dynacoal Ltd. ("Dynacoal")

(collectively, "Defendants"), alleging that Defendants breached an April 29, 2005 "contract of

affreightment" and, thereby, caused $1,088,909 in damages. (Complaint at 2, 7–8.) On

December 21, 2007, the Court issued an order, pursuant to Rule B of the Supplemental Rules of

Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"),

requiring seizure of Dynacoal's property "in connection with the vessel 'Bright Zhejiang.'"

(Order, dated Dec. 21, 2007.) On or about January 9, 2008, the funds of Global Coal Trade Co.

Ltd. ("Global Coal"), unnamed as a party, were attached when Global Coal submitted a payment

to the owner of the Bright Zhejiang. (Ltr. to Hon. Richard M. Berman from Patrick Crilley,

dated Jan. 29, 2008, at 1.)

On or about February 1, 2008, Global Coal submitted a motion to vacate the maritime

attachment pursuant to Rule E of the Supplemental Rules of Certain Admiralty and Maritime

Claims of the Federal Rules of Civil Procedure ("Rule E"), arguing that (1) "Defendant

Dynacoal does not have any property interest . . . in [Global Coal's] restrained funds"; and (2)

1

"Global Coal [] is not a defendant in the action." (Global Coal Mem. of Law, dated Feb. 1, 2008 ("Global Coal"), at 1–2.)

On or about February 5, 2008, Plaintiff opposed Global Coal's motion, arguing that (1) "Dynacoal clearly retained an interest in the [Bright Zhejiang] freight"; and (2) Plaintiff should be granted leave to amend its Complaint and add Global Coal as a defendant "under alter ego principles." (Ltr. to Hon. Richard M. Berman from Peter J. Gutowski, dated Feb. 5, 2008 ("Gutowski Ltr."), at 2.)

On February 13, 2008, the Court held a post-attachment hearing pursuant to Rule E of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. (See Hearing Transcript, Feb. 13, 2008.)

**For the reasons stated below, Global Coal's motion to vacate is denied and Plaintiff is granted leave to amend its complaint.**

**II.   Legal Standard**

Rule B is "a relatively broad maritime attachment rule, under which the attachment is quite easily obtained," and a maritime attachment "may be vacated only in certain limited circumstances." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 443-45 (2d Cir. 2006). An attachment should not be vacated if the plaintiff shows that it "has satisfied the requirements of Rules B and E," including, among other things, that "it has a valid prima facie admiralty claim against the defendant." Id. at 445.

**III.   Analysis**

**(1)   Plaintiff's Interest in Attached Funds**

Global Coal argues that it "purchased the [Bright Zhejiang] cargo . . . from Defendant Dynacoal" and no "named defendants have control over the restrained funds." (Global Coal at

2

2.) Plaintiff argues that "the supposed sale transaction from Dynacoal to Global Coal is little more than an in-house maneuver between shell entities" designed to the avoid attachment. (Gutowski Ltr. at 2.)

By alleging alter ego liability of Global Coal and by challenging the legitimacy of the sale between Dynacoal and Global Coal, Plaintiff has demonstrated that Dynacoal has "a property interest in the [attached funds] sufficient to render it attachable under Rule B." See Essar Int'l Ltd. v. Martrade Gulf Logistics, No. 07 Civ. 3439, 2007 WL 2456629, at *2–3 (S.D.N.Y. Aug. 23, 2007) (where money transferred by a non-party was for the benefit of a named defendant and "the transfer was orchestrated to avoid the Attachment Order"). "Plaintiff need not aver an alter ego relationship in the Complaint for a Rule B attachment to be proper." See id.

### (2) Plaintiff's Proposed Amendment

Global Coal argues that its funds were improperly attached because it is "an un-named non-party." (Global Coal at 4.) Plaintiff argues that "leave to re-plead should be granted asserting [] alternative grounds" of (alter ego) liability against Global Coal. (Gutowski Ltr. at 2.)

"At this stage, Plaintiff's alter ego allegations are sufficient to support [its] application to amend the [] Complaint to include [Global Coal] as a defendant" because allegedly "there is reason to believe that there is no meaningful difference between [Global Coal and Dynacoal]." See T&O Shipping, Ltd. v. Source Link Co., Ltd., No. 06 Civ. 7724, 2006 WL 3513638, at *8 (S.D.N.Y. Dec. 5, 2006). "The Federal Rules of Civil Procedure favor liberal amendment of pleadings" and granting Plaintiff leave to amend its Complaint would be consistent with that liberal policy. See Nevitt Import Corp. v. Mitsui O.S.K. Lines (America), Inc., No. 93 Civ. 8074, 1995 WL 406004, at * 1 (S.D.N.Y. 1995).

3

## IV.    Conclusion and Order

For the reasons stated herein, Global Coal's motion to vacate is denied. Plaintiff is

granted leave to amend its complaint within ten days from the date of this Order.

Dated: New York, New York
       February 13, 2008

**RICHARD M. BERMAN, U.S.D.J.**

4