UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

MANSEL OIL LIMITED,                          :      **ECF case**
                                             :
                         Plaintiff,          :      08 Civ. 1086 (GBD)
                                             :
              v.                             :      **Electronically Filed**
                                             :
SWIFT AVIATION GROUP, INC.                   :
                                             :
                                             :
                         Defendant.          :
-------------------------------------------------------------------x


**MEMORANDUM OF LAW OF DEFENDANT SWIFT AVIATION GROUP, INC.
(1) IN SUPPORT OF MOTION TO STAY ALL CLAIMS PENDING ARBITRATION
AND
(2) IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN
AMENDED COMPLAINT; TO ISSUE AN AMENDED ORDER OF ATTACHMENT;
AND TO ATTACH THE FUNDS PRESENTLY ATTACHED PURSUANT TO THE
AMENDED ORDER**


*Attorneys for Defendant*

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
John L. Gardiner
Julie Bédard
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000


April 21, 2008

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 5

ARGUMENT ........................................................................................................................ 9

I.   BECAUSE THIS ENTIRE ACTION SHOULD BE STAYED PENDING THE
     LONDON ARBITRATION, LEAVE TO AMEND THE COMPLAINT
     SHOULD BE DENIED ................................................................................................. 9

     A.   Plaintiff's Freight and Demurrage Claims Should Be Stayed Because They
          Are Subject to Arbitration ................................................................................. 10

     B.   Plaintiff's Alter Ego Claims Should Also Be Stayed Because Primary
          Liability Must First and Foremost Be Determined in the London
          Arbitration ....................................................................................................... 11

     C.   A Stay of All Claims Is Warranted As a Matter of Judicial Economy and
          to Avoid Concurrent Proceedings and Potential Contradicting Decisions ........... 12

II.  IN ALL EVENTS, PLAINTIFFS' AMENDMENT APPLICATION SHOULD BE
     DENIED AS FUTILE .................................................................................................. 13

     A.   It Is Well Established That a Motion for Leave to Amend a Complaint
          Should Be Denied Where Amendment Would Be Futile ...................................... 13

     B.   The Proposed Amended Complaint Fails To Adequately Allege Alter Ego
          and the Amended Complaint Would Not Survive a Motion to Dismiss ............... 14

     C.   Plaintiff's Attempted Assertion of Personal Jurisdiction Against the
          Defendant and the Proposed Defendants Is Unsupported .................................... 21

     D.   This Action Should Be Dismissed on Forum Non Conveniens Grounds .............. 21

     E.   The Joinder of Defendant's Subsidiaries Would Be Highly Prejudicial .............. 21

III. AN AMENDED ORDER OF ATTACHMENT IS IMPROPER BECAUSE  THE
     SAG SUBSIDIARIES RUN THEIR OWN BUSINESS  AND HAVE NO
     RELATIONSHIP WITH MANSEL OIL ..................................................................... 22

IV.  AN ATTACHMENT SHOULD NOT RELATE BACK .................................................. 23

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

American Protein Corp. v. AB Volvo, 844 F.2d 56 (2d Cir. 1988) ...............................17

Anaconda v. American Sugar Refining Co., 322 U.S. 42 (1944) ................................10

Apace Communications, Ltd. v. Burke, 522 F. Supp. 2d 509 (W.D.N.Y. 2007)...........21

Berger v. Columbia Broadcasting System, 453 F.2d 991 (5th Cir. 1972)....................17

Chubb Insurance Co. of Europe S.A. v. M/V Humboldt Express, No. 02 CV 1294,
    2003 WL 22434092 (S.D.N.Y. Oct. 24, 2003)................................................22

Coastal States Trading, Inc. v. Zenith Navigation S.A., 446 F. Supp. 330
    (S.D.N.Y. 1977)................................................................................17

Crown Central Petroleum Corp. v. Cosmopolitan Shipping Co., 602 F.2d 474
    (2d Cir. 1979) ................................................................................16

In re Currency Conversion Fee Antitrust Litigation, 265 F. Supp. 2d 385
    (S.D.N.Y. 2003)................................................................................21

Dale Metals Corp. v. Kiwa Chemical Industry Co., 442 F. Supp. 78 (S.D.N.Y. 1977)...............11

De Jesus v. Sears, Roebuck & Co., 87 F.3d 65 (2d Cir. 1996) ................................19

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985).......................................3, 10

Dolco Investments, Ltd. v. Moonriver Development, Ltd., 486 F. Supp. 2d 261
    (S.D.N.Y. 2007)................................................................................22

Fisser v. International Bank, 282 F.2d 231 (2d Cir. 1960)........................................18

General Media, Inc. v. Shooker, No. 97 Civ. 510, 1998 WL 401530
    (S.D.N.Y. July 16, 1998) ................................................................12

G.R.E. Talbot Bird & Co. v. M/V Dimitris Levantakis, No. 86 CIV. 2035, 1988
    WL 120428 (S.D.N.Y. Nov. 3, 1988)................................................9

Health-Chem Corp. v. Baker, 915 F.2d 805 (2d Cir. 1990) ......................................13

Hedvat v. Rothschild, 175 F.R.D. 183 (S.D.N.Y. 1997)...........................................24

Hikers Industries, Inc. v. William Stuart Industries (Far East) Ltd., 640 F. Supp.
    175 (S.D.N.Y. 1986)................................................................12

Jazini v. Nissan Motor Co., 148 F.3d 181 (2d Cir. 1998) ............................................. 21

J.L.B. Equities, Inc. v. Ocwen Financial Corp., 131 F.Supp.2d 544
    (S.D.N.Y., 2001) .......................................................................................... 19

Kirno Hill Corp. v. Holt, 618 F.2d 982 (2d Cir. 1980) ................................................ 14

Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039
    (2d Cir. 1990) .............................................................................................. 21

Leonelli v. Pennwalt, 887 F.2d 1195 (2d Cir. 1989) .................................................. 13

Limonium Maritime, S.A. v. Mizushima Marinera, S.A., 961 F. Supp. 600
    (S.D.N.Y. 1997) ....................................................................................... 4, 11

Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983) ............... 9

Nissho Iwai Corp. v. Mizushima Marinera S.A., No. 95-3771 (D.N.J. April 23, 1996) .............. 11

NLRB v. Deena Artware, Inc., 361 U.S. 398 (1960) .................................................... 14

Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP, No. 03 Civ. 0613,
    2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ............................................................ 21

Oldroyd v. Elmira Savings Bank, FSB, 134 F.3d 72 (2d Cir. 1998) .................................... 9

Oriental Commercial & Shipping Co. v. Rosseel, N.V., 702 F. Supp. 1005
    (S.D.N.Y. 1988) ........................................................................................... 18

Phoenix Bulk Carriers Ltd. v. Unicarbon Ltd., No. 07 Civ. 10404 (RMB)
    (S.D.N.Y. Feb. 13, 2008) .......................................................................... 22, 23

Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64 (2d Cir. 2003) ......................... 21

Randolph-Rand Corp. of New York v. Tidy Handbags, Inc., No. 96 CIV 1829,
    2001 WL 1286989 (S.D.N.Y. Oct. 4, 2001) ............................................................ 24

Seguros Banvenez v. S/S Oliver Drescher, 761 F.2d 855 (2d Cir. 1985) ............................. 11

Sly Magazine, LLC v. Weider Publications L.L.C., 241 F.R.D. 527 (S.D.N.Y. 2007) ................. 22

Spence v. Maryland Casualty Co., 803 F. Supp. 649 (W.D.N.Y. 1992) ............................... 19

Status International S.A. v. M&D Maritime Ltd., 994 F. Supp. 182 (S.D.N.Y. 1998) ................ 16

T&O Shipping, Ltd. v. Source Link Co., No. 06-CV-7724 (KMK), 2006 WL
    3513638 (S.D.N.Y. Dec. 5, 2006) ...............................................................23, 24

Tapia-Ortiz v. Doe, 171 F.3d 150 (2d Cir. 1999) .........................................................24

Tide Line, Inc. v. Eastrade Commodities, Inc., 06 CV 1979, 2006 U.S. Dist.
    LEXIS 95870 (S.D.N.Y. Aug. 15, 2006) .........................................................23

Tide Line, Inc. v. Eastrade Commodities, Inc., 06 Civ. 1979, 2006 U.S. Dist.
    LEXIS 60770 (S.D.N.Y. Aug. 25, 2006) .........................................................23

Transunion Corp. v. PepsiCo., Inc., 811 F.2d 127 (2d Cir. 1987)...........................21

Travelers Indemnity Co. v. M/V Mediterranean Star, No. 86 Civ. 8797, 1988 WL
    78363 (S.D.N.Y. July 19, 1988) ......................................................................12

Tripmasters, Inc. v. Hyatt International Corp., 696 F. Supp. 925 (S.D.N.Y. 1988)...................18

Vimar Seguros y Reaseguros, S.A., M/V Sky Reefer, 515 U.S. 528 (1995) ..................9

## Statutes and Rules

9 U.S.C. § 3 .......................................................................................................1, 3, 9

9 U.S.C. § 8 ..................................................................................................1, 3, 9, 10

Fed. R. Civ. P. 15.....................................................................................................1

Fed. R. Civ. P. 15(a)(2) ..........................................................................................13

Fed. R. Civ. P. 15(c) .............................................................................................4, 24

Fed. R. Civ. P. 21....................................................................................................1, 13

Fed. R. Civ. P. Supp. R. for Admiralty or Maritime Claims & Asset Forfeiture
    Actions R. B ......................................................................................................1, 4

Pursuant to the express terms of Sections 3 and 8 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, 8,  Federal Rules of Civil Procedure 15 and 21 and Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Claims ("Supplemental Rules for Maritime Actions"), Defendant Swift Aviation Group, Inc. ("Swift Aviation Group") respectfully submits this memorandum of law and the accompanying Declaration of Jeff A. Shumway, Chief Financial Officer of Swift Aviation Group, and the Declaration of John L. Gardiner, counsel to Defendant, (1) in support of Defendant's Cross-Motion to Stay Claims in Favor of Arbitration ("Defendant's Motion for Stay"), and (2) in Opposition to the Motion for Leave to File an Amended Complaint; to Issue Amended Order of Attachment; and to Attach the Funds Presently Attached Pursuant to the Amended Order of Plaintiff Mansel Oil Limited ("Mansel Oil") ("Plaintiff's Motion to Amend").

## PRELIMINARY STATEMENT

Any doubt that Plaintiff intends to use this action as a club to harass Defendant by keeping this maritime action alive – in spite of the pending London arbitration that Plaintiff itself has commenced – is dispelled by Plaintiff's attempt to join as defendants each and every one of Defendant's subsidiaries and to amend this Court's original Order of Attachment against Swift Aviation Group so that it retroactively reaches all of Defendant's subsidiaries.[1]

Not only does Plaintiff's Motion to Amend appear designed to surreptitiously undermine the jurisdiction of the London arbitration tribunal – directly contravening the parties'

---

[1] Plaintiff's application to amend its Complaint was originally brought by Order to Show Cause why plaintiff should not be granted leave to file an amended complaint; an amended order of attachment; and an order deeming any funds presently attached under the Court's prior order of February 5, 2008 ("Attachment Order"). On April 4, 2008, however, this Court denied that application, which has now been refiled as a motion on notice to Defendant Swift Aviation Group.  (Shumway Decl., Exh. 14.)

arbitration agreement solely capable of bringing finality to the dispute – but it is based on two patently wrong premises:

- Mansel Oil's contention that it has a right to pierce the corporate veil to add all of Defendant's subsidiaries as defendants in this action – an extreme, insupportable view that is squarely contradicted by controlling case law; and

- Mansel Oil's vexatious insistence to plead alter ego by making conclusory allegations to support Plaintiff's speculation that Defendant and all of its subsidiaries are alter egos of each other.

Plaintiff asserts these unsupported positions after this Court recently ordered the immediate release of funds belonging to Swift Air, L.L.C. ("Swift Air"), one of Defendant's subsidiaries, which conducts a separate air transportation business and has no relationship to Mansel Oil. The Court ordered such release following submissions of Swift Aviation Group and Swift Air demonstrating their separateness and that Swift Air's assets could not be subject to an attachment addressed only to Swift Aviation Group's assets. Now, Plaintiff seeks to circumvent that ruling by baselessly adding Swift Air to the complaint.

This Court should not even reach Plaintiff's latest request for leave to amend the Complaint and this Court's Attachment Order because this entire action should be stayed pending conclusion of the London arbitration commenced by Plaintiff, which arises from the exact same facts and transactions as this lawsuit. The London arbitration is the only forum with jurisdiction to positively dispose of all the issues in this action. Pursuant to the plain terms of the FAA and controlling authority in the Supreme Court and this Circuit, Plaintiff's claims should be stayed.

In this respect, there is no dispute that Plaintiff and Defendant are parties to two separate maritime charter party agreements, whereby Plaintiff chartered vessels to Defendant for the transport of oil to the United States. In a complaint filed on February 1, 2008, Plaintiff claims that under the terms of the charter party agreements, Defendant failed to pay certain sums purportedly due for freight and demurrage charges (surcharge for delays) ("Compl.") Plaintiff

concedes that this dispute is to be resolved exclusively through maritime arbitration in London, English law governing.  (Compl. ¶¶ 6, 11.)  Plaintiff commenced an arbitration against Defendant on March 26, 2008.  It itself admits that "Mansel's claims here . . . are ripe and ready for arbitration in London."[2]  Defendant appointed its arbitrator on April 16, 2008 and is fully participating in the arbitration.

In its proposed Amended Complaint dated April 7, 2008 ("Proposed Amended Complaint"), Plaintiff reiterates the causes of action for alleged breaches of the maritime charter party agreements it asserts against Defendant in the original Complaint.  It now also seeks to assert precisely these same claims under the exact same maritime charter party agreements against four  additional corporate entities consisting of the subsidiaries of Defendant:  Swift Aviation Management, Inc. ("Swift Aviation Management"), Swift Aviation Services, Inc. ("Swift Aviation Services"), Swift Aviation Sales, Inc. ("Swift Aviation Sales"), and Swift Air, LLC ("Swift Air") (together, the "SAG Subsidiaries").  Plaintiff conclusorily alleges these entities are alter egos of Defendant Swift Aviation Group and of each other.  (Am. Compl. ¶¶ 9, 14, 20.)

Under Section 3 of the FAA, "[i]f any suit or proceeding be brought . . . upon any issue referable to arbitration . . . , the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ."  9 U.S.C. § 3.  See also 9 U.S.C. § 8.  Here, there is no doubt Plaintiff brings a maritime suit for attachment before this Court upon

---

[2]    Plaintiff's Memorandum of Law in Opposition to Motion of Swift Air LLC to Vacate Attachment at 12 (emphasis added).

freight and demurrage claims that are clearly referable to arbitration pursuant to the parties' arbitration agreement, thus requiring a stay of the instant litigation.[3]

Separately, this Court has previously held that it makes little sense to litigate potential alter ego liability before resolving questions of primary liability in arbitration.  In Limonium Maritime, S.A. v. Mizushima Marinera, S.A., 961 F. Supp. 600 (S.D.N.Y. 1997), this Court ruled that it was "a common sense approach" to require the parties to "arbitrate their dispute and resolve [the defendant's liability], if any, before the question of alter egos is litigated." Id. at 610 (emphasis added).  A stay of Plaintiff's claims is similarly warranted here.

If the Court does not stay the entire proceeding (save for the existing Order of Attachment against Swift Aviation Group's assets) leave to amend should be denied as futile because the allegations contained in the Proposed Amended Complaint concerning Defendant and its subsidiaries are legally defective.  Plaintiff fails to state a claim against the SAG Subsidiaries for at least two separate and independent reasons:  the Proposed Amended Complaint (1) fails to allege that Defendant and the SAG Subsidiaries perpetrated a fraud (indeed, Defendant's subsidiaries have no relationship whatsoever with Mansel Oil or with the dispute between Mansel Oil and Swift Aviation Group); and (2) fails to allege that Swift Aviation Group so dominated and controlled the SAG Subsidiaries and disregarded corporate form that the SAG Subsidiaries primarily transacted the business of their parent rather than their own.

Moreover, Plaintiff has not properly alleged personal jurisdiction against any of Defendant or its subsidiaries (which are all out-of-state companies).  Even if personal jurisdiction

---

[3]    The FAA leaves no discretion with the district court to decide not to stay the proceedings.  See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985) (ruling that the FAA mandates that district courts shall direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed).

existed, the relevant factors overwhelmingly support dismissal of Plaintiff's claims on <u>forum</u> <u>non</u> <u>conveniens</u> grounds. Therefore, on any view, Plaintiff's Motion to Amend is futile and should be denied.

Finally, Plaintiff's effort to retroactively attach the assets of the SAG Subsidiaries must be denied. This request flies in the face of the recent decision of this Court which vacated the attachment of the assets of Swift Air and should be denied as such. This Court already has ruled that Swift Aviation Group does not have a property interest in the assets of Swift Air and the same holds true with respect to the other SAG Subsidiaries. Any retroactive attachment is violative of due process and the principle behind Federal Rule of Civil Procedure 15(c), allowing the amendment of a pleading to "relate back" only where the plaintiff made a mistake in its original pleading. Here, Plaintiff has not shown that it made any such "mistake."

## STATEMENT OF FACTS

This action concerns a maritime dispute between Plaintiff Mansel Oil and Defendant Swift Aviation Group in which Plaintiff alleges that Defendant is liable for certain freight and demurrage charges under two separate charter party agreements.

### Maritime Charter Party Agreements Between Plaintiff and Defendant Providing for Arbitration

Plaintiff Mansel Oil and Defendant Swift Aviation Group are parties to two separate maritime charter party agreements: (1) the Overseas Limar Charter dated June 11, 2007 (Shumway Decl., ¶ 2 and Exh. 1); and (2) the Torm Sofia Charter dated August 23, 2007 (Shumway Decl., ¶ 3 and Exh. 2). Plaintiff and Defendant are the only parties to the Overseas Limar Charter and Torm Sofia Charter. (Shumway Decl., ¶ 4.) It is uncontested that both charter party agreements provide that any dispute is to be resolved through arbitration in London, under English law ("London Arbitration"). (Shumway Decl., ¶ 5.)

On January 16, 2008, Mansel Oil wrote to Swift Aviation Group claiming $533,046.33 due under the Torm Sofia Charter for freight and demurrage charges and $73,239.59 due under the Overseas Limar Charter for demurrage charges. The total debt purportedly due under the two charter party agreements Mansel Oil thus alleges is $606,285.92. (Shumway Decl., ¶ 7 and Exh. 3.)

### New York Action Filed by Plaintiff Against Defendant

In a complaint filed on February 1, 2008, Plaintiff alleges that Defendant failed to pay the above total debt purportedly in breach of its obligations under the Overseas Limar Charter and Torm Sofia Charter. In addition, Plaintiff seeks purportedly recoverable interest, arbitral costs and legal expenses, alleging a total debt purportedly due under the two charter party agreements of $1,078,291.67. (Compl. ¶ 15, Shumway Decl. Exh. 4.)

On March 17, 2008, Defendant filed its answer to Plaintiff's Complaint ("Answer") denying Plaintiff's claims in their entirety and raising five affirmative defenses: (1) Plaintiff's allegations fail to state any claim upon which relief may be granted; (2) Plaintiff's claims must be determined in arbitration, English law governing; (3) Plaintiff's claims before this Court must be dismissed or stayed until arbitration has been held in accordance with the terms of the Torm Sofia Charter and the Overseas Limar Charter; (4) this Court should decline jurisdiction over Plaintiff's action under its inherent and discretionary power to dismiss a suit on forum non conveniens grounds; (5) this Court does not have personal jurisdiction over Defendant. (Answer, ¶¶ 20-21, Shumway Decl., Exh. 5.)

Pursuant to this Court's Order of February 5, 2008, an initial pretrial conference is scheduled to be held on May 1, 2008 at 9:30 a.m. The parties are to confer and file any proposed modification to the Court's Case Management Plan and Scheduling Order on Thursday April 24, 2008, one week prior to the pretrial conference. (Shumway Decl., Exh. 6.)

**London Arbitration Between Plaintiff and Defendant**

Plaintiff separately seeks precisely the same relief against Defendant in the arbitration brought in London pursuant to the parties' arbitration agreement. (Notice of Commencement of Maritime Arbitration, Shumway Decl., Exh. 7.) Plaintiff formally commenced the arbitration and appointed its arbitrator on March 26, 2008. Id. Defendant appointed its arbitrator on April 16, 2008. The London Arbitration is proceeding apace, and a hearing likely will be scheduled to be held in the next few weeks. (Shumway Decl., ¶¶ 11-13.)

**Process of Maritime Attachment Against Defendant**

On February 5, 2008, Mansel Oil obtained an Order from this Court that a Process of Maritime Attachment and Garnishment issue pursuant to Rule B of the Supplemental Rules for Maritime Claims against the Defendant's assets. (Shumway Decl., Exh. 8.)

On February 15, 2008, Plaintiff improperly attached an electronic funds transfer ("EFT") of $118,136.00 from Elite Jet, Ltd., a Canadian entity, to Swift Air, a subsidiary of Swift Aviation Group operating a separate air transportation charter business. On March 24, 2008, Swift Air filed a Motion to Vacate Attachment showing that while Swift Aviation Group and Swift Air are related companies, they operate independently. (Shumway Decl. Exh. 9.) Swift Air further demonstrated that the attached EFT was a debt owed by one of its customers for air transportation services rendered by Swift Air, a transaction wholly unrelated to the dispute between Swift Aviation Group and Mansel Oil. Swift Aviation Group had no interest in the attached funds, which belong exclusively to Swift Air. (Id.)

On April 3, 2008, a hearing was held before this Court on Swift Air's Motion to Vacate Attachment. (Shumway Decl., Exh. 11.) On April 4, 2008, this Court granted Swift Air's Motion to Vacate Attachment and ordered the release of the funds. (Shumway Decl., Exh. 12.)

On April 4, 2008, Plaintiff attached another EFT to Swift Air for $49,300.  Again, Swift Aviation Group had no interest in the attached funds. (Shumway Decl., ¶ 19.)

On April 9, 2008, Plaintiff submitted to this Court a Stipulation and Order Directing Release of Certain Attached Funds ("Stipulation") signed by Plaintiff, Defendant Swift Aviation Group and Swift Air memorializing their agreement to release the two EFTs destined to Swift Air that had been attached.  On April 14, 2008, this Court "so ordered" the parties' Stipulation.  (Shumway Decl., Exh. 13.)

### Proposed Complaint Against All of Defendant's Subsidiaries

On April 4, 2008, Plaintiff originally sought to proceed by way of Order to Show Cause on an expedited briefing and hearing schedule.  This Court, however, ruled that Plaintiff's application for an order to show cause why plaintiff should not be granted leave to file an amended complaint; an amended order of attachment; and an order deeming any funds presently attached under the Court's prior order of February 5, 2008 ("Attachment Order"), as being attached pursuant to the amended order should be denied.   (Shumway Decl., Exh. 14.)

As a result, Plaintiff opted to present the Motion to Amend seeking the same relief, which Defendant Swift Aviation Group strenuously opposes.  In its Proposed Amended Complaint dated April 7, 2008, Plaintiff reiterates the causes of action for the alleged breaches of the maritime charter party agreements it asserts against Defendant in the original Complaint, but it now also seeks to assert these claims against all four subsidiaries of Defendant.  Plaintiff conclusorily alleges that the SAG Subsidiaries are alter egos of Defendant Swift Aviation Group and of each other.  (Am. Compl. ¶¶ 9, 14, 20.)  As explained below, these allegations are baseless.

# ARGUMENT

### I.  BECAUSE THIS ENTIRE ACTION SHOULD BE STAYED PENDING THE LONDON ARBITRATION, LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED

Section 3 of the FAA establishes the broad principle that where, as here, "[a] suit or proceeding [is] brought . . . upon an[] issue referable to arbitration . . ., the court . . . <u>shall on application of one of the parties stay the trial of the action until such arbitration has been had</u> in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3 (emphasis added).

Consistent with Section 3 of the FAA, Section 8 further provides, specifically in connection with maritime actions, that:

> [if] the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by . . .  seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, <u>and the court shall then have jurisdiction to direct the parties to proceed with the arbitration</u> and shall retain jurisdiction to enter its decree upon the award.

9 U.S.C. § 8 (emphasis added).  [Add Section 8 cases.]

As the Supreme Court has held on several occasions, the FAA expresses a robust Congressional policy in favor of arbitration.  <u>See, e.g.</u>, <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983).  The Second Circuit has positively endorsed the "strong federal policy favoring arbitration as an alternative means of dispute resolution."  <u>Oldroyd v. Elmira Sav. Bank, FSB</u>, 134 F.3d 72, 76 (2d Cir. 1998) (citation omitted).[4]

---

[4]  These policy considerations apply with equal vigor in the shipping context.  <u>See</u> <u>Vimar Seguros y Reaseguros, S.A., M/V Sky Reefer</u>, 515 U.S. 528, 539 (1995) (holding that the FAA "requires enforcement of arbitration agreements in . . . interstate commerce . . . and in maritime transactions") (citation omitted).  As this Court stated in <u>G.R.E. Talbot Bird & Co. v. M/V Dimitris Levantakis</u>, No. 86 CIV. 2035, 1988 WL 120428 (S.D.N.Y. Nov. 3, 1988), "[t]he parties, familiar with the vicissitudes of shipping, prudently provided for a mechanism to resolve any disputes that might arise.  Arbitration, the mechanism chosen by the parties, certainly provides an

*(cont'd)*

**A.     Plaintiff's Freight and Demurrage Claims Should Be Stayed
        Because They Are Subject to Arbitration**

Plaintiff admits that both the Overseas Limar Charter and the Torm Sofia Charter provide for arbitration of disputes between the parties in London. (Compl. ¶¶ 6, 11.)[5] Furthermore, Plaintiff concedes that "[t]he disputes ultimately at issue here arise under [the] two maritime charter parties" and that "Mansel's claims here . . . are ripe and ready for arbitration in London." (Plaintiff's Mem. of Law in Opp. to Motion of Swift Air to Vacate Attachment at 4 and 12). In its proposed Amended Complaint, Plaintiff reiterates the claims for alleged freight and demurrage charges made in the original Complaint.

While Plaintiff was entitled to commence litigation by way of a complaint, under Section 8 of the FAA such litigation must now be stayed. Section 8 of the FAA provides that "notwithstanding anything herein to the contrary [i.e., the Act's making arbitration clauses in maritime contracts enforceable], the party claiming to be aggrieved may begin his proceeding . . . by . . . seizure of . . . property of the other party according to the usual course of admiralty proceedings." 9 U.S.C. § 8. However, consistent with Section 3 of the FAA, Section 8 preserves the obligation of federal courts to enforce arbitration agreements, providing that "the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award." 9 U.S.C. § 8 (emphasis added).

As the Supreme Court has held, under Section 8 of the FAA "Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional

_____

*(cont'd from previous page)*

appropriate forum in which to resolve a dispute of this nature." Id. at *3. [Add cases on enforcement of arbitration agreement in maritime cases.] In that case, the Court stayed the litigation pending the results of an arbitration in London.

[5]     The Plaintiff's Complaint states as follows: "The TORM Sofia Charter provides for arbitration of disputes in London, England." (Compl. ¶ 6.) Similarly, the Complaint also states that the Overseas Limar Charter provides for arbitration of disputes in London, England. (Compl. ¶ 11.)

admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in court." Anaconda v. Am. Sugar Refining Co., 322 U.S. 42, 46 (1944).

The FAA leaves no discretion with the district court to decide not to stay the proceedings. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985) (ruling that the FAA leaves no discretion and mandates that district courts direct the parties to arbitrate issues as to which an arbitration agreement has been signed). As the Second Circuit Court of Appeals held in Seguros Banvenez v. S/S Oliver Drescher, 761 F.2d 855, 862 (2d Cir. 1985), it is an error to deny a motion to stay litigation while parties are trying to resolve a dispute through arbitration. This Court has also held that a "refusal to stay the federal action would thwart the pronounced federal policy in favor of arbitration." Dale Metals Corp. v. Kiwa Chem. Indus. Co., 442 F. Supp. 78, 82 (S.D.N.Y. 1977) (granting stay pending arbitration where various defendants were claimed to share responsibility for alleged wrongdoings but in an arbitration between two parties every issue that was raised in the action would be pressed, and thus stay was appropriate).

**B.     Plaintiff's Alter Ego Claims Should Also Be Stayed
Because Primary Liability Must First and Foremost
Be Determined in the London Arbitration**

Insofar as Plaintiff's newly-minted alter ego and veil-piercing allegations are concerned, these are premature and should be stayed pending the arbitration of Plaintiff's claims.

This Court has previously held that it makes little sense to litigate potential alter ego liability before resolving questions of primary liability in arbitration. In Limonium Maritime, S.A. v. Mizushima Marinera, S.A., 961 F. Supp. 600 (S.D.N.Y. 1997), this Court ruled that it was a "common sense approach" to require the parties to "arbitrate their dispute and resolve [the defendant's liability], if any, before the question of alter egos is litigated." Id. at 610 (emphasis added). In Limonium Maritime, the Court endorsed the following comments made in

11

dicta earlier in the case by Judge Walls as "demonstrating a great deal of common sense":

> [T]his court declines to decide the alter ego issue. First, the Court believes that it would [be] premature to adjudicate the issue because the question of Mizushima's liability remains to be determined by arbitration. If Mizushima is found not to be liable, then the alter ego issue would be moot. Moreover, if Mizushima is liable, then the alter ego issue would only need to be resolved if Mizushima lacked sufficient assets to cover the arbitral award.

Id. at 609 (citing Nissho Iwai Corp. v. Mizushima Marinera S.A., No. 95-3771, slip op. at 11

(D.N.J. Apr. 23, 1996)). Accordingly, the Court stayed all alleged alter ego claims against a

large number of potential additional defendants pending the arbitration of the claims brought by

the charterer against its co-contracting party.[6] A stay of Plaintiff's alter ego claims is similarly

warranted here.

### C. A Stay of All Claims Is Warranted As a Matter of Judicial Economy and to Avoid Concurrent Proceedings and Potential Contradicting Decisions

By way of this cross-motion to stay, Defendant seeks an orderly procedure

provided by the FAA and to avoid unnecessary, premature and/or simultaneous litigation of

identical issues in this Court and the London arbitration. Plaintiff's attempt (despite the

pendency of an arbitration in London) to pursue both litigation in New York and to amend its

complaint and seek an order of attachment against four entities that have nothing to do with the

parties' dispute runs roughshod over the FAA and violates basic principles of judicial economy.

It is well established that claims are appropriately stayed when involving issues of

fact and law common with those subject to arbitration. As this Court has ruled, "it would be an

inefficient use of judicial resources to permit [an] action to proceed when the Court could

---

[6]    See also Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd., 640 F. Supp. 175, 178 (S.D.N.Y. 1986). ("A stay as to claims against a non-arbitrating defendant is properly granted where the arbitration of the plaintiff's claims against a defendant party to the arbitration would at least partially determine the issues which form the basis of the claim against the non-arbitrating defendant.")

effectuate a unified proceeding by staying this action and compelling arbitration." Travelers
Indem. Co. v. M/V Mediterranean Star, No. 86 Civ. 8797, 1988 WL 78363, at *2 (S.D.N.Y. July
19, 1988) (staying maritime litigation where the defendants were likely to engage in arbitration).

Because the substantive claims under the Overseas Limar Charter and the Torm
Sofia Charter before this Court and the claims being arbitrated in London are identical, the
proceedings before this Court would substantially duplicate the arbitration.  See General Media,
Inc. v. Shooker, No. 97 Civ. 510, 1998 WL 401530, at *11 (S.D.N.Y. July 16, 1998)
("Generally, a stay of remaining claims has been found appropriate where such action would
'promote judicial economy, avoidance of confusion and possible inconsistent results and would
not work undue hardship or prejudice' against the parties.") (citation omitted).  Defendant will
suffer substantial prejudice if a stay is not entered because it will be required to litigate the same
issues simultaneously before the arbitrators and this Court.

## II.    IN ALL EVENTS, PLAINTIFFS' AMENDMENT APPLICATION SHOULD BE DENIED AS FUTILE

### A.    It Is Well Established That a Motion for Leave to Amend a Complaint Should Be Denied Where Amendment Would Be Futile

The Second Circuit Court of Appeals held in Health-Chem Corp. v. Baker, 915
F.2d 805 (2d Cir. 1990), that a motion for leave to amend a pleading should be denied where the
amendment would be futile.  Id. at 810.  Furthermore, under controlling Second Circuit
precedent, amendment is futile where the proposed amended complaint would not survive a
motion to dismiss.  See Leonelli v. Pennwalt, 887 F.2d 1195, 1199 (2d Cir. 1989) (finding that
the proposed amendment would, if permitted, be subject to a statute of limitations defense).

As demonstrated below, Plaintiff's Proposed Amended Complaint would not withstand a motion to dismiss and thus Plaintiff's Motion to Amend should be denied as futile.[7]

**B.    The Proposed Amended Complaint Fails To Adequately Allege Alter Ego, and the Amended Complaint Would Not Survive a Motion to Dismiss**

Courts do not lightly disregard the separate existence of related corporations, and a corporation is presumed to be an autonomous entity separate from its shareholders.[8]  The prerequisites for piercing a corporate veil are clear.  As the Second Circuit Court of Appeals has held, the defendant "must have used [the other company] to <u>perpetrate a fraud</u> or have so dominated and disregarded [the other company's] corporate form that [the other company] primarily <u>transacted [defendant's] personal business rather than its own corporate business</u>." <u>Kirno Hill Corp. v. Holt</u>, 618 F.2d 982, 985 (2d Cir. 1980) (emphasis added); <u>see id.</u> at 985-86 (holding that in the absence of any evidence that either of two companies controlled by the individual defendant had a stake in chartering the vessel or owned any shares in or exercised any control over the company that signed the charter party, the companies were not liable).

Here, Plaintiff does not attempt to argue that Defendant and the SAG Subsidiaries perpetrated a fraud.  Plaintiff's moving papers conspicuously omit any mention of fraud; the word "fraud" is nowhere to be found in the Proposed Amended Complaint.  As a result, Plaintiff utterly fails to satisfy the first prong of the corporate veil piercing test.

Plaintiff also fails to allege that Swift Aviation Group has so dominated the SAG Subsidiaries and disregarded corporate form that they transacted – let alone primarily transacted – the business of Defendant Swift Aviation Group rather than their own corporate business.

---

[7]    Defendant Swift Aviation Group reserves its right to bring a motion to dismiss the Plaintiff's Proposed Amended Complaint if the Court permits it to be filed.

[8]    As the Supreme Court has held, "[t]he insulation of a stock holder from the debts and the obligations of his corporation is the norm and not the exception."  <u>NLRB v. Deena Artware, Inc.</u>, 361 U.S. 398, 402-03 (1960).

Nowhere does the Proposed Amended Complaint suggest that the SAG Subsidiaries would have any reason to be involved with a maritime charter party agreement.  Nor does the Proposed Amended Complaint allege any actual involvement on the part of the SAG Subsidiaries with the Overseas Limar Charter, the Torm Sofia Charter or Mansel Oil.

Moreover, even if the enormous gulf between Plaintiff's conclusion and its spurious allegations were not fatal to Plaintiff's position – and they are – Plaintiff's position is also self-contradictory.  Plaintiff's proposed amendment to the Complaint and proposed expansion of the writ of attachment, at least vis-à-vis Swift Air, is inconsistent with the Court's April 4th Order granting Swift Air's Motion to Vacate Attachment and Plaintiff's subsequent agreement on April 9, 2008, to submit to this Court a Stipulation signed by Plaintiff, Defendant Swift Aviation Group and Swift Air memorializing the parties' agreement to release the two attached EFTs destined to Swift Air.  (Shumway Decl., Exh. 13.)

Despite this, Plaintiff persists in claiming that Swift Air is the alter ego of its parent Defendant Swift Aviation Group when the Court already dismissed Plaintiff's claim that the Swift Air funds belonged to Swift Aviation Group, holding – correctly – that Swift Aviation Group was not entitled to the funds of Swift Air. (Shumway Decl., Exh. 12.)  Although Plaintiff now resorts to manufacturing evidence out of whole cloth by claiming, incredibly, that Defendant Swift Aviation Group and Swift Air "have commingled funds" (Am. Compl. ¶ 81), the record and prior decision of this Court demonstrate that assertion to be completely baseless.

## C.    Mansel Oil's Conclusory Allegations of Control Are Woefully Inadequate and Insufficient

Plaintiff tries to deflect attention from the strictness of the veil piercing test by asserting conclusory allegations of control and dominance of Swift Aviation Group over the SAG Subsidiaries.  However, each of the supposed indicia of control alleged by Mansel Oil is

15

insufficient to justify piercing the corporate veil and, in the vast majority of instances, is refuted by the evidence provided by Jeff Shumway, Chief Financial Officer of Swift Aviation Group.

In its Proposed Amended Complaint, Plaintiff alleges common and interlocking ownership among Defendant and the SAG Subsidiaries (Am. Compl. ¶¶ 46-50). A corporation, however, is entitled to a presumption of separateness from a sister corporation even though both are owned and controlled by the same person. Crown Cent. Petroleum Corp. v. Cosmopolitan Shipping Co., 602 F.2d 474, 476 (2d Cir. 1979). In other words, the mere allegation that a subsidiary is wholly-owned by a parent, without additional evidence, "is insufficient to overcome the presumption of corporate separateness." Status Int'l S.A. v. M&D Maritime Ltd., 994 F. Supp. 182, 186 (S.D.N.Y. 1998) (vacating a maritime order of attachment against a parent company of a subsidiary party to a charter party agreement).

Plaintiff also asserts that Defendant and the SAG Subsidiaries share some overlapping officers and directors (Am. Compl. ¶¶ 21-45). The Second Circuit, however, has held that interlocking directorates are a "commonplace circumstance of modern business," and that "does not furnish such proof of control as will permit a court to pierce the corporate veil." Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988). The Court of Appeals in American Protein cited with approval the Fifth Circuit's ruling in Berger v. Columbia Broadcasting System, 453 F.2d 991, 995 (5th Cir. 1972), which held that a subsidiary's board completely comprised of employees of the parent was an insufficient basis to pierce the corporate veil.

Plaintiff further seeks to rely on the allegation that Defendant and the SAG Subsidiaries all may share office space (Am. Compl. ¶¶ 51-56). However, such allegations are merely "superficial indicia of interrelatedness [which] are not dispositive of the question whether

16

one company is an 'alter ego' of another." <u>Coastal States Trading, Inc. v. Zenith Navigation S.A.,</u>

446 F. Supp. 330, 334 (S.D.N.Y. 1977) (holding that shared office space and same business

telephone number do not provide an accurate picture of business relationships involved).

Furthermore, Plaintiff's reliance on the common address shared by Defendant Swift Aviation

Group and the SAG Subsidiaries is a non-starter because 2710 E. East Old Tower Road is the

address of a large private executive terminal on the runway of Phoenix Sky Harbor International

Airport ("Phoenix Airport Executive Terminal").  (Shumway Decl. ¶ 26.)  This address is the

address of all Phoenix-based executive charter businesses.

      Plaintiff further observes that Swift Aviation Group and Swift Air both appear to

use the federally registered service mark "Swift Aviation Group Defining Excellence."  (Am.

Compl. ¶¶ 57-61.)  However, the use of the service mark "Swift Aviation Group" is for branding

purposes and is not meant to refer to the corporation, Swift Aviation Group.  (Shumway Decl. ¶

61.)  The use by several companies of a common service mark is not an uncommon feature in the

modern commercial world.  The sharing of a service mark is an insufficient basis to allege that

one company is the alter ego of another.  The case of <u>Tripmasters, Inc. v. Hyatt Int'l Corp.,</u> 696

F. Supp. 925 (S.D.N.Y. 1988), is instructive in this regard.  It held that where:

> the New York parent played a key role in the initial financing of the subsidiary
> over whom jurisdiction was sought, approved major expenditures of the
> subsidiary, set its price guidelines, determined its dividend, <u>used a common</u>
> <u>trademark,</u> had several officers on its board, trained its general manager, shared
> research and development functions and issued a consolidated financial statement.
> . . . the relationship falls "short of that corporate intimacy which has led New
> York courts to hold that a subsidiary is a 'mere department' of the parent."

<u>Id.</u> at 937 (emphasis added) (citation omitted).

      Again in pure conclusory and gratuitous fashion, Plaintiff alleges that Defendant

and the SAG Subsidiaries were not sufficiently capitalized to purchase and trade jet fuel in the

dollar amounts and quantities at issue here (Am. Compl. ¶ 73). Leaving aside the fact that the

only relevant contracts here are the maritime charter party agreements between Plaintiff and

Defendant, Plaintiff fails to proffer any evidence of undercapitalization and thus, similar to

Fisser v. International Bank, 282 F.2d 231 (2d Cir. 1960), "this record affords no factual basis for

such a claim." Id. at 240. Furthermore, even if Plaintiff's assertion were taken as true, "the mere

fact that an entity may or may not have the capital to respond to a potential large award against it

does not justify piercing the corporate veil. " Oriental Commercial & Shipping Co. v. Rosseel,

N.V., 702 F. Supp. 1005, 1021 (S.D.N.Y. 1988). In any event, Plaintiff's assertions are

inaccurate since the SAG Subsidiaries are sufficiently capitalized. (Shumway Decl. ¶¶ 27, 34,

45 and 53.)

Because it cannot assert the claim that any of the SAG Subsidiaries primarily

transacted the business of their parent Swift Aviation Group (the party to the charter party

agreements with Mansel Oil), Plaintiff instead states, in conclusory fashion, that Defendant and

the SAG Subsidiaries "function collectively" (Am. Compl. ¶ 87). This allegation falls woefully

short of the standard required in this Circuit to pierce the corporate veil. The Second Circuit has

stated that "[t]o overcome '"the presumption of separateness" afforded to related corporations,'

Plaintiffs must come forward with the showing of actual domination required to pierce the

corporate veil." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) (citation

omitted) (holding that plaintiff's assertion of fraudulent activities by Allstate employees caused

by, known to and ratified by Sears could not be upheld because "[t]he pleadings are devoid of

any specific facts or circumstances supporting this assertion.")

Plaintiff's allegation that Defendant Swift Aviation Group and the SAG

Subsidiaries have "common . . . operations" is both insufficient and unsubstantiated (Am. Compl.

18

¶ 79). Plaintiff's attempt to rely on the fact that the web site of Defendant Swift Aviation Group offers links to the web site of its subsidiaries Swift Air and Swift Aviation Services is absurd (Id at 60). (See also Shumway Decl. ¶ 41.)  Given the widespread use of websites linking web pages of related companies, if web linking were a sufficient indication of alter ego status,[9] this would obliterate the principle of corporate separateness.

Plaintiff's purported 'proof' of the "common . . . operations" of the five companies appears to be its unsubstantiated allegation that Swift Aviation Group purchased jet fuel and gasoil for the benefit of it and other Swift entities.  This unproven statement, even if it were taken to be true, in no way proves domination.  See Spence v. Maryland Cas. Co., 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (plaintiff's complaint dismissed and defendant awarded summary judgment where parent "produced affidavits from senior vice-presidents of each corporate defendant testifying that the subsidiary was . . . a corporation separate and distinct . . . making its own decisions' regarding the products it produces and its daily business decisions, 'without the domination or control' of the parent" (first alteration in original) (citation omitted)).

As demonstrated in the accompanying Declaration of Mr. Shumway, Swift Aviation Group and the SAG Subsidiaries are separately incorporated and organized and operate independently.  (Shumway Decl.¶ 29.)  Swift Aviation Group does not interfere in the business operations of the SAG Subsidiaries and, conversely, the SAG Subsidiaries do not interfere in the business operations of their parent Swift Aviation Group.  (Shumway Decl.¶¶ 30, 39, 48, 57.) The SAG Subsidiaries conduct independent operations as follows:

---

[9]  See J.L.B. Equities, Inc. v. Ocwen Financial Corp., 131 F.Supp.2d 544, 550 (S.D.N.Y., 2001) ("An advertising strategy deciding not to present to its consumers the existence of a parent-subsidiary relationship is not equivalent to a showing that the parent corporation exercises any control over its subsidiary's operational or marketing activities.")

- <u>Swift Air</u> provides aircraft brokerage, aircraft charter, and aircraft management services for commercial and corporate aircraft owners. (Shumway Decl. ¶ 32.) It has approximately 110 employees. (<u>Id</u>. at 35.)

- <u>Swift Aviation Management</u> currently owns two corporate jets, which it places with Swift Air to manage and charter. (Shumway Decl. ¶ 42.)

- <u>Swift Aviation Services</u> operates as a "Fixed Based Operator" ("FBO") at Phoenix Sky Harbor International Airport. As an FBO, Swift Aviation Services sells and uplifts aviation fuel on a retail basis and provides aircraft catering services and various line services in addition to selling aircraft parts, performing repair and maintenance services and leasing hangar and office space. Swift Aviation Services has approximately 70 employees. (Shumway Decl. ¶¶ 50, 52.)

- <u>Swift Aviation Sales</u> is currently inactive and has been inactive for approximately three years. It formerly sold corporate jet aircraft on a retail basis but has ceased all business activity. (Shumway Decl. ¶ 59.)

The SAG Subsidiaries do not intermingle funds (Shumway Decl. ¶¶ 38, 47, 56) and each separately observes corporate formalities, including filing annual reports with the Arizona Corporation Commission (other than Swift Air which, as a limited liability company, is not required to do so). (Shumway Decl. ¶ 29.) Each of the SAG Subsidiaries is in good standing with the Commission. (Shumway Decl. ¶¶ 40, 49, 58, 60.)

Here, as in <u>In re Currency Conversion Fee Antitrust Litigation</u>, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003), Plaintiff's purely conclusory allegations cannot suffice to state a claim based on veil piercing or alter ego liability. In sum, "[t]he unadorned invocation of dominion and control is simply not enough." <u>Id.</u> [10]

---

[10]  <u>See also</u> <u>Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP</u>, No. 03 Civ. 0613, 2004 WL 112948, at *7 (S.D.N.Y. Jan. 22, 2004) ("Outside of their conclusory allegations of control, the complaint is devoid of any factual allegations to support a finding of alter-ego. "); <u>Apace Commc'ns, Ltd. v. Burke</u>, 522 F. Supp. 2d 509, 522 (W.D.N.Y. 2007) ("'The mere claim that the corporation was completely dominated by the owners, or conclusory assertions that the corporation acted as their "alter ego," without more, will not suffice to support the equitable relief of piercing the corporate veil.'") (citation omitted).

**D.    Plaintiff's Attempted Assertion of Personal Jurisdiction
Against the Defendant and the Proposed Defendants Is Unsupported**

Plaintiff's Motion to Amend should be denied because Plaintiff does not articulate

any basis to assert personal jurisdiction over Defendant and the SAG Subsidiaries.  See Jazini v.

Nissan Motor Co., 148 F.3d 181, 183 (2d Cir. 1998) (ruling that plaintiff had failed to show the

degree of domination which a foreign parent must exert over the domestic subsidiary before the

parent will be subject to personal jurisdiction solely because of the presence of the subsidiary);

Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039 (2d Cir. 1990)

(dismissing case for lack of personal jurisdiction).

**E.    This Action Should Be Dismissed on Forum Non Conveniens Grounds**

Even if personal jurisdiction over Defendant Swift Aviation Group and the SAG

Subsidiaries was properly alleged or existed, the facts overwhelmingly favor forum non

conveniens dismissal of this action.  See Pollux Holding Ltd. v. Chase Manhattan Bank, 329

F.3d 64 (2d Cir. 2003) (dismissing suit brought by Liberian corporation against London bank);

Transunion Corp. v. PepsiCo., Inc., 811 F.2d 127 (2d Cir. 1987) (dismissing action of Philippine

corporation against United States corporation for breach of contract, fraud, and RICO

violations).  See also Chubb Ins. Co. of Europe S.A. v. M/V Humboldt Express, No. 02 CV

1294, 2003 WL 22434092 (S.D.N.Y. Oct. 24, 2003) (dismissing charter party action applying

principle that a foreign plaintiff's choice of forum is entitled to a lesser degree of deference).

**F.    The Joinder of Defendant's Subsidiaries Would Be Highly Prejudicial**

In deciding whether to permit joinder of a new party, the Court should take into

account the prejudice that may be occasioned to the existing parties.  Sly Magazine, LLC v.

Weider Publications L.L.C., 241 F.R.D. 527, 532 (S.D.N.Y. 2007).  A proposed amendment

which is devoid of merit should not be permitted, thereby obviating needless, time-consuming

litigation. Likewise, here, the only practical consequence of permitting the joinder of the SAG Subsidiaries will be to add to the number of motions and other papers filed in this action, thereby increasing time and money wasted by all parties. Accordingly, Plaintiffs' Motion to Amend should be denied.

### III. AN AMENDED ORDER OF ATTACHMENT IS IMPROPER BECAUSE THE SAG SUBSIDIARIES RUN THEIR OWN BUSINESS AND HAVE NO RELATIONSHIP WITH MANSEL OIL

Plaintiff's proposed order of attachment against the SAG Subsidiaries fails to meet the requirements of Rule B because, as demonstrated above, Plaintiff's alter ego claims cannot meet the standards for amending a complaint and, therefore, these entities are not proper defendants in this action. As in Dolco Investments, Ltd. v. Moonriver Development, Ltd., 486 F. Supp. 2d 261 (S.D.N.Y. 2007), Plaintiff's "solitary allegation insufficiently alerts Defendants to the basis of its alter ego claim," id. at 272, and an order of attachment cannot issue against the SAG Subsidiaries.

Furthermore, the unpublished orders on which Plaintiff seeks to rely are inapposite. The case of Phoenix Bulk Carriers Ltd. v. Unicarbon Ltd., No. 07 Civ. 10404 (RMB) (S.D.N.Y. Feb. 13, 2008) involved an alleged "in-house maneuver between shell entities designed to [sic] avoid attachment." Here, Plaintiff does not present any argument about an illegitimate transfer of money from Swift Aviation Group to a SAG Subsidiary to avoid the attachment. Furthermore, in Phoenix Bulk Carriers, the Court denied the motion to vacate the attachment because it found that the defendant had a property interest in the attached funds – a conclusion that was squarely rejected by this Court concerning the Swift Air funds.[11]

---

[11] As stated in T&O Shipping, Ltd. v. Source Link Co., No. 06-CV-7724 (KMK), 2006 WL 3513638 (S.D.N.Y. Dec. 5, 2006), a decision on which Phoenix Bulk Carriers relies, "[o]rders of attachment are not blank checks
*(cont'd)*

Plaintiff's reliance on Tide Line, Inc. v. Eastrade Commodities, Inc., 06 CV 1979, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006) (Tide Line I) and Tide Line, Inc. v. Eastrade Commodities, Inc., 06 Civ. 1979, 2006 U.S. Dist. LEXIS 60770 (S.D.N.Y. Aug. 25, 2006) (Tide Line II) (together, the "Tide Line cases") is similarly misplaced because those cases bear no resemblance to the situation of Swift Aviation Group and the SAG Subsidiaries.  In the Tide Line cases, plaintiff alleged specific facts concerning defendants Eastrade and Transclear, which are missing in the instant case: 1- Eastrade was a shell corporation through which Transclear conducted its business; 2- Transclear operated Eastrade as its "chartering arm," such that Eastrade had no separate, independent identity from Transclear; 3- Transclear acted as paying agent for Eastrade; 4- Eastrade had no corporate existence of its own; 5- In a prior maritime attachment case against Eastrade, Transclear paid Eastrade's debts; 6 - Transclear also appointed an arbitrator on Eastrade's behalf in a 2001 arbitration where Transclear was not a party.  2006 U.S. Dist. LEXIS 95870, at *7.  For the reasons detailed above, the relationship between Swift Aviation Group and the SAG Subsidiaries is nothing like the relationship between Eastrade and Transclear.  Accordingly, the Tide Line cases are inapposite.

## IV.    AN ATTACHMENT SHOULD NOT RELATE BACK

Plaintiff seeks to retroactively apply this Court's Order of Attachment against the assets of the SAG Subsidiaries.  This incredible request flies in the face of the decision of this Court which vacated the attachment of the assets of Swift Air, which was found to be a separate and independent entity.  This Court already has ruled that Swift Aviation Group does not have a property interest in the assets of Swift Air, and the same holds true with respect to the other SAG

---

*(cont'd from previous page)*
by which a maritime plaintiff can attach the funds of entities that are not named as defendants."  T&O Shipping, 2006 WL 3513638, at *6.

Subsidiaries. Plaintiff's veiled attempt to revisit this Court's decision under the guise of amending the Complaint should be rejected at once.

Even if this Court were so inclined to entertain Plaintiff's request for an amended Order, Defendant respectfully submits that the published decision of this Court in T&O Shipping reflects the correct view of the law that attachments should not be given retroactive effect. Reviewing the "history of maritime attachment, especially with respect to concerns of due process," the T&O Shipping Court traced the efforts "to bring the process of maritime attachment in line with modern conceptions of due process." Id. at *5. These efforts, it stated, "were circumvented by Plaintiff, and therefore, the attachment [could not] survive minimal due process scrutiny." Id.

In sharp contrast are the cases on which Plaintiff seeks to rely, which are both wrong in their interpretation of Rule B and clearly factually distinguishable. Phoenix Bulk Carriers involved allegations that the defendant had made an illegitimate transfer of funds to the proposed additional defendant in order to avoid the attachment. See Phoenix Bulk Carriers, at *3. Nothing of the sort is even alleged to have occurred here. The Tide Line cases involved a proceeding in which the suggested additional defendant had no separate independent identity of its own, had acted as the company's paying agent, and had no identifiable assets, employees or office. See Tide Line I, at *3. Again, the Tide Line cases fail to offer a useful comparison.

Significantly, this Court also found in T&O Shipping that "Plaintiff's failure to name Source Link Shipping in this action is puzzling, and should not be excused at the expense of Defendant's due process rights." Id. at 6. This is consistent with the principle behind Federal Rule of Civil Procedure 15(c) – the application of which is preserved by Rule A(2) of the Supplemental Rules for Maritime Claims – allowing the amendment of a pleading to "relate

back" only where the plaintiff made a mistake in its original pleading.  <u>Tapia-Ortiz v. Doe</u>, 171

F.3d 150, 152  (2d Cir. 1999); <u>Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.</u>, No.

96 CIV 1829, 2001 WL 1286989, at *8 (S.D.N.Y. Oct. 4, 2001).  Here, Plaintiff's decision to

amend its complaint is not the result of any error but is a strategic choice.


### CONCLUSION

For all the foregoing reasons, Defendant respectfully submits that this Court stay

the instant litigation pending arbitration and deny Plaintiff's Motion to Amend.

Dated: New York, New York
     April 21, 2008

                                  Respectfully submitted,

                                  *Julie Bédard*

                                  John L. Gardiner
                                  Julie Bédard
                                  SKADDEN, ARPS, SLATE,
                                      MEAGHER & FLOM LLP
                                  Four Times Square
                                  New York, New York 10036
                                  (212) 735-3000
                                  <u>John.Gardiner@skadden.com</u>
                                  <u>Julie.Bedard@skadden.com</u>
                                  Attorneys for Defendant