UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MANSEL OIL LIMITED,

                              :

                    Plaintiff,             **ECF CASE**

                              :

   - against -             08 Civ. 1086 (GBD)

                              :

SWIFT AVIATION GROUP, INC.,     Electronically Filed

                              :

                Defendant.      **DECLARATION OF JEFF A.**
                                        **SHUMWAY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF ARIZONA       )
                               ) ss.:
COUNTY OF MARICOPA    )

JEFF A. SHUMWAY, being duly sworn, deposes and says:

1.      I am the Chief Financial Officer of Swift Aviation Group, Inc. ("Swift Aviation Group"), the Defendant in the above-captioned action. I have personal knowledge of the facts and circumstances set forth in this Declaration. I submit this Declaration in support of Swift Aviation Group's Cross-Motion to Stay Claims in Favor of Arbitration; and also in support of its Opposition to the Motion of Plaintiff Mansel Oil Limited ("Mansel Oil") for Leave to File an Amended Complaint; to Issue Amended Order of Attachment; and to Attach the Funds Presently Attached Pursuant to the Amended Order.

### Charter Party Agreements Between Plaintiff and Defendant

2.      On or about June 11, 2007, Plaintiff entered into a charter party agreement (the "Overseas Limar Charter"), whereby Plaintiff chartered the M/V Overseas Limar (the "Overseas

Limar") to Swift Transportation Co., Inc. ("Swift Transportation").  By Addendum dated

September 9, 2007, Plaintiff, Swift Transportation and Defendant Swift Aviation Group agreed

that Defendant would replace Swift Transportation in the Overseas Limar Charter.  Since the

execution of this Addendum, Swift Transportation has had no further involvement with the

Overseas Limar Charter.  A copy of the Overseas Limar Charter is attached hereto as Exhibit 1.

3.       On or about August 23, 2007, Plaintiff entered into a separate charter party

agreement (the "Torm Sofia Charter"), whereby Plaintiff chartered the M/V Torm Sofia (the

"Torm Sofia") to Swift Transportation.  By Addendum dated September 12, 2007, Plaintiff,

Swift Transportation and Defendant Swift Aviation Group agreed that Defendant would replace

Swift Transportation in the Torm Sofia Charter.  Again, subsequent to this Addendum, Swift

Transportation has had no further involvement with the Torm Sofia Charter.  A copy of the Torm

Sofia Charter is attached hereto as Exhibit 2.

4.       Thus, Defendant Swift Aviation Group and Plaintiff Mansel Oil are the only

parties to the Overseas Limar Charter and the Torm Sofia Charter.

5.       Both the Overseas Limar Charter and the Torm Sofia Charter provide that any

dispute between Mansel Oil and Swift Aviation Group is to be resolved through arbitration in

London, under English law.

**<u>The Dispute and the London Arbitration</u>**

6.       A dispute has arisen between the parties concerning Mansel Oil's invoicing of

certain freight and demurrage charges.

7.       On January 16, 2008, Mansel Oil wrote a letter to Swift Aviation Group claiming

that the sum of $533,046.33 was due under the Torm Sofia Charter for freight and demurrage

charges, and the sum of $73,239.59 was due under the Overseas Limar Charter for demurrage

charges.  Mansel Oil alleges a total debt purportedly due under the two charter parties in the amount of $606,285.92.  A copy of the January 16, 2008 letter is attached hereto as Exhibit 3.

8.      In a Complaint filed on February 1, 2008, Plaintiff alleges that Defendant failed to pay the above sum purportedly in breach of its obligations under the Overseas Limar Charter and Torm Sofia Charter.  In addition to the demurrage charges purportedly owed under the Overseas Limar Charter, Plaintiff seeks interest in the amount of $11,718.33, allegedly recoverable arbitral costs of $50,000, and allegedly recoverable legal expenses also of $50,000, totaling allegedly recoverable interest and expenses of at least $111,718.33.  Plaintiff's total claims for the Overseas Limar Charter are $184,957.93.  Similarly, under the Torm Sofia Charter, in addition to the purportedly owed freight and demurrage charges, Plaintiff seeks allegedly recoverable interest of $85,287.42, allegedly recoverable arbitral costs of $75,000, and allegedly recoverable legal expenses of $200.00, amounting to allegedly recoverable interest and costs of at least $360,287.42.  The total amount of Plaintiff's claims under the Torm Sofia Charter is $893,333.75.  Plaintiff therefore alleges a total debt purportedly due under both charter parties in the amount $1,078,291.67.  A copy of Plaintiff's Complaint is attached hereto as Exhibit 4.

9.      On March 17, 2008, Defendant filed its Answer to Plaintiff's Complaint denying Plaintiff's claims in their entirety (Answer ¶¶ 4-15) and raising five affirmative defenses:  (1) Plaintiff's allegations fail to state any claim upon which relief may be granted; (2) Plaintiff's claims must be determined by the arbitral tribunal duly appointed under the Torm Sofia Charter and the Overseas Limar Charter; (3) Plaintiff's claims before this Court must be dismissed or stayed until arbitration has been held in accordance with the terms of the Torm Sofia Charter and the Overseas Limar Charter; (4) this Court should decline jurisdiction over the Plaintiff's action under its inherent and discretionary power to dismiss a suit on *forum non conveniens* grounds; (5)

this Court does not have personal jurisdiction over Defendant and therefore the Court must dismiss Plaintiff's action. (Answer ¶ 16-21.) A copy of Defendant's Answer is attached hereto as Exhibit 5.

10.     On February 5, 2008, an Order was given by this Court scheduling the initial pretrial conference for May 1, 2008. A copy of this Order is attached hereto as Exhibit 6.

11.     On March 26, 2008, Mansel Oil formally commenced a maritime arbitration against Swift Aviation Group by way of letter, with the subject line "MV 'Overseas Limar' – charterparty dated 11 July 2007 between Mansel Oil Limited and Swift Aviation Group Inc. ('Swift'), (the 'Charterparty')." ("Notice of Commencement of Maritime Arbitration") The Notice of Commencement of Maritime Arbitration states as follows in relevant part: "Unfortunately Swift have failed to pay sums under the Charterparty. Therefore pursuant to clause 10 of the additional clauses to the Charterparty, our client hereby elects to resolve the current dispute by arbitration in London according to English law." Plaintiff also appointed its arbitrator in its Notice of Commencement of Maritime Arbitration. A copy of Plaintiff's Notice of Commencement of Maritime Arbitration is attached hereto as Exhibit 7.

12.     On April 16, 2008, Defendant appointed its arbitrator.

13.     An evidentiary hearing should scheduled to be held in London in the next few weeks.

### Process of Maritime Attachment Against Defendant

14.     In the meantime, on February 5, 2008, Mansel Oil obtained an Order from this Court that a Process of Maritime Attachment and Garnishment issue pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims "against all tangible or intangible property belonging to, claimed by, or being held for the Defendant by any garnishees

within this District, including but not limited to electronic funds transfers originated by, payable to, or otherwise for the benefit of Defendant." A copy of this Court's Order is attached hereto as Exhibit 8.

15.    On February 15, 2008, Plaintiff attached an electronic funds transfer ("EFT") in the amount of $118,136.00 from Elite Jet, Ltd., a Canadian entity, to Swift Air, L.L.C., an Arizona limited liability company ("Swift Air"). Swift Air, a subsidiary of Swift Aviation Group, is a company operating an air transportation charter business. The funds were restrained by Bank of America.

16.    On March 24, 2008, Swift Air filed a Motion to Vacate Attachment showing that while Swift Aviation Group and Swift Air are related companies, they operate independently and separately from one another. In its Motion, Swift Air further demonstrated that the attached EFT was a debt owed to Swift Air by one of its customers for air transportation services rendered by Swift Air, a transaction unrelated to any of the transactions between Swift Aviation Group and Mansel Oil. A copy of Swift Air's Motion to Vacate Attachment is attached hereto as Exhibit 9. Swift Aviation Group had no interest in the attached funds, which belong exclusively to Swift Air. A copy of the declaration I submitted in support of Swift Air's Motion to Vacate Attachment is attached hereto as Exhibit 10.

17.    On April 3, 2008, a hearing was held before this Court on Swift Air's Motion to Vacate Attachment. A copy of the transcript of this hearing is attached hereto as Exhibit 11.

18.    On April 4, 2008, this Court granted Swift Air's Motion to Vacate Attachment and ordered Bank of America to immediately release the restrained funds. A copy of this Order is attached hereto as Exhibit 12.

19.     On April 4, 2008, Plaintiff attached another EFT to Swift Air in the amount of $49,300.  Again, Swift Aviation Group had no interest in the attached funds, which belong exclusively to Swift Air.

20.     On April 9, 2008, Plaintiff submitted to this Court a Stipulation and Order Directing Release of Certain Attached Funds ("Stipulation") signed by Plaintiff, Defendant Swift Aviation Group and Swift Air memorializing the parties' agreement to release the two EFTs destined to Swift Air that had been attached.  Plaintiff counsel's letter to this Court reads as follows in relevant part:  "I am pleased to attach a stipulation signed by Plaintiff, Defendant Swift Aviation Group, Inc., and Intervenor Swift Air, L.L.C. which resolves the disputes concerning 1) the attachment of $118,136 at Bank of America, which was the subject of Swift Air's motion to vacate and 2) the attachment on April 4 of $49,300 which had not yet become the subject of a motion.  The Stipulation renders moot the request made in my letter to the Court of April 4 that the Court reconsider its Order of April 4 vacating the attachment of $118,136."   A copy of Plaintiff's counsel's letter and the Stipulation is attached hereto as Exhibit 13.

21.     On April 14, 2008, this Court so ordered the parties' Stipulation.

**Proposed Amended Complaint**

22.     On April 4, 2008, Plaintiff's application for an order to show cause why Plaintiff should not be granted leave to file an amended complaint, an amended order of attachment, and an order deeming any funds presently attached under the Court's prior order of February 5, 2008, as being attached pursuant to the amended order, was denied by this Court.  A copy of this Order is attached hereto as Exhibit 14.

23.     In its proposed Amended Complaint dated April 7, 2008 ("Proposed Amended Complaint"), Plaintiff reiterates the causes of action for alleged breaches of the maritime charter

party agreements it asserted against Defendant Swift Aviation Group in the original complaint, but now also seeks to assert these claims against all the subsidiaries of Defendant Swift Aviation Group, namely Swift Air, Swift Aviation Management, Inc. ("Swift Aviation Management"), Swift Aviation Services, Inc. ("Swift Aviation Services"), and Swift Aviation Sales, Inc. ("Swift Aviation Sales") (together, the "SAG Subsidiaries").  Plaintiff alleges that the SAG Subsidiaries are alter egos of Defendant Swift Aviation Group and of each other.  (Am. Compl. ¶¶ 9, 14, 20.)  As explained more fully below, these allegations are baseless.

### Swift Aviation Group

24.    Swift Aviation Group is the parent corporation of the SAG Subsidiaries.

25.    Swift Aviation Group has no other subsidiaries.  Plaintiff Mansel Oil seeks to add as new Defendants to its action against Defendant Swift Aviation Group each and every one of Defendant's subsidiaries.

26.    Swift Aviation Group is organized under and pursuant to the laws of the State of Arizona, with its principal place of business located at 2710 E. East Old Tower Road, Phoenix, Arizona, 85034.  The address 2710 E. East Old Tower Road is the address of a large private executive terminal on the runway of Phoenix Sky Harbor International Airport ("Phoenix Airport Executive Terminal").  A copy of Swift Aviation Group's Articles of Incorporation is attached hereto as Exhibit 15.

27.    Swift Aviation Group is fully capitalized.

28.    Swift Aviation Group has its own Officers and Board of Directors.

29.    As more fully described below, although Swift Aviation Group is the parent corporation of the SAG Subsidiaries, these companies are separately incorporated and organized in the State of Arizona, and they operate independently of each other.  They all observe corporate

formalities, including the filing of their annual reports with the Arizona Corporation Commission (other than Swift Air which, as a limited liability company, is not required to file an annual report with the Commission). Each of the SAG Subsidiaries is in good standing with the Commission.

30.    Swift Aviation Group does not interfere in the business operations of the SAG Subsidiaries.

**<u>Swift Air</u>**

31.    Swift Air operates an air transportation charter business and holds certificates issued by the Federal Aviation Administration under Parts 121 and 135 of the Federal Aviation Regulations.

32.    Swift Air provides aircraft brokerage, aircraft charter, and aircraft management services for commercial and corporate aircraft owners. It does not own any aircraft but is licensed to charter commercial and corporate aircraft. Swift Air operates three Boeing 737-400 aircraft and several corporate jets, including two jets owned by Swift Aviation Management. Approximately ten professional sports teams enter into seasonal charter contracts with Swift Air to travel to and from their "away games." Other clients of Swift Air include owners of corporate jet aircraft, which place their aircraft on Swift Air's Part 135 Certificate. Swift Air provides aircraft management, maintenance oversight and crew to operate these aircraft. It also charters these aircraft to third parties.

33.    Swift Air maintains a separate place of business from Swift Aviation Group and the other SAG Subsidiaries and is headquartered at 2406 S. 24th Street, Suite E-100, Phoenix, Arizona 85034. Although Swift Air maintains additional offices at the same address as the Swift Aviation Group and other SAG Subsidiaries (which is at the Phoenix Airport Executive Terminal,

since it must be located at the airport to conduct its charter business), Swift Air's offices are separate from those of Swift Aviation Services.

34.     Swift Air is fully capitalized.

35.     Swift Air has its own officers and personnel.  It has approximately 110 employees all of whom, other than a few top management employees, perform no duties whatsoever for the Defendant or any other SAG Subsidiary.

36.     Swift Air makes its own business decisions.

37.     Swift Air is an independent profit center.

38.     Swift Air does not intermingle funds with Swift Aviation Group or with any other SAG Subsidiary.

39.     Swift Air does not interfere in the business operations of Swift Aviation Group or the other SAG Subsidiaries.

40.     Swift Air is in good standing with the Arizona Corporate Commission.  Swift Air's File Number L-1199442-6 and Certificate of Good Standing are attached hereto as Exhibits 16 and 17, respectively.

41.     Swift Air's charter fleet and aircraft management services are described at http://www.flyswiftair.com/.  A copy of Swift Air's web page is attached hereto as Exhibit 18.  A link to Swift Air's web page is provided at http://www.swiftaviationgroup.com/.

**Swift Aviation Management**

42.     Swift Aviation Management currently owns two corporate jets which it places with Swift Air to manage and charter.

43.     Contrary to Plaintiff's assertions, Swift Aviation Management is not a member of Swift Air, and it does not own Swift Air.  (Proposed Amended Complaint, ¶¶ 45, 50.)  Swift

Aviation Management is the designated manager of Swift Air but does not provide any management to Swift Air, as management decisions have been delegated to Swift Air's officers.

44.    Swift Aviation Management is headquartered at 2710 E. Old Tower Road, Phoenix, Arizona 85034.

45.    Swift Aviation Management is fully capitalized.

46.    Swift Aviation Management makes its own business decisions.

47.    Swift Aviation Management does not intermingle funds with Swift Aviation Group or with Swift Air or any other SAG Subsidiary.

48.    Swift Aviation Management does not interfere in the business operations of Swift Aviation Group or the other SAG Subsidiaries.

49.    Swift Aviation Management is in good standing with the Arizona Corporate Commission.   Swift Aviation Management's File Number 1121315-0 and Certificate of Good Standing are attached hereto as Exhibits 19 and 20, respectively.

### Swift Aviation Services

50.    Swift Aviation Services operates as a "Fixed Based Operator" ("FBO") at Phoenix Sky Harbor International Airport.  It owns and operates a private air terminal and leases the land on which the terminal sits as well as the adjacent parking areas, tarmac and taxi-ways from the City of Phoenix.  As an FBO, Swift Aviation Services sells and uplifts aviation fuel on a retail basis, provides aircraft catering services and various line services in addition to selling aircraft parts, performing repair and maintenance services and leasing hangar and office space.  There are only two FBOs at Phoenix Sky Harbor International Airport, and Swift Aviation Services is one of them.

51.    For obvious reasons, Swift Aviation Services is headquartered at the Phoenix Airport Executive Terminal.  Although Swift Aviation Group and Swift Air are located at this address, Swift Aviation Services maintains separate offices.

52.    Swift Aviation Services has approximately 70 employees none of which, except a few top management personnel, are shared with Swift Air or any other SAG Subsidiary.

53.    Swift Aviation Services is fully capitalized.

54.    Swift Aviation Services has its own officers and directors and makes its own business decisions.

55.    Swift Aviation Services is an independent profit center.

56.    Swift Aviation Services does not intermingle funds with Swift Aviation Group or with any other SAG Subsidiary.

57.    Swift Aviation Services does not interfere in the business operations of Swift Aviation Group or the other SAG Subsidiaries.

58.    Swift Aviation Services is in good standing with the Arizona Corporate Commission.  Swift Aviation Services' File Number 022-4861-9 and Certificate of Good Standing are attached hereto as Exhibits 21 and 22, respectively.

**Swift Aviation Sales**

59.    Swift Aviation Sales currently is inactive and has been inactive for approximately three years.  It formerly sold corporate jet aircraft on a retail basis but has ceased all business activity.

60.    Swift Aviation Sales is in good standing with the Arizona Corporate Commission.  Swift Aviation Sales' File Number 1027226-6 and Certificate of Good Standing are attached hereto as Exhibits 23 and 24, respectively.

### Use of the Swift Aviation Group Mark

61.      The term "Swift Aviation Group" is a federally registered service mark.  Its use by Swift Aviation Group and by the SAG Subsidiaries is not meant in any way to refer to the corporation, Swift Aviation Group.

### The SAG Subsidiaries Have No Relationship to Mansel Oil

62.      As noted earlier, the impugned charter party agreements are between Swift Aviation Group and Mansel Oil alone.  None of the SAG Subsidiaries is a party to the Torm Sofia Charter or the Overseas Limar Charter.  Nor are they otherwise involved with dealings between Swift Aviation Group and Mansel Oil.

Dated: Phoenix, Arizona
        April 21, 2008

Jeff A. Shumway

Sworn to before me this
21st day of April, 2008.

Notary public

12

# Exhibit 1

## Ewan Warren

| | |
|---|---|
| **From:** | Nick Mahoney |
| **Sent:** | 30 August 2007 12:31 |
| **To:** | xtcops |
| **Cc:** | Nick Mahoney |
| **Subject:** | OVERSEAS LIMAR/SWIFT C/P DATED 11/07/2007 |

```
-----Original Message-----
From: brokers@petrian.co.uk [mailto:brokers@petrian.co.uk]
Sent: 30 August 2007 12:31
To: Nick Mahoney
Subject: OVERSEAS LIMAR/SWIFT C/P DATED 11/07/2007


TO..: "Vitol, London"
ATTN: Nick Mahoney
FROM: PETRIAN SHIPBROKERS LLP
DATE: 30-AUG-2007 12:30
MSG.: 988185

Nick/Simon

Please see below recap

Best Regards
Simon Lane
Petrian Shipbrokers LLP


TO:     LAYMON/MATT/GEOFF  - SWIFT TRANSPORTATION INC
TO:     NICK      -        VITOL
FROM:   SIMON     -        PETRIAN SHIPBROKERS LLP

WE ARE PLEASED TO SET OUT BELOW THE FOLLOWING FIXTURE CONCLUDED YESTERDAY WITH
ALL SUBJECTS LIFTED AND IN ORDER

CP DATED:   11TH JULY 2007

ACCT:   SWIFT TRANSPORTATION INC

SHIP                     : FREJA HAFNIA
SDWT                     : 53,712 MT
DRAUGHT                  : 13.025 M
LOA                      : 185.93 M
BEAM                     : 32.227 M
BUILT                    : 2006
FLAG                     : PANAMA
CAPACITY AT 98 PCT       : 54,764.9 M3
SLOP CAPACITY AT 98 PCT  : 2.357.72 M3
SLOP TANK AVAILIABILITY  :
SBT/CBT                  : SBT
COW                      : N/A
IGS                      : YES
TPC                      : 54.36
BCM                      : 91.73
KTM                      : 49.35
TYPE OF COATINGS         : EPOXY COATED
TYPE OF COILS            : N/A
CLASS                    : NKK
DERRICKS/CRANES          : 1 X 10 TON CRANE
SCNT                     :
PCRT                     :
GRT                      : 31433 MT
TYPE OF HULL
LADEN SPEED              : 14 KNOTS WSNP
```

1

9

IMO NUMBER    : 9311036

LAST THREE CARGOES UMS/UMS/UMS

APPROVALS:   PSC/CHEVRON/BP/SHELL/EXXON

VESSEL ITINERY:   ETA OMAN 11/7 ETS 13/7 ETA FUJAIRAH
14/7 ETS FUJAIRAH 15/7, CLEANING 3.5 DAYS

OWNERS ADVISE THAT VESSEL CAN LOAD BASIS SG .8 = 47,000 MT  AND LESS ONE SLOP
TANK = 46,250 MT

IN OWNERS OPTION ACCEPTABLE TO CHARTERERS WHICH IS NOT TO BE UNREASONABLY
WITHELD

| | |
|---|---|
| SHIP | : OVERSEAS LIMAR |
| SDWT | : 46164.9 MT |
| DRAUGHT | : 12.205 M |
| LOA | : 182.9 M |
| BEAM | : 32.2 M |
| BUILT | : 1996 |
| FLAG | : MARSHALL ISLAND |
| CAPACITY AT 98 PCT | : 50,084.4M3 |
| SLOP CAPACITY AT 98 PCT | : 1,046.54 M3 |
| SLOP TANK AVAILIABILITY | : |
| SBT/CBT | : SBT |
| COW | : YES |
| IGS | : YES |
| TPC | : 50.419 MT |
| BCM | : 92.4 M |
| KTM | : 49.52 M |
| TYPE OF COATINGS | : EPOXY INTERCHEM 900 SERIES |
| TYPE OF COILS | : N/A |
| CLASS | : ABS |
| DERRICKS/CRANES | : 3 X 10 TON CRANE |
| SCNT | : 29,001.54 |
| PCRT | : 28,537.00 |
| GRT | : 28,357.00 |
| TYPE OF HULL | |
| LADEN SPEED | : 14 KNOTS WSNP |
| IMO NUMBER | : 9121003 |

LAST THREE CARGOES UMS/UMS/UMS

APPROVALS:    SHELL/EXXON BASIS SIRE/CHEVRON/SHELL/PETRONAS

ETS BANDER ABBAS 12-13/7 ETA FUJAIRAH 13-14/7 ETS FUJAIRAH 15/7 ETA KUWAIT 18/7

OWNERS ADVISE THAT VESSEL CAN LOAD BASIS SG .8 = 40,600 MT  AND LESS ONE SLOP
TANK = 40,200 MT

DECLARATION OF PERFORMING VESSEL BY 16:00 HRS LONDON ON THE 13TH JULY 2007

FOR CHOPT UPTO A FULL CARGO NDFCAPMQS
1/2 GRADES WVNS CPP CLN ULD UND 2.5 NPA
EXCL LUBES / CASING HEADS / SOLVENTS AND CHEMS

LAYCAN   18-20 JULY 2007 (00:01-23:59)

LOAD     1-2 SP AG EXCLUDING I AND I

DISCHARGE 1-2 SP USWC LA - SAN FRAN RANGE INC HAWAII
         OR
         1-2 SP WC CAMERICA

RATE     USD 2.5 MILLION 1-1    - USWC INC HAWAII
         USD 2.475 MILLION 1-1  - WCCAM

DEMMURRAGE: 30K PDPR

LAYTIME:   72 HOURS SHINC

/0

FREIGHT PAYABE BBB AND WITH A BANK COUNTERSIGNED LOI

FREIGHT PAYMENT DETAILS:
AT SIGHT IMMEDIATELY UPON COMPLETION OF DICHARGE
BY:            ELECTRONIC FUND TRANFER
TO:            JP MORGAN CHASE BANK NEW YORK
IN FAVOUR:  JPMORGAN CHASE BANK, LONDON
FOR CREDIT TO:  MANSEL OIL LIMITED
ACCOUNT NO:    GB90CHAS60924223961701

ANY DELAYS AND/OR EXTRA EXPENSES INCURRING DUE AWAITING CLEARANCE BY PORT
AUTHORITIES IN THE UNITED STATES TO BE FOR CHARTS ACCT.

CHEVRON WAR RISK TO APPLY.

TAXES AND DUES CLAUSE:
--------------------------
ANY TAXES AND/OR DUES ON CARGO AND/OR FREIGHT TO BE FOR CHARTERERS ACCOUNT  AND
SETTLED DIRECTLY BY THEM.

BILL OF LADING CLAUSE:
--------------------------
FOLLOWING WORDING TO BE INSERTED IN ALL ORIGINAL BILL OF LADING ISSUED AND
PRESENTED TO MASTER: 'ALL TERMS, CONDITIONS,
LIBERTIES AND EXCEPTIONS OF  THE CHARTER PARTY INCLUDING THE ARBITRATION CLAUSE
ARE HEREWITH  INCORPORATED, AS PER CHARTER
PARTY DATED 11TH JULY 2007

SMALL CLAIMS PROCEDURE:
---------------------------
ENGLISH LAW:
FOR DISPUTES WHERE THE TOTAL AMOUNT CLAIMED BY EITHER PARTY DOES NOT  EXCEED
THE AMOUNT OF USD 50,000 THE ARBITRATION SHALL BE
CONDUCTED IN  ACCORDANCE WITH THE SMALL CLAIMS PROCEDURE OF THE LONDON MARITIME
ARBITRATORS ASSOCIATION CURRENTLY IN FORCE.

VOYAGE ORDERS:
------------------
ALL VOYAGE ORDERS AND CHANGES TO SAME TO BE SENT ON TLX OR E-MAIL NOT FAX.
CHARTERERS ARE NOT ALLOWED TO COMMUNICATE DIRECTLY WITH MASTER UNLESS
AGREEMENT GIVEN BY OWNERS.

TORM LIGHTERING/STS TRANSFER CLAUSE:
-----------------------------------------
IF LIGHTERING/STS TRANSFER OPERATION IS REQUIRED SAME ALWAYS TO BE IN
ACCORDANCE WITH OCIMF LATEST EDITION OF STS TRANSFER.
CHARTERERS TO SUPPLY  ALL FENDERS/LINES/HOSES AND ANY OTHER EQUIPMENT REQUIRED
FOR SUCH AN  OPERATION AT CHARTERERS TIME AND
EXPENSES AND ALWAYS SUBJECT TO MASTERS  APPROVAL. TIME TO COUNT IN FULL 6HRS
AFTER TENDERING NOR OR WHEN FIRST  LIGHTER VESSEL
IS ALONGSIDE, WHICHEVER EARLIER, UNTIL LAST LINE/FENDER IS  OFF AND LIGHTER
VESSEL HAS SAILED. TIME LOST DUE TO TIDE AND/OR
WEATHER  AND/OR SEA CONDITIONS TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF ON
DEMURRAGE. IF THE VESSEL IS REQUIRED TO COMPLETE
CARGO OPERATION AT A  BERTH IN PORT CHARTERERS WILL NOT HAVE THE BENEFIT OF 6
HRS NOR PRIOR  BERTHING IN PORT. CHARTERERS
WARRANT THAT THERE IS NO PROHIBITION OR  RESTRICTION ON STS OPERATION AT THE
PORT/PLACE TO CHICH THE VESSEL IS  ORDERED TO
PERFORM STS TRANSFEER AND FURTHER THAT THEY HAVE OBTAINED  ANY/ALL NECCESSARY
LOCAL APPROVALS OR LICENCES TO CARRY OUT OPERATIONS AT  THE DESIGNATED
PROT/PLACE.

TORM INTERIM PORT CLAUSE
--------------------------
CHARTERERS TO PAY FOR ADDITIONAL INTERIM LOAD/DISCH PORT
AT COST WITH ADDITIONAL STEAMING TIME TO BE INCURRED FOR
SUCH DEVIATION WHICH EXCEEDS DIRECT PASSAGE FROM FIRST
LOADPORT TO FINAL DISPORT. TIME TO COUNT FROM ARRIVAL
PILOT STATION INTERIM LOAD/DISCHARGE PORT UNTIL DROPPING
LAST OUTWARD PILOT INTERIM LOAD/DISCHARGE PORT I.E. NO

ALLOWANCE FOR NOTICE TIME, NOR DEDUCTION FOR SHIFTING
EVEN FROM ANCHORAGE TO 1ST BERTH AND NO DEDUCTION FOR
TIME LOST DUE TO WEATHER CONDITIONS.
DEVIATION AND TIME USED TO BE CALCULATED AT DEMURRAGE
RATE PER DAY PRO RATA PLUS COSTS FOR ADDITIONAL BUNKERS
CONSUMED AS PER MASTERS INVOICE PRESENTED BY OWNERS.
DEVIATION, TIME USED, BUNKERS CONS BUNKERS CONSUMED AND PORT COSTS
AS PER AGENTS PROFORMA D/A TO BE PAID TOGETHER WITH
FREIGHT AS PER OWNERS TELEXED INVOICE, WHICH LATER
TO BE SUPPORTED BY HARD COPY DOCUMENTATION.

TRAFIGURA TERMS AND BPVOY AS AMENDED
====================================

B P VOY 3 AS AMENDED
--------------------

- SPEED ABT 14 KTS WSNP
- DELETE LINE 51-63
- LINE 66 INSERT 'HOWEVER THE SAFETY OF SAME ALWAYS TO BE AT MASTERS
  DISCRESTION, WHICH NOT TO BE UNREASONABLY WITHELD' AFTER 'CHTS'
- LINE 74 ADD 'UNLESS SO STIPULATED BY WORLDSCALE'
- LINE 74 INSERT AFTER 'SEA' WHICH SUBJECT TO MASTERS APPROVAL WHICH
  NOT TO BE UNREASONABLY WITHELD'
- LINE 79 ADD 'LAYTIME TO COMMENCE TENDERING NOR UPON ARRIVAL AT
  LIGHTERING POSITION' DELELTE 'WHEN THE VSL IS PROPERLY TIED UP AND
  MOORED ALONGSIDE THE LIGHTERING VSL'
- LINE 116 - 133 DELETE
- LINE 136 - ADD 'UNLESS SO STIPULATED BY WS'
- LINE 146 (FREIGHT PAYMENT DETAILS SEE ABOVE)
- LINE 150 AFTER CLAUSED 8 INSERT 'SEE ALSO NO.5 OF TRAFIGURA
  CLS 1991 ATTACHED
- LINE 157 INSERT AFTER 'APPOINT TWO INDEPENDANT SURBEYORS, ONE
  APPOINTED BY CHTS AND ONE APPOINTED AND PAID FOR BY OWNERS'
- LINE 158 AFTER 'PUMPS' ADD 'PROVIDED MASTER HAS ENSURED CORRECT
  TRIM PROCEDURES TO MAXIMISE CARGO OUTTURN'
- LINE 159 DELETE AFTER 'CHTS' AND REST OF LINE AND INSERT 'SHALL
  HAVE THE RIGHT TO CLAIM FROM OWNERS AN AMOUNT EQUAL TO'
- LINE 162 DELETE 'DEDUCTION FRM FRT' INSERT 'A CLAIM'
- LINE 164 DELETE INSERT 'THAN THEIR QUANTIFIED CLAIM'
- LINE 192 - 201 DELETE
- LINE 203 INSERT 'TAXES AND/OR DUES IN CGO AND/OR FRT TO BE FOR
  CHTS ACCOUNT AND SETTLED DIRECTLY BY THEM'
- LINE 220 AFTER 'MANIOFOLD' INSERT 'EXCEPT WHEN STRIPPING'
  LINE 220 INSERT 'AVERAGE' BEFORE 'PRESSURE OF'
- LINE 244 INSERT ' JULY 18TH 2007'
- LINE 245 INSERT 'JULY 20TH 2007'
- LINE 256 DELETE '96 HRS' INSERT '48 HRS - SUNDAY AND HOLIDAYS
  EXCLUDED'
- LINE 264 INSERT '72'
- LINE 269 DELETE AFTER 'DISCHARGING' UNTIL 'CHTS' IN LINE 270
- LINE 274 DELETE 'RECEIVED' AND INSERT 'TENDERED'
- LINE 275 DELETE 'FROM' INSERT 'BY'
- LINE 276 DELETE FROM 'COMMENCES...' UNTIL 'PLACE' INSERT 'ALL
  FAST'
- LINE 303 AFTER 'PEOPLES' INSERT 'AND ANY OTHER CLAUSE'
- CLAUSE 24 - INSERT MAXIMUM FOUR DAYS
- LINE 350-358 DELETE
- LINE 359-366 DELETE
- LINE 409-433 DELETE
- LINE 448 ADD 'IN ACCORDANCE WITH OWNERS P AND I CLUB WORDING AND
  DETAILED IN ACCORDANCE WITH APPENDIX AA AND BB HEREOF'
- LINE 459-461 DELETE
- LINE 462-476 DELETE
- LINE 477 ADD 'OWNERS TO RETURN TO CHTS 2/3 ORIGINAL B/L TOGETHER
  WITH OWNERS RECEIPT FOR 1/3 ORIGINAL B/L WITHIN 21 DAYS OF
  RECEIPT'
- LINE 520 ADD 'HOWEVER SWIFT TRANSPORTATION INC ALWAYS TO REMAIN
  RESPONSIBLE FOR THE PERORMANCE OF THIS C/P'
- LINE 521-523 DELETE
- LINE 559 ADD 'OR ANY OTHER CAUSE BEYOND CHTS CONTROL'

4

12

```
- LINE 634 INSERT AFTER '1974' WITH AS AMENDED 1990'
- LINE 683-716 DEL AND INSERT '1/ IS A TANKER OWNED BY A MEMBER OF
  THE INTERNATIONAL TANKER OWNERS POLLUTION FEDERATION LIMITED AND
  WILL SO REMAIN THROUGHOUT THE CHARTER AND 2/ IS ENTERED IN THE
  FOLLOWING P AND I CLUB (OVERSEAS LIMAR) GARD OR FREJA HAFNIA (JAPAN SHIP
  OWNERS MUTUAL PROTECTION AND IDEMNITY) AND WILL SO REMAIN UNLESS OWNERS HAVE
  GIVEN CHARTERERS PRIOR WRITTEN NOTICE FO THEIR INTENTION TO
  CHANGE.
  OWNERS WARRANT THAT THE VESSEL WILL ONLY BE ENTERED IN A P AND I
  CLUB WITHIN THE INTERNATIONAL GROUP OF P AND I CLUBS'
- LINE 717-729 DELETE

- CONOCO WEATHER CLAUSE
- HESS SHIFTING CLAUSE

TRAFIGURA CLAUSES 1-19(02.02.2001) AMENDED AS FOLLOWS:
-------------------------------------------------------

CLS 4 LINE 2 - DELETE 0.3 AND INSERT 0.5
      LINE 3 - DELETE 'DEDUCT FROM FREIGHT' AND INSERT 'CLAIM FROM
      OWNERS'
      LINE 4 - DELETE 'AND INSURANCE'
      ADD AT THE END OF CLAUSE 'IRRESPECTIVE OF ABOVE OWNRS TO
      MANTAIN ALL HAGUE VISBY RULES AND DEFENCE'
CLS 5 AFTER 'PAID' INSERT ' ON DEVIATION, ADD COMM TO BE PAID ONLY
      ON TIME ITEMIZED AS DEMURRAGE'
CLS 6 DELETE
CLS 7 DELETE
CLS 8 TO BE ADVISED PRIOR FIXING ADD AT BEGINNING 'IF REQUESTED'

CLS 9 PARA 1 DELETE LAST SENTENCE CLS 12 FIRST LINE AFTER 'THAT' INSERT
      'TO BEST OF THEIR KNOWLEDGE'
CLS 13 ADD AT END 'ANY CONTAMINATION BY VIRTUE OF
       CLEANING TO BE FOR CHARTERERS RISK'
CLS 15 7TH LINE AFTER 'CERTIFICATE' INSERT ' WHICH OWNERS SUBMIT
       CHARTERERS AS SOON AS POSSIBLE'
       8TH/9TH LINE DELETE
       12TH LINE AFTER 'ANY' INSERT 'DIRECT'
CLS 16 DELETE
CLS 18 DELETE SEE MAIN TERMS

1.25 % ADDRESS AND 1.25% PETRIAN SHIPBROKERS LLP ON FT/DFT AND DEMURRAGE

BEST REGARDS

SIMON LANE
PETRIAN SHIPBROKERS LLP
```

13

**Ewan Warren**

| | |
|---|---|
| **From:** | Nick Mahoney |
| **Sent:** | 28 August 2007 16:11 |
| **To:** | Shipping London |
| **Subject:** | OVERSEAS LIMAR/SWIFT ADDENDUM NUMBER 1 |

USG OPTION AGREED

-----Original Message-----
From: brokers@petrian.co.uk [mailto:brokers@petrian.co.uk]
Sent: 28 August 2007 16:09
To: Nick Mahoney
Subject: OVERSEAS LIMAR/SWIFT ADDENDUM NUMBER 1


TO..: "Vitol, London"
ATTN: Nick Mahoney
FROM: PETRIAN SHIPBROKERS LLP
DATE: 28-AUG-2007 16:09
MSG.: 987407

TO:    LAYMON/MATT/GEOFF
TO:    NICK
FROM:  SIMON

OVERSEAS LIMAR / SWIFT TRANSPOTATION CP DATED 11TH JULY 2007
-----------------------------------------------------------

ADDENDUM NUMBER 1
-----------------
IT HAS BEEN MUTUALLY AGREED BETWEEN BOTH PARTIES TO THE FOLLOWING ADDENDUM.

DISCHARGE
OR IN CHOPT
1/2 SP USG EXCL MISSISSIPPI RIVER VIA PANAMA

RATE
USD 2.9 MILLION 1-1

PANAMA CANAL CLAUSE
-------------------
ANY WAITING TIME FOR TRANSIT PANAMA CANAL IN LADEN CONDITION IN EXCESS OF 24
HOURS TO COUNT AS LAYTIME OR DEMURRAGE IF ON DEMURRAGE.  PREBOOKING COST FOR
PANAMA-CANAL TRANSIT IN LADEN TO BE FOR CHARTERERS ACCOUNT AND SETTLED WITH
FREIGHT.

ALL OTHER TERMS AND CONDITIONS AS PER C/P DATED 11TH JULY TO REMAIN THE SAME

END

BEST REGARDS

SIMON LANE
PETRIAN SHIPBROKERS LLP

1

14

**Ewan Warren**

| From: | Mette Praest |
|---|---|
| Sent: | 24 September 2007 10:41 |
| To: | Amine Hayek |
| Subject: | FW: OVERSEAS LIMAR/SWIFT CP 11/06/07 - ADDENDUM NO.1 - DATED 12/ |

```
-----Original Message-----
From: Nick Mahoney
Sent: 12 September 2007 16:14
To: xtcops
Cc: Nick Mahoney
Subject: FW: OVERSEAS LIMAR/SWIFT CP 11/06/07 - ADDENDUM NO.1 - DATED
12/


-----Original Message-----
From: brokers@petrian.co.uk [mailto:brokers@petrian.co.uk]
Sent: 12 September 2007 16:13
To: Nick Mahoney
Subject: OVERSEAS LIMAR/SWIFT CP 11/06/07 - ADDENDUM NO.1 - DATED 12/


TO..: "Vitol, London"
ATTN: Nick Mahoney
FROM: PETRIAN SHIPBROKERS LLP
DATE: 12-SEP-2007 16:13
MSG.: 991365

OVERSEAS LIMAR/SWIFT CP 11/06/07 - ADDENDUM NO.1 - DATED 12/09/07
==================================================

WITH REGARDS TO THE ABOVE CP IT HAS BEEN MUTUALLY AGREED TO AMEND THE
CHARTERERS STYLE TO THE FOLLOWING

CHARTERERS STYLE              : SWIFT AVIATION GROUP INC
COMPANY REGISTRATION NUMBER   : 1121306-9
CORPORATE HEADQUARTERS ADDRESS : SWIFT AVIATION GROUP INC
                                2710 EAST OLD TOWER ROAD
                                PHOENIX, AZ 85034
                                U.S.A

REGARDS
KEVIN BEATON
PETRIAN SHIPBROKERS LLP
EMAIL: BROKERS@PETRIAN.CO.UK
MAIN:   +44 207 222 9561
DIRECT: +44 207 227 0488
MOBILE: +44 7887 546622
```

15

**Ewan Warren**

| | |
|---|---|
| **From:** | brokers@petrian.co.uk |
| **Sent:** | 20 September 2007 16:37 |
| **To:** | Nick Mahoney |
| **Subject:** | OVERSEAS LIMAR/SWIFT CP 11/06/07 - ADDENDUM NO.3 - DATED 20/ |

```
TO..: "Vitol, London"
ATTN: Nick Mahoney
FROM: PETRIAN SHIPBROKERS LLP
DATE: 20-SEP-2007 16:37
MSG.: 993599

OVERSEAS LIMAR/SWIFT CP 11/06/07 - ADDENDUM NO.3 - DATED 20/09/07
=================================================

IT HAS BEEN MUTUALLY AGREED BETWEEN OWNERS AND CHARTERERS THAT THE
FOLLOWING DISCHARGE OPTIONS WILL BECOME PART OF THE SUBJECT C/P TOGETHER
WITH RELATIVE FREIGHTS AS BELOW:

DISCHARGE   1/2 SP USAC IF NYNNGWB
    OR CHOPT 1/2 SP ECCAN NWOBI MONTREAL WIWL VESSEL NOT TO FORCE ICE
                    OR FOLLOW ICE BREAKERS

FREIGHT     USAC USD 3.1 MILLION
            ECCAN USD 3.175 MILLION (USUAL WS FOR CHTRS ACC)


REGARDS
KEVIN BEATON
PETRIAN SHIPBROKERS LLP
EMAIL:  BROKERS@PETRIAN.CO.UK
MAIN:   +44 207 222 9561
DIRECT: +44 207 227 0488
MOBILE: +44 7887 546622
```

1

16

# Exhibit 2

## Ewan Warren

| | |
|---|---|
| **From:** | Nick Mahoney |
| **Sent:** | 23 August 2007 18:00 |
| **To:** | Shipping London; Freight |
| **Subject:** | TORM SOFIA/SWIFT CP DATED 23/9/07 |

final recap

-----Original Message-----
From: brokers@petrian.co.uk [mailto:brokers@petrian.co.uk]
Sent: 23 August 2007 17:58
To: Nick Mahoney
Subject: TORM SOFIA/SWIFT CP DATED 23/9/07


TO..: "Vitol, London"
ATTN: Nick Mahoney
FROM: PETRIAN SHIPBROKERS LLP
DATE: 23-AUG-2007 17:57
MSG.: 986815

TO:    NICK      -    VITOL
FROM:  SIMON     -    PETRIAN SHIPBROKERS LLP

WE ARE PLEASED TO CONFIRM THE FOLLOWING FIXTURE CONCLUDED TODAY WITH ALL
SUBJECTS LIFTED AND IN ORDER:


```
------------------------------------------------------------------
                              (TITLE)
                              -------
CHARTERERS                 : SWIFT TRANSPORTATION INC

DISPONENT OWNERS           : LR1 MANAGEMENT K/S AS AGENT TO OWNER A/S
                             DAMPSKIBSSELSKABET TORM

TIMECHARTER OWNERS         : MANSEL

CHARTER PARTY              : BP VOY 4

CP DATE                    : 23RD AUGUST 2007

------------------------------------------------------------------
                             (VESSEL)
                             --------
VESSEL        : TORM SOFIA
EX-NAME       : N/A
SDWT          : 72,718 MT
SDRAFT        : 14.022 M
LOA           : 227.832 M
BEAM          : 32.275 M
FLAG          : SINGAPORE
BUILT         : AUG 22, 2005
CLASS         : LLOYDS REGISTER
CHAIN STOPPER : 2 X 200 MT - TONGUE TYPE
CHAIN SIZE    : 78 MILLIMETRES
CUBIC 98 PCT  : 78812.6 CU. METRES
SLOP 98 PCT   : 4255.8 CU. METRES
SEGREGATIONS  : 3
PUMPS         : 3 x 2000 Cu. Metres/Hour (Centrifugal)
TPC           : 66.8 METRIC TONNES
BCM           : 113.114 Metres
KTM           : 45.65 Metres
IGS           : YES
COW           : YES
SBT/CBT       : SBT
VRS           : YES
```

1

(

```
GRT          : 41503 MT
NRT          : 20972 MT
PCNT         : 34292 MT
SCNT         : 38517.12 MT
DERRICK/CRANE: CRANES 1 X 15 METRIC TONNES
COATED       : PURE EPOXY
HULL         : DH
CALL SIGN    : 9VDG9
P AND I      : BRITANNIA

LAST 3 CARGOES         : 1) UMS
                         2) UMS
                         3) UMS

POSITON               : IN BALLAST ETA KUWAIT 5/9

APPROVALS             : TTBOOK WOG VESSEL IS NOT UNACCEPTABLE TO THE
                        FOLLOWING OIL COMPANIES
                        STATOIL/CONOCO/CSSA/BP/CHEVRON/EXXON

----------------------------------------------------------------
                        (CARGO)
                        -------

QUANTITY/GRADE        : CHOPT TO FULL CARGO - NO HEAT - NON
                        PERSISTANT CPP UNL UND 2.5, UNL
                        - MAX 2 GRDS WVNS
                        EXCL LUBES/ CASINGHEAD/ SOLVENTS/ CHEMICALS/
                        PENTHANE/ PENTHANE PLUS/ PARAFFINIC NAPHTHA

                        OWNER ADVISES VESSEL LOADS APPROX 67710.54 BASIS 13.72
                        SAILING DRAFT
----------------------------------------------------------------
                        (GEOGRAPHICAL)
                        --------------

LOADING RANGE    : 1/2 SPS AG EXCL I/I

DISCHARGE RANGE  : 1/2 SP(S) UKCONTINENT GIB/HAMBURG RGE
                   EXCL SCAN/DEN, MSC, PETERHEAD, TRANMERE, DUNDEE
                   LONDONDERRY, LYME BAY, EIRE, LIVERPOOL VIA SUEZ

                   OR CHOPT

                   1/2 SP(S) WAF ABDIJAN/DOUALA RGE
                   EXCL UN SANCTIONED COUNTRIES AND RIVER PORTS - VIA CAPE

                   OR CHOPT

                   1/2 SP(S) MED EXCL Y/FY/ALBANIA/TOC/SYRIA/LEBANON/ISRAEL
                   VIA SUEZ

                   AND/OR CHOPT

                   1/2 SP(S) USAC IF NYNNGWB VIA SUEZ

                   AND/OR CHOPT

                   1/2 SP(S) USG EXCL MISSISSIPPI RIVER VIA SUEZ

                   AND/OR CHOPT

                   1/2 SP(S) CARIBS EXCL C/O/H, CARAPITO AND LAKE MARACAIBO
                   VIA SUEZ

----------------------------------------------------------------
                        (DATES)
                        -------
```

2

2

```
LAYCAN                 : 6TH SEPTEMBER 2007 (00:01 HRS) / 8TH SEPTEMBER  2007
                         (23:59)
-----------------------------------------------------------------
                        (FINANCIAL)

FREIGHT RATE           : LUMPSUM RATES 1:1 AND INCLUSIVE OF SUEZ
                         TRANSIT WHERE APPLICABLE.ADDITIONAL PORTS PAYABLE AS
                         PER TORM INTERIM PORT CLAUSE

                         USD 1,850,000 - EAST MED NWOBI MALTA VIA SUEZ
                         USD 1,950,000 - WEST MED  VIA SUEZ
                         USD 2,100,000 - UKC VIA SUEZ
                         USD 2,600,000 - WAF VIA CAPE
                         USD 2,700.000 - USAC VIA SUEZ
                         USD 2,800.000 - CARIBS VIA SUEZ
                         USD 2,900.000 - USG VIA SUEZ

DEMURRAGE              : USD 28,500 PDPR

MAX 3 DISPORTS IN TOTAL AND MAX 2 RANGES IF COMBO
IF COMBINATION OF MED WITH TRANSATLANTIC OPTION ROTATION ALWAYS TO BE EAST TO
WEST
IF COMBINATION BETWEEN TRANSATLANTIC OPTIONS ROTATION ALWAYS TO BE NORTH TO
SOUTH AND EAST TO WEST.

-----------------------------------------------------------------
                    (TERMS)


- FREIGHT PAYABLE BBB

- BANK GUARANTEE BY COUNTERSIGNED LOI

GA/ARB LONDON ENGLISH LAW TO APPLY

LAYTIME    : 72 HRS

FREIGHT PAYMENT DETAILS:
AT SIGHT IMMEDIATELY UPON COMPLETION OF DICHARGE
BY:          ELECTRONIC FUND TRANFER
TO:          JP MORGAN CHASE BANK NEW YORK
IN FAVOUR:   JPMORGAN CHASE BANK, LONDON
FOR CREDIT TO:  MANSEL OIL LIMITED
ACCOUNT NO:   GB90CHAS60924223961701

ANY DELAYS AND/OR EXTRA EXPENSES INCURRING DUE AWAITING CLEARANCE BY PORT
AUTHORITIES IN THE UNITED STATES TO BE FOR CHARTS ACCT.

CHEVRON WAR RISK TO APPLY.

WAFR CLAUSES:
-------------

MAX PORT COSTS EACH PORT IN WAF USD 20,000 FOR OWNERS ACC.

ANY TAXES AND/OR DUES ON CARGO AND/OR FREIGHT INCLUDING BUT NOT LIMITED
TO NIGERIAN CONSERVANCY DUES, SHIP DUES, HANDLING CHARGES AND NMA LEVY
TO BE FOR CHARTERERS ACCOUNT AND SETTLED DIRECTLY BY THEM.

IF ANY VETTING ARRANGEMENT IS OR SHOULD BECOME NECESSARY TO CALL WAF
CHRTS TO ARRANGE FOR SAME AT THEIR TIME AND EXPENSE. SHOULD ANY DELAYS
BE INCURRED SAME TO BE FOR CHRTS ACCOUNT.

ANY TIME AWAITING NAVAL CLEARANCE TO BE FOR CHRTS ACCOUNT AND COUNT AS
LAYTIME OR DEMURRAGE IF ON DEMURRAGE.WATCHMEN, IF REQUIRED, TO BE FOR
CHRTS ACCOUNT.

IF THE VSL IS DELAYED BY STRIKE ACTION, CHRTRS TO PAY DEMURRAGE RATE PDPR
FOR THE DURATION OF THE STRIKE, EXCEPT FOR STRIKE BY
VSL CREW.
```

3

ANY DELAYS IN OBTAINING NIGERIAN TASK FORCE PREMISSON TO ENTER NIGERIAN
WATERS TO COUNT IN FULL AS USED LAYTIME OR DEMURRAGE IF ON DEMURRAGE.
NMA FEE IF IMPOSED NOT TO BE FOR OWNRS ACCT.  THE CHRTRS ARE TO BE
RESPONSIBLE FOR THE NMA APPROVALS.

IF DISCHARGE APAPA, CHRTRS TO ARRANGE AND PAY FOR 2 TUGS TO ASSIST
VESSEL TO MANOUVER TO AND FROM APAPA.

DEMURRAGE PAYABLE EVERY 7 DAYS ON ACCOUNT AGAINST OWNERS INVOICE WITH
FULL SUPPORTING DOCUMENTS TO FOLLOW.  AFTER 7 DAYS DEMURRAGE TO INCREASE
TO USD 32,500 PDPR FOR BALANCE OF THE PERIOD

TAXES AND DUES CLAUSE:
--------------------------
ANY TAXES AND/OR DUES ON CARGO AND/OR FREIGHT TO BE FOR CHARTERERS ACCOUNT  AND
SETTLED DIRECTLY BY THEM.

BILL OF LADING CLAUSE:
--------------------------
FOLLOWING WORDING TO BE INSERTED IN ALL ORIGINAL BILL OF LADING ISSUED AND
PRESENTED TO MASTER: 'ALL TERMS, CONDITIONS,
LIBERTIES AND EXCEPTIONS OF  THE CHARTER PARTY INCLUDING THE ARBITRATION CLAUSE
ARE HEREWITH  INCORPORATED, AS PER CHARTER
PARTY DATED 11TH JULY 2007

SMALL CLAIMS PROCEDURE:
----------------------------
ENGLISH LAW:
FOR DISPUTES WHERE THE TOTAL AMOUNT CLAIMED BY EITHER PARTY DOES NOT  EXCEED
THE AMOUNT OF USD 50,000 THE ARBITRATION SHALL BE
CONDUCTED IN  ACCORDANCE WITH THE SMALL CLAIMS PROCEDURE OF THE LONDON MARITIME
ARBITRATORS ASSOCIATION CURRENTLY IN FORCE.

VOYAGE ORDERS:
------------------
ALL VOYAGE ORDERS AND CHANGES TO SAME TO BE SENT ON TLX OR E-MAIL NOT FAX.
CHARTERERS ARE NOT ALLOWED TO COMMUNICATE DIRECTLY WITH MASTER UNLESS
AGREEMENT GIVEN BY OWNERS.

TORM LIGHTERING/STS TRANSFER CLAUSE:
----------------------------------------
IF LIGHTERING/STS TRANSFER OPERATION IS REQUIRED SAME ALWAYS TO BE IN
ACCORDANCE WITH OCIMF LATEST EDITION OF STS TRANSFER.
CHARTERERS TO SUPPLY  ALL FENDERS/LINES/HOSES AND ANY OTHER EQUIPMENT REQUIRED
FOR SUCH AN  OPERATION AT CHARTERERS TIME AND
EXPENSES AND ALWAYS SUBJECT TO MASTERS  APPROVAL. TIME TO COUNT IN FULL 6HRS
AFTER TENDERING NOR OR WHEN FIRST  LIGHTER VESSEL
IS ALONGSIDE, WHICHEVER EARLIER, UNTIL LAST LINE/FENDER IS  OFF AND LIGHTER
VESSEL HAS SAILED. TIME LOST DUE TO TIDE AND/OR
WEATHER  AND/OR SEA CONDITIONS TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF ON
DEMURRAGE. IF THE VESSEL IS REQUIRED TO COMPLETE
CARGO OPERATION AT A  BERTH IN PORT CHARTERERS WILL NOT HAVE THE BENEFIT OF 6
HRS NOR PRIOR  BERTHING IN PORT. CHARTERERS
WARRANT THAT THERE IS NO PROHIBITION OR  RESTRICTION ON STS OPERATION AT THE
PORT/PLACE TO CHICH THE VESSEL IS  ORDERED TO
PERFORM STS TRANSFEER AND FURTHER THAT THEY HAVE OBTAINED  ANY/ALL NECCESSARY
LOCAL APRROVALS OR LICENCES TO CARRY OUT OPERATIONS AT  THE DESIGNATED
PROT/PLACE.

TORM INTERIM PORT CLAUSE
--------------------------
CHARTERERS TO PAY FOR ADDITIONAL INTERIM LOAD/DISCH PORT
AT COST WITH ADDITIONAL STEAMING TIME TO BE INCURRED FOR
SUCH DEVIATION WHICH EXCEEDS DIRECT PASSAGE FROM FIRST
LOADPORT TO FINAL DISPORT. TIME TO COUNT FROM ARRIVAL
PILOT STATION INTERIM LOAD/DISCHARGE PORT UNTIL DROPPING
LAST OUTWARD PILOT INTERIM LOAD/DISCHARGE PORT I.E. NO
ALLOWANCE FOR NOTICE TIME, NOR DEDUCTION FOR SHIFTING
EVEN FROM ANCHORAGE TO 1ST BERTH AND NO DEDUCTION FOR
TIME LOST DUE TO WEATHER CONDITIONS.
DEVIATION AND TIME USED TO BE CALCULATED AT DEMURRAGE

4

*4*

RATE PER DAY PRO RATA PLUS COSTS FOR ADDITIONAL BUNKERS
CONSUMED AS PER MASTERS INVOICE PRESENTED BY OWNERS.
DEVIATION, TIME USED, BUNKERS CONS BUNKERS CONSUMED AND PORT COSTS
AS PER AGENTS PROFORMA D/A TO BE PAID TOGETHER WITH
FREIGHT AS PER OWNERS TELEXED INVOICE, WHICH LATER
TO BE SUPPORTED BY HARD COPY DOCUMENTATION.

TRAFIGURA TERMS AND BPVOY 3 AS AMENDED
======================================

B P VOY 3 AS AMENDED
--------------------

- SPEED ABT 14 KTS WSNP
- DELETE LINE 51-63
- LINE 66 INSERT 'HOWEVER THE SAFETY OF SAME ALWAYS TO BE AT MASTERS
  DISCRETION, WHICH NOT TO BE UNREASONABLY WITHELD' AFTER 'CHTS'
- LINE 74 ADD 'UNLESS SO STIPULATED BY WORLDSCALE'
- LINE 74 INSERT AFTER 'SEA' WHICH SUBJECT TO MASTERS APPROVAL WHICH
  NOT TO BE UNREASONABLY WITHELD'
- LINE 79 ADD 'LAYTIME TO COMMENCE TENDERING NOR UPON ARRIVAL AT
  LIGHTERING POSITION' DELETE 'WHEN THE VSL IS PROPERLY TIED UP AND
  MOORED ALONGSIDE THE LIGHTERING VSL'
- LINE 116 - 133 DELETE
- LINE 136 - ADD 'UNLESS SO STIPULATED BY WS'
- LINE 146 (FREIGHT PAYMENT DETAILS SEE ABOVE)
- LINE 150 AFTER CLAUSED 8 INSERT 'SEE ALSO NO.5 OF TRAFIGURA
  CLS 1991 ATTACHED
- LINE 157 INSERT AFTER 'APPOINT TWO INDEPENDANT SURBEYORS, ONE
  APPOINTED BY CHTS AND ONE APPOINTED AND PAID FOR BY OWNERS'
- LINE 158 AFTER 'PUMPS' ADD 'PROVIDED MASTER HAS ENSURED CORRECT
  TRIM PROCEDURES TO MAXIMISE CARGO OUTTURN'
- LINE 159 DELETE AFTER 'CHTS' AND REST OF LINE AND INSERT 'SHALL
  HAVE THE RIGHT TO CLAIM FROM OWNERS AN AMOUNT EQUAL TO'
- LINE 162 DELETE 'DEDUCTION FRM FRT' INSERT 'A CLAIM'
- LINE 164 DELETE INSERT 'THAN THEIR QUANTIFIED CLAIM'
- LINE 192 - 201 DELETE
- LINE 203 INSERT 'TAXES AND/OR DUES IN CGO AND/OR FRT TO BE FOR
  CHTS ACCOUNT AND SETTLED DIRECTLY BY THEM'
- LINE 220 AFTER 'MANIOFOLD' INSERT 'EXCEPT WHEN STRIPPING'
  LINE 220 INSERT 'AVERAGE' BEFORE 'PRESSURE OF'
- LINE 244 INSERT 'SEPTEMBER 6TH 2007'
- LINE 245 INSERT 'SEPTEMBER 8TH 2007'
- LINE 256 DELETE '96 HRS' INSERT '48 HRS - SUNDAY AND HOLIDAYS
  EXCLUDED'
- LINE 264 INSERT '72'
- LINE 269 DELETE AFTER 'DISCHARGING' UNTIL 'CHTS' IN LINE 270
- LINE 274 DELETE 'RECEIVED' AND INSERT 'TENDERED'
- LINE 275 DELETE 'FROM' INSERT 'BY'
- LINE 276 DELETE FROM 'COMMENCES...' UNTIL 'PLACE' INSERT 'ALL
  FAST'
- LINE 303 AFTER 'PEOPLES' INSERT 'AND ANY OTHER CLAUSE'
- CLAUSE 24 - INSERT MAXIMUM FOUR DAYS
- LINE 350-358 DELETE
- LINE 359-366 DELETE
- LINE 409-433 DELETE
- LINE 448 ADD 'IN ACCORDANCE WITH OWNERS P AND I CLUB WORDING AND
  DETAILED IN ACCORDANCE WITH APPENDIX AA AND BB HEREOF'
- LINE 459-461 DELETE
- LINE 462-476 DELETE
- LINE 477 ADD 'OWNERS TO RETURN TO CHTS 2/3 ORIGINAL B/L TOGETHER
  WITH OWNERS RECEIPT FOR 1/3 ORIGINAL B/L WITHIN 21 DAYS OF
  RECEIPT'
- LINE 520 ADD 'HOWEVER SWIFT TRANSPORTATION INC ALWAYS TO REMAIN
  RESPONSIBLE FOR THE PERORMANCE OF THIS C/P'
- LINE 521-523 DELETE
- LINE 559 ADD 'OR ANY OTHER CAUSE BEYOND CHTS CONTROL'
- LINE 634 INSERT AFTER '1974' WITH AS AMENDED 1990'
- LINE 683-716 DEL AND INSERT '1/ IS A TANKER OWNED BY A MEMBER OF
  THE INTERNATIONAL TANKER OWNERS POLLUTION FEDERATION LIMITED AND
  WILL SO REMAIN THROUGHOUT THE CHARTER AND 2/ IS ENTERED IN THE

5

FOLLOWING P AND I CLUB BRITANNIA AND WILL SO REMAIN UNLESS OWNERS HAVE
GIVEN CHARTERERS PRIOR WRITTEN NOTICE FO THEIR INTENTION TO
CHANGE.
OWNERS WARRANT THAT THE VESSEL WILL ONLY BE ENTERED IN A P AND I
CLUB WITHIN THE INTERNATIONAL GROUP OF P AND I CLUBS'
- LINE 717-729 DELETE

- CONOCO WEATHER CLAUSE
- HESS SHIFTING CLAUSE

TRAFIGURA CLAUSES 1-19(02.02.2001) AMENDED AS FOLLOWS:
--------------------------------------------------------------

CLS 4 LINE 2 - DELETE 0.3 AND INSERT 0.5
      LINE 3 - DELETE 'DEDUCT FROM FREIGHT' AND INSERT 'CLAIM FROM
      OWNERS'
      LINE 4 - DELETE 'AND INSURANCE'
      ADD AT THE END OF CLAUSE 'IRRESPECTIVE OF ABOVE OWNRS TO
      MANTAIN ALL HAGUE VISBY RULES AND DEFENCE'
CLS 5 AFTER 'PAID' INSERT ' ON DEVIATION, ADD COMM TO BE PAID ONLY
      ON TIME ITEMIZED AS DEMURRAGE'
CLS 6 DELETE
CLS 7 DELETE
CLS 8 TO BE ADVISED PRIOR FIXING ADD AT BEGINNING 'IF REQUESTED'

CLS 9 PARA 1 DELETE LAST SENTENCE CLS 12 FIRST LINE AFTER 'THAT' INSERT
      'TO BEST OF THEIR KNOWLEDGE'
CLS 13 ADD AT END 'ANY CONTAMINATION BY VIRTUE OF
       CLEANING TO BE FOR CHARTERERS RISK'
CLS 15 7TH LINE AFTER 'CERTIFICATE' INSERT ' WHICH OWNERS SUBMIT
       CHARTERERS AS SOON AS POSSIBLE'
       8TH/9TH LINE DELETE
       12TH LINE AFTER 'ANY' INSERT 'DIRECT'
CLS 16 DELETE
CLS 18 DELETE SEE MAIN TERMS

1.25 % ADDRESS AND 1.25% PETRIAN SHIPBROKERS LLP ON FT/DFT AND DEMURRAGE

BEST REGARDS

SIMON LANE
PETRIAN SHIPBROKERS LLP

6

6

**Ewan Warren**

| | |
|---|---|
| **From:** | brokers@petrian.co.uk |
| **Sent:** | 20 September 2007 16:50 |
| **To:** | Nick Mahoney |
| **Subject:** | torm sofia/swift 23 august 07 addendum 1 brasil option |

```
TO..: "Vitol, London"
ATTN: Nick Mahoney
FROM: PETRIAN SHIPBROKERS LLP
DATE: 20-SEP-2007 16:50
MSG.: 993603

ref mt torm sofia / swift transportation inc c/p 23rd august 2007
------------------------------------------------------------------
please find hereunder addendum number 1 dated 31st august 2007

it is mutually agreed between owners and chrts that the following discharge
range option is incorporated under above captioned c/p

disch: or in chopt 1/2 sp(s) east coast south america buenos aries/sao luiz
       range inclusive but excluding river ports

rate : lumpsum usd 2,900,000 basis 1:1 via cape of good hope

all other terms, conditions, exceptions and exemptions remain unaltared

end


nb
--
please be aware that this option is via cape of good hope and all other
discharge ranges in c/p except wafr are via suez so need to order vsl
accordingly and timely in order to avoid deviation etc




Regards
Frazer Williams
Petrian Shipbrokers LLP
dir: 44 20 7227 0486
mob: 44 7711 140894
aoh: 44 1932 845632
yahoo id: frazer_petrian
```

1

7

**Ewan Warren**

| | |
|---|---|
| **From:** | brokers@petrian.co.uk |
| **Sent:** | 20 September 2007 16:49 |
| **To:** | Nick Mahoney |
| **Subject:** | TORM SOFIA/SWIFT CP 23/08/07 - ADDENDUM NO.2 - DATED 12/09/0 |

```
TO..: "Vitol, London"
ATTN: Nick Mahoney
FROM: PETRIAN SHIPBROKERS LLP
DATE: 20-SEP-2007 16:48
MSG.: 993602

TORM SOFIA/SWIFT CP 23/08/07 - ADDENDUM NO.2 - DATED 12/09/07
=============================

WITH REGARDS TO THE ABOVE CP IT HAS BEEN MUTUALLY AGREED TO AMEND THE
CHARTERERS STYLE TO THE FOLLOWING

CHARTERERS STYLE                   : SWIFT AVIATION GROUP INC
COMPANY REGISTRATION NUMBER        : 1121306-9
CORPORATE HEADQUARTERS ADDRESS : SWIFT AVIATION GROUP INC
                                     2710 EAST OLD TOWER ROAD
                                     PHOENIX, AZ 85034
                                     U.S.A

Regards
Frazer Williams
Petrian Shipbrokers LLP
dir: 44 20 7227 0486
mob: 44 7711 140894
aoh: 44 1932 845632
yahoo id: frazer_petrian
```

1

8

# Exhibit 3

Fax Server          1/16/2008 3:59:09 PM   PAGE   1/061   Fax Server



One, St Paul's Churchyard
London EC4M 8SH
Telephone +44 (0)20 7329 4422
Fax +44 (0)20 7329 7100
DX No. 64 Chancery Lane
www.shlegal.com

**STEPHENSON HARWOOD**

## FAX

To   Swift Aviation Group Inc
     Attn: Legal Department

At fax number   001 602 273 3773

From   Ingolf Kaiser / Rovine Chandrasekera
     Direct fax: 020 7003 8516/8507
     Direct line: 020 7809 2619/2669

Your ref

Our ref   646/979

Pages (incl)

Matter no   01-46-02883

Date   16 January 2008

Dear Sirs

**MT "TORM SOFIA"– charterparty dated 23 August 2007 between Mansel Oil Limited
and Swift Aviation Group Inc (the "Torm Sofia Charterparty")**

**MV "OVERSEAS LIMAR" –charterparty dated 11 July 2007 between Mansel Oil Limited
and Swift Aviation Group Inc (the "Overseas Limar Charterparty")**

Please see attached.

Yours faithfully

*[signature]*

**STEPHENSON HARWOOD**

**CONFIDENTIALITY NOTICE**
The information contained in this transmission is confidential. It may also be legally privileged. It is intended only for the addressee(s) stated above.
If you are not an addressee you should not disclose, copy, circulate or in any other way use the information contained in this transmission.
Such unauthorised use may be unlawful. If you have received this transmission in error, please telephone us immediately so that we can arrange for its return.

**PAGE 1**
IF ALL THE PAGES ARE NOT SATISFACTORILY RECEIVED PLEASE TELEPHONE +44 (0)20 7329 4422
The partners in the firm are solicitors or registered foreign lawyers.
\\ONLIVE\5425137.1   A list of names of the partners and their professional qualifications is open for inspection at the above address.

Fax Server          1/16/2008 3:59:09 PM  PAGE  2/061  Fax Server

One, St Paul's Churchyard
London EC4M 8SH
Telephone +44 (0)20 7329 4422
Fax +44 (0)20 7329 7100
DX No. 84 Chancery Lane
www.shlegal.com



**STEPHENSON HARWOOD**

Swift Aviation Group Inc                    ingolf.kaiser@shlegal.com                    /
2710 East Old Tower Road        **Email**    rovine.chandrasekera@shlegal.com
Pheonix, AZ 85034              **Direct fax**  020 7809 2619 / 2669
U.S.A                                      020 7003 8516 / 8507
Attn: Legal Department                     646/979/46-02883

Fax:  001 602 273 3773

                                            16 January 2008

Email: C/o Petrian Shipbrokers LLP
       ops@petrian.co.uk

International offices
Guangzhou
Hong Kong
Paris
Piraeus
Shanghai
Singapore

Associated offices
Athens
Bucharest
Johannesburg
Kuwait
Paris

                        **By Courier, fax and email**

Dear Sirs

**MT "TORM SOFIA"**– charterparty dated 23 August 2007 between Mansel Oil Limited
and Swift Aviation Group Inc (the "Torm Sofia Charterparty")

**MV "OVERSEAS LIMAR"** –charterparty dated 11 July 2007 between Mansel Oil Limited
and Swift Aviation Group Inc (the "Overseas Limar Charterparty")

We act on behalf of Mansel Oil Limited ("Mansel"), the disponent owners under the Torm
Sofia Charterparty and the Overseas Limar Charterparty.

We are instructed by Mansel to recover amounts due to them from Swift Aviation Group Inc
("Swift") under the above mentioned charterparties as set out below:-

| C/p | Type of claim | Invoice/Claim date | Amount due (US$) |
|-----|---------------|-------------------|------------------|
| Torm Sofia Charterparty | Demurrage | 28/11/07 | 330,884.51 |
|  | Freight | 17/10/07 | 202,161.82 |
| Overseas Limar Charterparty | Demurrage | 29/10/07 | 73,239.59 |
|  | **Total Due** | | **US$606,285.92** |

Further copies of the invoices/claim letters (with attachments) are enclosed for your ease of
reference.

The sum of US$533,046.33 is due under the Torm Sofia Charterparty and the sum of
US$73,239.59 is due under the Overseas Limar Charterparty. As above the total due to our
clients under both charterparties is US$ 606,285.92.

\\ONLIVE\5391585.1

The partners in the firm are solicitors or registered foreign lawyers. A list of names of the partners and their professional qualifications is open for inspection at the firm's principal office, One St Paul's Churchyard, London EC4M 8SH. Regulated by the Solicitors Regulation Authority. VAT No. GB 243 3939 54.

Page no  2



**STEPHENSON HARWOOD**

Unless the above mentioned sums are received in full (account details below) by 4.30pm (London time) on 23 January 2008, we have instructions to commence legal proceedings under the respective charterparties, without further notice, to recover the outstanding sums plus interest and costs and take steps to obtain security for our clients' claims.

Please send the outstanding sums to the following account:-

Royal Bank of Scotland
London Shipping Business Centre

Account ID: STEHAR USD1
Account Name: Stephenson Harwood US$ Client Call A/c
IBAN: GB65 RBOS 1663 0000 2191 38
SWIFT: RBOS GB 2L

We trust that legal proceedings will not be necessary and look forward to receiving your remittance within the time stated above.

Yours faithfully

**STEPHENSON HARWOOD**

\\LONLIVE\5391585.1

# Exhibit 4

BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

**JUDGE DANIELS**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

## 08 CV 1086

---

MANSEL OIL LIMITED,

Plaintiff,

-against-

SWIFT AVIATION GROUP, INC.,

Defendant.

08 Civ.

**VERIFIED COMPLAINT**

FEB 01 2008
U.S.D.C. ... N.Y.
CASHIERS

Plaintiff, MANSEL OIL LIMITED, ("Plaintiff"), by its attorneys Blank Rome LLP,

complaining of the above-named Defendant, SWIFT AVIATION GROUP, INC. ("Defendant"),

alleges upon information and belief as follows:

1.     This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. §1333.

2.     At all material times, Plaintiff was and now is a Bermuda company with a place

of business at Toddings Building, 10/12 Burnaby Street, Hamilton, Bermuda.

3.     At all material times, Defendant was and is a foreign corporation or other business

entity organized under the laws of the State of Arizona with a place of business at 2710 East Old

Tower Road, Phoenix, AZ 85034.

## FIRST CAUSE OF ACTION FOR
## BREACH OF CHARTER OF M/V TORM SOFIA

4.    By a charter party dated August 23, 2007 ("the TORM SOFIA Charter"), Plaintiff chartered the M/V TORM SOFIA ("TORM SOFIA") to Swift Transportation, Inc. ("STI") and, by addendum dated September 12, 2007, Plaintiff, STI and Defendant agreed that Defendant would take the place of STI in the TORM SOFIA Charter.

5.    Under the terms of the TORM SOFIA Charter, Defendant was obliged to pay freight in the amount of $202,161.82 and demurrage in the amount of $330,884.51, for a total of $533,046.33, none of which has been paid, although duly demanded.

6.    The TORM SOFIA Charter provides for arbitration of disputes in London, England. Plaintiff has commenced arbitration, or will shortly, and reserves its right to arbitrate the disputes, pursuant to 9 U.S.C. §8.

7.    Maritime Arbitrators in London award interest, legal fees and arbitral costs to a successful party. If the dispute is arbitrated through a final award, Plaintiff estimates: recoverable interest will amount to at least $85,287.42 at a rate of 8% per year for at least 2 years; recoverable arbitral costs will be incurred in the sum of at least $75,000; and recoverable legal expenses will be incurred in the sum of at least $200,000, amounting in all to recoverable interest and costs of at least $360,287.42

8.    The total amount of Plaintiff's claims for the TORM SOFIA Charter is **$893,333.75**.

## SECOND CAUSE OF ACTION FOR
## BREACH OF CHARTER OF M/V OVERSEAS LIMAR

9.    By a charter party dated on or about June 11, 2007 ("the OVERSEAS LIMAR

CHARTER"), Plaintiff chartered the M/V OVERSEAS LIMAR ("the OVERSEAS LIMAR") to

STI.   By Addendum dated September 9, 2007, Plaintiff, STI, and Defendant agreed that

Defendant would take the place of STI in OVERSEAS LIMAR Charter.

10.    In breach of the OVERSEAS LIMAR Charter, Defendant failed to pay demurrage

and other amounts due in the sum of $73,239.59, which remains unpaid, despite due demand.

11.    The Charter provides for arbitration of disputes in London, England.  Plaintiff has

commenced will shortly commence arbitration and reserves its right to arbitrate the disputes,

pursuant to 9 U.S.C. §8.

12.    Maritime Arbitrators in London award interest, legal fees and arbitral costs to a

successful party.   If the dispute is arbitrated through a final award, Plaintiff estimates:

recoverable interest will amount to at least $11,718.33 at a rate of 8% per year for at least 2

years; recoverable arbitral costs will be incurred in pursuing its claim against Defendant in the

sum of at least $50,000; and recoverable legal expenses will be incurred in the sum of at least

$50,000, amounting in all to recoverable interest and expenses of at least $111,718.33.

13.    The total amount of Plaintiff's claims for the OVERSEAS LIMAR Charter is

**$184,957.92.**

\*        \*        \*

14.    Defendant cannot be found within this district within the meaning of Rule B of

the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure, but Defendant is believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire credits in the hands of garnishees in this District, including but not limited to electronic fund transfers.

15.     The total amount of Plaintiff's claims for the M/V TORM SOFIA and the M/V OVERSEAS LIMAR for which Plaintiff requests is **$1,078,291.67.**

    **WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B.     That since Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee, including electronic fund transfers to or from Defendant, in the district which are due and owing or otherwise the property of the Defendant up to the amount of **$1,078,291.67** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.     That this Court enter judgment for Plaintiff's damages plus interest and costs, or retain jurisdiction over this matter through the entry of a judgment on an arbitration award.

      D.     That Plaintiff may have such other, further and different relief as may be just and

proper.

Dated: New York, NY
       February 1, 2008

                    Respectfully submitted,

                    BLANK ROME, LLP
                    Attorneys for Plaintiff

By                              
                      LeRoy Lambert (LL-3519)
                    The Chrysler Building
                    405 Lexington Avenue
                    New York, NY  10174-0208
                    (212) 885-5000

## VERIFICATION

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

LeRoy Lambert, being duly sworn, deposes and says:

1.    I am a member of the bar of this Honorable Court and of the firm of Blank Rome

LLP, attorneys for the Plaintiff.

2.    I have read the foregoing Complaint and I believe the contents thereof are true.

3.    The reason this Verification is made by deponent and not by Plaintiff is that

Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.    The sources of my information and belief are documents provided to me and

statements made to me by representatives of the Plaintiff.

_____
LeRoy Lambert

Sworn to before me this
1st day of February, 2008

_____
Notary Public

KARL V. REDA
Notary Public, State of New York
No. 30-4783126,    in Nassau Cty,
Certificate Filed in New York County
Commission Expires Nov 30, 2009

# Exhibit 5

John L. Gardiner
Julie Bédard
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
Tel: (212) 735-3000
Fax: (212) 735-2000

Attorneys for Defendant

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| **MANSEL OIL LIMITED,** | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **08 CIV. 1086 (GBD)** |
| | : | |
| | : | **DEFENDANT'S VERIFIED** |
| | : | **ANSWER** |
| | : | |
| **SWIFT AVIATION GROUP, INC.** | : | |
| *Defendant.* | : | **Electronically Filed** |

---

Defendant, Swift Aviation Group, Inc., by its undersigned attorneys, Skadden,

Arps, Slate, Meagher & Flom LLP, answers the complaint ("Complaint") of Plaintiff, Mansel Oil

Limited, as follows:

1. Denies each and every allegation contained in paragraph 1 of the

Complaint, except admits that Plaintiff purports to bring this action as an admiralty or maritime

claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Plaintiff

purports to base jurisdiction over the subject matter of this action under 28 U.S.C. §1333.

2. Denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 2 of the Complaint.

3. Admits the allegations contained in paragraph 3 of the Complaint.

## FIRST CAUSE OF ACTION FOR
## BREACH OF CHARTER OF M/V TORM SOFIA

4.      Denies the allegations contained in paragraph 4 of the Complaint and refers the Court to the TORM SOFIA Charter and Addendum referenced in paragraph 4 of the Complaint for the full contents thereof.

5.      Denies the allegations contained in paragraph 5 of the Complaint and refers the Court to the TORM SOFIA Charter and Addendum referenced in paragraph 5 of the Complaint for the full contents thereof and denies Defendant owes any of the amounts alleged therein.

6.      Denies the allegations contained in paragraph 6 of the Complaint, except admits the TORM SOFIA Charter provides for arbitration of disputes in London, England and otherwise refers the Court to the TORM SOFIA Charter for the full contents thereof.

7.      Denies the allegations contained in paragraph 7 of the Complaint, except declines to respond to so much of paragraph 7 as constitutes a conclusion of law on the grounds that no responsive pleading is required thereto.

8.      Denies the allegations contained in paragraph 8 of the Complaint, except admits that Plaintiff claims it is owed $893,333.75 under the TORM SOFIA Charter.

## SECOND CAUSE OF ACTION FOR
## BREACH OF CHARTER OF M/V OVERSEAS LIMAR

9.      Denies the allegations contained in paragraph 9 of the Complaint and refers the Court to the OVERSEAS LIMAR Charter and Addendum referenced in paragraph 9 of the Complaint for the full contents thereof.

2

10.     Denies the allegations contained in paragraph 10 of the Complaint and refers the Court to the OVERSEAS LIMAR Charter and Addendum referenced in paragraph 10 of the Complaint and denies Defendant owes any of the amounts alleged therein.

11.     Denies the allegations contained in paragraph 11 of the Complaint, except admits the OVERSEAS LIMAR Charter provides for arbitration of disputes in London, England and otherwise refers the Court to the OVERSEAS LIMAR Charter for the full contents thereof.

12.     Denies the allegations contained in paragraph 12 of the Complaint, except declines to respond to so much of paragraph 12 as constitutes a conclusion of law on the grounds that no responsive pleading is required thereto.

13.     Denies the allegations contained in paragraph 13 of the Complaint, except admits that Plaintiff claims it is owed $184,957.92 under the OVERSEAS LIMAR Charter.

* * *

14.     Denies the allegations contained in paragraph 14 of the Complaint.

15.     Denies the allegations contained in paragraph 15 of the Complaint, except admits that Plaintiff claims it is owed $1,078,291.67 for the M/V TORM SOFIA and the M/V OVERSEAS LIMAR charters.

3

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

16.    Plaintiff's allegations against Defendant fail to state any claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Lack of Standing)

17.    Plaintiff's allegations fail to comply with the requirements of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims because Plaintiff has not commenced any arbitration proceedings against Defendant and therefore it does not have standing to seek relief under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and any such relief is premature.

18.    Furthermore and in any event, the TORM SOFIA Charter and the OVERSEAS LIMAR Charter both provide for arbitration of disputes in London, England and therefore the merits of Plaintiff's allegations in the Complaint must be determined by the arbitral tribunal to be duly appointed under the TORM SOFIA Charter and the OVERSEAS LIMAR Charter, if and when Plaintiff commences any arbitration proceedings.

## THIRD AFFIRMATIVE DEFENSE

### (Dismissal or Stay Pending Arbitration)

19.    Plaintiff has brought a suit in this Court upon issues referable to arbitration under agreements in writing for such arbitration, namely, the TORM SOFIA Charter and the OVERSEAS LIMAR Charter. Pursuant to the Federal Arbitration Act, this Court, in which such suit concerning issues referable to arbitration currently is pending, must dismiss or stay the

4

action until arbitration has been had in accordance with the terms of the arbitration agreement contained in the TORM SOFIA Charter and the OVERSEAS LIMAR Charter.

### FOURTH AFFIRMATIVE DEFENSE

#### (Forum Non Conveniens)

20.    This Court should decline jurisdiction over the Plaintiff's action under its inherent and discretionary power to dismiss a suit on *forum non conveniens* grounds.

### FIFTH AFFIRMATIVE DEFENSE

#### (Lack of Personal Jurisdiction)

21.    This Court does not have personal jurisdiction over Defendant and the Plaintiff's action therefore should be dismissed.


WHEREFORE, Defendant respectfully requests that the Court enter Judgment in favor of Defendant:

- (a)    dimissing the Complaint with prejudice;
- (b)    in the alternative, stay the action pending arbitration;
- (c)    awarding Defendant the costs and expenses incurred in this action, including reasonable attorneys' fees; and
- (d)    such other and further relief as this Court deems just and proper.

5

Dated: New York, NY
      March 17, 2008

Respectfully submitted,

SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP

By: _____

    John L. Gardiner
    John.Gardiner@skadden.com
    Julie Bédard
    Julie.Bedard@skadden.com

Four Times Square
New York, NY 10036
(212) 735-3000
Attorneys for Defendant

6

## VERIFICATION

STATE OF NEW YORK    )

                         : ss.:

COUNTY OF NEW YORK  )

        John L. Gardiner, being duly sworn, deposes and says:

        1. I am a member of the bar of this Honorable Court and of the firm of Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for Defendant.

        2. I have read the foregoing Verified Answer and I believe the contents thereof are true.

        3. The reason this Verification is made by deponent and not by Defendant is that Defendant is a foreign corporation, no officer or director of which is within this jurisdiction.

        4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Defendant.

John L. Gardiner

Sworn to before me this
17th day of March, 2008

Notary Public

, 2008

7

# Exhibit 6



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
Mansel Oil Limited,

           Plaintiff(s),

    -against-

Swift Aviation Group, Inc.
           Defendant(s).
---------------------------------------------------------------X

08cv1086(GBD)
INITIAL PRETRIAL
CONFERENCE

TO:    The Attorney(s) for Plaintiff(s):

       This case has been designated an electronic case and has been assigned to this court for all purposes. Counsel for all parties are required to promptly register as filing "USERS" in accordance with the procedure for Electronic Case Filing.

       Counsel for all parties are hereby directed to attend a conference at the time and place fixed below, for the purpose of Case Management and scheduling pursuant to Fed. R. Civ. P. 16. You are directed to furnish all attorneys in this action with copies of this order and enclosures, and to furnish chambers with a copy of any transmittal letter(s). If you are unaware of the identity of counsel for any of the parties, you must forthwith send a copy of the notice and rules to that party personally.

       An Initial pretrial conference will be held on **Thursday, May 1, 2008 at 9:30 a.m.** at the United States District Courthouse, 500 Pearl Street, New York, New York, Courtroom 15D.

       No application for adjournment will be considered unless made within one week of the date of this application.

       Enclosed is a proposed Case Management Plan and Scheduling Order, pursuant to Rules 16 and 26 (f) of the Federal Rules of Civil Procedure. Counsel for all parties are directed to confer regarding the proposed plan and order. If the proposed schedule is agreeable to all parties, counsel shall sign and file the enclosed plan and order with the Court seven (7) days before the date of the initial pretrial conference. If counsel agrees that a different plan and schedule is appropriate, counsel shall sign and file a different proposed plan and schedule for the court's consideration seven (7) days before the date of the pretrial conference. In the absence of agreement, the Court, after hearing from counsel, will order a Case Management Plan and schedule at the conference. Absent extraordinary circumstances, the Plan shall provide that the case be ready for trial within six months.

       In addition to the matters covered in the Case Management Plan, counsel should also be prepared to address at the conference the factual and legal bases for their claims or defenses, any issue as to subject matter jurisdiction, and any other issue relevant to case management.

Dated: February 5, 2008
      New York, New York

                      SO ORDERED:

                      GEORGE B. DANIELS
                      United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
Mansel Oil Limited.,

                   Plaintiff,           08cv1086(GBD)

     -against-                        CIVIL CASE MANAGEMENT
                                        PLAN AND SCHEDULING ORDER

Swift Aviation Group, Inc.,

                 Defendant,
-----------------------------------------------------X

       After consultation with counsel for the parties, the following Case Management Plan is
adopted. This plan is also a scheduling order pursuant to Rules 16 and 26(f) of the Federal
Rules of Civil Procedure.

     1.     No **additional parties** may be joined after **July 3, 2008**.

     2.     No **amendment** to the pleadings will be permitted after **July 3, 2008**.

     3.     Except for good cause shown, all **discovery** shall be commenced in time to be
          completed by **August 7, 2008**. The Court expects discovery to be completed
          within 90 days of the first scheduling conference unless, after the expiration of
          that 90 day period, all counsel stipulate that additional time (not to exceed 60
          more days) is needed to completed discovery. In such event, discovery may be
          extended by the parties on consent, without application to the Court, provided
          the parties are certain they can still meet the discovery completion date ordered
          by the Court. The discovery completion date shall not be adjourned except upon
          a showing of extraordinary circumstances.

     4.     **Dispositive motions** are to served by **November 6, 2008**. Answering papers
          are to be served within 14 days. Reply papers are to be served within seven (7)
          days. In the event a dispositive motion is made, the date for submitting the Joint
          Pretrial Order shall be changed from that shown herein to three(3) weeks from
          the decision on the motion. The final pretrial conference shall be adjourned to a
          date four (4) weeks from the decision on the motion.

     5.     A final **pretrial conference** will be held on **December 4, 2008 at 9:30 a.m.**.

     6.     The **Joint Pretrial Order** shall be filed no later than **November 13, 2008**. The
          requirements for the pretrial order and other pretrial submissions shall be
          governed by the Court's Individual Rules of Practice.

     7.     **All motions and applications** shall be governed by the Court's Individual Rules
          of Practice.

8.    The parties shall be **ready for trial** on 48 hours notice on or after **December 11, 2008**. The estimated trial time is _____ days, and this is a (jury) (non-jury) trial.

9.    The **Next Case Management Conference** will be held on **September 4, 2008 at 9:30 a.m.**.

Dated: February 5, 2008
New York, New York

SO ORDERED:

_____
GEORGE B. DANIELS
United States District Judge

_____
Attorney for Plaintiff

_____
Attorney for Defendant

-2-

# Exhibit 7

One, St Paul's Churchyard
London EC4M 8SH
Telephone +44 (0)20 7329 4422
Fax +44 (0)20 7329 7100
DX No. 64 Chancery Lane
www.shlegal.com



**STEPHENSON HARWOOD**

**FAX**

| | | | |
|---|---|---|---|
| **To** | Swift Aviation Group<br>Attn: J Kevin Burdette | At fax number | 001 602 264 5006 |
| | Skadden, Arps, Slate, Meagher &<br>Flom LLP<br>Attn: John L Gardiner /   Julie Bédard | | 001 212 735 2000 |
| **From** | Rovine Chandrasekera<br>Direct fax 020 7003 8507 | Our ref | 979/46-02883 |
| **Pages (inc)** | 1 | Date | 26 March 2008 |

Dear Sirs

**MT "TORM SOFIA"– charterparty dated 23 August 2007 between Mansel Oil Limited and Swift Aviation Group Inc ("Swift"), (the "Charterparty")**

We refer to recent correspondence and our letter of 16 January.  Unfortunately Swift have failed to pay sums due under the Charterparty.

Therefore pursuant to clause 10 of the additional clauses to the Charterparty, our client hereby elects to resolve the current dispute by arbitration in London according to English law.

We hereby formally notify you that our clients have commenced arbitration proceedings against your clients by appointing Mr Michael Baker-Harber (details below) as their arbitrator.  As per the Charterparty, we now call on Swift to appoint their arbitrator and notify us of that appointment within 14 days.

Mr Baker-Harber's details are as follows:

14 Cheyne Gardens          Tel:    020 7351 1328
London                     Fax:   020 7351 1623
SW3 5QT                    Email: mbh@mbharb.fsnet.co.uk

Yours faithfully

**STEPHENSON HARWOOD**

**CONFIDENTIALITY NOTICE**

The information contained in this transmission is confidential. It may also be legally privileged. It is intended only for the addressee(s) stated above.
If you are not an addressee you should not disclose, copy, circulate or in any other way use the information contained in this transmission.
Such unauthorised use may be unlawful. If you have received this transmission in error, please telephone us immediately so that we can arrange for its return.

PAGE 1
IF ALL THE PAGES ARE NOT SATISFACTORILY RECEIVED PLEASE TELEPHONE +44 (0)20 7329 4422
The partners in the firm are solicitors or registered foreign lawyers.
\LONLIVE\6518810.1   A list of names of the partners and their professional qualifications is open for inspection at the above address.

One, St Paul's Churchyard
London EC4M 8SH
Telephone +44 (0)20 7329 4422
Fax +44 (0)20 7329 7100
DX No. 64 Chancery Lane
www.shlegal.com



**STEPHENSON HARWOOD**

## FAX

| | | |
|---|---|---|
| To | Swift Aviation Group<br>Attn: J Kevin Burdette | At fax number    001 602 264 5006 |
| | Skadden, Arps, Slate, Meagher &<br>Flom LLP<br>Attn: John L Gardiner /   Julie Bédard | 001 212 735 2000 |
| From | Rovine Chandrasekera<br>Direct fax 020 7003 8507 | Our ref    979/45-03151 |
| Pages (inc) | 1 | Date    26 March 2008 |

Dear Sirs

**MV "OVERSEAS LIMAR" - charterparty dated 11 July 2007 between Mansel Oil Limited and Swift Aviation Group Inc ("Swift"), (the "Charterparty")**

We refer to recent correspondence and our letter of 16 January. Unfortunately Swift have failed to pay sums due under the Charterparty.

Therefore pursuant to clause 10 of the additional clauses to the Charterparty, our client hereby elects to resolve the current dispute by arbitration in London according to English law.

We hereby formally notify you that our clients have commenced arbitration proceedings against your clients by appointing Mr Michael Baker-Harber (details below) as their arbitrator. As per the Charterparty, we now call on Swift to appoint their arbitrator and notify us of that appointment within 14 days.

Mr Baker-Harber's details are as follows:

14 Cheyne Gardens    Tel:    020 7351 1328
London    Fax:    020 7351 1623
SW3 5QT    Email: mbh@mbharb.fsnet.co.uk

Yours faithfully

STEPHENSON HARWOOD

**CONFIDENTIALITY NOTICE**

The information contained in this transmission is confidential. It may also be legally privileged. It is intended only for the addressee(s) stated above.
If you are not an addressee you should not disclose, copy, circulate or in any other way use the information contained in this transmission.
Such unauthorised use may be unlawful. If you have received this transmission in error, please telephone us immediately so that we can arrange for its return.

**PAGE 1**

**IF ALL THE PAGES ARE NOT SATISFACTORILY RECEIVED PLEASE TELEPHONE +44 (0)20 7329 4422**

The partners in the firm are solicitors or registered foreign lawyers.

\LONLIVE\6518949.1  A list of names of the partners and their professional qualifications is open for inspection at the above address.

# Exhibit 8

*DANIELS, J.*

ORIGINAL

BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

U. S. DISTRICT COURT
FILED
FEB 0 5 2008
S. D. OF N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANSEL OIL LIMITED,

Plaintiff,

-against-

SWIFT AVIATION GROUP, INC.,

Defendant.

08 Civ. *1086 (GBD)*

**ORDER DIRECTING CLERK
TO ISSUE PROCESS OF
MARITIME ATTACHMENT
AND GARNISHMENT**

**EXPARTE ORDER FOR PROCESS OF MARITIME ATTACHMENT**

WHEREAS, on February 1, 2008, Plaintiff, Mansel Oil Limited., filed a Verified Complaint herein for damages amounting to ~~$1,078,291.67~~ *$606,285.92*, inclusive of interest, costs and reasonable attorney's fees, and praying for issuance of Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules and Civil Procedure; and,

WHEREAS, the Process of Maritime Attachment and Garnishment would command that the United States Marshal or other designated process server attach any and all of the Defendant's property within the District of this Court; and,

WHEREAS, the Court has reviewed the Verified Complaint and the Supporting Affidavit, and the conditions of Supplemental Admiralty Rule B appearing to exist, it is hereby,

129053.00601/6611763v.1

**ORDERED,** that Process of Maritime Attachment and Garnishment shall issue to the garnishees named in Schedule A hereto, against all tangible or intangible property belonging to, claimed by or being held for the Defendant by any garnishees within this District, including but not limited to electronic fund transfers originated by, payable to, or otherwise for the benefit of Defendant, whether to or from the garnishee banks or any other electronic fund transfers, in an amount of up to ~~$1,078,291.67~~ *$750,000* pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure; and, it is further,

**ORDERED,** that any person claiming an interest in the property attached or garnished pursuant to said Order shall, upon application to the Court, be entitled to a prompt hearing at which the Plaintiff shall be required to show why the attachment and garnishment should not be vacated or other relief granted; and it is further,

**ORDERED,** that supplemental process specifying other or additional garnishees enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court; and it is further,

**ORDERED,** that following initial service by the United States Marshal or other designated process server upon each garnishee, supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile transmission or e-mail and, it is further,

**ORDERED,** that service on any garnishee as described above is deemed continuous throughout the day from the time of such service through the opening of the garnishee's business the next business day and, it is further,

**ORDERED,** that pursuant to Federal Rule of Civil Procedure 5(b)(2)(D), each garnishee may consent, in writing, to accept service by any other means; and, it is further,

**ORDERED,** that a copy of this Order be attached to and served with the said Process of

Maritime Attachment and Garnishment.

Dated: _February 5, 2008_

SO ORDERED:

_George B. Daniels_

U.S.D.J.

A CERTIFIED COPY
J. MICHAEL McMAHON                CLERK

BY

DEPUTY CLERK

## SCHEDULE A

1.   ABN Amro Bank N.V.
2.   American Express Bank Ltd.
3.   Bank of America, N.A.
4.   The Bank of New York
5.   Citibank, N.A.
6.   Bank of China
7.   HSBC Bank USA
8.   JP Morgan Chase Bank, N.A.
9.   Standard Chartered Bank
10.  Wachovia Bank, N.A. – New York
11.  Wells Fargo Bank, National Association
12.  BNP Paribas
13.  Deutsche Bank

# Exhibit 9

EDWARD C. RADZIK (ER-2473)
McDERMOTT & RADZIK, LLP
*Attorneys for Intervenor*
Wall Street Plaza
88 Pine Street – 21st Floor
New York, NY 10005-1801

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MANSEL OIL LIMITED,                              **ECF CASE**

        Plaintiff,                              08 Civ. 1086 (GBD)

  -  against -                              **NOTICE OF MOTION**

SWIFT AVIATION GROUP, INC.,

        Defendants.

-----------------------------------------------------------X

S I R S:

    **PLEASE TAKE NOTICE** that pursuant to Rule E(4)(f) of the Supplemental Rules for

Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and Local

Admiralty Rule E.1and upon the accompanying Affidavit of J. Kevin Burdette, and

Memorandum of Law on behalf of Swift Air, LLC ("Swift Air") in Support of Motion to Vacate

Attachment, the undersigned will move before the Honorable George B. Daniels, United States

District Judge, in Courtroom 15D at the United States District Courthouse for the Southern

District of New York, 500 Pearl Street, New York, New York 10007, on Thursday, March 27,

2008, at 9:30 a.m. or as soon thereafter as counsel may be heard, for an Order Vacating the

Plaintiff's Attachment of Swift Air's funds in the possession of intermediary bank, Bank of

America, and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
        March 24, 2008

                        Yours, etc.

                        McDERMOTT & RADZIK, LLP
                        *Attorneys for Intervenor, Swift Air, LLC*


                   BY:  _Edward C. Radzik (ER-2471)_
                        Edward C. Radzik (ER-2471)
                        Wall Street Plaza
                        88 Pine Street – 21st Floor
                        New York, NY  10005-1801
                        (212) 376-6400


TO:    BLANK ROME LLP
       *Attorneys for Plaintiff*
       The Chrysler Building
       405 Lexington Avenue
       New York, NY  10174-0208
       **Attention:**    LeRoy Lambert, Esq.

       SKADDEN, ARPS, SLATE, MEAGHER
         & FLOM, LLP
       *Attorneys for Defendant*
       Four Times Square
       New York, NY  10036-6522
       **Attention:**    John L. Gardiner, Esq.
                         Julie Bédard, Esq.

EDWARD C. RADZIK (ER-2473)
CAROLYN ELIZABETH BUNDY (CM-1464)
McDERMOTT & RADZIK, LLP
*Attorneys for Intervenor*
Wall Street Plaza
88 Pine Street – 21st Floor
New York, NY 10005-1801

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MANSEL OIL LIMITED,

                Plaintiff,

    -  against -

SWIFT AVIATION GROUP, INC.

                Defendant.

-----------------------------------------------------------X

**ECF CASE**

08 Civ. 1086 (GBD)

### MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR SWIFT AIR LLC'S MOTION TO VACATE PLAINTIFF'S ATTACHMENT

Respectfully submitted,

OF COUNSEL:

Edward C. Radzik
Carolyn Elizabeth Bundy

**McDERMOTT & RADZIK, LLP**
Attorneys and Counsel ors-at-Law
Wall Street Plaza
88 Pine Street, New York, NY 10005-1801
Telephone: (212) 376-6400   Fax: (212) 376-6490

## PRELIMINARY STATEMENT

Intervenor, Swift Air, LLC ("Swift Air"), by its attorneys, McDERMOTT & RADZIK, LLP, submits this Memorandum of Law in support of its motion, pursuant to Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure and Local Admiralty Rule E.1, to vacate Plaintiff's attachment of an electronic funds transfer (EFT) in the amount of $118,136.00, which is presently being restrained by garnishee, Bank of America. There is no dispute that this property belongs to Swift Air, who is not named as a defendant in the Verified Complaint filed by Plaintiff.

Swift Air and Defendant Swift Aviation Group Inc. ("Swift Aviation") are related companies but operate independently and separately from one another. The attached EFT is a debt owed to Swift Air by one of its customers in respect of a transaction unrelated to any of the transactions between Plaintiff and Defendant described in the Verified Complaint. Defendant, Swift Aviation, does not have an interest in the EFT wrongfully attached by the plaintiff and restrained by Bank of America. The restraint of the EFT belonging to Swift Air exceeds the scope of the attachment order obtained by Plaintiff. The attachment should be vacated pursuant to Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure. The Court should direct the garnishee, Bank of America, to immediately release the $118,136.00 wrongfully attached funds to Intervenor, Swift Air.

## FACTS[1]

Plaintiff Mansel Oil, Ltd. ("Mansel" or "Plaintiff") filed its verified complaint on February 1, 2008, in accordance with the exparte attachment and garnishment procedures provided by Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil

---

[1]    Intervenor incorporates by reference the facts set forth in the accompanying Affidavit of J. Kevin Burdette and for the sake of brevity those facts will not be repeated herein at length.

Procedure. Plaintiff's Verified Complaint named one defendant -- Swift Aviation. Plaintiff's underlying dispute with Swift Aviation related to two charter party agreements under which Swift Aviation allegedly owed Plaintiff One Million Dollars.   Through its Verified Complaint, Plaintiff sought, *inter alia*, to attach and garnish any Swift Aviation property within the district.  Plaintiff did not name Swift Air in its Verified Complaint, and did not seek to attach and garnish Swift Air property.

The Court issued its attachment order a few days later, on February 5, 2008. The order named 13 banking institutions and authorized attachment and garnishment of property that belonged to defendant, Swift Aviation.  Plaintiff did not ask for, nor did the Court grant, authority to attach or garnish the property of any other entity, including Swift Air.

On February 15, 2008, Plaintiff intercepted a $118,136.00 electronic funds transfer sent to Swift Air by Elite Air, Ltd. ("Elite") for air transportation services performed by Swift Air. Elite, a Canadian company, attempted to wire the funds from its Canadian bank to Swift Air's bank account in Chicago.  Elite's Canadian bank used garnishee, Bank of America, as an intermediary in the wire transfer transaction.

The EFT at issue belongs to Swift Air and not Swift Aviation.  Swift Air, therefore requests the court to order garnishee, Bank of America, to immediately release the funds to Swift Air.

2

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF'S ATTACHMENT FAILS TO MEET
### THE REQUIREMENTS OF RULE B

Rule E(4)(f) of the Supplemental Admiralty Rules provides the procedure for moving to

vacate a Rule B attachment:

> (f)    *Procedure for Release From Arrest or Attachment.* Whenever property is
> arrested or attached, any person claiming an interest in it shall be entitled to a
> prompt hearing at which the plaintiff shall be required to show why the arrest or
> attachment should not be vacated or other relief granted consistent with these
> rules.    The plaintiff has the burden in any post-attachment hearing that the
> attachment is valid.

The plain language of Supplemental Admiralty Rule B states that only the tangible and

intangible property of a named Defendant will be subject to an attachment.

Since the only named Defendant, Swift Aviation, does not have any interest in the funds

attached, the attachment must be vacated and the funds released to Intervenor, Swift Air.

Rule E(4)(f) allows any person whose property has been attached an opportunity to

appear before the district court to contest the attachment.

If the plaintiff fails to demonstrate that it has met the requirements of Rules B and E, the

court must vacate the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d

435, 445 (2d Cir. 2006).

Rule B limits the scope of an attachment to a defendant who is named in a Verified

Complaint. Since Swift Air is not named in the Verified Complaint, Plaintiff cannot attach Swift

Air's funds. *Winter Storm Shipping Ltd. v. TPI*, 310 F.2d 263, 269 (2d Cir. 2002). Further,

because Swift Air was not named in the Complaint, Plaintiff did not aver, as required by Rule B,

that Swift Air could not "be found with the district." Thus, the attachment must be vacated for
failure to comply with the requirements of Rule B.

## POINT II

### THE RESTRAINT OF SWIFT AIR'S FUNDS EXCEEDS
### THE SCOPE OF THE ORDER OF ATTACHMENT

The clear and concise language of Supplemental Admiralty Rule B(1) provides that only
a defendant's tangible and intangible property will be subject to an order of a maritime
attachment.

To sustain an attachment under Rule B(1), the plaintiff must demonstrate that "(1) it has a
valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within
the district; (3) the defendant's property may be found within the district; and (4) there is no
statutory or maritime law bar to the attachment." *Aqua Stoli,* 460 F.3d at 445-46. If the plaintiff
fails to satisfy this burden, the district court must vacate the attachment. *T&O Shipping Ltd. v.
Source Link Co.*, 2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. Dec. 6, 2006) (vacating an attachment
on the grounds Rule B limits the scope of the attachment to a defendant who is named in the
Complaint). *See also DS Bulk Pte. Ltd. v. Calder Sea Carrier Corp,* 2006 U.S. Dist. LEXIS
39242 (S.D.N.Y. June 13, 2006).

In this case, the Order directing the Clerk to issue a Process of Maritime Attachment and
Garnishment is limited to restraining tangible and intangible property belonging to the named
Defendant, Swift Aviation.

It is undisputed that the plaintiff's attachment of an EFT passing through Bank of
America was property belonging solely to Swift Air and that the Defendant, Swift Aviation, did
not have an interest in the attached funds. Plaintiff has thus exceeded the scope of the
attachment order by attempting to restrain the property belonging to Swift Air who is not named

4

as a Defendant. For this reason, the attachment at the Bank of America must be vacated and the

Court should order the funds be released by the garnishee to Swift Air.

## POINT III

### THE PLAINTIFF'S ATTACHMENT IS PROCEDURALLY, JURISDICTIONALLY AND CONSTITUTIONALLY DEFECTIVE

Supplemental Rule B requires a plaintiff to "make a *prima facie* showing that [it] has a

maritime claim against the defendant in the amount sued for." Fed. R. Civ. P. B. advisory

committee's note. Because Mansel failed to name Swift Air as a Defendant, Plaintiff cannot

make this *prima facie* showing.

In addition to being technically deficient, Plaintiff's attachment fails to serve either of the

two purposes of obtaining a maritime attachment: (1) to assure satisfaction of a judgment if a

suit is successful; and (2) to establish jurisdiction over the defendant. *See Winter Storm*, 310

F.3d. at 268; *Seawind Compania S.A. v. Cresent Line*, 320 F.2d 580, 581-582 (2d Cir. 1963).

Because Swift Air is not a Defendant in this action, the purpose of the attachment is not to secure

Swift Air's property in order to obtain jurisdiction. Furthermore, the controversy, according to

Plaintiff's Verified Complaint, arises under the charter parties entered into between Plaintiff and

Swift Aviation, Plaintiff has no right to a judgment against Swift Air and the attachment does not

"assure satisfaction of any decree in libellant's favor." *Seawind Compania, S.A.*, 320 F.2d at

582.

Plaintiff's attachment is also constitutionally defective insofar as it cannot survive

minimal due process scrutiny. "Modern conceptions of fairness . . . dictate that actual notice be

given to persons known to have an interest in the property that is the subject of the action where

that is reasonably practicable." *Winter Storm*, 310 F.3d at 269. Actual notice is fulfilled when a

plaintiff names a defendant in the Complaint. *Id.* Here, plaintiff failed to provide Swift Air
with actual notice that Mansel acquired an interest in Swift Air's property because the Complaint
failed to name Swift Air as a defendant.

Finally, from reading the Verified Complaint, it is not clear that Plaintiff has commenced
London Arbitration proceedings against the Defendant. Accordingly, "it is premature to attach
funds in security of arbitration in London when that arbitration has not been initiated." *Eitzen
Sealift A/S v. Cementos Adinos Dominicanos, S.A.*, 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y.
Sept. 9, 2005).

## CONCLUSION

For all of the reasons stated herein, Plaintiff's Attachment of non-party Swift Air's
property should be vacated and garnishee, Bank of America, should be directed to release the
attached funds immediately.

Dated: New York, NY
    March 24, 2008

                          Respectfully submitted,

                          McDERMOTT & RADZIK, LLP

                    By:  _____
                          - EDWARD C. RADZIK (ER-2473)
                          CAROLYN ELIZABETH BUNDY (CM-1464)
                          Wall Street Plaza
                          88 Pine Street – 21st Floor
                          New York, NY 10005-1801
                          (212) 376-6400

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

MANSEL OIL LIMITED,

               Plaintiff,

   -  against -

SWIFT AVIATION GROUP, INC.

               Defendant.

--------------------------------------------------------X

**ECF CASE**

08 Civ. 1086 (GBD)

**AFFIDAVIT OF J. KEVIN
BURDETTE**

STATE OF ARIZONA      )
                      ) ss.:
COUNTY OF MARICOPA    )

     J. KEVIN BURDETTE, being duly sworn, deposes and says:

     1.     I am the Vice President of Swift Air, LLC ("Swift Air") and have personal knowledge of the facts and circumstances set forth in this Affidavit.

     2.     Plaintiff in this case erroneously attached an electronic funds transfer ("EFT") belonging to Swift Air, purportedly pursuant to an attachment order that relates to Swift Aviation Group, Inc. ("Swift Aviation"), a completely separate and distinct entity.

     3.     Swift Air has nothing to do with the underlying transactions and occurrences which form the basis of Plaintiff's Rule B action against Swift Aviation.

4.    Swift Air is not, and has never been in the business of chartering or operating oil tankers, or purchasing, selling, or trading petroleum products or any other internationally traded products.

5.    Further, Swift Air has never been party to a contract for the sale of any petroleum product, nor has it ever entered into any charter party agreement.

6.    Swift Air is not a named defendant in Plaintiff's Verified Complaint.

7.    Swift Air is not a party to, or otherwise subject to, the terms and conditions of the charter parties between Mansel Oil Limited and Swift Aviation, referred to in the Verified Complaint.

8.    Swift Air is not subject to the London Arbitration Clauses in the charter parties between Mansel Oil and Swift Aviation, nor is Swift Air liable directly or indirectly for any of the freight or demurrage claims referred to in the Verified Complaint.

9.    Swift Air is organized under and pursuant to the laws of the State of Arizona, with its principal place of business located at 2710 E. Old Tower Road, Phoenix, Arizona, 85034. A copy of Swift Air's Articles of Organization is attached hereto as Exhibit A.

10.    Swift Air is in the business of providing aircraft brokerage, aircraft charter, and aircraft management services for corporate and commercial aircraft.

11.    In connection with the services it provides, Swift Air operates corporate and commercial aircraft under certificates of public convenience and necessity issued pursuant to Parts 121 and 135 of the Federal Aviation Regulations.

- 2 -

12.     Swift Air's customers in this regard include, but are not limit to, owners of corporate aircraft as well as professional sports teams and other entities and individuals.

13.     Swift Air and Defendant, Swift Aviation, are related corporations in that Swift Air is a subsidiary of Swift Aviation, but they are separately organized and incorporated, and operate independently of one another.

14.     Despite Swift Air's complete lack of any role in the transactions and occurrences at issue in this suit, Plaintiff attached an EFT sent to Swift Air by Elite Jet, Ltd. ("Elite"), a Canadian entity, in payment of air transportation services rendered to Elite by Swift Air. The transaction between Elite and Swift Air is completely unrelated to the charter party transactions described in Plaintiff's Verified Complaint.

15.     It is my belief that the EFT at issue was en route from Elite's bank in Canada to Swift Air's escrow bank account in Michigan.

16.     It is also my belief that Elite's Canadian bank used Garnishee, Bank of America, as an intermediary bank to wire the funds to Swift Air's escrow bank account at National City Bank in Michigan.

17.     In accordance with United States Department of Transportation regulations for Part 121 certificate holders, Swift Air holds an escrow bank account governed by an Air Carrier Depository Escrow Agreement, where its customers send payments for Swift Air's services. A copy of the Air Carrier Depository Escrow Agreement is attached hereto as Exhibit B.

18.     After Swift Air performs the services, the escrow account bank then distributes the payment to Swift Air's general commercial operating account.

- 3 -

19.    Swift Aviation does not have any ownership interest or entitlement to any portion of (a) Swift Air's escrow account with National City Bank, (b) Elite Jet, Ltd.'s $118,136.00 payment to Swift Air for services provided by Swift Air, or (c) Swift Air's general commercial operating account, which was the intended final destination for the EFT.

20.    "Swift Aviation Group" is a federally registered service mark owned and used by Swift Aviation and its subsidiaries and affiliates, including Swift Air.  Any use by Swift Air of the name "Swift Aviation Group" is not a reference to the incorporated entity Swift Aviation, but is rather a use of the registered service mark.

Dated:    Phoenix, Arizona

          March 20, 2008

                                        J. Kevin Burdette
                                        Vice President, Swift Air, LLC

Sworn to before me this
_28th_ day of March, 2008

Notary Public



JOANNE E. BOSTON
Notary Public - Arizona
Coconino County
My Comm. Expires May 4, 2010

# EXHIBIT A

MAR. 16. 2005 12:48PM        'E & EHRLICH

AZ CORPORATION COMMISSION
FILED

AZ Corp. Commission

01201105

MAR 1 6 2005

**FILE NO.** L-1199442-6    **ARTICLES OF ORGANIZATION**

1.    The name of this limited liability company is:

SWIFT AIR, L.L.C.

2.    The address of the known place of business and the name and business address of the agent for service of process are:

Known Place of Business:    2406 South 24th Street, Suite E100
Phoenix, Arizona 85034

Statutory Agent:    Gerald F. Ehrlich
4001 North Third Street, Suite 400
Phoenix, Arizona 85012

3.    There are one or more members of this limited liability company at the time of formation.

4.    Management of this limited liability company is vested in a Manager.

5.    The name and address of the Manager and of each Member owning a 20% or greater interest in the capital and profits of the Company are: or

SWIFT AVIATION GROUP, INC.
An Arizona corporation
2710 East Old Tower Road
Phoenix, Arizona 85034
Member

SWIFT AVIATION MANAGEMENT, INC.
An Arizona corporation
2710 East Old Tower Road
Phoenix, Arizona 85034
Manager

Dated the 15th day of March, 2005.

Kevin Burdette, Organizer
2406 South 24th Street, Suite E100
Phoenix, Arizona 85034

ACCEPTANCE BY AGENT

The undersigned hereby accepts the duties of Statutory Agent and agrees to act in that capacity until resignation or removal.

Gerald F. Ehrlich

C:\Documents and Settings\kburdette\LAWYER_AVIATION.com\Settings\Temporary Internet Files\OLK17\Articles Organization (2).doc

$ **PAID**
85
992,850

# EXHIBIT B

## AIR CARRIER DEPOSITORY ESCROW AGREEMENT

This Agreement made and entered into as of the 1ˢᵗ day of November, 2006 by and between Swift Air, LLC, hereinafter called "Carrier", and NATIONAL CITY BANK, a National Banking Association, having a place of business at 1001 South Worth, Birmingham, MI 48009, hereinafter called "Bank".

WHEREAS, Carrier is desirous of furnishing passenger charters, including Public Charters, originating in the United States pursuant to 14 CFR Part 212 and, with respect to Public Charters, 14 CFR Part 380, regulations of the U.S. Department of Transportation ("DOT").

WHEREAS, Carrier represents that it is either an air carrier holding a currently effective certificate issued under 49 U.S.C. 41102 or a foreign air carrier holding a currently effective permit issued under 49 U.S. C. 41302;

WHEREAS, Carrier will enter into a charter contract for passenger air transportation ("Charter Contract") as prescribed by 14 CFR 212.3 and, with respect to Public Charters, 14 CFR 380.29, with each charterer (the "Charterer); and

WHEREAS, Carrier desires to comply with 14 CFR 212.8 and to enter into an Agreement, designating Bank as depository (the "Depository Agreement");

WHEREAS, Bank is agreeable to being named as depository;

NOW, THEREFORE, the parties hereto, for and in consideration of the premises and the covenants hereinafter made, hereby agree as follows:

### SECTION 1: DEPOSITS

1.1 Carrier hereby designates Bank as the depository for funds paid by a Charterer in connection with the performance of charter air transportation by Carrier pursuant to designated Charter Contracts.

1.2 Bank shall establish and maintain a separate account for each charter, flight or rotation included in the Charter Contract. Bank shall be responsible hereunder only for amounts actually received by it and which

(a) by the terms of the instrument evidencing the transfer itself state that the funds are payable to the Bank for deposit to the escrow account of carrier.

Case 1:08-cv-01086-GBD    Document 28-2    Filed 04/21/2008    Page 68 of 77

Case 1:08-cv-01086-GBD    Document 11    Filed 03/24/2008    Page 9 of 18
03/14/2008 14:11 FAX  248 901 2496    NAT'L CITY EMERGING MARK    ☒003/012

(b) by the terms of the same instrument of transfer or separate document, specify the Charterer's name and address, the dates of departure and return, destination abroad and destination upon return and whether the funds are to be split between the inbound and outbound flights. Bank is authorized to return funds to the Charterer if the information in this subparagraph is not supplied to Bank within two business days after receipt of the funds.

1.3 Bank agrees to receive funds from the following sources:

(a) By check or wire transfer from the Charterer's depository escrow account

(b) By check or wire transfer if Bank is the depository escrow agent for Charterer.

1.4 Bank shall return all checks received by it pursuant to this Agreement which shall be dishonored for any reason, to the sending party. Bank shall make the appropriate adjustment to the applicable Account to reflect the return of said dishonored check unless Charterer or Carrier shall have given Bank prior authority to debit its own account for the amount of such check. Bank shall not be required to accept checks on any charter, flight or rotation from any party whose prior checks have been dishonored unless payment is made either by cashiers check, money order, certified check or by debiting Charterer's or Carrier's account as provided above.

## SECTION 2: DISBURSEMENTS

2.1 Carrier shall certify in writing to Bank, upon completion of a charter, flight or rotation, the date upon which such charter, flight or rotation was completed. After receipt of said certification, Bank shall remit to Carrier from the separate escrow account maintained for such charter, flight or rotation the amount due for said charter, flight or rotation to the extent of the availability of funds to such account.

2.2 In the event that the Charter Contract provides for a round trip charter, Carrier may certify to Bank, upon completion of the outbound segment of the round trip charter, the date upon which such outbound segment was completed. After the receipt of said certificate by Bank, Bank shall remit to Carrier from the separate escrow account maintained for such round trip charter the portion of the price of the charter certified by Carrier to be applicable to such outbound segment (less any commissions retained by any travel agent) to the extent of availability of funds in such account. Upon completion of the return segment of the round trip charter, Carrier shall certify in writing to Bank the date upon which such return segment was completed. After receipt of such certification by Bank, Bank shall remit to Carrier from the separate escrow account maintained for such round trip charter the remaining portion of the price of the Charter Trip to the extent of availability of funds in such account.

2

03/14/2008 14:11 FAX  248 901 2496          NAT'L CITY EMERGING MARK                    ☒004/012

2.3 Whenever Carrier has notified the Bank, by written certification, of the cancellation of any charter, flight or rotation trip for which a separate escrow account has been established, upon receipt of such notice Bank shall refund all payments (less cancellation penalties provided for in the Charter Contract and properly certified by Carrier to be properly deductible from such payments), received and held by Bank in such separate escrow account directly to Charterer or its assigns to the extent of the availability of funds in such account. In the case of a charter, flight or rotation for less than the entire capacity of an aircraft, such certification shall contain Carrier's representation either that the charter, flight or rotation was cancelled by Carrier or, if the Charter, flight or rotation was cancelled by the Charterer, that the Carrier has accepted a substitute charterer.

## SECTION 3: AMENDMENT AND TERMINATION

3.1 This Agreement may be amended in writing by the parties hereto provided, however, that such amendment may be subject to approval by DOT.

3.2 Either party hereto may terminate this Agreement at any time by mailing notice of its intention to terminate by registered mail to the other party, Charterer and DOT, provided, however, that any such termination by Carrier shall be subject to approval by DOT. Any such termination by Bank shall become effective 30 days following the date of mailing such notice. Notwithstanding the foregoing, no termination of this Agreement shall affect any obligation of Carrier under Section 4 of this Agreement.

## SECTION 4: RESPONSIBILITIES OF BANK AND INDEMNITY

4.1 It is agreed that the duties of Bank are only such as are herein specifically provided and are solely ministerial in nature and that it will incur no liability whatsoever except for willful misconduct or gross negligence so long as it has acted in good faith. Bank shall not have any responsibility to determine whether or not Carrier deposits with Bank all or any sums received by Carrier in connection with a Charter Trip or to determine whether Carrier fulfills its obligations under regulations of DOT, the Charter Contract or this Agreement.

4.2 Bank shall be under no responsibility in respect to any of the items deposited with it other than faithfully to follow the instructions herein contained. It may seek legal counsel and shall be fully protected in any action taken in good faith in accordance with such counsel's advice. It shall not be required to defend any legal proceedings which may be instituted against it in respect of the subject matter of these instructions unless requested so to do by Carrier and indemnified to its satisfaction against the cost and expense of such defense. It shall not be required to institute legal proceedings of any kind. It shall have no responsibility for the genuineness or validity of any document or other item deposited with it and it shall be fully protected if acting in accordance with any written instructions given to it hereunder and believed by it to have been signed by the proper parties.

03/14/2008 14:11 FAX   248 901 2496          NAT'L CITY EMERGING MARK                    Ⓩ005/012

4.3 Carrier hereby agrees to assume liability for, and does hereby indemnify, protect, save and keep harmless Bank and its successors, agents and servants from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, or expenses of any kind which may be imposed on, incurred by, or asserted against Bank in any way relating to, or arising out of, this agreement or the enforcement of any of the terms hereof by any person not a party hereto except only in the case of gross negligence or bad faith on the part of the Bank, whether of omission or commission, by Bank in the performance of its duties or obligations hereunder. Any obligation of Carrier under this paragraph shall be secured by all deposits and other property of Carrier now or hereafter in the possession, custody or control of Bank for any purpose and by security interest of lien as described in any security agreement, mortgage or document now or hereafter existing, executed by Carrier in favor of Bank.

4.4 In the event of any disagreement which results in adverse claims with respect to funds on deposit with Bank, Bank shall refuse to comply with any demands on it with respect thereto as long as such disagreement shall continue and in so refusing, Bank shall make no payment, and in doing so, Bank shall not be or become liable in any way to Carrier for Bank's failure or refusal to comply with such demands and it shall be entitled to continue so to refrain from acting and so to refuse to act until such conflicting or adverse demands shall finally terminate. Further, Bank in its sole discretion, may, in the event it has received written or verbal notice of any adverse or conflicting claim to funds in Accounts withhold payment under paragraph 2.1 hereof of up to 1 1/4 times the amount subject to such withheld balance of said funds until all of the adverse of conflicting claimants to such fund and all other parties having an interest therein have consented to the disbursement thereof or Bank has received a definitive, final court order directing disposition of such withheld funds.

## SECTION 5: ACCOUNTING AND REPORTING

5.1 Carrier agrees that no references to or use of the Bank's name will be made other than to indicate that the checks or money orders of Charterer should be made payable to the order of Bank.

5.2 Bank shall be entitled to such compensation for its services hereunder and any other services as may be agreed upon from time to time by Bank and Carrier.

5.3 Carrier shall furnish Bank with a copy of the Charter Contract entered into between Carrier and Charterer showing charter price, dates of settlement and/or price per seat.

4

5.4 Bank shall provide Carrier with monthly statements with respect to funds held under this Agreement.

5.5 Bank shall not be required to maintain documents received by it pursuant to this Agreement for more that two years after completion of the flight or rotation to which such documents related.

## SECTION 6: MISCELLANEOUS

6.1 All notices and other communications which are required under this Agreement shall be delivered to the following addresses or such other address as any party may hereafter designate in writing:

to the Bank:              National City Bank
                          Travel Industry Financial Services Department
                          755 W. Big Beaver Rd., Ste. 1400
                          Troy, MI 48084

To the Carrier:           Regulatory Analysis Division, X-57
                          Office of Aviation Analysis
                          U.S. Department of Transportation
                          400 Seventh Street, S.W.
                          Washington, D.C. 20590

or at such other address as either party hereto may hereafter designate in writing.

6.2 Neither party hereto may assign its rights or obligations hereunder without the prior written consent of the other party.

6.3 This Agreement is made and delivered in, and shall be construed in accordance with the laws of the State of Michigan. Carrier and Bank agree that any dispute arising under or in connection with this Agreement will be submitted to the Courts of the State of Michigan, to whose jurisdiction each party hereto hereby consents.

5

IN WITNESS WHEREOF, the parties hereto have executed this agreement by their officers hereunto duly authorized as of the day and year first above written.

**NATIONAL CITY BANK,**
a national banking association

_____DAVID J. VALPREDO_____
National City Bank Authorized Officer's Name

_____SENIOR VICE PRESIDENT_____
Title

_____(signature)_____
Signature

**AIR CARRIER**

_____Swift Air, LLC_____
Company Name

_____Tamara Keven Ceradotto_____
Air Carrier Authorized Officer's Name

_____EVP_____
Title

_____(signature)_____
Signature

6

03/14/2008 14:12 FAX  248 801 2486          NAT'L CITY EMERGING MARK                    @008/012

# SERVICE AGREEMENT

## (Air Carrier Depository Escrow Agreement)

THIS SERVICE AGREEMENT ("Service Agreement") is made and entered into as of the day of _November 1, 2006_ by and between National City Bank, a national banking association, ("Bank"), and ____Swift Air, LLC____ ("Carrier").

## Recitals

A.    Reference is made to a certain Air Carrier Depository Escrow Agreement of even date ("Depository Agreement") between the parties hereto.  Unless otherwise defined in this Service Agreement, all capitalized terms shall have the meanings ascribed to such terms in the Depository Agreement.

B.    To maintain the confidentiality of the terms and conditions governing Bank's escrow services, the Bank and Carrier enter into this Service Agreement which Bank will not file with the DOT.

The parties agree as follows:

1.    The Carrier shall compensate Bank for its services in accordance with the Bank's then current Fee Schedule, set forth on the attached Exhibit A.  Bank shall provide Carrier with sixty (60) days' prior written notice of any changes to such Fee Schedule.  Carrier shall reimburse Bank for all out of pocket and employee overhead costs incurred (including reasonable legal fees incurred by Bank) in disbursing Escrow Funds upon the failure of the Carrier to perform services under the Charter Contract. Bank shall have the right to retain all documents and/or other things of value owned by Carrier until Carrier has paid all amounts owed by Carrier to Bank.

2.    Pursuant to current DOT regulations, Bank shall invest funds held under the Depository Agreement ("Escrow Funds") in an FDIC insured interest bearing deposit account maintained at National City Bank and its successors and assigns.  Bank, in its sole discretion, is further authorized to invest the Escrow Funds in one or more interest bearing deposit accounts. All earnings on the Escrow Funds are subject to backup withholding penalties unless either a properly completed Internal Revenue Service form W8 or W9 certification is submitted by Carrier to Bank.

3.    Unless we have otherwise agreed in writing, Bank will provide weekly deposit statements and comprehensive monthly accounting reports for each charter flight.

4.    This Service Agreement is subject to annual review by the Bank.

1

**NATIONAL CITY BANK**

By: _David J. Valpredo_

Its:  Senior Vice President
      Travel Services Manager

AIR CARRIER

_Swift Air, LLC_
(Company Name)

_James Kevin Bartoldo_
(Carrier Authorized Officers' Name)

_EVP_
(Title)

_____
(Signature)

2

03/14/2008 14:12 FAX  248 901 2498        NAT'L CITY EMERGING MARK                    ☒010/012

**Certified Copy of Resolution or Authorization For Establishing Deposit Escrow Accounts**

by

_____ Swift Air, LLC _____ , (the, "Company")

☐  a corporation        ☑  a limited liability company

☐  a partnership        ☐  a limited liability partnership
which is incorporated/organized/formed in the state of _____

or ☐  a sole proprietorship under a trade or assumed name registered in the state of ____
_____ (Go directly to the Exception Certificate on the next page.)

The persons whose signatures appear below on this page, or any one of them, (each, an "Authorized Signer") shall:

1.    ESTABLISH DEPOSITORY ESCROW ACCOUNTS from time to time with National City Bank ("Bank")
to hold funds received by this Company for the benefit of third parties in connection with travel services offered,
coordinated or arranged by this Company.

2.    NEGOTIATE AND EXECUTE such escrow agreements and related documents prepared by the Bank
between or among this Company, the Bank and such third parties as deemed necessary by the Bank with such
changes therein as approved by the Authorized Signer. The approval of such changes shall be conclusively
evidenced by such Authorized Signer's execution thereof.

3.    APPOINT PERSONS authorized to direct the transfer of available funds payable to the Company and to
confirm the dollar amount that should be released to third parties under any escrow agreement (each, an "Authorized
Money Transfer Agent") by delivery of an Appointment of Money Transfer Agents. The Bank is authorized to rely
upon the orders of any Authorized Money Transfer Agent whether payable to the order or deposited into the account
of any Authorized Money Transfer Agent or any other person or legal entity.

4.    This Resolution or Authorization, adopted as of _____, 200___ , is retroactive,
and any acts referred to which were performed prior to the adoption of this Authorization are ratified and affirmed.

Each of the Authorized Signers certifies that this Company is:

☑ a **limited liability company** and all Members have signed below and on the next page

☐ either a **partnership** or **limited partnership** and all general partners have signed below and on the next page

☐ a **corporation** and the Secretary has signed the certification on the next page.

☐ a **limited liability company with only one member.** Member must sign Exception Certificate on the next page

Signature _____              Signature _____

Name and title  LLC  Swift Aviation Group       Name and title _____


Signature _____              Signature _____

Name and title _____         Name and title _____

Remaining Members or Partners who are not Authorized Signers must sign on the next page.

Signature _____          Signature _____

Name and title _____          Name and title _____

Signature _____          Signature _____

Name and title _____          Name and title _____

Signature _____          Signature _____

Name and title _____          Name and title _____

## EXCEPTION CERTIFICATE

☐ The Company is a limited liability company and I am its sole member. This is permitted under the law of the state in which the Company is organized.

☐ I am a sole proprietor operating under the assumed or trade name of the Company. I attach a copy of (1) my driver's license and (2) the state or local government document authorizing me to operate under such Company name.

Signature _____

Print name _____

## For Corporations Only

The undersigned hereby certifies to National City Bank that the Board of Directors of this Company adopted the above resolution as of the date set forth therein and that it is in conformity with the charter and by-laws of said corporation and in full force and effect:

IN WITNESS WHEREOF, I have hereunto set my hands as Secretary of said corporation and suffixed the corporate seal this_____day of_____, 200__.

Signature_____
                    Secretary

Printed name _____

                                        (Corporate Seal)

In case the Secretary is the only Authorized Signer, the undersigned also certifies the accuracy of the foregoing Board of Director resolution:

Signature_____

An officer of the Corporation other than the Secretary

Printed name _____

03/14/2008 14:12 FAX  248 901 2498          NAT'L CITY EMERGING MARK          ☒012/012

## NEW BUSINESS APPROVAL FORM

**Location:** National City Bank of Michigan/Illinois

☒ **NEW**          ☐ **EXISTING**

| | |
|---|---|
| **Account Name:** | Swift Air, LLC |
| **Account Type:** | · DOT AIR |
| **Address, City and State:** | 2406 South 24th Street, Suite E190, Phoenix, AZ 85034 |
| **EIN / TIN:** | 20-2512508          Country of Citizenship: |
| **Type of Entity:** | ☒ Corporation/LLC    ☐ Partnership    ☐ Sole Proprietorship* |

*(Record the following information of the owner of sole proprietorships)

**Name:** _____          **Date of Birth:** _____

**Address, City and State:** _____

**Drivers License/Passport No.:** _____    **Expiration date:** _____    **Issuance date (if any):** _____

Customer Identification Verification/OFAC

Information Obtained for CIP Requirements:

☒ Escrow Agreement          ☒ Articles of Incorporation/Organization/Partnership

☐ Other (list) _____

☒ W-9 / W-8

**OFAC/SDN List checked by:** _____    and    _____

| | | |
|---|---|---|
| **Acceptance Fee:** | $250.00 | ☐ Waived Acceptance Fee |
| **Standard Fee:** | | One Time Fees: N/A |
| **Annual Fees:** | $2,000.00    Estimated Mkt Value: | 10,000,000.00 |
| **Fee Comments:** | Fee Tiered interest split based on balances | |
| **Background Information:** | Air Carrier that runs single entity and some ad hoc charters. Currently working with around 16 - 19 | |
| | professional sports teams (basketball/hockey). Hopes to add some Baseball teams in the spring. | |

**Comments:** _____

| | | |
|---|---|---|
| **Submitted By:** | _signature_ | Date    11/3/2006 |
| **Acceptance Approved:** | _signature_ | Date    11/3/2006 |
| **Business Referred By:** | | Date: |

# Exhibit 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

MANSEL OIL LIMITED,

                    Plaintiff,

- against -

SWIFT AVIATION GROUP, INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ECF CASE**

08 Civ. 1086 (GBD)

Electronically Filed

**DECLARATION OF JEFF A. SHUMWAY**

STATE OF ARIZONA        )
                                 ) ss.:
COUNTY OF MARICOPA     )

JEFF A. SHUMWAY, being duly sworn, deposes and says:

1.    I am the Chief Financial Officer of Swift Aviation Group, Inc. ("Swift Aviation Group"), the Defendant in the above captioned action. Swift Air, LLC ("Swift Air") is a wholly owned subsidiary of Swift Aviation Group and is the intervenor on this motion. I have personal knowledge of the facts and circumstances set forth in this Declaration. I submit this Declaration in support of Swift Air's Motion to Vacate the Maritime Order of Attachment.

2.    Swift Aviation Group and Plaintiff Mansel Oil Limited ("Mansel Oil") have a dispute concerning certain charter party agreements, namely, a charter party dated August 23, 2007 ("the Torm Sofia Charter") and another charter party agreement dated June 11, 2007 ("the Overseas Limar Charter"). Mansel Oil contends that Swift Aviation Group is in breach of the Torm Sofia Charter and the Overseas Limar Charter due to an alleged failure to pay certain

freight and demurrage charges under the Torm Sofia Charter and Overseas Limar Charter. Swift Aviation Group denies these contentions.

3.    The dispute between Mansel Oil and Swift Aviation Group is to be resolved through maritime arbitration in London and English law governs. On March 26, 2008, Mansel Oil commenced the maritime arbitration against Swift Aviation Group in London. A copy of Mansel Oil's notice of commencement of maritime arbitration is attached hereto as Exhibit A.

4.    On February 5, 2008, Mansel Oil obtained an order from this Court that a Process of Maritime Attachment and Garnishment issue pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims an attachment order "against all tangible or intangible property belonging to, claimed by, or being held for the Defendant by any garnishees within this District, including but not limited to electronic funds transfers originated by, payable to, or otherwise for the benefit of Defendant."

5.    On February 15, 2008, Plaintiff in this case attached an electronic funds transfer ("EFT") in the amount of US $118,136.00 from Elite Jet, Ltd. ("Elite"), a Canadian entity, to Swift Air. These funds were restrained by Bank of America. Swift Aviation Group has no interest in the attached funds, which belong exclusively to its subsidiary Swift Air, a separate corporation which operates an air transportation charter business.

6.    Swift Aviation Group is organized under and pursuant to the laws of the State of Arizona, with its principal place of business located at 2710 E. Old Tower Road, Phoenix, Arizona, 85034. A copy of Swift Aviation Group's Articles of Incorporation is attached hereto as Exhibit B.

7.    Swift Aviation Group is a holding company that has an interest in different subsidiaries, including Swift Air. Although Swift Aviation Group is the parent corporation of

2

Swift Air, the two corporations are separately incorporated and organized and they operate independently of each other. Swift Air maintains a separate place of business from Swift Aviation Group and is headquartered at 2406 S. 24th Street, Phoenix, Arizona 85034.

8.      Both Swift Aviation Group and Swift Air are fully capitalized.

9.      Swift Aviation Group has its own Board of Directors and personnel.

10.     Swift Aviation Group does not interfere in the business operations of Swift Air, nor is its business interfered with by Swift Air.

11.     The term "Swift Aviation Group" is a federally registered service mark. Its use by Swift Aviation Group and its subsidiaries is not meant in any way to refer to the corporation, Swift Aviation Group.

12.     As noted earlier, the Process of Maritime Attachment and Garnishment against Swift Aviation Group was issued in connection with the dispute under the charter party agreements Torm Sofia Charter and Overseas Limar Charter between Swift Aviation Group and Mansel Oil. The impugned charter party agreements are between Swift Aviation Group and Mansel Oil alone. Swift Air is not a party to the Torm Sofia Charter and the Overseas Limar Charter. Nor is it otherwise involved with the dealings between Swift Aviation Group and Mansel Oil.

13.     However, because Elite included Swift Aviation Group's name on the EFT's wire between Bank of America, and Swift Air's bank account at National City Bank in Michigan, Plaintiff was able to attach the funds of Swift Air pursuant to the Process of Maritime Attachment and Garnishment that was issued against Swift Aviation Group.

14.     Swift Aviation Group is not a party to the aircraft charter agreement between Elite and Swift Air. Further, this agreement has no relation to the separate maritime charter party

3

agreements Torm Sofia Charter and Overseas Limar Charter between Swift Aviation Group and Mansel Oil. Swift Aviation Group has no rights in Swift Air's account with National City Bank. Thus, there is no basis for the aforementioned funds to have been attached.

Dated: Phoenix, Arizona
      April 1, 2008

 

Jeff Shumway
Chief Financial Officer,
Swift Aviation Group

Sworn to before me this
_____ day of April, 2008

Patricia S. VanBenschoten
Patricia S. VanBenschoten

Notary Public State of Arizona
Maricopa County
Patricia S VanBenschoten
My Commission Expires
01/29/2010

My Comm. Expires:

4

# EXHIBIT A

One, St Paul's Churchyard
London EC4M 8SH
Telephone +44 (0)20 7329 4422
Fax +44 (0)20 7329 7100
DX No. 64 Chancery Lane
www.shlegal.com



**STEPHENSON HARWOOD**

### FAX

| To | Swift Aviation Group<br>Attn: J Kevin Burdette | At fax number | 001 602 264 5006 |
|---|---|---|---|
| | Skadden, Arps, Slate, Meagher &<br>Flom LLP<br>Attn: John L Gardiner /   Julie Bédard | | 001 212 735 2000 |
| From | Rovine Chandrasekera<br>Direct fax 020 7003 8507 | Our ref | 979/45-03151 |
| Pages (inc) | 1 | Date | 26 March 2008 |

Dear Sirs

**MV "OVERSEAS LIMAR" – charterparty dated 11 July 2007 between Mansel Oil Limited and Swift Aviation Group Inc ("Swift"), (the "Charterparty")**

We refer to recent correspondence and our letter of 16 January. Unfortunately Swift have failed to pay sums due under the Charterparty.

Therefore pursuant to clause 10 of the additional clauses to the Charterparty, our client hereby elects to resolve the current dispute by arbitration in London according to English law.

We hereby formally notify you that our clients have commenced arbitration proceedings against your clients by appointing Mr Michael Baker-Harber (details below) as their arbitrator. As per the Charterparty, we now call on Swift to appoint their arbitrator and notify us of that appointment within 14 days.

Mr Baker-Harber's details are as follows:

> 14 Cheyne Gardens      Tel:    020 7351 1328
> London               Fax:    020 7351 1623
> SW3 5QT         Email: mbh@mbharb.fsnet.co.uk

Yours faithfully

STEPHENSON HARWOOD

**CONFIDENTIALITY NOTICE**
The information contained in this transmission is confidential. It may also be legally privileged. It is intended only for the addressee(s) stated above.
If you are not an addressee you should not disclose, copy, circulate or in any other way use the information contained in this transmission.
Such unauthorised use may be unlawful. If you have received this transmission in error, please telephone us immediately so that we can arrange for its return.

PAGE 1
IF ALL THE PAGES ARE NOT SATISFACTORILY RECEIVED PLEASE TELEPHONE +44 (0)20 7329 4422
The partners in the firm are solicitors or registered foreign lawyers.
\LONLIVE\6518949.1   A list of names of the partners and their professional qualifications is open for inspection at the above address.

One, St Paul's Churchyard
London EC4M 8SH
Telephone +44 (0)20 7329 4422
Fax +44 (0)20 7329 7100
DX No. 64 Chancery Lane
www.shlegal.com



**STEPHENSON HARWOOD**

## FAX

| | | | |
|---|---|---|---|
| To | Swift Aviation Group<br>Attn: J Kevin Burdette | At fax number | 001 602 264 5006 |
| | Skadden, Arps, Slate, Meagher &<br>Flom LLP<br>Attn: John L Gardiner / Julie Bédard | | 001 212 735 2000 |
| From | Rovine Chandrasekera<br>Direct fax 020 7003 8507 | Our ref | 979/46-02883 |
| Pages (inc) | 1 | Date | 26 March 2008 |

Dear Sirs

**MT "TORM SOFIA"– charterparty dated 23 August 2007 between Mansel Oil Limited and Swift Aviation Group Inc ("Swift"), (the "Charterparty")**

We refer to recent correspondence and our letter of 16 January.  Unfortunately Swift have failed to pay sums due under the Charterparty.

Therefore pursuant to clause 10 of the additional clauses to the Charterparty, our client hereby elects to resolve the current dispute by arbitration in London according to English law.

We hereby formally notify you that our clients have commenced arbitration proceedings against your clients by appointing Mr Michael Baker-Harber (details below) as their arbitrator.  As per the Charterparty, we now call on Swift to appoint their arbitrator and notify us of that appointment within 14 days.

Mr Baker-Harber's details are as follows:

| | |
|---|---|
| 14 Cheyne Gardens | Tel:  020 7351 1328 |
| London | Fax:  020 7351 1623 |
| SW3 5QT | Email:  mbh@mbharb.fsnet.co.uk |

Yours faithfully

**STEPHENSON HARWOOD**

**CONFIDENTIALITY NOTICE**

The information contained in this transmission is confidential.  It may also be legally privileged.  It is intended only for the addressee(s) stated above.
If you are not an addressee you should not disclose, copy, circulate or in any other way use the information contained in this transmission.
Such unauthorised use may be unlawful.  If you have received this transmission in error, please telephone us immediately so that we can arrange for its return.

**PAGE 1**
IF ALL THE PAGES ARE NOT SATISFACTORILY RECEIVED PLEASE TELEPHONE +44 (0)20 7329 4422
The partners in the firm are solicitors or registered foreign lawyers.
\\LONLIVE\6518810.1   A list of names of the partners and their professional qualifications is open for inspection at the above address.

**EXHIBIT B**

**COMMISSIONERS**
MARC SPITZER - Chairman
WILLIAM A. MUNDELL
JEFF HATCH-MILLER
MIKE GLEASON
KRISTIN K. MAYES



**ARIZONA CORPORATION COMMISSION**

BRIAN C. MCNEIL
Executive Secretary

JOANNE C. MACDONNELL
Director, Corporations Division

March 8, 2004

KATHY J SHELBY
LANE & EHRLICH LTD
4001 N 3RD ST STE 400
PHOENIX, AZ  85012

RE: SWIFT AVIATION GROUP, INC.
File Number:  -1121306-9

We are pleased to notify you that your Articles of Incorporation were filed on February 24, 2004.

You must publish a copy of your Articles of Incorporation.  The publication must be in a newspaper of general circulation in the county of the known place of business in Arizona (as filed with the Commission) for three (3) consecutive publications.  A list of newspapers is available on the Commission web site.  An affidavit from the newspaper, evidencing such publication, must be delivered to the Commission for filing within NINETY (90) DAYS from the date of this letter.  Make sure the newspaper publishes the corporation documents using the exact name filed with the Commission.

All corporations transacting business in Arizona are required to file an Annual Report with the Commission, on the anniversary of the date of incorporation.  Each year, a preprinted Annual Report form will be mailed to the corporation's known place of business approximately two months prior to the due date of the report.  Should the report fail to arrive, contact the Commission.  It is imperative that corporations notify the Commission immediately (in writing) if they change their corporate address, statutory agent or agent address.  Address change orders must be executed (signed) by a corporate officer.  Postal forwarding orders are not sufficient.

The Commission strongly recommends that you periodically check Commission records regarding the corporation.  The Commission web site www.cc.state.az.us/corp contains information specific to each corporation of record and is a good general source of information.

If you have any questions or need further information, please contact us at (602) 542-3135 in Phoenix, (520) 628-6560 in Tucson, or Toll Free (Arizona residents only) at 1-800-345-5819.

Sincerely,
THERESA TITTLE
Examiner
Corporations Division

CF:04, Rev:01/2004

1300 WEST WASHINGTON, PHOENIX, ARIZONA 85007-2929 / 400 WEST CONGRESS STREET, TUCSON, ARIZONA 85701-1347

www.cc.state.az.us - 602-542-3135

AZ CORP. COMMISSION
FILED

FEB 2 4 2004

APPR. *Levi Tittle*
TERM.
DATE 2/24/2004
← 1121306 - 9

ARTICLES OF INCORPORATION

OF

SWIFT AVIATION GROUP, INC.

The undersigned incorporator, desiring to form a corporation under the laws of the State of Arizona, adopts the following Articles of Incorporation.

## ARTICLE I

The name of the corporation shall be:

SWIFT AVIATION GROUP, INC. *ok ub*

## ARTICLE II

The incorporator of the corporation is:

Gerald F. Ehrlich
4001 N. 3rd Street, Suite 400
Phoenix, AZ 85012

All powers, duties and responsibilities of the incorporator shall cease at the time of delivery of these Articles of Incorporation to the Arizona Corporation Commission for filing.

## ARTICLE III

The corporation initially intends to conduct the business of overseeing the operations of its subsidiaries and to do all and everything advantageous and necessary to engage in said business.

## ARTICLE IV

The purpose for which this corporation is organized is the transaction of any or all lawful business for which corporations may be incorporated under the laws of the State of Arizona as they may be amended from time to time.

## ARTICLE V

The total authorized shares of the corporation shall be fifty thousand (50,000) common shares with a par value of One Dollar ($1.00) each.

The shares of this corporation may be issued for cash, services, or property, upon such conditions and terms as may be determined by the Board of Directors, who shall have full power and authority to fix the value of the property or services for which shares may be issued and whose valuations shall be conclusive, and the shares so issued shall be fully paid and nonassessable.

The Board of Directors may from time to time cause the corporation to purchase its own shares to the extent of the unreserved and unrestricted earned and capital surplus of the corporation.

## ARTICLE VI

The affairs of the corporation shall be conducted by a Board of Directors, the number of which shall be determined at the annual meeting of the shareholders in the manner specified in the By-Laws of the corporation. Directors shall be elected at the annual meeting of the shareholders to be held at such time as may be provided in the By-Laws of the corporation and such Directors shall serve until their successors are elected and qualified. The following person shall comprise the initial Board of Directors, who shall serve until his successor is elected and qualified:

Jerry Moyes
2200 S. 75th Avenue
Phoenix, Arizona 85043

## ARTICLE VII

The private property of the shareholders, directors, and officers of this corporation shall be forever exempt from corporate debts and liabilities.

To the fullest extent permitted by Title 10 of the Arizona Revised Statutes as the same exists or may hereafter be amended, no director shall be liable to this Corporation or its

stockholders for monetary damages for breach of fiduciary duty as a director.

No repeal or modification of the foregoing paragraph by the stockholders of this Corporation shall adversely affect any right or protection of a director existing at the time of such repeal or modification.

## ARTICLE VIII

The corporation shall indemnify any person who incurs expenses by reason of the fact he or she is or may be an officer, director or agent of the Corporation. This indemnification shall be mandatory in all circumstances in which indemnification is permitted by law

## ARTICLE IX

Gerald F. Ehrlich, with offices at 4001 North Third Street, Suite 400, Phoenix, Arizona, is hereby appointed the initial statutory agent of the corporation. The Board of Directors of this corporation may revoke this appointment of agent at any time and shall have power to fill any vacancy in such position.

IN WITNESS WHEREOF, the incorporator has hereunto set his hand this 23d day of Fehruary, 2004.

Gerald F. Ehrlich

# Exhibit F

MAR-08-2004  14:55                                                          P.02/08

COMMISSIONERS
MARC SPITZER - Chairman
WILLIAM A. MUNDELL
JEFF HATCH-MILLER
MIKE GLEASON
KRISTIN K. MAYES

BRIAN C. MCNEIL
Executive Secretary

JOANNE C. MACDONNELL
Director, Corporations Division



**ARIZONA CORPORATION COMMISSION**

March 8, 2004

KATHY J SHELBY
LANE & EHRLICH LTD
4001 N 3RD ST STE 400
PHOENIX, AZ 85012

RE: SWIFT AVIATION GROUP, INC.
File Number: -1121306-9

We are pleased to notify you that your Articles of Incorporation were
filed on February 24, 2004.

You must publish a copy of your Articles of Incorporation. The publi-
cation must be in a newspaper of general circulation in the county of
the known place of business in Arizona (as filed with the Commission)
for three (3) consecutive publications. A list of newspapers is avail-
able on the Commission web site. An affidavit from the newspaper,
evidencing such publication, must be delivered to the Commission for
filing within NINETY (90) DAYS from the date of this letter. Make sure
the newspaper publishes the corporation documents using the exact name
filed with the Commission.

All corporations transacting business in Arizona are required to file
an Annual Report with the Commission, on the anniversary of the date
of incorporation. Each year, a preprinted Annual Report form will be
mailed to the corporation's known place of business approximately two
months prior to the due date of the report. Should the report fail to
arrive, contact the Commission. It is imperative that corporations
notify the Commission immediately (in writing) if they change their
corporate address, statutory agent or agent address. Address change
orders must be executed (signed) by a corporate officer. Postal for-
warding orders are not sufficient.

The Commission strongly recommends that you periodically check Commis-
sion records regarding the corporation. The Commission web site
www.cc.state.az.us/corp contains information specific to each
corporation of record and is a good general source of information.

If you have any questions or need further information, please contact us
at (602) 542-3135 in Phoenix, (520) 628-6560 in Tucson, or Toll Free
(Arizona residents only) at 1-800-345-5819.

Sincerely,
THERESA TITTLE
Examiner
Corporations Division

CF:04, Rev:01/2004

1300 WEST WASHINGTON, PHOENIX, ARIZONA 85007-2929 / 400 WEST CONGRESS STREET, TUCSON, ARIZONA 85701-1347
www.cc.state.az.us - 602-542-3135

AZ. CORP. COMMISSION
FILED

FEB 2 4 2004

APPR. *Teri Tittle*
TERM.
DATE *2/24/2004*
← *1121306 - 9*

# ARTICLES OF INCORPORATION

## OF

## SWIFT AVIATION GROUP, INC.

The undersigned incorporator, desiring to form a corporation under the laws of the State of Arizona, adopts the following Articles of Incorporation.

## ARTICLE I

The name of the corporation shall be:

### SWIFT AVIATION GROUP, INC. *ok ub*

## ARTICLE II

The incorporator of the corporation is:

Gerald F. Ehrlich
4001 N. 3rd Street, Suite 400
Phoenix, AZ 85012

All powers, duties and responsibilities of the incorporator shall cease at the time of delivery of these Articles of Incorporation to the Arizona Corporation Commission for filing.

## ARTICLE III

The corporation initially intends to conduct the business of overseeing the operations of its subsidiaries and to do all and everything advantageous and necessary to engage in said business.

## ARTICLE IV

The purpose for which this corporation is organized is the transaction of any or all lawful business for which corporations may be incorporated under the laws of the State of Arizona as they may be amended from time to time.

## ARTICLE V

The total authorized shares of the corporation shall be fifty thousand (50,000) common shares with a par value of One Dollar ($1.00) each.

The shares of this corporation may be issued for cash, services, or property, upon such conditions and terms as may be determined by the Board of Directors, who shall have full power and authority to fix the value of the property or services for which shares may be issued and whose valuations shall be conclusive, and the shares so issued shall be fully paid and nonassessable.

The Board of Directors may from time to time cause the corporation to purchase its own shares to the extent of the unreserved and unrestricted earned and capital surplus of the corporation.

## ARTICLE VI

The affairs of the corporation shall be conducted by a Board of Directors, the number of which shall be determined at the annual meeting of the shareholders in the manner specified in the By-Laws of the corporation. Directors shall be elected at the annual meeting of the shareholders to be held at such time as may be provided in the By-Laws of the corporation and such Directors shall serve until their successors are elected and qualified. The following person shall comprise the initial Board of Directors, who shall serve until his successor is elected and qualified:

Jerry Moyes
2200 S. 75th Avenue
Phoenix, Arizona 85043

## ARTICLE VII

The private property of the shareholders, directors, and officers of this corporation shall be forever exempt from corporate debts and liabilities.

To the fullest extent permitted by Title 10 of the Arizona Revised Statutes as the same exists or may hereafter be amended, no director shall be liable to this Corporation or its

stockholders for monetary damages for breach of fiduciary duty as a director.

No repeal or modification of the foregoing paragraph by the stockholders of this Corporation shall adversely affect any right or protection of a director existing at the time of such repeal or modification.

## ARTICLE VIII

The corporation shall indemnify any person who incurs expenses by reason of the fact he or she is or may be an officer, director or agent of the Corporation. This indemnification shall be mandatory in all circumstances in which indemnification is permitted by law

## ARTICLE IX

Gerald F. Ehrlich, with offices at 4001 North Third Street, Suite 400, Phoenix, Arizona, is hereby appointed the initial statutory agent of the corporation. The Board of Directors of this corporation may revoke this appointment of agent at any time and shall have power to fill any vacancy in such position.

IN WITNESS WHEREOF, the incorporator has hereunto set his hand this 23ᵈ day of February, 2004.


Gerald F. Ehrlich

# Exhibit 11

8437MANM.txt

1

8437MANM
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  -----------------------------x
2
3  MANSEL OIL LIMITED,
3
4              Plaintiff,
4
5       v.                          08 Civ. 1086
5
6  SWIFT AVIATION GROUP, INC.,
6
7              Defendant.
7
8  -----------------------------x
8
9                                April 3, 2008
9                                11:00 a.m.
10
10  Before:
11
11               HON. GEORGE B. DANIELS
12
12                               District Judge
13
13                    APPEARANCES
14
14  BLANK ROME LLP
15       Attorneys for Plaintiff
15  BY:  LeROY LAMBERT
16
16  CHAMBLEE & RYAN
17       Attorneys for Plaintiff
17  BY:  HEATHER FORGEY
18
18  SKADDEN ARPS SLATE MEAGHER & FLOM LLP
19       Attorneys for Defendant
19  BY:  JOHN L. GARDINER
20       JULIE BEDARD
21  MCDERMOTT & RADZIK LLP
21       Attorneys for Non-party Intervenor
22  BY:  EDWARD C. RADZIK
22
23  ZEICHNER ELLMAN & KRAUSE LLP
23       Attorneys for Non-party Garnishee Bank of America
24  BY:  BARRY J. GLICKMAN
25

                                                           2

8437MANM
1            (Case called)
2            (In open court)
3            MR. LAMBERT:  LeRoy Lambert of Blank Rome for
4  plaintiff Mansel Oil.
5            THE COURT:  Good morning.
6            MR. RADZIK:  Edward Radzik of McDermott & Radzik for
7  intervenor Swift Air LLC.  And with me is Heather Forgey of the
8  Dallas law firm Chamblee & Ryan.
9            THE COURT:  Good morning.
10            MR. GARDINER:  Good morning, your Honor.  John

8437MANM.txt

11  Gardiner from Skadden Arps for the defendant Swift Aviation
12  Group, Inc. and with me is Julie Bedard from the firm also.
13          THE COURT:  Good morning.
14          MS. BEDARD:  Good morning.
15          MR. GLICKMAN:  Good morning, Judge.  Barry J.
16  Glickman, Zeichner Ellman & Krause LLP on behalf of nonparty
17  garnishee Bank of America NA.
18          THE COURT:  Good morning, Mr. Glickman.
19          I guess maybe Mr. Radzik I should start with you, or
20  Mr. Gardiner.  You say they've got the wrong caption.
21          MR. RADZIK:  That's correct, your Honor.  I think we
22  have submitted ample, compelling third-party evidence proving
23  that Swift Air has exclusive ownership of this electronic fund
24  transfer.
25          THE COURT:  Well, let me just start with two issues
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                    3
8437MANM
1   that may be dispositive.  One is I'm not quite sure what --
2   maybe someone did submit a document, but I'm not quite sure
3   what it is that identifies Swift Aviation as the beneficiary of
4   this money.  Is there some document that somebody submitted to
5   me that tells me what that's supposed to mean?
6           MR. RADZIK:  If I may, I think it was helpful for
7   Mr. Lambert, and we appreciate it, for him to have submitted
8   the transcript of the transaction, and that's Exhibit 16 to his
9   affidavit.  That's a road map of this entire wire transfer
10  transaction from Elite's bank who is a customer of Swift Air
11  LLC.  We're trying to get the background of that, but it looks
12  like that was for air transportation provided by LLC for I
13  think for the Phoenix Suns to go up to Portland, basketball
14  team.  That's the business of Swift Air LLC, to provide
15  transportation for sports teams like the Phoenix Suns going up
16  to Portland to play the Trail Blazers.  That's what that
17  transaction is about.
18          Now, the wire transfer instructions on that indicated
19  that the beneficiary would be Swift Aviation Group.
20          THE COURT:  Well, where does it say that?  Just point
21  me to that document.  I'm not quite sure what context it says
22  that.
23          MR. LAMBERT:  Your Honor, if I may.  Page 4 of 7, your
24  Honor.
25          THE COURT:  Page 4 of Exhibit 7?
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                    4
8437MANM
1           MR. LAMBERT:  Page 4 of Exhibit 16.  There is seven
2   pages in that exhibit.
3           THE COURT:  Page 4 of Exhibit 16.  At the bottom where
4   it says beneficiary customer, Swift Aviation Group?
5           MR. LAMBERT:  Correct.
6           MR. RADZIK:  Right.
7           THE COURT:  Let me go back.
8           MR. RADZIK:  Mr. Berdette in his affidavit, in
9   paragraph 20, has explained that that is a business mark that
10  is owned by Swift Aviation but it's also utilized by Swift Air.
11          Now, he has also explained in his supplemental
12  affidavit that this was a mistake in drafting.  Ordinarily
13  Swift Air's contracts instruct the purchaser of their services
14  to send to Swift Air bank account.  But the crux of this
15  matter, your Honor, is if you follow the transcript all the way
                              Page 2

8437MANM.txt
```
16  through, it terminates at the National City Bank of the
17  Midwest.
18          THE COURT:  OK.
19          MR. RADZIK:  And Exhibit B to the Berdette affidavit
20  is the escrow agreement between Swift Air and the National City
21  Bank, and Exhibit C to the supplemental affidavit is a letter
22  from the National City Bank indicating that Swift Air is its
23  customer, Swift Aviation is not.
24          So, the long and short of it, your Honor, is that this
25  transcript proves that this was always going the property of
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

8437MANM
```
 1  Swift Air LLC.
 2          THE COURT:  Well, it depends on some other things too.
 3  I mean that doesn't necessarily follow.
 4          One, I mean you need to tell me whose account this
 5  money is coming to, you need to tell me that this money is not
 6  in the possession of Swift Aviation Group, that they have no
 7  control over these funds.
 8          I mean if I give you had $10 to give Mr. Gardiner,
 9  just simply saying that it's Mr. Gardiner's $10 doesn't mean
10  that if I issue an order saying that if we find you someplace
11  and you've got $10 on you we can seize it, and you simply say
12  it belongs to Mr. Gardiner.
13          And obviously, as they say, it's not the bank's fault
14  that this says Swift Aviation.  And this address, the address
15  here is whose address?
16          MR. RADZIK:  There is no dispute, your Honor, that
17  Swift Air LLC is a subsidiary.
18          THE COURT:  But they have a different address than
19  Swift Aviation Group, right?
20          MR. RADZIK:  No, I think they share offices.
21          THE COURT:  Well, I thought I saw in Mr. Berdette's
22  affidavit an attachment that gave me corporate addresses and
23  phone numbers with different -- OK.
24          So, I mean let me make sure.  So, 2406 South 24th
25  Street is Swift Air's address?  Because that's what's on the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

8437MANM
```
 1  transcript.  That's Swift Air's address and not Swift Aviation
 2  Group's address, is that correct?
 3          MR. RADZIK:  I think they share common offices.
 4          THE COURT:  Well, but the reason why I ask that is
 5  because that's not consistent with what I have as the articles
 6  of organization that you have attached as Exhibit A to
 7  Mr. Berdette's.  So, you know, as I say, it may seem like
 8  indisputable proof to you, but if you tell me they share
 9  offices, then what Mr. Berdette has handed me leads me to
10  believe they don't share offices.
11          MR. RADZIK:  Yes.  Perhaps at the time --
12          THE COURT:  So, is Swift Aviation Group's office the
13  same office as Swift Air?
14          MR. RADZIK:  It appears from the articles of
15  incorporation that they're different offices, yes.
16          THE COURT:  Well, I assume they were different on
17  March 16th of 2005.  Are they different now, or are you getting
18  ready to represent to me that they share offices?
19          MR. RADZIK:  I'm not certain.  I haven't really
20  investigated that, your Honor.
                        Page 3
```

8437MANM.txt

21          THE COURT:  Well, again, those are the kinds of
22   details that, as I say, can convince me that this is not Swift
23   Aviation Group's money.
24          Now, is this account that the money is going to solely
25   a Swift Air account --
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    7
     8437MANM
1           MR. RADZIK:  Absolutely.
2           THE COURT:  -- or is it a Swift Aviation Group
3    account?
4           MR. RADZIK:  It's solely in the name of Swift Air LLC,
5    and that's borne out by Exhibit B which is the escrow
6    agreement.
7           THE COURT:  I'm sorry.  What does the escrow agreement
8    demonstrate?
9           MR. RADZIK:  The escrow agreement demonstrates that
10   this is an agreement between Swift Air LLC and the National
11   City Bank of the Midwest.  And that's set up for Swift Air's
12   business, this air transportation business for sports teams and
13   the like.
14          THE COURT:  That's fine, but that doesn't tell me
15   whose bank account this money is being wired to.
16          MR. RADZIK:  Actually Exhibit 16 to Mr. Lambert's
17   affidavit, if we use that as a road map, we find that it starts
18   out at the bank of Swift Air's customer, Elite, the Imperial
19   Bank of Canada, and it ends up on the last page to the
20   receiving bank which is the National City Bank of the Midwest.
21          THE COURT:  OK.
22          MR. RADZIK:  And the key here is that the National
23   City Bank of the Midwest, Swift Air has the account there,
24   Swift Aviation does not.
25          THE COURT:  OK.  So, that's my question.  Is there any
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    8
     8437MANM
1    evidence here that this is not an account that Swift Aviation
2    has any control over?  It's not in the name of Swift Aviation
3    or Swift Aviation has no relationship to this account?  It
4    can't withdraw funds, doesn't put in funds, the funds in this
5    account are not Swift Aviation's funds.  Those are the kinds of
6    questions that are relevant to the argument that you are
7    making.
8           MR. RADZIK:  Yes.  Well, your Honor, if we turn to
9    paragraph 19 of Mr. Berdette's initial affidavit, he says that
10   Swift Aviation does not have any ownership interest or
11   entitlement to any portion of Swift Air's escrow account with
12   the National City Bank, B, Elite Jet's $118,136 payment to
13   Swift Air for services provided by Swift Air, or Swift Air's
14   general commercial operating account, which is intended to be
15   the final destination of the EFT.
16          So, he is attesting that Swift Aviation does not have
17   ownership interest, and I think that's corroborated by the
18   affidavit that was submitted on behalf of Swift Aviation.
19          THE COURT:  All right.  Well, as I say, I just want to
20   get to the heart of this.
21          MR. RADZIK:  Yes.
22          THE COURT:  Why don't you just tell me how it is that
23   Swift Aviation's money is now being confused with Swift Air's
24   money.  That's the bottom line.
25          MR. RADZIK:  It took us a while for us to figure this
                                Page 4

8437MANM.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

8437MANM
1   out, and the supplemental affidavit I think indicates that.
2           In drafting the wire transfer instructions for the
3   Elite/Swiss Air contract -- Elite, the company that needed the
4   services to transport the sports team and so forth -- in that
5   contract or the wire transfer instructions it said beneficiary
6   Swift Aviation Group.
7           THE COURT:  Why?
8           MR. RADZIK:  Well, Mr. Berdette --
9           THE COURT:  That's what I'm trying to understand.
10          MR. RADZIK:  Mr. Berdette in paragraph 5 says that,
11  "After investigation of this matter I have determined that the
12  service mark Swift Aviation Group was an error in drafting."
13          THE COURT:  Why?  I mean, you know --
14          MR. RADZIK:  It's one of those --
15          THE COURT:  Well, they wouldn't have put your name on
16  it.  I mean if you said to me, well, Judge, my name is on it
17  because there is an error in drafting, that doesn't tell me how
18  it happened.  That doesn't make any sense to me.
19          If they have nothing to do with each other, and they
20  have made no representation to Elite that they're dealing in
21  business with Swift Aviation Group as a company, how would
22  there be an error of drafting?
23          I mean, error in drafting means someone must have
24  given them the impression that Swift Aviation Group is somehow
25  relevant to this transaction.  How would it happen that Swift
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

10

8437MANM
1   Aviation's name gets on there as opposed to your name, my name,
2   or anybody else's name in this room?
3           MR. RADZIK:  Well, I think he tries to explain that in
4   paragraph 20 of his initial affidavit where he says that Swift
5   Aviation Group is a federally registered service mark owned and
6   used by Swift Aviation and its subsidiaries and affiliates
7   including Swift Air.
8           THE COURT:  So?
9           MR. RADZIK:  So, it's a service mark that appears on a
10  contract.
11          THE COURT:  Yes, but that still doesn't explain to me
12  why somebody would put it on there saying this is the
13  beneficiary of the money.
14          MR. RADZIK:  Well, again, I refer to he says that
15  typically in his contracts Swift Air appears as the beneficiary
16  but in this case someone goofed up in putting Swift Aviation
17  Group, the service mark, not the Inc., not to be confused with
18  the Inc.
19          THE COURT:  Well, you say not to be confused with the
20  Inc.  That's the only thing that's called Swift Aviation Group.
21  It is the Inc.
22          MR. RADZIK:  I agree.
23          THE COURT:  Is there some other entity called Swift
24  Aviation Group other than the Inc.?  It's misidentifying.  I
25  mean we are not talking about ten different Swift Aviation
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

11

8437MANM
1   Groups that we're referring to here.  There is only one entity
                    Page 5

8437MANM.txt

2  called Swift Aviation Group, and that's the one they say is the
3  beneficiary.
4       MR. RADZIK:  Actually when we first researched this
5  case we actually found a Swift Aviation, Inc. up in Dutchess
6  County, New York, which is totally unrelated to this case.
7       THE COURT:  I mean --
8       MR. RADZIK:  But the use of the service mark is what
9  caused the confusion.
10      THE COURT:  Well, when you say the use of the service
11 mark, I mean this isn't -- I mean it's not like a logo here.
12 They said Swift Aviation Group is the beneficiary.  That's not
13 a service mark.  They're saying that a specific company or
14 group is the beneficiary.  A mark isn't the beneficiary of
15 anything.
16      MR. RADZIK:  Had it said on the wire transfer
17 instructions beneficiary Swift Aviation Group, Inc., I would
18 agree with you.  But --
19      THE COURT:  But they say beneficiary Swift Aviation
20 Group, and they don't put the Inc., and then I'm supposed to
21 say it means what, something different than if they had said
22 Inc.?
23      MR. RADZIK:  No.  But I think the key is -- and I
24 refer back to the transcript of the transaction, Exhibit 16 --
25 that the ultimate bank where this money is going to be
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                          12
8437MANM
1  deposited is the National City Bank of the Midwest, and only
2  Swift Air has access to that account.  Only.  Swift Aviation
3  does not have access to that account; that's borne out by the
4  affidavit of Mr. Berdette.  And I think it's also corroborated
5  by the affidavit that was submitted by Swift Aviation Group
6  Inc.
7       THE COURT:  OK.
8       MR. RADZIK:  By his CFO.
9       And, again, unlike the case with Judge Pauley and the
10 case with Judge Chin, there is no commingling of funds.  You
11 know, in the case before Judge Pauley I think there was a
12 deliberate transfer to avoid the attachment.
13      Here we have an accidental attachment because, you
14 know, this was an everyday variety type of transaction, that
15 Swift Air's business is to transport sports teams for companies
16 like Elite.  That came through sometime around February 15th,
17 and the Bank of America seeing that Swift Aviation Group, in
18 the abundance of caution, restrained that money.
19      THE COURT:  Should they have done anything else?
20      MR. RADZIK:  Well, your Honor, that's why we're here.
21 That's why Rule (e) provides for a remedy to any person who is
22 claiming an interest in the money to get it released.  And it
23 shifts the burden and it puts the burden on the plaintiff to
24 show that the attachment is valid.  And the plaintiff has the
25 burden to show that as of the time the attachment order was
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                          13
8437MANM
1  issued, that it would extend to property beyond Swift Aviation,
2  Inc.
3       THE COURT:  Well, I don't think that that's their
4  burden, because I don't think they have a right to do that.
5  They don't have the right to attach property beyond Swift
6  Aviation Group, Inc.
                         Page 6

8437MANM.txt

```
 7              MR. RADZIK:  They don't.  And that's --
 8              THE COURT:  And they didn't ask for any property
 9    beyond Swift Aviation Group, Inc.
10              MR. RADZIK:  We're contending that this attachment,
11    the one that we're trying to vacate here, went beyond the scope
12    of the writ of attachment that was issued by your Honor.
13              THE COURT:  And, as I say, the bottom line is that you
14    say that the evidence clearly demonstrates that this money does
15    not belong to Swift Aviation Group, Inc., or not Inc. -- it
16    doesn't belong to anybody named Swift Aviation Group, I assume
17    is what you're saying --
18              MR. RADZIK:  That's correct.
19              THE COURT:  -- and that this money was money that was
20    wired in relationship to a transaction between Elite and Swift
21    Air --
22              MR. RADZIK:  Correct.
23              THE COURT:  -- in which Swift Aviation Group was not a
24    party --
25              MR. RADZIK:  Correct.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

14

8437MANM

```
 1              THE COURT:  -- and that the money was wired into a
 2    Swift Air account --
 3              MR. RADZIK:  That's correct.
 4              THE COURT:  -- from Elite.  And that account is not an
 5    account of Swift Aviation Group.  Swift Aviation Group doesn't
 6    utilize that account for their business.
 7              MR. RADZIK:  Correct.
 8              THE COURT:  And Swift Aviation Group is not a
 9    signatory authorized to take money out of that account.
10              MR. RADZIK:  That's correct.
11              THE COURT:  And that this money doesn't belong to
12    Swift Aviation Group, whether it's Inc. or not Inc.
13              MR. RADZIK:  That's right.
14              THE COURT:  Nobody named Swift Aviation Group owns
15    this money.  That's your position.
16              MR. RADZIK:  That's our position.  I think we have
17    furnished ample, compelling third-party evidence to prove that.
18              THE COURT:  All right.
19              MR. RADZIK:  The other point is about the issue of
20    discovery.  Properly Swift Air LLC has appeared here pursuant
21    to Rule (e)(8) of the supplemental rules, which is a restricted
22    appearance.  We're not waiving the lack of personal
23    jurisdiction defense importantly.
24              We're coming here to vacate the attachment only, so
25    that if any discovery is warranted, that could have been done
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

15

8437MANM

```
 1    at any time prior to this hearing by starting a miscellaneous
 2    action in Arizona where they can get jurisdiction.  That is
 3    still not foreclosed, I guess.  And if there are any issues
 4    about piercing the corporate veil and that kind of thing, I
 5    think that really goes to the heart of the merits of the claims
 6    between the plaintiff and Swift Aviation, which are exclusively
 7    subject to the London arbitration clause.  That goes really to
 8    the merits of the dispute, whether there is corporate veil or
 9    control over one company over the other.  I think that goes
10    beyond the scope of this hearing which is a Rule (b) attachment
11    to vacate.
```

                              Page 7

8437MANM.txt

12          THE COURT:  All right.  OK.  Let me hear -- well, you
13  know, even before I hear from Mr. Lambert, let me just turn to
14  Mr. Gardiner, because, Mr. Gardiner, as I say -- the one thing
15  that can solve this problem for me immediately is if Swift Air
16  believes it's appropriate to put up some security, it's
17  appropriate in relationship to this issue in arbitration, or
18  they'd rather have Mr. Lambert and his client keep waiting to
19  see if they can snatch some money that belongs to your client
20  pursuant to this attachment.
21          Is it your position that you would rather leave them
22  to their devices to do that, or is there some other way you can
23  resolve this issue?  He is just looking for security from your
24  client; he doesn't really care where it comes from.
25          MR. GARDINER:  Well, your Honor, firstly I am also
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    16
8437MANM
1  limitedly appearing here today because to the extent there are
2  other issues that your Honor wants addressed I'm going to ask
3  Ms. Bedard to address them.
4          As you knows, some of what I do is arbitration,
5  international.  It is our position, Swift Aviation
6  Group, Inc.'s position, that the merits of this dispute belong
7  in London -- they have already commenced an arbitration in
8  London -- and that that arbitration should proceed.
9          We have submitted an affidavit which Ms. Bedard can go
10  through from the CFO of Swift Aviation Group, Inc. which does
11  attest to the fact that Swift Aviation Group, Inc. has no
12  interest in the attached funds.  And that has been submitted.
13          THE COURT:  Yeah, but that's not the issue for you.
14  The issue for you is even if you have no interest in these
15  attached funds, when they find some they're going to grab it.
16          MR. GARDINER:  And that's what your Honor's order
17  provides.  And if in fact there are assets of Swift Aviation
18  Group, Inc. within the jurisdiction, that's what your Honor's
19  order provides can be attached.
20          I do not believe that Swift Aviation Group, Inc., to
21  answer your question directly, is prepared to give any security
22  in relation to the maritime arbitrations in London.
23          We understand the scope of your Honor's order, which I
24  think you have stated again on the record.  That order goes to
25  the assets of Swift Aviation Group, Inc. and only the assets of
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    17
8437MANM
1  Swift Aviation Group, Inc.  Swift Aviation Group, Inc. has no
2  interest in the attached funds that are the subject of this
3  motion to vacate.
4          THE COURT:  OK.  Let me hear from Mr. Lambert.
5          Mr. Lambert, given what we have before us and you have
6  before you, on what basis are you saying at this point that
7  this is Swift Aviation Group's money?
8          MR. LAMBERT:  Your Honor, someone -- no one has yet
9  identified who that someone is -- directed $118,000 to be
10  transferred from a bank in Canada to National City Bank -- I
11  think they're in Cleveland -- into an escrow account.
12          Now, the originator, who is Elite Jet, in my
13  understanding controls the transfer.  Someone at Elite Jet for
14  some reason put Swift Aviation Group's name instead of Swift
15  Air's name, if my opponents are to be credited.
16          Now, why did someone at Elite Jet do that?  And that
                              Page 8

8437MANM.txt
17    has still not been explained.  What would explain it?
18         Very able counsel -- and several of them -- I'm here
19    alone up front -- have had this time.  Now I would have
20    thought, I would produce the charter agreement between Elite
21    Jet and the Swift entity, whoever that may be.  I would produce
22    the invoice which the Swift entity sent to Elite Jet.  What
23    does that say?
24         When the money comes, if it hadn't been restrained
25    properly -- completely properly -- your Honor reminded me of it
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                                      18

      8437MANM
1     depends on what you mean by is, if Swift Aviation Group is
2     different than Swift Aviation Group Inc.  But anyway, the money
3     then gets transferred from the escrow account at National City
4     Bank to some other account.  We don't know what account that
5     would be.  The whole issue of the federal service mark, the
6     federal service mark -- and I have, and I have produced to my
7     opponents this morning the application from the trademark
8     office -- is Swift Aviation Group, a stylized S logo defining
9     exellence.  That's the federally registered service mark.  It's
10    not Swift Aviation Group.
11         Mr. Berdette -- there's a total confusion about the
12    offices, and it's understandable Mr. Berdette is confused along
13    with Mr. Shumly as to where anyone is.
14         Mr. Berdette is an officer of both Swift Air and Swift
15    Aviation Group.  He signed -- if you look at Exhibit 16 -- I'm
16    sorry, Exhibit B to his affidavit -- do you have it, your
17    Honor?
18         THE COURT:  Yes.
19         MR. LAMBERT:  It looks like the third to last page,
20    the certified copy of resolution or authorization for
21    establishing deposit escrow account.
22         THE COURT:  OK.
23         MR. LAMBERT:  He signs it VP Swift Aviation Group.
24         THE COURT:  OK.
25         MR. LAMBERT:  So, the only conclusion I think, your
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                                      19

      8437MANM
1     Honor, is that Elite Jet named the company what it was told to
2     name, Swift Aviation Group.  Our position is that this record
3     is insufficient to decide whether Swift Aviation Group has a
4     property interest in this transfer.
5          THE COURT:  Well, what do you say is factually
6     necessary for you to be able to attach these funds?  The only
7     thing that you have disputed or you have said is evidence that
8     these funds belong to Swift Aviation Group is that there is a
9     wire transfer order not to transfer money to Swift Aviation
10    Group but somehow referencing Swift Aviation Group as a
11    beneficiary, and because you say Mr. Berdette signed the escrow
12    resolution as vice president of Swift Aviation Group.  Is it
13    your contention, and what do you base it on, that this is Swift
14    Aviation Group's money?
15         MR. LAMBERT:  The apparent decision by Swift Aviation
16    Group to tell Elite Jet to send it to Swift Aviation Group.
17         THE COURT:  Well, they didn't send it to Swift
18    Aviation Group.
19         MR. LAMBERT:  They did.
20         THE COURT:  No, they wired it to an account of Swift
21    Air.  What evidence do you have that this money went to Swift
                           Page 9

8437MANM.txt
22    Aviation Group?
23         MR. LAMBERT:  We don't know where it's going to go
24    after it clears the escrow account.  It was being wired into
25    this passenger depository escrow account.
               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                    20
      8437MANM
1          THE COURT:  Well, what evidence do we have that Swift
2     Aviation Group either is in possession of this money or this
3     money was being wired to Swift Aviation Group, or that it is
4     Swift Aviation Group's money?
5          MR. LAMBERT:  The transfer itself says beneficiary,
6     and that's the beneficiary's account.  It's going to the
7     beneficiary's account, and that is named Swiss Aviation Group.
8          THE COURT:  No, they say it's not going to the
9     beneficiary's account, it's going to the account of Swift Air.
10    If you say Swiss Aviation Group is the beneficiary, to go to
11    the beneficiary's account it would have to go to their -- if
12    you're saying on their account as opposed to in their account.
13         They are saying that this money is pursuant to a
14    contract between Elite and Swift Air, and that Swift Aviation
15    Group is not a party to that contract.  Do you dispute that?
16    Or do you have any good faith basis to believe first of all as
17    to that issue?  Because I have some other issues I want to
18    discuss -- but as to that issue, do you think you have a good
19    faith basis to dispute that?
20         MR. LAMBERT:  They have not produced the contract
21    between Elite Jet and some Swift entity, and they haven't
22    produced the invoice.  I mean usually if you bill somebody
23    $118,000 you send them an invoice.
24         THE COURT:  And if they are able to produce those two
25    documents, do you have any good faith basis to dispute that
               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                    21
      8437MANM
1     Swift Aviation Group is not a party to this contract so,
2     therefore, Elite owes no money to Swift Aviation Group pursuant
3     to that contract?
4          MR. LAMBERT:  I would have much less of an argument,
5     your Honor.  However, just bear with me.  The money again --
6     and it also depends on what the contract -- well, it depends on
7     what the contract says.  I haven't seen the contract.
8          THE COURT:  But if the contract doesn't say anything
9     about Swift Aviation Group, I would assume you don't have an
10    argument that Elite has at least any financial obligation
11    pursuant to that contract that they're wiring money to Swift
12    Aviation Group.  There is no other basis to argue that they had
13    any obligation to give their money.
14         MR. LAMBERT:  Those two documents -- which I'm very
15    surprised haven't been produced already as part of their
16    attempt to persuade you and me of that very point -- would
17    certainly close those gaps, which they for whatever reason have
18    chosen at present not to fill.  But it still -- well, we have
19    assumed the answer to the question, your Honor, that's correct.
20         THE COURT:  And let's assume that their representation
21    is correct that this escrow account that has been set up, that
22    the workers clearly indicate that this escrow account is not an
23    escrow account either of Swift Aviation Group set up in the
24    name of Swift Aviation Group or has any relationship to Swift
25    Aviation Group, you don't have any good faith basis to dispute
               SOUTHERN DISTRICT REPORTERS, P.C.
                        Page 10

8437MANM.txt
(212) 805-0300

22

8437MANM
1  that at this point.  I mean you wouldn't be arguing that point
2  in further support of seizing this money, would you?
3         MR. LAMBERT:  No, your Honor, with just the very
4  slight carve-out at the bottom that the definition of a
5  property interest that's attachable under Rule (b) is quite
6  broad.  Judge Haight in Winter Storm said it's similar to the
7  creed evidence of all things seen and unseen.
8         THE COURT:  There's got to be some money at least that
9  I have some possession or control over.
10        MR. LAMBERT:  Over, right.
11        THE COURT:  What is the nature of the possession and
12 control that you say is the basis consistent with that law to
13 seize this money if it is not money pursuant to an obligation
14 transferred by one party pursuant to an obligation to Swift
15 Aviation Group and it is not wired to Swift Aviation Group or
16 an escrow account related to Swift Aviation Group, and there is
17 no indication that Swift Aviation Group has any relationship to
18 this transaction or to this money?
19        MR. LAMBERT:  Well, I mean again if all of those
20 things are true --
21        THE COURT:  Well, they say that they're true.
22        MR. LAMBERT:  Well, you have Mr. Berdette who is an
23 officer of both companies apparently out of the same office.
24        THE COURT:  But you don't say that gives you a basis
25 to seize the money of different corporations simply because he
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

23

8437MANM
1  is part of each one of those separately-held corporations.
2         MR. LAMBERT:  To the extent the corporate separateness
3  is observed, that's correct.
4         THE COURT:  And you haven't made any application at
5  this point that somehow they're a shell company or they are
6  somehow set up in order to be an alter ego.
7         MR. LAMBERT:  There is no alter ego cause of action or
8  agent for undisclosed principal cause of action in this
9  complaint, present complaint, your Honor.
10        THE COURT:  Well, you know, then tell me what it is --
11 I guess I have to put you to their burden, not to your
12 burden -- tell me what it is that would be sufficient evidence
13 to convince me that you are not entitled to this money.
14        MR. LAMBERT:  Sorry, your Honor?
15        THE COURT:  Tell me what would be sufficient evidence
16 for them to produce to demonstrate to me that you are not
17 entitled to this money.
18        MR. LAMBERT:  Well, certainly the two things I
19 mentioned and the opportunity to cross-examine Mr. Berdette.
20        THE COURT:  Well, what do I care about Mr. Berdette if
21 I have those documents?
22        MR. LAMBERT:  Well, I would like him to identify the
23 documents, or person of knowledge to identify the document, and
24 to cross-examine him on that identification, especially given
25 their late arrival.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

24

8437MANM
1         THE COURT:  And you think if there is a written
2  contract between the two that doesn't involve Swift Aviation
                          Page 11

8437MANM.txt
```
 3   Group, what could he possibly say that would give you a right
 4   to seize Swift Air's money?
 5           MR. LAMBERT:  Well, on this record, your Honor --
 6           THE COURT:  On any record.  I mean --
 7           MR. LAMBERT:  Well, in his in this complaint and apart
 8   from the broad definition of a proprietary interest.
 9           THE COURT:  Well, other than a fishing expedition,
10   what would you think that deposing him could demonstrate?
11           I mean, I understand you are saying, well, I would
12   like to depose him to see if.  But I want to know what it is
13   that you say you could demonstrate if you were to depose Mr.
14   Berdette.
15           MR. LAMBERT:  Well, let's look at paragraph 18 of his
16   initial affidavit.  After Swift Air performs the services the
17   escrow account bank then distributes the payment to Swift Air's
18   general commercial operating account.
19           THE COURT:  OK.
20           MR. LAMBERT:  And as the transcript of the remittance
21   says, it says general ledger account Swift Aviation Group.  So
22   they haven't produced any evidence --
23           THE COURT:  I'm sorry.  What did you just refer to?
24           MR. LAMBERT:  If you go back to the transcript of the
25   wire transfer, Exhibit 16 to the Lambert affidavit.
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    25
8437MANM
```
 1           THE COURT:  All right.  And you're referring me to
 2   the --
 3           MR. LAMBERT:  Page 4.
 4           THE COURT:  OK.
 5           MR. LAMBERT:  It says 59, beneficiary, customer.
 6   General ledger account, Swift Aviation Group.
 7           In other words --
 8           THE COURT:  Well, what are you saying that that means?
 9           MR. LAMBERT:  I don't know, your Honor.  They can tell
10   me.
11           THE COURT:  Well, what are you saying that that could
12   possibly mean?
13           MR. LAMBERT:  It could be a general ledger account in
14   the name of Swift Aviation, Swift Aviation Group.
15           THE COURT:  You're saying that this could represent
16   that it is being wired to a general ledger account in Swift
17   Aviation Group's name?
18           MR. LAMBERT:  That's what I'm reading, your Honor,
19   yes.
20           THE COURT:  OK.  And suppose the record indicates that
21   it is not being wired to a general ledger account in Swift
22   Aviation Group's name?
23           MR. LAMBERT:  Well, then, your Honor, we're back to
24   where we were a few minutes ago and then I've got a problem.
25           THE COURT:  But I'm saying, you know, I don't know yet
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    26
8437MANM
```
 1   whether or not they think that it's worth their while to put
 2   this to rest by demonstrating those three documents that you
 3   just indicated.  But that's why I asked if they demonstrated
 4   those three documents, then that kind of puts you out of your
 5   argument.  I mean if they show you the contract, if they show
 6   you the -- I forget what is the second one --
 7           MR. LAMBERT:  -- the contract, the invoice.
```
                              Page 12

8437MANM.txt

8       THE COURT: -- the contract, the invoice and the
9 account that --
10      MR. LAMBERT: The general operating --
11      THE COURT: -- and the account that -- the National
12 City Bank of Midwest account and whose account it is registered
13 to.
14      MR. LAMBERT: Well, in fairness I think they're going
15 to say that they produced the account to which they think this
16 money was going, and they've added the letter from National
17 City Bank.
18      THE COURT: Right.
19      MR. LAMBERT: And it's a very carefully -- can we look
20 at that, your Honor?
21      THE COURT: Yeah, sure.
22      MR. LAMBERT: I want to remember the question, because
23 I want to answer your question.
24      THE COURT: You say it's insufficient or somehow it's
25 not the right --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

27

8437MANM

1      MR. LAMBERT: It's in the supplemental affidavit.
2      THE COURT: OK.
3      MR. LAMBERT: National City Bank, in again this
4 unsworn letter from National City Bank.
5      THE COURT: OK. I'm looking at --
6      MR. LAMBERT: Sorry, Exhibit C.
7      THE COURT: Right.
8      MR. LAMBERT: "We have not opened an escrow account
9 for Swift Aviation Group."
10      THE COURT: OK.
11      MR. LAMBERT: Money is going to the general ledger
12 account of Swift Aviation Group.
13      THE COURT: OK. And so you believe that there is
14 possibly a general ledger account in National City Bank that is
15 in the name of Swift Aviation Group, that that's where this
16 money was heading.
17      MR. LAMBERT: Well, I mean, whether I believe it, I'm
18 saying that it's an issue, and I think I'm entitled to know
19 that before the money gets vacated.
20      THE COURT: Well, I'm saying it's only an issue if you
21 say if that exists then you're entitled to the money, but if it
22 doesn't exist you are not entitled to the money.
23      MR. LAMBERT: I've got a problem, your Honor.
24      THE COURT: So, that's all I'm trying to say, because
25 quite frankly, as you say, I don't need a whole bunch of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

28

8437MANM

1 discovery, that can be demonstrated fairly easily and quickly
2 whether any of that is true.
3      If any of that is true, then you might have someplace
4 to go, but if there is an invoice, a contract and no general
5 ledger account of Swift Aviation Group in National City Bank
6 that this money was headed, unless you have another argument,
7 you are out of the water, as they say, at least on this cash,
8 because there is no other argument that you have that this
9 money is Swift Aviation Group's money.
10      I mean you're not --
11 Q. Sorry, your Honor. Just sorry to interrupt. Just so I am
12 clear, I'm not asking for full-blown discovery. I have another

Page 13

8437MANM.txt
```
13    case before Judge Sweet where I'm actually representing an
14    intervenor, an Italian company, and we ha a telephone
15    deposition of the guy over the phone, an hour and a half.  I
16    mean, I'm going to ask him about his affidavit.
17            They think they've got to put in affidavits like this
18    to that detailed knowledge in order to defeat my attachment.  I
19    think I'm entitled to cross examine.
20            THE COURT:  No, you are entitled to documentation.
21            MR. LAMBERT:  Well, I'm also entitled to
22    documentation.
23            THE COURT:  I mean if you want the cross-examination
24    instead of the documentation.  But the documentation is what is
25    persuasive to me.  As you say, if this is not a contract with
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```
                                                                29
8437MANM
```
1     Swift Aviation, if this invoice does not reference Swift
2     Aviation Group, and the account that -- I assume there is an
3     account number here somewhere, isn't there?  Is there an
4     account number here that this money is --
5             MR. LAMBERT:  I mean I honestly didn't see it, but I'm
6     not a banker.  And obviously Swift Air does buy fuel.
7             THE COURT:  Right.
8             MR. LAMBERT:  And Elite Jet, the person who pays for
9     the fuel, again, so we don't -- there is no invoice for the
10    $118,136.
11            THE COURT:  OK.  All right.
12            Well, then let me just turn back to the other side.
13    Mr. Radzik?
14            MR. RADZIK:  Yes, your Honor.
15            THE COURT:  I mean is it your position that you have
16    such a contract, that Swift Aviation Group, Inc. is not a party
17    to that contract, and you have an invoice from Elite to Swift
18    Air, and you can demonstrate that what the evidence is as to
19    whether or not Swift Aviation Group has an account at National
20    Bank?  And I guess I should ask you straight out whether or not
21    Swift Aviation Group has any account at National Bank.
22            MR. RADZIK:  It's our understanding that they do not,
23    your Honor.  And I think that's pretty much spelled out in
24    Mr. Berdette's affidavit fairly clearly.  So, our position is
25    that we have established that from Mr. Berdette's affidavit and
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```
                                                                30
8437MANM
```
1     supplemental affidavit, that Aviation doesn't have the account
2     at National City Bank.  It's Air that has it.
3             My understanding is that there is an escrow account
4     that's mandated by the Patriot Act I guess for this type of
5     business, air transportation for sports teams and the like.  I
6     don't think it has anything to do with purchasing fuel.  I
7     think it's providing the sports teams with how to get from
8     Arizona to Oregon, 56 players and coaches and trainers back and
9     forth, and they charge them $118,000 for a three or four-day
10    trip, round trip.
11            But there is a contract.  That is solely between Air
12    LLC and Elite.
13            THE COURT:  Do you have any problems producing that
14    contract?
15            MR. RADZIK:  No, your Honor.
16            THE COURT:  Do you have any problems producing the
17    invoice?
```
                        Page 14

8437MANM.txt
```
18              MR. RADZIK:  No.
19              THE COURT:  Do you have any problems either having the
20       bank search its records and indicate how many accounts they
21       have in the name of Swift Aviation Group, if they have any
22       accounts at all in the name of Swift Aviation Group?
23              MR. RADZIK:  No problem with that, your Honor.
24              THE COURT:  If all of that is produced, do you have
25       any argument to make, Mr. Lambert?
```
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300

                                                                            31
8437MANM
```
 1              MR. LAMBERT:  Well, your Honor, the one thing, if you
 2       go back to paragraph 18 it says that the money that goes into
 3       the escrow account at National City Bank would then be
 4       disbursed to Swift Air's general commercial operating account.
 5              THE COURT:  OK.  Sorry.  Where were you looking at?
 6              MR. LAMBERT:  Paragraph 18 of Mr. Berdette's first --
 7              THE COURT:  Oh, 18, of his first affidavit.  OK.  So
 8       what do you want to put in dispute?
 9              MR. LAMBERT:  Well, obviously we don't know what
10       happened in this case because the money got restrained, but I'd
11       like to know if there was a standing instruction or how
12       National City Bank then would have known what to do with it.
13              MR. RADZIK:  Maybe I can address that.  My
14       understanding is that it's mandated by federal regulation for
15       Swift Air to hold it in this escrow account until it completes
16       the services for Elite, and then something completion of
17       performance would trigger release from the escrow, and that
18       would go down into the general operating account.
19              THE COURT:  Can I assume, were there already bank
20       instructions with regard to where the money was supposed to go,
21       or were there supposed to be subsequent instructions?
22              MR. RADZIK:  I haven't seen them, your Honor.
23              THE COURT:  All right.  Well, this is what I want.  If
24       there are written instructions indicating where the money was
25       supposed to go out of, then I want those -- and those
```
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300

                                                                            32
8437MANM
```
 1       instructions obviously are instructions that -- well,
 2       regardless of what the instructions are, if there are written
 3       instructions already identifying where the money is supposed to
 4       go -- because I assume, I don't know -- I assume this may not
 5       be the first transaction between Elite and Swift Air.  I don't
 6       know if this is, you know, a course of dealings that they've
 7       had in the past, this is a similar course of dealing or this is
 8       just a new contract.
 9              MR. RADZIK:  I'm not sure.  It seems to me this is
10       kind of a developing business of Swift Air LLC.  They've got
11       nine or ten sports teams that they deal with, and they're
12       trying to expand that, but...
13              THE COURT:  Well, look, if there are instructions
14       already given as to where the money is supposed to go from the
15       escrow account, then I want those instructions produced right
16       away, and documentation that identifies whose account that is.
17       And as long as Swift Aviation Group doesn't have any
18       relationship to that.
19              And, as I say, I'm not going to play semantics with
20       Swift Aviation Group, Inc. with Swift Aviation Group.  We don't
21       talk about Microsoft, Inc. as opposed to Microsoft.  So, I want
22       to know whether or not candidly Swift Aviation Group is
```
                                 Page 15

8437MANM.txt
23  identified with regarded to being the ultimate recipient for an
24  account that is related to Swift Aviation Group that the money
25  was supposed to be transferred.  To the extent such records
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

33

8437MANM
1   exist, produce them.  To the extent they have not been
2   identified, then that's the answer.
3           And I will tell you at this point that if you can
4   produce that quickly, and you can produce that to me, or if you
5   want to just show it to Mr. Lambert to see whether Mr. Lambert
6   would agree that he has nowhere to go, I will let you decide
7   which way you want to do that.
8           But if the documentation you submit to Mr. Lambert
9   and/or submit to me, that documentation demonstrates and
10  supports what you just said, then I will immediately lift this
11  attachment.
12          And, Mr. Lambert, I think based on that, the issues
13  you have raised, I don't care how many people you deposed, I
14  don't think you have any basis to seize this property unless
15  you think you can get Mr. Berdette on the stand and under your
16  excruciating cross-examination he is going to change his story
17  and say, no, I admit it, it's really Swift Air Group's money
18  and all my affidavits are false.
19          So, if you want to continue, I will obviously continue
20  the maritime attachment order that I have issued, as I said,
21  unless Swift Aviation Group decides they want to go ahead and
22  put up some security in relationship to the arbitration that's
23  going on.  Otherwise, obviously it's at their own peril if they
24  pay a bill or they get a bill paid to them that you have the
25  right to seize any money that comes through this jurisdiction.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

34

8437MANM
1           But obviously with regard to the substance and the
2   merits of the dispute, that's not before this court, and I
3   don't have any other authority to pursue that or give you any
4   further relief with regard to that.
5           So, I mean all I need is the relevant documents.  As I
6   said, if you want to show them to Mr. Lambert -- and I don't
7   know if you have any other confidentiality issues -- but if you
8   want to show the relevant portions or the relevant documents to
9   Mr. Lambert, and then you want to just represent to me you have
10  shown those to him, or you want to submit them to me right
11  away, you can do that immediately, and then if that's what the
12  documents demonstrate, I'm going to lift the order.
13          MR. LAMBERT:  Your Honor, I will have a chance to see
14  them though, right?
15          THE COURT:  Yes, definitely, unless they tell me -- I
16  don't see any reason why they would represent to me that you
17  can't see what they want to show me.
18          MR. LAMBERT:  Well, could we at least have
19  Mr. Berdette identify or someone say these are the documents
20  with knowledge?
21          THE COURT:  Well, I mean I don't know what else you --
22  I mean -- I mean I don't know what else you need.
23          MR. LAMBERT:  No, I mean with a cover affidavit.
24          THE COURT:  You know what, they can put it in whatever
25  form they want to put it in.  I want to see it.  If you think
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
Page 16

8437MANM.txt

8437MANM

1  you can dispute it generally, you tell me you can dispute it.
2  If you don't have any legitimate basis to dispute it, I'm not
3  going to spend a whole lot of time, effort and expense on
4  depositions and affidavits.
5          If you see a contract, you think you have some basis
6  to dispute the contract, then you tell me, and I will do that.
7  If you think it's a forgery, you can tell me that, if you think
8  any of these documents they are going to produce to you are not
9  authentic documents.
10         Quite frankly, as they say, I don't care very much
11  what Mr. Berdette has to say.  If the documents show that to
12  me, and there is no reason to believe that those documents are
13  not what they purport to be, then I don't think you have a
14  basis to argue that this is Swift Aviation Group's money.
15         And you might want to try to see if you can find out
16  something that can make it linger around a while or prove your
17  case, but at this point if you've gotten to that point it's
18  your job to demonstrate that the bank has seized the
19  appropriate property.
20         If they have not seized the appropriate property, if
21  there is any basis that you have to argue, other than what's
22  before me now, that Swift Aviation Group was the intended
23  recipient of these funds that belong to them, then I will hear
24  it, but I will give you the benefit of the proof that you say
25  that you haven't seen, and once you've seen that proof then I
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

8437MANM

1  would like to know from you whether you have any legitimate
2  basis to argue that this is still Swift Aviation Group's money
3  right away, literally within 24 hours of you seeing these
4  documents.  If you see them even before they get to me, if they
5  want to show them to you first, then submit those documents to
6  me.  So, if they want to do that by tomorrow, then I will rule
7  on this tomorrow.
8          MR. RADZIK:  Your Honor --
9          THE COURT:  It depends on how long it might take them
10  to at least get copies.  I'm not talking about certified copies
11  or anything else.  Just get the documents and show it to
12  Mr. Lambert, show it to me, and then I will put this to rest.
13         MR. LAMBERT:  I do have to report to clients in
14  England, you know, with the time zones.  I'm just saying I got
15  one thing at midnight the other night, so I mean...
16         THE COURT:  Let's put it this way.  I'm not
17  particularly interested in what they have to say.  So, it
18  doesn't matter to me what they tell you.  Your communication
19  may be to them that I said I want to see these documents, they
20  produced the documents, so I've lifted this stay.  You're not
21  representing to me that there is any information they can
22  provide me that's going to advance this issue one way or the
23  other.  So, get on the phone right away and tell them if I see
24  these documents or you see these documents, that there is no
25  other basis for you to say that this is Swift Aviation Group's
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

8437MANM

1  property and you are just going to have to look for some other
2  property, unless you think there is a different argument that
3  you have to make that I haven't heard based on these documents.
                        Page 17

8437MANM.txt

4        But if those documents demonstrate it's a contract
5   between Swift Air and Elite, that the invoice demonstrates that
6   it is money pursuant to the obligations under that contract,
7   that the only account in this bank is the escrow account for
8   this purpose, to Swift Air, or it's clear that the money was
9   going to an account that even if there is another account in
10  Swift Aviation's name, that that money wasn't going to that
11  account, or if there is no evidence that the money was supposed
12  to be transferred from this account into a Swift Aviation Group
13  account, that's the end of the story.
14       If you give me any one of those things, maybe we can
15  discuss it further or I can let you hold the money for now.
16  But if you don't get any one of those things, I think that's
17  pretty much the end of the evidence that you have put forth in
18  support of this attachment.  OK?
19       So, do you have any idea how quickly you might be able
20  to get to Mr. Lambert or get to me?
21       MR. RADZIK:  My present hopes, what I'm contemplating
22  now, is simultaneous communications to Mr. Lambert and to your
23  Honor simply with the documents.  I've got a self-imposed
24  deadline of tomorrow, tomorrow afternoon.
25       THE COURT:  And, Mr. Lambert, if you see it even
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                    38

8437MANM
1   before I get it, and it's your position that you don't have any
2   further legitimate basis to hold this property, and you want to
3   agree that this property should be released, let me know by
4   letter right away.  Just fax it to me, and I will release it.
5        But otherwise, once you have seen it, ultimately I
6   have to make the decision.  As soon as I see the material, I
7   will -- unless I hear from you -- if I see the material
8   tomorrow, when I get the material I will probably reach out to
9   your office to find out whether you intend to respond, and then
10  I'm going to ask you to respond very quickly by letter fax to
11  me.  If you say you don't intend to respond, or you intend to
12  respond, you can fax it to me at the end of the day, depending
13  on how early you can get the material.  I will still try to go
14  ahead and make a decision by tomorrow, because I think they are
15  entitled to immediate release of these funds if what they have
16  represented to me is demonstrated.
17       MR. LAMBERT:  So, if I get it tomorrow afternoon --
18  again, I mean I appreciate the situation, your Honor, but on
19  the other hand I've got to send it to a client -- if I get it
20  at 4 o'clock tomorrow afternoon, I won't know -- I mean I can
21  let you know by Monday, but I mean.
22       THE COURT:  If you get it by 4 o'clock tomorrow
23  afternoon, you should let me know whether or not you think
24  there is anything you can really do between Friday and Monday
25  to convince me that I shouldn't rely on these documents.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                    39

8437MANM
1        MR. LAMBERT:  So, I have until Monday afternoon.
2        THE COURT:  No, you have immediately to tell me
3   whether there is something you think you've got to do between
4   Friday and Monday in order to dispute this other than just pick
5   up the phone and call your client.
6        If you have no legitimate basis to argue that you can
7   dispute any of these documents, I'm not waiting a second to go
8   ahead and lift this attachment just for you to talk to your
                          Page 18

8437MANM.txt

```
 9  client.  Your conversation with your client may have to be the
10  judge just lifted it because they produced the documents, and
11  he told us if these documents were produced and I had no
12  genuine basis to argue that these don't demonstrate what the
13  parties say they demonstrate, that he was going to do it.
14          So, if they give me some document that you say, well,
15  Judge, I've got some other document that my client says they
16  are going to fax to me that they say is inconsistent with this,
17  and I'm waiting to get the fax, well, then I will consider some
18  further delay.  But I need a legitimate basis for delay, not
19  just talking to your client.
20          MR. LAMBERT:  Thank you, your Honor.
21          THE COURT:  OK?
22          MR. GLICKMAN:  May I be heard very briefly?
23          THE COURT:  Yes.
24          MR. GLICKMAN:  I just wanted to make two points.
25          First of all, Bank of America, as your Honor probably
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

40

8437MANM

```
 1  is aware, receives something in the order of 300 some odd
 2  services a day in these proceeds of maritime attachment and
 3  garnishment.  It's a painstaking process, and I think a case
 4  like this shows that every single transaction that is captured
 5  is given due diligence.  And five weeks after this transaction
 6  was captured, Bank of America received two threatening letters
 7  from Swift Air's counsel telling them to immediately release
 8  the funds or the bank would be held liable for such funds and
 9  for attorney fees incurred in connection with, you know, the
10  efforts obviously to get them released.
11          We responded to that, and we explained how counsel
12  obviously was under a mistaken impression.  Counsel apparently
13  had not seen the wire instructions, did not understand that the
14  wire instructions in black and white, Swift Aviation Group.
15          The bank had no choice.  And I think this court, if I
16  may be so presumptuous, would agree that under the
17  circumstances the bank had no choice other than to block the
18  funds.
19          And consistent with its usual custom and practice, the
20  bank got in touch with plaintiff's counsel, Mr. Lambert, and
21  said, listen, we have this transaction, do you want to block
22  it?  Yes, of course, it says Swift Aviation Group.  So, clearly
23  the bank did nothing wrong there.
24          As if to add insult to injury, in the reply
25  affirmation, I believe it was actually the reply memorandum of
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

41

8437MANM

```
 1  law that was submitted to your Honor, if I'm not mistaken, on
 2  perhaps Tuesday of this week, counsel again represents that the
 3  bank mistakenly blocked these funds.
 4          The only mistake, if there is a mistake -- and I have
 5  been sitting here very patiently listening, and I'm not going
 6  to take sides on what really happened or how this happened --
 7  but the only mistake, if there was a mistake, was either that
 8  Swift Air gave Elite -- if this really is the Elite
 9  transaction -- Swift Air gave Elite incorrect information, or
10  Elite just maybe put down the wrong entity's name.
11          But I think it's very important to understand, and I
12  would appreciate whatever order that comes out of this that the
13  point is clear:  The bank did not do anything wrong here.
                          Page 19
```

8437MANM.txt

14    THE COURT:  Well, I don't have any basis on the record
15  before me to make any conclusion that the bank has done
16  anything inappropriate, and if there comes a time, as I say, I
17  can address and do something with any injury that you think the
18  bank might be threatened with or suffers.  With regard to the
19  insults, I can't do anything about that, so we will make sure
20  that the bank, as long as the bank --
21    This is not the first situation that I have had,
22  obviously, where the bank seizes money, and I have been in
23  situations where the bank seizes money, and I ask the bank why
24  did you seize that money because that's not the name of the
25  party, and there is nothing on the document that has that name

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    42

8437MANM
1  on it, and just because someone says to you that's the money we
2  want, you have no right to seize other people's money.
3  Obviously that's not the circumstance here, and the
4  documentation is produced indicating that obviously that this
5  is not a frivolous issue that's been raised by any of the
6  parties.
7    So, let's just try to get this resolved.  Resolve it
8  with minimal time, effort and expense further by the parties.
9    And, as I said, Mr. Lambert and his client will have
10  to further pursue Swift Aviation Group if those documents are
11  produced to me tomorrow and they say what they say.  And
12  Mr. Lambert can immediately as he leaves here start thinking
13  about what he is going to say to dispute of this legitimately
14  in good faith.  So, if that's demonstrated, then I will make
15  the appropriate order tomorrow and that will be the end of this
16  issue, and any further attachments will be obviously pursuant
17  to the order that's already outstanding by the court.
18    So, I will wait to hear from tomorrow or today or
19  tonight.  And if you want to fax something to me right away,
20  deliver it to me, I will be available and look at it right away
21  as soon as I receive it.
22    If you are sending something, even if you want to
23  speed up the process, you can call my chambers and tell me
24  something is come willing over or being faxed, and that Mr.
25  Lambert has it in hand, and so as soon as I get it I can review

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    43

8437MANM
1  it.  If it's not too extensive, it may make sense to fax it.
2  If you just deliver it, it may have to go through the process,
3  our security process, that may even delay it for a few hours.
4    MR. LAMBERT:  Your Honor, is your fax number in your
5  rules?
6    THE COURT:  Yes, it's just a 7 instead of 5.  OK?  All
7  right.  Then I will wait to hear from you.
8                            - - -
9
10
11
12
13
14
15
16
17
18

                            Page 20

8437MANM.txt
```
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# Exhibit 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                      :

MANSEL OIL, LTD.,                   :

                 Plaintiff,     :          08 CV 1086 (GBD)

       -against-            :            ORDER

SWIFT AVIATION GROUP, INC., et al.,  :

               Defendants.   :

                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GEORGE B. DANIELS, District Judge:

     Intervenor Swift Air, LLC's motion to vacate the attachment of the $118,136.00 EFT

sent by Elite Air, Ltd., to the National City Bank account of Swift Air, LLC, is GRANTED.

     Bank of America is hereby ordered to immediately release the restrained funds.

Dated: April 4, 2008
      New York, New York

                          SO ORDERED:

                          *George B. Daniels*

                          GEORGE B. DANIELS
                          United States District Judge

# Exhibit 13

BLANK ■ ROME LLP
COUNSELORS AT LAW

Phone:    212-885-5148
Fax:      917-332-3840
Email:    llambert@blankrome.com

April 9, 2008

**By Fax (212) 805-6737**
Honorable George B. Daniels
United States District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 630
New York, New York 10007

Re:   Mansel Oil Limited v. Swift Aviation Group, Inc.
      08 CV 1086 (GBD)
      Our Ref.: 129053-00601

Dear Judge Daniels:

This firm represents Plaintiff Mansel Oil Limited in the above matter.

I am pleased to attach a stipulation signed by Plaintiff, Defendant Swift Aviation Group, Inc., and Intervenor Swift Air, LLC which resolves the disputes concerning 1) the attachment of $118,136 at Bank of America which was the subject of Swift Air's motion to vacate and 2) the attachment on April 4 of $49,300 which had not yet become the subject of a motion.

The stipulation renders moot the request made in my letter to the Court of April 4 that the Court reconsider its Order of April 4 vacating the attachment of $118,136.

Otherwise, the stipulation does not affect the Court's Attachment Order of February 5 or Plaintiff's pending motion for leave to file an amended complaint and other relief.

With the attachments, the length of this fax exceeds the Court's page limit. The parties respectfully request that the Court accept this fax in the circumstances of this matter.

If the Stipulation is acceptable to the Court, we ask that the Court "so order" and deliver to the Clerk for filing and entry. Once it is entered, Mr. Radzik will serve it on the Garnishee banks so that the funds will be released.

We are of course at the Court's disposal to answer any questions the Court may have. Otherwise, we thank the Court for its attention and action upon this request.

Respectfully submitted,

LeRoy Lambert

LRL/cn

cc:     **By Email**
        Skadden, Arps, Slate, Meagher & Flom LLP
        Attention:    Julie Bédard (**julie.bedard@skadden.com**)

        McDermott & Radzik, LLP
        Attention:  Edward C. Radzik (eradzik@McDermottRadzik.com)

BLANK ROME LLP
Attorneys for Plaintiff
MANSEL OIL LIMITED
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANSEL OIL LIMITED,<br><br>            Plaintiff,<br><br>      -against-<br><br>SWIFT AVIATION GROUP, INC.,<br><br>           Defendant. | 08 Civ. 1086 (GBD)<br><br>**STIPULATION AND ORDER**<br>**DIRECTING RELEASE OF CERTAIN**<br>**ATTACHED FUNDS** |

It is hereby STIPULATED, AGREED, AND ORDERED that pursuant to Supplemental

Rule E(5)(c) for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure, on

consent of the parties and Intervenor Swift Air LLC, the two electronic funds transfers described

below (the "Two EFT's") shall be released, with immediate effect, and without regard to the ten-

day automatic stay of Rule 62(a) of the Federal Rules of Civil Procedure:

1.  An electronic funds transfer in the amount of $118,136 presently
    restrained by Garnishee Bank of America, N.A., and further described on
    Exhibit A hereto; and

2.  An electronic funds transfer in the amount of $49,300 presently restrained
    by Garnishee JP Morgan Chase and further described on Exhibit B hereto.

129053.00601/6630548v.1

It is further STIPULATED, AGREED, AND ORDERED that Intervenor Swift Air shall serve counsel for the Garnishee banks described above by email with an image of this Stipulation, "so ordered" by the Court, and that the Garnishee banks shall promptly release the Two EFT's in accordance with the instructions contained in each EFT.

It is further STIPULATED, AGREED AND ORDERED that the Court's Order of Attachment of February 5, 2008 ("Attachment Order"), pursuant to which the Two EFT's are presently restrained, otherwise remains in full force and effect with respect to any other EFT's which are or may become subject to the Attachment Order and that this Stipulation and Order is without prejudice to any and all rights, defenses, and contentions whatsoever that the parties and Intervenor Swift Air LLC may have with respect to the attachment of the Two EFT's and to the attachment of any electronic funds transfers in the future under the Attachment Order.

Dated: New York, NY
April 2008

BLANK ROME, LLP
Attorneys for Plaintiff
Mansel Oil Limited


By _____
LeRoy Lambert (LL-3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Attorneys for Defendant
Swift Aviation Group, Inc.


By _____
Julie Bédard
Four Times Square
New York, NY 10036


McDermott & Radzik, LLP
Attorneys for Intervenor Swift Air LLC

By _____
Edward C. Radzik
Wall Street Plaza
88 Pine Street
New York, NY 10005-1801

APR 1 4 2008

SO ORDERED:
_____
George B. Daniels
U.S.D.J.

**HON. GEORGE B. DANIELS**

129053.00601/6630548v.1

2

# Exhibit 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MANSEL OIL, LTD.,

                    Plaintiff,

       -against-

SWIFT AVIATION GROUP, INC., et al.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

08 CV 1086 (GBD)

ORDER

GEORGE B. DANIELS, District Judge:

      Plaintiff's application for an order to show cause why plaintiff should not be granted

leave to file an amended complaint; an amended order of attachment; and an order deeming any

funds presently attached under the Court's prior order of February 5, 2008, as being attached

pursuant to the amended order, is DENIED.

Dated: April 4, 2008
       New York, New York

                           SO ORDERED:

                           _George B Daniels_

                           GEORGE B. DANIELS
                           United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: Apr 0 7 2008

# Exhibit 15

MAR-08-2004  14:55                                                      P.02/08

COMMISSIONERS
MARC SPITZER - Chairman
WILLIAM A. MUNDELL
JEFF HATCH-MILLER
MIKE GLEASON
KRISTIN K. MAYES



BRIAN C. MCNEIL
Executive Secretary

JOANNE C. MACDONNELL
Director, Corporations Division

## ARIZONA CORPORATION COMMISSION

March 8, 2004

KATHY J SHELBY
LANE & EHRLICH LTD
4001 N 3RD ST STE 400
PHOENIX, AZ  85012

RE: SWIFT AVIATION GROUP, INC.
File Number:  -1121306-9

We are pleased to notify you that your Articles of Incorporation were filed on February 24, 2004.

You must publish a copy of your Articles of Incorporation. The publication must be in a newspaper of general circulation in the county of the known place of business in Arizona (as filed with the Commission) for three (3) consecutive publications. A list of newspapers is available on the Commission web site. An affidavit from the newspaper, evidencing such publication, must be delivered to the Commission for filing within NINETY (90) DAYS from the date of this letter. Make sure the newspaper publishes the corporation documents using the exact name filed with the Commission.

All corporations transacting business in Arizona are required to file an Annual Report with the Commission, on the anniversary of the date of incorporation. Each year, a preprinted Annual Report form will be mailed to the corporation's known place of business approximately two months prior to the due date of the report. Should the report fail to arrive, contact the Commission. It is imperative that corporations notify the Commission immediately (in writing) if they change their corporate address, statutory agent or agent address. Address change orders must be executed (signed) by a corporate officer. Postal forwarding orders are not sufficient.

The Commission strongly recommends that you periodically check Commission records regarding the corporation. The Commission web site www.cc.state.az.us/corp contains information specific to each corporation of record and is a good general source of information.

If you have any questions or need further information, please contact us at (602) 542-3135 in Phoenix, (520) 628-6560 in Tucson, or Toll Free (Arizona residents only) at 1-800-345-5819.

Sincerely,
THERESA TITTLE
Examiner
Corporations Division

CF:04, Rev:01/2004

1300 WEST WASHINGTON, PHOENIX, ARIZONA 85007-2929 / 400 WEST CONGRESS STREET, TUCSON, ARIZONA 85701-1347
www.cc.state.az.us - 602-542-3135

AZ. CORP. COMMISSION
FILED

FEB 2 4 2004

APPR. *Levi Tittle*
TERM.
DATE 2/24/2004
← 1121306 -9

ARTICLES OF INCORPORATION

OF

SWIFT AVIATION GROUP, INC.

The undersigned incorporator, desiring to form a corporation under the laws of the State of Arizona, adopts the following Articles of Incorporation.

## ARTICLE I

The name of the corporation shall be:

SWIFT AVIATION GROUP, INC. *okub*

## ARTICLE II

The incorporator of the corporation is:

Gerald F. Ehrlich
4001 N. 3rd Street, Suite 400
Phoenix, AZ 85012

All powers, duties and responsibilities of the incorporator shall cease at the time of delivery of these Articles of Incorporation to the Arizona Corporation Commission for filing.

## ARTICLE III

The corporation initially intends to conduct the business of overseeing the operations of its subsidiaries and to do all and everything advantageous and necessary to engage in said business.

## ARTICLE IV

The purpose for which this corporation is organized is the transaction of any or all lawful business for which corporations may be incorporated under the laws of the State of Arizona as they may be amended from time to time.

## ARTICLE V

The total authorized shares of the corporation shall be fifty thousand (50,000) common shares with a par value of One Dollar ($1.00) each.

The shares of this corporation may be issued for cash, services, or property, upon such conditions and terms as may be determined by the Board of Directors, who shall have full power and authority to fix the value of the property or services for which shares may be issued and whose valuations shall be conclusive, and the shares so issued shall be fully paid and nonassessable.

The Board of Directors may from time to time cause the corporation to purchase its own shares to the extent of the unreserved and unrestricted earned and capital surplus of the corporation.

## ARTICLE VI

The affairs of the corporation shall be conducted by a Board of Directors, the number of which shall be determined at the annual meeting of the shareholders in the manner specified in the By-Laws of the corporation. Directors shall be elected at the annual meeting of the shareholders to be held at such time as may be provided in the By-Laws of the corporation and such Directors shall serve until their successors are elected and qualified. The following person shall comprise the initial Board of Directors, who shall serve until his successor is elected and qualified:

Jerry Moyes
2200 S. 75th Avenue
Phoenix, Arizona 85043

## ARTICLE VII

The private property of the shareholders, directors, and officers of this corporation shall be forever exempt from corporate debts and liabilities.

To the fullest extent permitted by Title 10 of the Arizona Revised Statutes as the same exists or may hereafter be amended, no director shall be liable to this Corporation or its

stockholders for monetary damages for breach of fiduciary duty as a director.

No repeal or modification of the foregoing paragraph by the stockholders of this Corporation shall adversely affect any right or protection of a director existing at the time of such repeal or modification.

## ARTICLE VIII

The corporation shall indemnify any person who incurs expenses by reason of the fact he or she is or may be an officer, director or agent of the Corporation. This indemnification shall be mandatory in all circumstances in which indemnification is permitted by law

## ARTICLE IX

Gerald F. Ehrlich, with offices at 4001 North Third Street, Suite 400, Phoenix, Arizona, is hereby appointed the initial statutory agent of the corporation. The Board of Directors of this corporation may revoke this appointment of agent at any time and shall have power to fill any vacancy in such position.

IN WITNESS WHEREOF, the incorporator has hereunto set his hand this 23d day of February, 2004.

Gerald F. Ehrlich

# Exhibit 16

## Arizona Corporation Commission
## State of Arizona Public Access System

04/15/2008                                                                                          7:21 AM

## Jump To...

<u>Scanned Documents</u>       <u>Microfilm</u>

| Corporate Inquiry | |
|---|---|
| **File Number: L-1199442-6** | Check Corporate Status |
| **Corp. Name: SWIFT AIR, L.L.C.** | |

### Domestic Address

| |
|---|
| 2406 SOUTH 24TH ST #E100 |
| PHOENIX, AZ  85034 |

### Statutory Agent Information

| |
|---|
| **Agent Name:**  GERALD F EHRLICH |
| |
| **Agent Mailing/Physical Address:** |
| 4001 NORTH THIRD STREET #400 |
| PHOENIX, AZ  85012 |
| |
| **Agent Status:** APPOINTED 03/16/2005 |
| **Agent Last Updated:** 06/18/2005 |

### Additional Corporate Information

| | |
|---|---|
| Corporation Type: DOMESTIC L.L.C. | Business Type: |
| Incorporation Date:  03/16/2005 | Corporate Life Period: PERPETUAL |
| Domicile:  ARIZONA | County: MARICOPA |
| Approval Date:  03/16/2005 | Original Publish Date:  05/31/2005 |

# Scanned Documents

## (Click on gray button to view document)

| Document Number | Description | Date Received |
|---|---|---|
| 01201105 | ARTICLES OF ORGANIZATION | 03/16/2005 |
| 01230158 | PUB OF ARTICLES OF ORGANIZATION | 05/31/2005 |

Back To Top

# Microfilm

| Location | Date Received | Description |
|---|---|---|
| 31860001342 | 03/16/2005 | ARTICLES OF ORGANIZATION |
| 31871002027 | 05/31/2005 | PUB OF ARTICLES OF ORGANIZATION |

Back To Top

- **Corporate Name Search Instructions**
- **General Web Site Usage Instructions**
- **Return to STARPAS Main Menu**
- **Return to A.C.C. Corporations Division Main Page**
- **Return to Arizona Corporation Commission Home Page**

# Exhibit 17

Arizona Corporation Commission

04/15/2008    State of Arizona Public Access System    7:21 AM

| Corporate Status Inquiry |
| --- |
| **File Number: L-1199442-6** |
| **Corp. Name: SWIFT AIR, L.L.C.** |

## This Limited Liability Company is in Good Standing

This information is provided as a courtesy and does not constitute legally binding information regarding the status of the entity listed above. To obtain an official Certificate indicating that the entity is in good standing click on Print Certificate and follow printing instructions. To re-print a previously generated Certificate of Good Standing click Reprint Certificate.

[ Print Certificate ]    [ Reprint Certificate ]

[ Return to Corporate Inquiry ]

# Exhibit 18



Home | 602-225-3700

**Home    Aircraft    Services    News    About    Contact    Login**





# Aircraft Management and Charter Services

Swift Air, LLC has become one of the premier Aircraft Managers and Operators in the United States. Put our many years of experience operating a diverse fleet of business and personal jets to work for you.

## The Swift Ai[r] Advantage

By combining o[ur] and fleet mana[gement] experience with [] service and solu[tions] provide you wit[h] service and valu[e] industry.







### Our Services

We offer a wide range of products and services including aircraft management, maintenance support, charter services, insurance, crew management and other programs tailored to meet your needs.

read more →

### Our Fleet

We operate a diverse fleet of aircraft enabling us to meet all of your travel and business needs.

read more →

### About Us

Find out more about our dynamic organization and review current news and announcements.

read more →

## Recent News

Swift Air Esta[]
ASAP progra[m]

CG Aviation [

Charter Fleet

Jumpseat Sched[]

Hazard Report

---

Copyright © 2007 Swift Air, LLC.

Terms of Use

Home    Aircraft    Services    News    About    Contact    Login

# Exhibit 19

## Arizona Corporation Commission

04/15/2008                    State of Arizona Public Access System                    7:17 AM

### Jump To...

<u>Annual Reports</u>    <u>Scanned Documents</u>    <u>Notices of Pending Administrative Dissolution</u>    <u>Microfilm</u>

| Corporate Inquiry |
|---|

| File Number: -1121315-0 | Check Corporate Status |
|---|---|
| **Corp. Name: SWIFT AVIATION MANAGEMENT, INC.** | |

### Domestic Address

| % GERALD F EHRLICH |
|---|
| 4001 N 3RD ST #400 |
| PHOENIX, AZ  85012 |

### Statutory Agent Information

| Agent Name:  GERALD F EHRLICH |
|---|
| |
| **Agent Mailing/Physical Address:** |
| 4001 N 3RD ST #400 |
| PHOENIX, AZ  85012 |
| |
| Agent Status: APPOINTED 02/24/2004 |
| Agent Last Updated: 05/21/2004 |

### Additional Corporate Information

| Corporation Type: BUSINESS | Business Type: |
|---|---|
| Incorporation Date: 02/24/2004 | Corporate Life Period: PERPETUAL |
| Domicile: ARIZONA | County: MARICOPA |
| Approval Date: 02/24/2004 | Original Publish Date: 04/21/2004 |

### Officer Information

| JERRY MOYES | VICKIE MOYES |
|---|---|
| PRESIDENT | SECRETARY |
| 2710 E OLD TOWER RD | 2710 E OLD TOWER RD |
| PHOENIX,AZ  85034 | PHOENIX,AZ  85034 |
| **Date of Taking Office:** 02/24/2004 | **Date of Taking Office:** 02/24/2004 |
| **Last Updated:** 04/07/2005 | **Last Updated:** 04/07/2005 |
| KEVIN BURDETTE | KEVIN BURDETTE |
| TREASURER | VICE-PRESIDENT |
| 2710 E OLD TOWER RD | 2710 E OLD TOWER RD |
| PHOENIX,AZ  85034 | PHOENIX,AZ  85034 |
| **Date of Taking Office:** 02/24/2004 | **Date of Taking Office:** 02/24/2004 |
| **Last Updated:** 04/04/2008 | **Last Updated:** 04/04/2008 |

## Director Information

| JERRY MOYES | |
|---|---|
| DIRECTOR | |
| 2710 E OLD TOWER RD | |
| PHOENIX,AZ  85034 | |
| **Date of Taking Office:** 03/24/2004 | |
| **Last Updated:** 04/04/2008 | |

## Annual Reports

**Next Annual Report Due:** 03/24/2009

E-FILE An Annual Report Online  << Click Here

FORMS For Annual Reports To Be Printed And Mailed  << Click Here

| File Year | File Month | Date Received | Reason Returned | Date Returned | Extension |
|---|---|---|---|---|---|
| 2008 | 03 | 03/07/2008 | | | |
| 2007 | 03 | 07/16/2007 | | | |
| 2006 | 03 | 03/06/2006 | | | |
| 2005 | 03 | 02/22/2005 | | | |

Back To Top

## Scanned Documents

### (Click on gray button to view document)

| Document Number | Description | Date Received |
|---|---|---|
| 00922580 | PUB OF ARTICLES | 04/21/2004 |
| 01135939 | 05 ANNUAL REPORT | 02/22/2005 |
| 01497085 | 06 ANNUAL REPORT | 03/06/2006 |
| 02090551 | 07 ANNUAL REPORT | 07/16/2007 |
| 02343606 | 08 ANNUAL REPORT | 03/07/2008 |

Back To Top

## Notices of Pending Administrative Dissolution

### (Click on gray button - if present - to view notice)

| Date | Reason |
|---|---|
| 06/28/2007 | DELINQUENT ANNUAL REPORT |

Back To Top

## Microfilm

| Location | Date Received | Description |
|---|---|---|
| 11641010034 | 02/24/2004 | ARTICLES |
| 31799002953 | 04/21/2004 | PUB OF ARTICLES |
| 31853001724 | 02/22/2005 | 05 ANNUAL REPORT |

Back To Top

- **Corporate Name Search Instructions**
- **General Web Site Usage Instructions**
- **Return to STARPAS Main Menu**
- **Return to A.C.C. Corporations Division Main Page**
- **Return to Arizona Corporation Commission Home Page**

# Exhibit 20

## Arizona Corporation Commission

**04/15/2008**            State of Arizona Public Access System            **7:20 AM**

---

### Corporate Status Inquiry

**File Number:** -1121315-0

**Corp. Name:** SWIFT AVIATION MANAGEMENT, INC.

---

### This Corporation is in Good Standing

This information is provided as a courtesy and does not constitute legally binding information regarding the status of the entity listed above. To obtain an official Certificate indicating that the entity is in good standing click on Print Certificate and follow printing instructions. To re-print a previously generated Certificate of Good Standing click Reprint Certificate.

[ Print Certificate ]    [ Reprint Certificate ]

[ Return to Corporate Inquiry ]

# Exhibit 21

## Arizona Corporation Commission

04/15/2008                    State of Arizona Public Access System                    7:18 AM

### Jump To...

Annual Reports    Scanned Documents    Amendments    Notices of Pending Administrative Dissolution    Microfilm

| Corporate Inquiry | |
|---|---|
| **File Number:** -0224861-9 | Check Corporate Status |
| **Corp. Name: SWIFT AVIATION SERVICES, INC.** | |

### Domestic Address

| % LANE & EHRLICH, LTD |
|---|
| 4001 N 3RD ST #400 |
| PHOENIX, AZ 85012 |

### Statutory Agent Information

| Agent Name:  GERALD F EHRLICH ESQ |
|---|
| |
| **Agent Mailing/Physical Address:** |
| 4001 N THIRD ST #400 |
| PHOENIX, AZ 85012 |
| |
| **Agent Status:** APPOINTED 04/30/1998 |
| **Agent Last Updated:** 09/28/2004 |

### Additional Corporate Information

| | |
|---|---|
| **Corporation Type:** PROFIT | **Business Type:** |
| **Incorporation Date:** 07/03/1990 | **Corporate Life Period:** PERPETUAL |
| **Domicile:** ARIZONA | **County:** MARICOPA |
| **Approval Date:** 07/05/1990 | **Original Publish Date:** 07/27/1990 |

### Officer Information

```
JERRY MOYES                          VICKIE MOYES
PRESIDENT                            SECRETARY
2710 E OLD TOWER RD                  2710 E OLD TOWER RD
PHOENIX,AZ  85034                    PHOENIX,AZ  85034
Date of Taking Office: 12/31/1997    Date of Taking Office: 12/31/1997
Last Updated: 01/11/2006             Last Updated: 01/11/2006
```

## Annual Reports

**Next Annual Report Due:** 11/03/2008

| E-FILE An Annual Report Online  << Click Here |

| FORMS For Annual Reports To Be Printed And Mailed  << Click Here |

| File Year | File Month | Date Received | Reason Returned | Date Returned | Extension |
|-----------|-----------|---------------|-----------------|---------------|-----------|
| 2007 | 11 | 09/19/2007 | | | |
| 2006 | 11 | 10/30/2006 | | | |
| 2005 | 11 | 10/27/2005 | | | |
| 2004 | 11 | 03/03/2005 | | | |
| 2003 | 11 | 12/24/2003 | | | |
| 2002 | 11 | 11/22/2002 | | | |
| 2001 | 11 | 11/05/2001 | | | |
| 2000 | 11 | 09/22/2000 | | | |
| 1999 | 11 | 05/22/2000 | | | |
| 1998 | 11 | 01/06/1999 | | | |
| 1997 | 11 | 12/18/1998 | | | |
| 1996 | 10 | 03/20/1997 | | | |
| 1995 | 10 | 02/07/1996 | | | |
| 1994 | 10 | 02/23/1995 | | | |
| 1993 | 10 | 02/16/1994 | REPORT AND CHECK RETURNED | 02/28/1995 | |
| 1992 | 10 | 04/07/1993 | | | |
| 1991 | 10 | 04/13/1992 | | | 04/15/1993 |
| 1990 | 10 | 02/13/1991 | | | 04/15/1992 |

Back To Top

## Scanned Documents

### (Click on gray button to view document)

| Document Number | Description | Date Received |
|---|---|---|
| -00069370 | 96 ANNUAL REPORT | 03/20/1997 |
| -00261533 | 97 ANNUAL REPORT | 12/18/1998 |
| -00264141 | 98 ANNUAL REPORT | 01/06/1999 |
| 00157753 | 99 ANNUAL REPORT | 05/22/2000 |
| 00205254 | 00 ANNUAL REPORT | 09/22/2000 |
| 00400160 | 01 ANNUAL REPORT | 11/05/2001 |
| 00611300 | 02 ANNUAL REPORT | 11/22/2002 |
| 00834877 | 03 ANNUAL REPORT | 12/24/2003 |
| 01157135 | 04 ANNUAL REPORT | 03/03/2005 |
| 01380217 | 05 ANNUAL REPORT | 10/27/2005 |
| 01794045 | 06 ANNUAL REPORT | 10/30/2006 |
| 02166428 | 07 ANNUAL REPORT | 09/19/2007 |

Back To Top

## Amendments

| Amendment Date | Amendment Type | Publish Date | Publish Exception |
|---|---|---|---|
| 04/13/1998 | NAME CHANGE | 07/08/1998 | |
| 05/08/1991 | NAME CHANGE | 06/13/1991 | |

Back To Top

## Notices of Pending Administrative Dissolution

### (Click on gray button - if present - to view notice)

| Date | Reason |
|---|---|
| 02/15/2005 | DELINQUENT ANNUAL REPORT |

Back To Top

## Name Changes / Mergers

| Description | Corporation Name | Date |
|---|---|---|
| CHANGED FROM | GTA AVIATION SERVICES, INC. | 04/13/1998 |
| CHANGED FROM | G-T AVIATION FUEL SERVICES, INC. | 05/08/1991 |

## Microfilm

| Location | Date Received | Description |
|---|---|---|
| 10553001019 | 07/03/1990 | ARTICLES |
| 20101091042 | 07/27/1990 | PUBLICATION OF ARTICLES |
| 10589001014 | 02/13/1991 | 90 ANNUAL REPORT |
| 10635003014 | 05/08/1991 | AMENDMENT |
| 20113065035 | 06/13/1991 | PUBLICATION OF AMENDMENT |
| 20123007002 | 02/12/1992 | 91 EXTENSION |
| 10672020033 | 04/13/1992 | 91 ANNUAL REPORT |
| 20134032007 | 02/12/1993 | 92 EXTENSION |
| 10752023048 | 04/07/1993 | 92 ANNUAL REPORT |
| 10823030039 | 02/16/1994 | 93 ANNUAL REPORT |
| 10910018018 | 02/23/1995 | 94 ANNUAL REPORT |
| 11022005014 | 02/07/1996 | 95 ANNUAL REPORT |
| 11118016033 | 02/18/1997 | 96 ANNUAL REPORT |
| 11222023009 | 04/13/1998 | AMENDMENT |
| 20222045029 | 04/30/1998 | AGENT APPOINTMENT |
| 20224043025 | 07/08/1998 | PUB OF AMENDMENT |
| 31517000203 | 12/18/1998 | 97 ANNUAL REPORT |
| 31517000793 | 01/06/1999 | 98 ANNUAL REPORT |
| 31580000885 | 05/22/2000 | 99 ANNUAL REPORT |
| 31592002510 | 09/22/2000 | 00 ANNUAL REPORT |
| 31640002082 | 11/05/2001 | 01 ANNUAL REPORT |
| 31698001104 | 11/22/2002 | 02 ANNUAL REPORT |
| 31775001563 | 12/24/2003 | 03 ANNUAL REPORT |

| 11680031032 | 09/14/2004 | 04 ANNUAL REPORT/MAIL RETURNED |
| 31857000116 | 03/03/2005 | 04 ANNUAL REPORT |

Back To Top

- **Corporate Name Search Instructions**
- **General Web Site Usage Instructions**
- **Return to STARPAS Main Menu**
- **Return to A.C.C. Corporations Division Main Page**
- **Return to Arizona Corporation Commission Home Page**

# Exhibit 22

Arizona Corporation Commission

04/15/2008              State of Arizona Public Access System              7:20 AM

## Corporate Status Inquiry

**File Number:  -0224861-9**

**Corp. Name: SWIFT AVIATION SERVICES, INC.**

## This Corporation is in Good Standing

This information is provided as a courtesy and does not constitute legally binding information regarding the status of the entity listed above. To obtain an official Certificate indicating that the entity is in good standing click on Print Certificate and follow printing instructions. To re-print a previously generated Certificate of Good Standing click Reprint Certificate.

[ Print Certificate ]      [ Reprint Certificate ]

[ Return to Corporate Inquiry ]

# Exhibit 23

Arizona Corporation Commission

04/15/2008                    State of Arizona Public Access System                    7:18 AM

## Jump To...

Annual Reports        Scanned Documents        Amendments        Microfilm

| Corporate Inquiry | |
|---|---|
| **File Number: -1027226-6** | Check Corporate Status |
| **Corp. Name: SWIFT AVIATION SALES, INC.** | |

### Domestic Address

| % LANE & EHRLICH |
|---|
| 4001 N 3RD ST #400 |
| PHOENIX, AZ 85012 |

### Statutory Agent Information

| **Agent Name:** GERALD F EHRLICH |
|---|
| |
| **Agent Mailing/Physical Address:** |
| 4001 N 3RD STREET #400 |
| PHOENIX, AZ 85012 |
| |
| **Agent Status:** APPOINTED 04/19/2002 |
| **Agent Last Updated:** 05/28/2004 |

### Additional Corporate Information

| | |
|---|---|
| **Corporation Type:** BUSINESS | **Business Type:** |
| **Incorporation Date:** 04/19/2002 | **Corporate Life Period:** PERPETUAL |
| **Domicile:** ARIZONA | **County:** MARICOPA |
| **Approval Date:** 04/19/2002 | **Original Publish Date:** 05/07/2002 |

### Officer Information

```
JERRY MOYES                          VICKIE MOYES
PRESIDENT                            SECRETARY
P O BOX 20683                        P O BOX 20683
PHOENIX,AZ  85036                    PHOENIX,AZ  85036
Date of Taking Office: 07/27/2005    Date of Taking Office: 03/07/2005
Last Updated: 06/13/2006             Last Updated: 06/13/2006

VICKIE MOYES
TREASURER
2710 E OLD TOWER RD
PHOENIX,AZ  85034
Date of Taking Office: 07/27/2005
Last Updated: 08/23/2005
```

## Annual Reports

**Next Annual Report Due:** 04/19/2008

E-FILE An Annual Report Online  << Click Here

FORMS For Annual Reports To Be Printed And Mailed  << Click Here

| File Year | File Month | Date Received | Reason Returned | Date Returned | Extension |
|-----------|------------|---------------|-----------------|---------------|-----------|
| 2007 | 04 | 04/12/2007 | | | |
| 2006 | 04 | 04/19/2006 | | | |
| 2005 | 04 | 03/07/2005 | | | |
| 2004 | 04 | 04/08/2004 | | | |
| 2003 | 04 | 04/10/2003 | | | |

Back To Top

## Scanned Documents

### (Click on gray button to view document)

| Document Number | Description | Date Received |
|-----------------|-------------|---------------|
| 00679021 | 03 ANNUAL REPORT | 04/10/2003 |
| 00911621 | 04 ANNUAL REPORT | 04/08/2004 |

| 00922615 | PUB OF AMENDMENT | 04/21/2004 |
| 01147367 | 05 ANNUAL REPORT | 03/07/2005 |
| 01301237 | OFFICER/DIRECTOR CHANGE | 08/05/2005 |
| 01316548 | OFFICER/DIRECTOR CHANGE | 08/22/2005 |
| 01556791 | 06 ANNUAL REPORT | 04/19/2006 |
| 01969854 | 07 ANNUAL REPORT | 04/12/2007 |
| 01969549 | 07 ANNUAL REPORT | 04/16/2007 |

Back To Top

## Amendments

| Amendment Date | Amendment Type | Publish Date | Publish Exception |
|---|---|---|---|
| 02/24/2004 | NAME CHANGE | 04/21/2004 | |

Back To Top

## Name Changes / Mergers

| Description | Corporation Name | Date |
|---|---|---|
| CHANGED FROM | SWIFT AVIATION GROUP, INC. | 02/24/2004 |

## Microfilm

| Location | Date Received | Description |
|---|---|---|
| 11522007005 | 04/19/2002 | ARTICLES |
| 20305003021 | 05/07/2002 | PUB OF ARTICLES |
| 31718001470 | 04/10/2003 | 03 ANNUAL REPORT |
| 11649003035 | 02/24/2004 | AMENDMENT |
| 31801001318 | 04/08/2004 | 04 ANNUAL REPORT |
| 31801002856 | 04/21/2004 | PUB OF AMENDMENT |
| 31857001021 | 03/07/2005 | 05 ANNUAL REPORT |

Back To Top

- **Corporate Name Search Instructions**
- **General Web Site Usage Instructions**
- **Return to STARPAS Main Menu**
- **Return to A.C.C. Corporations Division Main Page**
- **Return to Arizona Corporation Commission Home Page**

# Exhibit 24

Arizona Corporation Commission

04/15/2008                State of Arizona Public Access System                7:19 AM

## Corporate Status Inquiry

**File Number:  -1027226-6**

**Corp. Name: SWIFT AVIATION SALES, INC.**

## This Corporation is in Good Standing

**This information is provided as a courtesy and does not constitute legally binding information regarding the status of the entity listed above. To obtain an official Certificate indicating that the entity is in good standing click on Print Certificate and follow printing instructions. To reprint a previously generated Certificate of Good Standing click Reprint Certificate.**

[ Print Certificate ]    [ Reprint Certificate ]

[ Return to Corporate Inquiry ]