UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------

| | |
|---|---|
| : | |
| MANSEL OIL LIMITED, : | **ECF case** |
| : | |
| Plaintiffs, : | 08 Civ. 1086 (GBD) |
| : | |
| v. : | **Electronically Filed** |
| : | |
| SWIFT AVIATION GROUP, INC., : | **DECLARATION OF JOHN GARDINER IN** |
| : | **SUPPORT OF DEFENDANT'S CROSS-** |
| Defendant. : | **MOTION TO STAY ALL CLAIMS PENDING** |
| : | **ARBITRATION and IN OPPOSITION TO** |
| : | **PLAINTIFF'S MOTION FOR LEAVE TO** |
| : | **FILE AN AMENDED COMPLAINT;** |
| : | **TO ISSUE AN AMENDED ORDER OF** |
| : | **ATTACHMENT; AND TO ATTACH THE** |
| : | **FUNDS PRESENTLY ATTACHED** |
| : | **PURSUANT TO THE AMENDED ORDER** |

-----------------------------------------------------------------------------

JOHN GARDINER, an attorney duly admitted to practice law in the State of New York and before this Court, hereby declares under penalty of perjury, as follows:

1.        I am a member of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, which represents plaintiff Swift Aviation Group, Inc. ("Swift Aviation Group") in the above-captioned action.  I submit this declaration based on personal knowledge or, where so indicated, upon information and belief, (1) in support of Swift Aviation Group's Cross-Motion to Stay Claims Pending Arbitration and (2) in Opposition to Plaintiff Mansel Oil Limited's ("Mansel

Oil") Motion for Leave to File an Amended Complaint; to Issue an Amended Order of

Attachment; and to Attach the Funds Presently Attached Pursuant to the Amended Order.

    2.     I submit this Declaration to place before the Court true and correct copies of the

following documents:

**Exhibit 1**    Excerpt from Plaintiff's Memorandum of Law in Opposition to Motion of Swift
Air LLC to Vacate Attachment dated March 28, 2008; and

**Exhibit 2**    Opinion of Judge Sand in G.R.E. Talbot Bird & Co. v. M/V Dimitris Levantakis,
No. 86 CIV. 2035, 1988 WL 120428 (S.D.N.Y. Nov. 3, 1988.)

    3.     I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Dated: New York, New York
       April 21, 2008

                                 John L. Gardiner

# Exhibit 1

BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANSEL OIL LIMITED,<br><br>          Plaintiff,<br><br>     -against-<br><br>SWIFT AVIATION GROUP, INC.,<br><br>          Defendant. | 08 Civ. 1086 (GBD) |

## MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION OF SWIFT AIR LLC
## TO VACATE ATTACHMENT

Plaintiff, Mansel Oil Ltd. ("Mansel"), respectfully submits this Memorandum of Law in

Opposition to the Motion of Intervenor Swift Air, LLC ("Swift Air") to vacate a maritime

attachment of $118,136 presently restrained by Garnishee Bank of America N.A. ("BANA") in

this District.

The motion papers and pleadings to date present a straightforward factual issue: does

Defendant Swift Aviation Group, Inc. ("Swift Aviation") have a "property interest" in an electric

funds transfer ("EFT") restrained by Garnishee Bank of America N.A. ("BANA") on February

15, 2007 ("the Feb. 15 EFT")?

BANA restrained the Feb. 15 EFT because it named Defendant Swift Aviation as its

"beneficiary." Under the law in this Circuit, Defendant Swift Aviation, as beneficiary of the

129053.00601/6627166v.1

the transaction disclosed that it was to pay a debt of the named defendant. *See also Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1359-60 (M.D.Fla. 2001) (upholding the attachment of funds nominally belonging to non-parties because the plaintiff provided evidence they were controlled by the defendant).

Judge Pauley found that there was an attachable property interest of the named defendant in the EFT at issue even though the defendant was neither the originator or the beneficiary. If the facts adduced at the Rule E(4)(f) hearing show that the defendant in fact has a property interest in the EFT, then, as Judge Pauley held:

> A plaintiff need not aver an alter-ego relationship in the Complaint for a Rule B attachment to be proper. *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527-30 (S.D.N.Y. Aug. 1, 2006) (holding that an analysis of whether reasonable grounds exist for a Rule B attach-ment is not limited to the allegations in the Complaint). As stated, Defendant Martrade had an interest in the June 1 EFT sufficient to uphold its attachment under Rule B.

Accordingly, the issue is whether Swift Aviation has a property interest in the Feb. 15 EFT. Mansel respectfully submits that the Court cannot decide this issue on the present record as a matter of law. The Court should direct Swift Air and Swift Aviation to produce Mr. Burdette for an evidentiary hearing before the Court in New York in order to allow Mansel the opportunity to depose and cross-examine Mr. Burdette in his capacity as Vice-President of both Swift Air and Swift Aviation.

## POINT II

## THIS ACTION IS NOT PREMATURE

Swift Aviation in its Answer (Docket #7) asserts as an affirmative defense that this action is premature because Mansel has not commenced arbitrations in London. Swift Air makes the same contention at page 6 of its memorandum of law. The Federal Arbitration Act specifically

authorizes the commencement of a maritime dispute subject to arbitration by means of an attachment under Rule B or an arrest under Rule C. 9 U.S.C. § 8 provides "notwithstanding anything herein to the contrary [i.e., the Act's making arbitration clauses in maritime contracts enforceable], the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings." *See The Anaconda v. American Sugar Refining Co.* 322 U.S. 42 (1944). In any event, Mansel formally commenced the arbitrations in London on March 26, 2008, rendering moot any such obections. Lambert Aff. ¶21 and Exs. 22-23.

The case cited by Swift Air, *A Eitzen Sealift A/S v. Cementos Andinos Domincanos*, S.A., 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. September 9, 2005), is inapposite. Whether indemnity claims are "ripe" enough to support an attachment under Rule B is not an issue here. *See generally Great Eastern Shipping Co. Ltd. v. Phoenix Shipping Corporation*, 2007 U.S. Dist. LEXIS 88911 (S.D.N.Y. December 4, 2007) (cases on "both sides of this issue"). Mansel's claims here are not premature indemnity claims, but are ripe and ready for arbitration in London.

## CONCLUSION

The Court should deny the motion of Swift Air until and unless direct Swift Air and defendant Swift Aviation produce Mr. Burdette for cross-examination.

Dated: New York, NY
      March 28, 2008

                                   BLANK ROME LLP
                                   Attorneys for Plaintiff

                                   By _____
                                       LeRoy Lambert (LL 3519)
                                   The Chrysler Building
                                   405 Lexington Avenue
                                   New York, NY  10174-0208
                                   Tel.: (212) 885-5000
                                   Fax: (212) 885-5001

# Exhibit 2

Not Reported in F.Supp., 1988 WL 120428 (S.D.N.Y.), 1989 A.M.C. 298

United States District Court, S.D. New York.
G.R.E. TALBOT BIRD & CO., INC. a/s/o Trade Arbed, Inc., Plaintiff,
v.
M/V "DIMITRIS LEVANTAKIS," her engines, boilers, etc., Grecomar Shipping Agency, Ltd. and
Eurodiamond Marine Ltd., Defendants.
GRECOMAR SHIPPING AGENCY, LTD. and Eurodiamond Marine Ltd., Third-Party Plaintiffs,
v.
BULFRACHT, SOFIA and SPEDIMEX SPEDITIONAGES m.b.H. DBA Spedimex, Third-Party Defendants.
No. 86 CIV. 2035 (LBS).
Nov. 3, 1988.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, for plaintiff; Vincent J.
Barra, Richard F. Salz, of counsel.

Cichanowicz Callan & Keane, New York City, for defendants and third-party plaintiffs; Paul M. Keane,
Joseph F. De May, Jr., R. Timothy Swiecicki, of counsel

Healy & Baillie, New York City, for third-party defendant Bulfracht; Howard M. McCormack, Elisa M.
Pugliese, of counsel.

Nourse & Bowles, New York City, for third-party defendant Spedimex; Armand M. Pare, Jr., of
counsel.


SAND, District Judge.
**\*1** G.R.E. Talbot & Co., Inc. ("Talbot"), acting as subrogee of Trade Arbed, Inc. ("Trade Arbed"),
sued the vessel M/V Dimitris Levantakis ("Levantakis"), its alleged owner, Eurodiamond Marine Ltd.
("Eurodiamond"), and Eurodiamond's agent, Grecomar Shipping Agency ("Grecomar"), for damage to
a shipment of steel that had been transported on the Levantakis. In turn, Eurodiamond and Grecomar
brought in as third-party defendants Bulfracht of Sofia("Bulfracht"), the Charterer for the voyage in
question, and Spedimex Speditionages m.b.H. ("Spedimex"), the Subcharterer. The case is now
before this Court on the following motions: 1. Bulfracht's motion to dismiss the third-party complaint
for lack of *in personam* jurisdiction, or alternatively, for an order to stay pending arbitration; 2.
Spedimex's motion to dismiss; 3. Eurodiamond and Grecomar's motion to dismiss for insufficiency of
service and lack of personal jurisdiction, or to amend the answer; 4. Talbot and Trade Arbed's cross-
motion to transfer the case to Texas.


*Facts*

On or about January 16, 1985, Vira Maritime Inc. ("Vira"), the actual owner of the Levantakis,
chartered the vessel to Bulfracht to transport steel plate and steel pipe from Galatz and Constanza,
Romania, to ports in the United States, including Bridgeport, Mobile, New Orleans, and Houston. Vira
and Bulfracht signed a Charter, using the Uniform General Charter form ("Gencon"), in which they
agreed, *inter alia*, to resolve "any dispute arising out of the Charter" through arbitration in London,
England. Charter, cl. 40 (Jan. 16, 1985).

On January 14, 1985, Bulfracht subchartered the shipment to Spedimex. The Subcharter, also on
the Gencon form, contained most of the provisions of the Charter. The Subcharter specified that
"owners to provide Charterers full set of Mates' receipts signed by the Master together with Bills of
Lading marked 'clean on board' and 'freight payable as per Charter Party'. Remarks, if any, to be
made in the Mates' receipts only." Subcharter, cl. 35 (Jan. 14, 1985). As with the Charter, the
Subcharter also provided that "[a]ny dispute arising out of the Charter Party to be referred to

arbitration in London." Subcharter, cl. 44 (Jan. 14, 1985).

The steel was loaded onto the Levantakis in Galatz on February 4, 1985, and in Constanza on February 15, 1985. Although clean Master's bills of lading for the cargo were issued, the mates' receipts for the cargo loaded at both ports indicated that the steel plates were partly rusted and oil-stained, and covered by ice. *See* Pare Aff't at Exh. 3 (Apr. 14, 1988).

On February 11, 1985, Trade Arbed purchased the shipment of steel that had been loaded onto the Levantakis in Galatz and was about to be loaded onto the vessel in Constanza. Trade Arbed claims that it had no knowledge of the actual condition of the steel at the time of its loading onto the Levantakis, but that in making its purchase it relied on the negotiable bills of lading that indicated "clean on board" and were signed by the Master and stamped with the ship's name. Defendants assert that it is common practice for clean bills of lading to be issued for all shipments leaving from Romania, regardless of the actual condition of the shipment, because without such bills the ship would be detained in port. McCormack Aff't at 6 (July 25, 1988). Moreover, they assert that Trade Arbed had its own representative view the shipment when the Levantakis and an accompanying ship, the M/S Swallow, were docked in ports in Romania. Reply Memorandum of Bulfracht at 5 (July 27, 1988).

**\*2** The Levantakis called at its scheduled ports in the United States. According to records located by the parties, the Levantakis reached Bridgeport on March 15, 1985, Mobile on March 25, 1985, New Orleans on March 29, 1985, and Houston on April 3, 1985. Subsequently, Talbot, acting as subrogee of Trade Arbed, commenced suit in admiralty for $249,559.27, alleging losses and damage to the shipments of steel from Galatz and Constanza to Bridgeport, Mobile, New Orleans, and Houston. Talbot and Trade Arbed sued in New York because Trade Arbed is a New York corporation with its office and principal place of business in New York.

*Discussion*

Of the several motions now before this Court, Bulfracht's motion to stay the proceedings pending arbitration is the first motion that needs to be considered. Given the Court's decision to grant this motion, several of the other motions need not be decided at this time.

In the Charter, signed by Vira and Bulfracht, and in the Subcharter, signed by Bulfracht and Spedimex, the parties agreed to resolve any dispute arising from their respective agreements through arbitration in London. *See* Charter, cl. 40; Subcharter, cl. 44. A dispute such as one arising from damaged cargo was intended to be covered by the arbitration clause, and none of the parties argues otherwise. Although arbitration would not resolve all of the issues now before the Court, it would at least resolve the issue of who is to assume liability for the damaged cargo.

The Second Circuit has ruled that it is error for a district court to deny a motion to stay litigation while the parties are trying to resolve the dispute through arbitration. *Seguros Banvenez, S.A. v. S/S Oliver Drescher, 761 F.2d 855 (2d Cir.1985).* In *Seguros Banvenez,* in facts similar to the case at bar, the Second Circuit held that a district court does not have "plenary discretion" to deny a section 3 application [FN1] for a stay while the parties arbitrate. *Id.* at 862.

*Seguros Banvenez,* like *Talbot,* is an admiralty case involving loss of cargo and liability for the loss. The purchaser of the cargo and the cargo underwriter sued the ship, the owner, the charterer, and the charterer's general agent. Paragraph 17 of the charter between the owner and charterer bound both parties to submit any dispute arising between them to arbitration in London. The district court had denied the motion to stay arbitration based on considerations of judicial economy; the Second Circuit held this reason to be impermissible and vacated that part of the decision. Moreover, the Second Circuit did not find that the charterer had waived its right to arbitration because it had been forced to litigate its non-arbitrable issues.

Consistent with *Seguros Banvenez,* this Court will grant Bulfracht's motion to stay proceedings pending arbitration. The parties in *Talbot,* like the parties in *Seguros Banvenez,* signed a charter that

provides for arbitration of disputes such as the one now before this Court. Although Vira, rather than Eurodiamond, was the owner at the time and signed the Charter, Eurodiamond did not make that fact known in its answer of April 9, 1986 and after the passage of two and one-half years, is estopped from now claiming that it was not the owner. Accordingly, the proceedings before this Court will be stayed pending the results of arbitration in London, as is consistent with the Second Circuit's ruling in *Seguros Banvenez.*

*3 In general, there are strong policy considerations favoring arbitration. In shipping in particular, damage to cargo is not an uncommon occurrence. The parties, familiar with the vicissitudes of shipping, prudently provided for a mechanism to resolve any disputes that might arise. Arbitration, the mechanism chosen by the parties, certainly provides an appropriate forum in which to resolve a dispute of this nature.

This litigation has not yet reached an advanced stage, and consequently, arbitration will not be duplicative of any other proceedings. Indeed, arbitration should be able to resolve several of the issues, most important of which is identification of the party to assume liability for the damaged steel. Once the party liable for the damage has been identified, then Talbot and Trade Arbed can proceed against that party.

Given this Court's decision to grant Bulfracht's motion to stay the proceedings pending arbitration, it would be premature to decide issues of *in personam* jurisdiction and transfer at this time. This Court will stay the proceedings before it without prejudice and subject to renewal pending the outcome of arbitration.

SO ORDERED.

FN1. Section 3 provides in pertinent part that when the court is "satisifed that the issue involved ... is referable to arbitration [, the court] shall on the application of one of the parties stay the trial of the action until such arbitration has been had...." 9 U.S.C. § 3. Courts in this circuit have interpreted the statute to mean that as long as there is an agreement to arbitrate and at least one of the issues in the suit is within the scope of the arbitration agreement, then a stay "is to be granted as a matter of course, except in rare cases." *China Union Lines, Ltd. v. American Marine Underwriters, Inc.,* 458 F.Supp. 132, 135 (S.D.N.Y.1978).

S.D.N.Y.,1988.
G.R.E. Talbot Bird & Co., Inc. v. M/V "Dimitris Levantakis"
Not Reported in F.Supp., 1988 WL 120428 (S.D.N.Y.), 1989 A.M.C. 298

END OF DOCUMENT

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.