UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MANSEL OIL LIMITED,　　　　　　　　　　　　:　　ECF case
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Plaintiff,　　　　　　　　　　　　:　　08 Civ. 1086 (GBD)
　　　　　　　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　　　　　　　　:　　Electronically Filed
　　　　　　　　　　　　　　　　　　　　　　　:
SWIFT AVIATION GROUP, INC.　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Defendant.　　　　　　　　　　:
-----------------------------------------------------------x

**MEMORANDUM OF LAW IN REPLY
OF DEFENDANT SWIFT AVIATION GROUP, INC.
IN SUPPORT OF MOTION TO STAY ALL CLAIMS PENDING ARBITRATION**

*Attorneys for Defendant*

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
John L. Gardiner
(John.Gardiner@skadden.com)
Julie Bédard
(Julie.Bedard@skadden.com)
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000

June 6, 2008

# TABLE OF CONTENTS

**Page**

Preliminary Statement ..................................................................................................................1

Argument .......................................................................................................................................3

I. A Stay Is Required to Prevent Mansel Oil From Abusing the Process of Rule B ...............3

    A. Mansel Oil Does Not Allege a Maritime Claim Against the Swift Subsidiaries and Rule B Does Not Permit the Addition of Defendants of "Convenience" ......................................................................................................3

    B. Mansel Oil Is Not Candid with the Court as It Appears to Attempt to Confuse Swift Transportation with the Swift Subsidiaries ..................................5

II. Now Is the Time to Stay Plaintiff's Action, Including the Alter Ego Claims ......................7

    A. *Limonium* Both Vacated the Attachment and Stayed the Action Against the Defendant's Affiliates Pending Arbitration ...................................................7

    B. Plaintiff Fails to Cite a Single Relevant Case Against a Stay of Mansel Oil's Action and its Trumped-Up Corporate Veil Piercing Allegations ................8

III. If the Arbitrator Finds That Defendant Is Not Liable, the Parties and the Court Will Have Wasted Time and Resources Debating Pointless Veil Piercing Issues ..............9

Conclusion ...................................................................................................................................10

# TABLE OF AUTHORITIES

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006).....3, 4, 5

*Atwood Navigation, Inc. v. M/V Rizal*, No. 89-1221, 1989 WL 16306 (E.D. Pa. Feb. 24, 1989)................................................................................................6

*CVG Ferrominera Orinoco, C.A. v. Transportes Ferreos de Venezuela, C.A.*, No. 05 Civ. 8470, 2006 WL 39611 (S.D.N.Y. Jan. 3, 2006)................................10

*Chiquita International Ltd. v. MV Bosse*, 518 F. Supp. 2d 589 (S.D.N.Y. 2007)...........6, 7

*Far Eastern Shipping Co. v. Progress Bulk Carriers, Ltd.*, No. 07 CV 11375, 2008 WL 2035788 (S.D.N.Y. Feb. 8, 2008)..................................................6

*First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*, 540 F. Supp. 2d 483 (S.D.N.Y. 2008)..................................................................8

*General Media, Inc. v. Shooker*, No. 97 Civ. 510, 1998 WL 401530 (S.D.N.Y. July 16, 1998).............................................................................................9

*HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V.*, No. 04 Civ. 6884, 2005 WL 1036127 (S.D.N.Y. May 4, 2005).................4

*Hidrocarburos y Derivados, C.A. v. Lemos*, 453 F. Supp. 160 (S.D.N.Y. 1977)................8

*International Marine Consultants, Inc. v. Karavias*, No. 82 Civ. 8296, 1985 WL 1515 (S.D.N.Y. June 3, 1985).......................................................................10

*Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600 (S.D.N.Y. 1997).........................................................................................7, 8, 10

*Limonium Maritime S.A. v. Marinera, S.A.*, 1999 WL 46721 (S.D.N.Y. 1999)..................8

*Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, No. 99-7219, 201 F.3d 431, 1999 WL 1070070 (2d Cir. Nov. 18, 1999).............................................2, 8

*Lunkenheimer Co. v. Condec Corp.*, 268 F. Supp. 667 (S.D.N.Y. 1967)............................6

*Parkroad Corp. v. China Worldwide Shipping Co.*, No. 05 CV 5085, 2005 WL 1354034 (S.D.N.Y. June 6, 2005) .................................................4

*Proshipline Inc. v. Aspen Infrastructures Ltd.*, 533 F. Supp. 2d 422 (S.D.N.Y. 2008)................................................................6

*Schaad v. Susquehanna Capital Group*, No. 03Civ.9902, 2004 WL 1794481
  (S.D.N.Y. Aug. 10, 2004) ..................................................................................8

*Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. 1963) ....................4

*World Reach Shipping Ltd. v. Industrial Carriers Inc.*, No. 06 Civ. 3756, 2006
  WL 3316828 (S.D.N.Y. Nov. 9, 2006) ..........................................................5, 9

Swift Aviation Group, Inc. ("Swift Aviation Group") respectfully submits this memorandum of law and accompanying Declaration of Anthony R. Swinnerton in reply to the Memorandum of Law in Opposition to Motion to Stay the Action Pending London Arbitration ("Pl. Opp.") of Mansel Oil Limited ("Mansel Oil") and in support of Defendant's Cross-Motion to Stay Claims in Favor of Arbitration ("Motion for Stay").[1]

## PRELIMINARY STATEMENT

Plaintiff itself states, "[n]ormally, Mansel would have filed a complaint naming Swift Aviation Group and the Swift Subsidiaries" when it first filed its Complaint before this Court (Pl. Opp. at 2). Of course, this would have been the normal course of action only if Plaintiff actually had a basis to believe that the Swift Subsidiaries were one and the same as their parent, defendant Swift Aviation Group, which is a party to two maritime charterparty agreements with Mansel Oil. It has no such basis here. The "Swift Subsidiaries" consist of (1) Swift Air, a company that charters small jets; (2) Swift Aviation Services, a company that offers ground maintenance services for aircrafts at the executive terminal of Phoenix airport; (3) Swift Aviation Management, a company that owns two small jets; and (4) Swift Aviation Sales, an entity that has ceased all activities, none of which had anything to do with the charterparty agreements. But that has not stopped Plaintiff from trying to exploit the technicalities of Rule B in an effort to obtain unwarranted leverage against Swift Aviation Group.

Rule B, however, does not contemplate defendants of "convenience," named solely for the purpose of obtaining an attachment. Plaintiff's leitmotiv that it need only make a *prima facie* admiralty claim and does not need to prove the merits of its alter ego causes of action at this point (Pl. Opp. at 15) is wrong. Plaintiff does not even accomplish as much because it

---

[1] Capitalized terms used herein have the meanings ascribed to them in the Motion for Stay.

does not *assert* a maritime claim against the Swift Subsidiaries and admits that it has no intention of doing so – which would inconveniently require an actual showing of alter ego relationship and liability that Plaintiff obviously cannot make. Indeed, Plaintiff twice has attempted to attach assets of Swift Air, one of the four proposed defendants it seeks to add here, and twice Plaintiff has agreed to release Swift Air funds in the face of evidence that Defendant had no property interest in the assets of Swift Air and Defendant and Swift Air were not commingling funds (Stipulation, Shumway Decl., Exh. 13).

Furthermore, as part of its sweeping Rule B attachment attempts, Mansel Oil has conveniently left out Swift Transportation Inc. ("Swift Transportation"), an interstate trucking company that is the original party to the charterparty agreements with Mansel Oil. Swift Transportation is found in this District and, of course, its presence would thwart Mansel Oil's Rule B efforts. Plaintiff's lack of candor should not be rewarded.

In any event, Defendant submits that rather than this Court wasting time and resources adjudicating Plaintiff's result-oriented allegations that the Swift Subsidiaries somehow control their parent (Defendant Swift Aviation Group) or are its alter ego, the issue whether to lift any corporate veil (let alone four) should be stayed pending determination in the London Arbitration of whether Swift Aviation Group has *any* liability to Mansel Oil in the first place. *See Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, No. 99-7219, 201 F.3d 431, 1999 WL 1070070, at *1 (2d Cir. Nov. 18, 1999) ("The district court deferred adjudication of the status of the nonsignatories because there would be no need to address that issue if the ongoing arbitration was decided adversely to the signatories and guarantor. To adjudicate the nonsignatories status while delaying arbitration would not expedite final resolution of the case but might actually delay it."). The same common sense approach applies here.

2

## ARGUMENT

### I. A STAY IS REQUIRED TO PREVENT MANSEL OIL FROM ABUSING THE PROCESS OF RULE B

#### A. Mansel Oil Does Not Allege a Maritime Claim Against the Swift Subsidiaries and Rule B Does Not Permit the Addition of Defendants of "Convenience"

As Plaintiff concedes, the sole purpose of "this action in New York is to obtain security for Mansel's claims pending the outcome of the London arbitration" (Pl. Opp. at 1). Mansel Oil, however, fails to meet the standards of *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) for granting a Rule B attachment (against anyone other than Swift Aviation Group, which is already subject to a Rule B attachment). Mansel Oil does not have a substantive maritime claim against the Swift Subsidiaries. There lies an inherent contradiction at the heart of its request for security.

The Swift Subsidiaries have nothing to do with the underlying dispute. Plaintiff has not stated otherwise nor attempted to involve them in the London Arbitration. Still, Plaintiff tries to drag these companies into this Court on superficial alter ego allegations solely to obtain security from them. Plaintiff states that the alter ego issue will be "back" before the Court in all events *after* the arbitrator renders an award in favor of Mansel Oil, which Swift Aviation Group fails to honor, at which point Mansel Oil turns to the Swift Subsidiaries for payment.[2]

Plaintiff's argument falls under its own weight. "Defendant" under Rule B is a defendant to the underlying maritime proceeding in which the maritime claims are decided on the merits, be it through litigation or arbitration – not the action commenced in the district solely

---

[2] Plaintiff states: "[W]hether the Swift Defendants are alter egos of each other will *not* be decided in the London Arbitration. . . . If Mansel . . . succeeds in the London Arbitration and if Swift Aviation Group does not pay the award(s), then *and only then* will this Court *need* to decide whether the Swift Defendants are in law and in fact alter egos of one another." (Pl. Opp. at 18.) (Emphasis added.)

3

for the purpose of seeking the attachment.³ Mansel Oil's attempt to secure payment of an award using the funds of third parties may be convenient for it, but that does not make it a permissible use of Rule B. This Court is without jurisdiction to make such an order and should stay the claims seeking to lift the corporate veil of different companies solely for attachment purposes.

Plaintiff fails to meet the purpose of the unique procedural tool that is Rule B, which is to compel an appearance by the maritime defendant and to obtain security, as Plaintiff itself admits (Pl. Opp. at 14). Maritime attachments have "a dual purpose: (1) to obtain jurisdiction of the respondent in personam through his property, and (2) to assure satisfaction of any decree in libelant's favor. The two purposes may not be separated, however, for security cannot be obtained except as an adjunct to obtaining jurisdiction." *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 581-82 (2d Cir. 1963).

As this Court stated in *Parkroad Corp. v. China Worldwide Shipping Co.*, No. 05 CV 5085, 2005 WL 1354034 (S.D.N.Y. June 6, 2005), "Rule B 'envisions that the order [for process of maritime attachment and/or garnishment] will issue when the plaintiff makes a *prima facie* showing *that he has a maritime claim against the defendant* in the amount sued for and the defendant is not present in the district.'" *Id.*, at *1 (emphasis added). Indeed, "the plaintiff's claim must be an '*in personam* claim against the defendant which is cognizable in admiralty.'" *HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V.*, No. 04 Civ. 6884, 2005 WL 1036127, at *2 (S.D.N.Y. May 4, 2005) (citation omitted).

In other words, Rule B does not contemplate defendants of "convenience," named solely in district court proceedings for the purpose of obtaining an attachment against them.

---

³ *See, e.g., Aqua Stoli*, 460 F.3d at 436 (Aqua Stoli Shipping Ltd. began an arbitration proceeding in London against Gardner Smith Pty. Ltd. and then sought a Rule B attachment).

Nor does the issue of the possibility for Swift Aviation Group posting a security color the issue of whether the standard of a Rule B attachment has been met or not. It is only *after* a plaintiff has met the requirements under Rule B that the opportunity arises *for the defendant* to offer such security to discharge what would otherwise be a lawful attachment.[4] Therefore, whether or not Defendant is willing to post a security is of no relevance to the legal analysis of the issuance of a Rule B attachment. Such attachment is *not* available here against the Swift Subsidiaries because Plaintiff does not have a maritime claim against the Swift Subsidiaries. *See World Reach Shipping Ltd. v. Industrial Carriers Inc.*, No. 06 Civ. 3756, 2006 WL 3316828 *4 (S.D.N.Y. Nov. 9, 2006) ("The amount of security a party may obtain is determined by the damages it properly alleges and its ability to locate assets of the other party.").

**B.     Mansel Oil Is Not Candid with the Court as It Appears to Attempt to Confuse Swift Transportation with the Swift Subsidiaries**

Mansel Oil directs its baseless Rule B attack on the Swift Subsidiaries while dodging the presence of Swift Transportation in this District and, perhaps, even endeavoring to confuse Swift Aviation Group and the Court as to whether it seeks to name Swift Transportation as a party to this action. (Proposed Amended Compl. at 2; Pl. Opp. at 8-9.) There is no merit to Mansel Oil's attempts to name the Swift Subsidiaries as defendants and to attach their assets, which would serve only to obfuscate Mansel Oil's complete inability to attach the assets of the only entity (Swift Transportation) other than Swift Aviation Group bearing any relationship to the dispute between Plaintiff and Defendant.

---

[4] "We hold that, once a plaintiff has carried his burden to show that his attachment satisfies the requirements of Supplemental Rule B, a district court may vacate an attachment only upon circumstances not present in this case. Circumstances that may justify a vacatur can occur where 1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." *Aqua Stoli*, 460 F.3d at 436.

Here, Plaintiff's effort to attach the assets of the Swift Subsidiaries under Rule B overlooks, *inter alia*, the fact that Swift Transportation was a potential defendant that Mansel Oil purposely sought to avoid including in its Amended Verified Complaint. Plaintiff's lack of candor should not be rewarded. In fact, the "inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge.... '[A] district court has the inherent authority to vacate an attachment 'upon a showing of any improper practice' or a 'manifest want of equity on the part of plaintiff.'" *Proshipline Inc. v. Aspen Infrastructures Ltd.*, 533 F. Supp. 2d 422, 429 (S.D.N.Y. 2008) (citations omitted) (attachment vacated where plaintiff, knowing the defendant was before the court, still asserted that the defendant was not found within the district).[5]

Swift Transportation's presence in this district should prevent Mansel Oil from seeking to attach the assets of defendants bearing no connection to this case. *See Atwood Navigation, Inc. v. M/V Rizal*, No. 89-1221, 1989 WL 16306, at *1-2 (E.D. Pa. Feb. 24, 1989) (vacating maritime attachment as improper including, *inter alia*, because plaintiff had pursued an action of attachment against wrong entity, which had never entered into any kind of negotiations or contract with plaintiff). Courts regularly vacate attachments where the defendant is found in the district.[6] *See Chiquita Int'l Ltd. v. MV Bosse*, 518 F. Supp. 2d 589, 593 (S.D.N.Y. 2007):

> Essentially, [defendant] abused the attachment process and took advantage of the *ex parte* nature of a Rule B order, despite [defendant's] knowledge that GWF already was before the Southern District of New York in the related *Chiquita*

---

[5] *See also Lunkenheimer Co. v. Condec Corp.*, 268 F. Supp. 667, 673-74 (S.D.N.Y. 1967) (denying plaintiff's motion for preliminary injunction for lack of candidness with the court, among other reasons: "Furthermore, the plot as to Textron is still thicker; there are strong indications that plaintiff has not been strenuously candid with the Court on this subject. The moving papers, while urging that defendants be blocked so that plaintiff can sell out to Textron, are notably uninformative about the latter company.").

[6] *See Far Eastern Shipping Co. v. Progress Bulk Carriers, Ltd.*, No. 07 CV 11375, 2008 WL 2035788, at *1 (S.D.N.Y. Feb. 8, 2008) (attachment vacated where plaintiff had not made a reasonable effort to locate defendant within the district, and defendant was in fact located within the district).

action . . . Given [defendant's] knowledge of the pending *Chiquita* action, seeking an *ex parte* order of attachment in [this] action was an improper practice and showed a want of equity on the part of [defendant]. [Defendant's] actions are not in accordance with the purposes of maritime attachments.

*Id.* at 599-600 (citations omitted) (vacating attachment). This Court should similarly stay Plaintiff's claims to prevent an abuse of Rule B.

## II. NOW IS THE TIME TO STAY PLAINTIFF'S ACTION, INCLUDING THE ALTER EGO CLAIMS

Mansel Oil's argument, that its veil piercing allegations cannot be stayed because the Court has not yet granted the motion to leave to file an amended complaint, suffers from an incurable flaw (Pl. Opp. at 16).[7] Plaintiff's premise that a stay is premature and cannot be decided by this Court at this time clearly is not supported by *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600 (S.D.N.Y. 1997) ("*Limonium I*") cited by Swift Aviation Group and, in fact, is contrary to the precedents Mansel Oil itself cites in its opposition.

### A. *Limonium* Both Vacated the Attachment and Stayed the Action Against the Defendant's Affiliates Pending Arbitration

Plaintiff's "suggestion," based on the decision of District Court Judge Chin in *Limonium I* that the proper time to assess Mansel Oil's corporate veil piercing allegations is *after* the property of the Swift Subsidiaries will have been attached is disingenuous. (Pl. Opp. at 16.)

First, the *issue of the amendment of the complaint never reached the court* because it appears Limonium amended its complaint within the time period allocated to plaintiffs to amend a complaint without judicial permission. Second, Limonium *never sought an attachment of the assets of any entity other than the named charterparty*. Third, Judge Chin's first concern was to *vacate the Rule B attachment* against the original defendant. And fourth, the

---

[7] Needless to say, Swift Aviation Group nowhere – and certainly not by seeking a stay of Plaintiff's alter ego claims – "seemingly concedes that Mansel is entitled to file the Amended Complaint." (Pl. Opp. at 16.)

7

court in that case compelled arbitration only against the named charterparty and *simultaneously stayed all further proceedings against alleged affiliates of the named charterparty*. It stretches credulity that Mansel Oil would seek to rely on *Limonium I* as an authority for the proposition that the property of affiliates of the defendant was "deemed attachable property" when the plaintiff in that case had not even sought an attachment against these affiliates.

### B. Plaintiff Fails to Cite a Single Relevant Case Against a Stay of Mansel Oil's Action and its Trumped-Up Corporate Veil Piercing Allegations

All the cases on which Mansel Oil seeks to rely for the proposition that a stay of alter ego claims such as that granted in *Limonium I* should be the exception rather than the rule are taken out of context so as to suggest resolutions of issues that were simply not before them. (Pl. Opp. at 16.) In fact, Mansel Oil's supposed authorities are wholly inapposite because they deal with the issue of whether a third-party may participate or be compelled to *arbitrate*.[8] Plaintiff, however, has clearly stated that it has no intention of seeking to arbitrate against the Swift Subsidiaries, which admittedly are non-parties to the dispute between Mansel Oil and Swift Aviation Group. (Pl. Opp. at 18.) Furthermore, in *Limonium Maritime S.A. v. Marinera, S.A.*, 1999 WL 46721 (S.D.N.Y, 1999) ("*Limonium II*"), Judge Chin denied a motion to compel arbitration and declined to decide whether non-signatories were parties to a charter agreement until *after* completion of arbitration proceedings – and the Court of Appeals agreed entirely. *Limonium*, 201 F.3d 431, at *1 ("To adjudicate non-signatories status first while delaying arbitration would not expedite final resolution of the case but might actually delay it.") Similarly

---

[8] *See First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*, 540 F. Supp. 2d 483, 485 (S.D.N.Y. 2008) (considered whether non-signatory to arbitration agreement could be a party of the arbitration prior to the arbitration); *Hidrocarburos y Derivados, C.A. v. Lemos*, 453 F. Supp. 160, 174 (S.D.N.Y. 1977) (ruling on motion to compel arbitration of non-signatory to arbitration agreement prior to the arbitration hearing and award); *Schaad v. Susquehanna Capital Group*, No. 03Civ.9902, 2004 WL 1794481, at *5 (S.D.N.Y. Aug. 10, 2004) (holding that "[a] determination of the identities of *parties bound by an arbitration* agreement is one that is properly made *before* arbitration") (first emphasis added).

unsuitable is the case of *World Reach Shipping Ltd. v. Industrial Carriers Inc.*, No. 06 Civ. 3756, 2006 WL 3316828, at *3 (S.D.N.Y. Nov. 9, 2006), which involved an allegation that "BlueCoast 'was intimately involved in the specific details of [the Charter Agreement].'" *Id.* (citation omitted). Thus, Plaintiff has failed to cite even a single relevant case against Defendant's motion for a stay of Plaintiff's trumped-up corporate veil piercing allegations.

### III. IF THE ARBITRATOR FINDS THAT DEFENDANT IS NOT LIABLE, THE PARTIES AND THE COURT WILL HAVE WASTED TIME AND RESOURCES DEBATING POINTLESS VEIL PIERCING ISSUES

This Court has discretion to grant a stay in the interests of justice: "The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *General Media, Inc. v. Shooker*, No. 97 Civ. 510, 1998 WL 401530, at *11 (S.D.N.Y. July 16, 1998) (citations omitted). Plaintiff's attempts to obtain security from four companies that bear no relation to the dispute is not a "relatively simple situation," as Plaintiff purports. (Pl. Opp. at 1.) The issue of whether any corporate veil should be pierced here, let alone four corporate veils, will envelop a large amount of this Court's time to unravel.[9] Furthermore, it can be expected that the four Swift Subsidiaries will vigorously defend themselves and bring motions to dismiss any action or vacate any attachment that may be brought or issued against them. The likelihood of these further proceedings is another reason why this Court should stay its hand on any corporate veil piercing claims in this action pending

---

[9] Plaintiff acknowledges that discovery would be required for the Court to rule on its veil piercing allegations. (Pl. Opp. at 25-26.) Again, defendant simply contends that a stay would avoid embroiling the parties and this Court in a hugely burdensome workload that may ultimately be without any use.

the London arbitration concerning the alleged liability of Swift Aviation Group, which could be complete as soon as three months from now.[10] (Swinnerton Decl. ¶ 2.)

If it turns out that Defendant is not liable in relation to the charter party agreements, then this Court will not have wasted judicial time and resources in deciding something which has lost its relevance. *See CVG Ferrominera Orinoco, C.A. v. Transportes Ferreos de Venezuela, C.A.*, No. 05 Civ. 8470, 2006 WL 39611, at *4 (S.D.N.Y. Jan. 3, 2006) ("the parties agree there is the prospect that no award may issue in Petitioner's favor, in which case the alter ego issue may be moot."). In short, Defendant asks that all claims be stayed pending the resolution in London of the underlying dispute following what the district court in *Limonium* called a "common sense approach." *Limonium*, 961 F. Supp. at 610.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully submits that this Court stay all claims pending arbitration.

Dated: New York, New York
June 6, 2008

Respectfully submitted,

*/s/ Julie Bédard*

John L. Gardiner
Julie Bédard
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Attorneys for Defendant

---

[10] *Int'l Marine Consultants, Inc. v. Karavias*, No. 82 Civ. 8296, 1985 WL 1515, at *5 (S.D.N.Y. June 3, 1985) (vacating attachment against various defendants and rejecting plaintiff's allegations that all these defendants were "merely shell corporations owned and controlled by defendant Karavias, and that the corporate veil should be pierced" because "being the sole or controlling shareholder of a corporation is not sufficient reason to disregard the corporate entities . . . Plaintiff has failed to show that there was any fraud or illegality in the activities of [the corporate defendants] or in their use of the corporate form for doing business.")